1   David C. Marcus (SBN 158704)
    david.marcus@wilmerhale.com
2   WILMER CUTLER PICKERING
        HALE AND DORR LLP
3   350 South Grand Avenue, Suite 2400
    Los Angeles, California 90071
4   Tel: (213) 443-5312

5   Alan Schoenfeld (*pro hac vice*)
    alan.schoenfeld@wilmerhale.com
6   WILMER CUTLER PICKERING
        HALE AND DORR LLP
7   7 World Trade Center
    250 Greenwich Street
8   New York, New York 10007
    Tel: (212) 937-7294
9
    Allison Bingxue Que (SBN 324044)
10  allison.que@wilmerhale.com
    WILMER CUTLER PICKERING
11      HALE AND DORR LLP
    2600 El Camino Real, Suite 400
12  Palo Alto, California 94306
    Tel: (650) 858-6000
13
    *Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC*
14

15              **UNITED STATES DISTRICT COURT**

16      **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| 17 | ) CASE NO.: 4:22-cv-5240-HSG |
| 18 | ) **DEFENDANTS TESLA, INC., TESLA** |
| 19 | ) **LEASE TRUST, AND TESLA FINANCE** |
| | ) **LLC'S MOTION TO COMPEL AND** |
| | IN RE TESLA ADVANCED DRIVER ) **STAY PENDING ARBITRATION AND** |
| | ASSISTANCE SYSTEMS LITIGATION ) **MOTION TO DISMISS** |
| 20 | ) |
| 21 | ) |
| 22 | ) *[Filed concurrently with Declaration of Victor* |
| | ) *Barclay, Declaration of Jasjit Ahluwalia,* |
| 23 | ) *Request for Incorporation by* |
| | ) *Reference/Judicial Notice and Declaration of* |
| 24 | ) *Allison Que, and [Proposed] Order]* |
| 25 | ) Hon. Haywood S. Gilliam, Jr. |
| | ) Date: March 23, 2023 |
| 26 | ) Time: 2:00 p.m. |
| | ) Courtroom 2 – 4th floor |
| 27 | ) Amended Consolidated Complaint Filed: |
| 28 | ) October 28, 2022 |

# <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION TO COMPEL AND STAY PENDING ARBITRATION AND MOTION TO DISMISS ....................................................... 1

STATEMENT OF RELIEF SOUGHT ....................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.      BACKGROUND ................................................................................................ 3

     A.      Tesla's Driver Assistance Technology ................................................ 3

         1.      Tesla's First-Generation "Autopilot" ...................................... 3

         2.      Tesla's Second-Generation Optional "Enhanced Autopilot" And "Full-Self Driving Capability" ............................... 5

         3.      Tesla's Ongoing, Rigorous Validation Of Its FSDC Software ................. 6

     B.      Plaintiffs Bring This Lawsuit ............................................................. 6

     C.      All The Named Plaintiffs Except For LoSavio Have An Arbitration Agreement With Tesla ............................... 7

II.     THE ARBITRATION PLAINTIFFS' CLAIMS SHOULD BE ARBITRATED ............. 8

III.    THE COMPLAINT SHOULD BE DISMISSED AS TO PLAINTIFF LOSAVIO ......... 10

     A.      LoSavio's Claims Are All Time-Barred ........................................... 11

         1.      The statute of limitations has expired for all LoSavio's claims ............... 11

         2.      No exception to the statute of limitations applies .................................. 12

     B.      LoSavio Fails To State A Claim ....................................................... 14

         1.      All The Claims Sound In Fraud And Fail To Meet Rule 9(b) ................. 14

         2.      The Complaint Fails To State Any Warranty Claim (Counts I-III) .......... 19

             a)      The express warranty claim fails ................................... 19

             b)      The implied warranty claim fails .................................. 21

     C.      LoSavio's Claims Are Barred In Whole Or Part For Other Reasons .................... 22

         1.      The Economic Loss Rule Bars The Common Law Claims (Counts VII-X) ................. 22

         2.      The Parties' Contract Precludes The Unjust Enrichment Claim (Count X) .............. 23

         3.      LoSavio Cannot Obtain Equitable Relief (Counts II-VI) .................... 23

         4.      The Court Lacks Jurisdiction Over The MMWA Claim (Count I) ........... 24

         5.      The Warranty Claims And The CLRA Claim (Counts I-III, V) Should Separately Be Dismissed For Lack Of Pre-Suit Notice ............... 25

IV.    CONCLUSION ............................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

4

**Federal Cases**

5

*389 Orange St. Partners v. Arnold*,

6      179 F.3d 656 (9th Cir. 1999) ............................................................................... 13

7 *Acedo v. DMAX, Ltd.*,

8      2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) ...................................................... 22

9 *Adams v. Cole Haan, LLC*,

10      2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ......................................................... 24

11 *Alley v. Shadow Indus., Inc.*,

12      2016 WL 11756840 (C.D. Cal. July 27, 2016) ...................................................... 25

13 *Alvarez v. Chevron Corp.*,

14      656 F.3d 925 (9th Cir. 2011) ............................................................................... 25

15 *Amans v. Tesla, Inc.*,

16      2022 WL 2952474 (N.D. Cal. July 26, 2022) ....................................................... 15

17 *In re Apple Processor Litig.*,

18      2022 WL 2064975 (N.D. Cal. June 8, 2022) ........................................................ 24

19 *Aquino v. Toyota Motor Sales USA, Inc.*,

20      2016 WL 3055897 (N.D. Cal. May 31, 2016) ......................................................... 9

21 *In re Arris Cable Modem Consumer Litig.*,

22      2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...................................................... 14, 18

23 *AT&T Mobility LLC v. Concepcion*,

24      563 U.S. 333 (2011) ............................................................................................. 8

25 *Avakian v. Wells Fargo Bank, N.A.*,

26      827 F. App'x 765 (9th Cir. 2020) ........................................................................ 18

27 *Beshwate v. BMW of N.A., LLC*,

28      2017 WL 6344451 (E.D. Cal. Dec. 12, 2017) ...................................................... 16

*Bird v. First Alert, Inc.*,

   2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ........................................................................ 24

*Birdsong v. Apple, Inc.*,

   590 F.3d 955 (9th Cir. 2009) .............................................................................................. 19

*Bohnak v. Marsh & McLennan Cos., Inc.*,

   500 F. Supp. 3d. 21 (S.D.N.Y. 2022) ................................................................................ 24

*Brennan v. Opus Bank*,

   796 F.3d 1125 (9th Cir. 2015) .............................................................................................. 9

*Brownfield v. Jaguar Land Rover N. Am. LLC*,

   584 F. App'x 874 (9th Cir. 2014) ...................................................................................... 20

*Canard v. Bricker*,

   2015 WL 846997 (N.D. Cal. Feb. 25, 2015) ...................................................................... 17

*Cepelak v. HP Inc.*,

   2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) .................................................................... 23

*Cervantes v. City of San Diego*,

   5 F.3d 1273 (9th Cir. 1993) .............................................................................................. 12

*Circuit City Stores, Inc. v. Najd*,

   294 F.3d 1104 (9th Cir. 2002) .............................................................................................. 8

*Clark v. Am. Honda Motor Co., Inc.*,

   2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) .................................................................. 20

*Clemens v. DaimlerChrysler Corp.*,

   534 F.3d 1017 (9th Cir. 2008) .......................................................................................... 13

*Comley v. Giant Inland Empire RV Ctr., Inc.*,

   2014 WL 12470016 (C.D. Cal. May 13, 2014) ................................................................ 12

*Diaz v. Wells Fargo Bank*,

   2015 WL 7180617 (N.D. Cal. Nov. 16, 2015) .................................................................. 11

*Dougherty v. Bank of Am., N.A.*,

   177 F. Supp. 3d 1230 (E.D. Cal. 2016) ............................................................................ 11

*Enea v. Mercedes-Benz USA, LLC*,

    2019 WL 402315 (N.D. Cal. Jan. 31, 2019) ........................................................................ 15

*First Options of Chi., Inc. v. Kaplan*,

    514 U.S. 938 (1995), (1) ........................................................................................................ 8

*Fish v. Tesla, Inc.*,

    2022 WL 1552137 (C.D. Cal. May 12, 2022) ................................................................. 8, 10

*Floyd v. Am. Honda Motor Co.*,

    966 F.3d 1027 (9th Cir. 2020) ............................................................................................ 24

*Fontana v. Chef's Warehouse Inc.*,

    2017 WL 2591872 (N.D. Cal. June 15, 2017) ................................................................... 10

*Freeman v. Time, Inc.*,

    68 F.3d 285 (9th Cir. 1995) ................................................................................................. 15

*Friedman v. Mercedes Benz USA LLC*,

    2013 WL 8336127 (C.D. Cal. June 12, 2013) ................................................................... 18

*Gabriella v. Recology Inc.*,

    2022 WL 6271866 (N.D. Cal. Sept. 9, 2022) ...................................................................... 9

*Guerrero v. Gates*,

    442 F.3d 697 (9th Cir. 2006) ............................................................................................... 13

*Gutierrez v. FriendFinder Networks Inc.*,

    2019 WL 1974900 (N.D. Cal. May 3, 2019) ....................................................................... 1

*Haskins v. Symantec Corp.*,

    2014 WL 2450996 (N.D. Cal. June 2, 2014) ..................................................................... 18

*Herremans v. BMW of N. Am. LLC*,

    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ..................................................................... 18

*Hill v. Hospice of The Emerald Coast, Inc.*,

    2020 WL 12189180 (N.D. Fla. Apr. 27, 2020) ................................................................... 9

*Hutchins v. Bank of Am., N.A.*,

    2014 WL 722098 (N.D. Cal. Feb. 25, 2014) .................................................................... 12

*Immanuel Lak v. Zogenix, Inc.*,

    2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) ................................................................. 4

*Int'l Medical Devices, Inc. v. Cornell*,

    2022 WL 17080130 (C.D. Cal. Sept. 26, 2022) ........................................................... 16

*In re iPhone Application Litig.*,

    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...................................................................... 22

*U.S. ex rel. Jones v. Sutter Health*,

    499 F. Supp. 3d 704 (N.D. Cal. 2020) ......................................................................... 4

*Kacsuta v. Lenovo (United States) Inc.*,

    2013 WL 12126775 (C.D. Cal. July 16, 2013) ............................................................ 21

*Khoja v. Orexigen Therapeutics, Inc.*,

    899 F.3d 988 (9th Cir. 2018) ........................................................................................ 4

*Knafo v. Jaguar Land Rover N. Am., LLC*,

    2019 WL 6482231 (C.D. Cal. July 12, 2019) ............................................................. 20

*Kodjanian v. Mercedes-Benz USA, LLC*,

    2022 WL 1515683 (C.D. Cal. Mar. 17, 2022) ............................................................ 20

*La Fosse v. Sanderson Farms, Inc.*,

    2020 WL 3617786 (N.D. Cal. July 2, 2020) ............................................................... 24

*Lukovsky v. City & Cnty. of S.F.*,

    535 F.3d 1044 (9th Cir. 2008) .................................................................................... 13

*Lusson v. Apple, Inc.*,

    2016 WL 6091527 (N.D. Cal. Oct. 19, 2016) ............................................................ 17

*In re MacBook Keyboard Litig.*,

    2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ............................................................ 23

*Mance v. Mercedes-Benz USA*,

    901 F. Supp. 2d 1147 (N.D. Cal. 2012) ...................................................................... 25

*Mandani v. Volkswagen Grp. of Am.*,

    2019 WL 3753433 (N.D. Cal. Aug. 8, 2019) ......................................................... 13, 14

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ................................................................ 23

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2020 WL 3961975 (N.D. Cal. July 13, 2020) ............................................................... 12

*Marchante v. Sony Corp. of Am.*,
   801 F. Supp. 2d 1013 (S.D. Cal. 2011) ........................................................................ 21

*Marselian v. Wells Fargo & Co.*,
   514 F. Supp. 3d 1166 (N.D. Cal. 2021) .......................................................................... 9

*Maxwell v. Unilever United States, Inc.*,
   2014 WL 4275712 (N.D. Cal. Aug. 28, 2014) .............................................................. 18

*Minkler v. Kramer v. Lab'ys, Inc.*,
   2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ................................................................ 15

*Morrison v. Ross Stores, Inc.*,
   2018 WL 5982006 (N.D. Cal. Nov. 14, 2018) .............................................................. 25

*Nguyen v. Nissan N. Am., Inc.*,
   487 F. Supp. 3d 845 (N.D. Cal. 2020) ......................................................................... 12

*Nguyen v. Tesla, Inc.*,
   2020 WL 2114937 (N.D. Cal. Apr. 6, 2020) .............................................................. 8, 9

*Nunez. v. Microsoft Corp.*,
   2008 WL 11337499 (S.D. Cal. Aug. 22, 2008) ............................................................ 25

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ........................................................................................ 23

*Parker v. Alexander Marine Co. Ltd.*,
   2015 WL 12712083 (C.D. Cal. May 26, 2015) ............................................................ 23

*Peterson v. Mazda Motor of Am., Inc.*,
   44 F. Supp. 3d 965 (C.D. Cal. 2014) ........................................................................... 21

*Plumlee v. Pfizer, Inc.*,
   2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ................................................................ 12

1  *Postpichal v. Cricket Wireless, LLC*,

2      2021 WL 2322418 (N.D. Cal. June 7, 2021) ................................................................. 25

3  *Raebel v. Tesla, Inc.*,

4      451 F. Supp. 3d 1183 (D. Nev. 2020) ..................................................................... 8, 24

5  *Rent-A-Ctr., Inc. v. Canyon TV & Appliance Rental, Inc.*,

6      944 F.2d 597 (9th Cir. 1991) ................................................................................... 24

7  *Richardson v. Reliance Nat'l Indem. Co.*,

8      2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ............................................... 15, 16, 17

9  *Robie v. Trader Joe's Co.*,

10     2021 WL 2548960 (N.D. Cal. June 14, 2021) .......................................................... 24

11 *Rojas v. Bosch Solar Energy Corp.*,

12     386 F. Supp. 3d 1116 (N.D. Cal. 2019) ............................................................. 19, 25

13 *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*,

14     965 F. Supp. 2d 1141 (E.D. Cal. 2013) .................................................................... 18

15 *Sanchez v. Kia Motors Am., Inc.*,

16     2021 WL 4816834 (C.D. Cal. Aug. 9, 2021) ........................................................... 25

17 *Sharma v. Volkswagen AG*,

18     524 F. Supp. 3d 891 (N.D. Cal. 2021) ..................................................................... 23

19 *Shum v. Intel Corp.*,

20     2008 WL 4414722 (N.D. Cal. Sept. 26, 2008) ........................................................ 18

21 *Sloan v. Gen. Motors LLC*,

22     2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ........................................................... 17

23 *Sonner v. Premier Nutrition Corp.*,

24     971 F.3d 834 (9th Cir. 2020) ................................................................................... 23

25 *Srinvasan v. Kenna*,

26     2019 WL 1118123 (N.D. Cal. Mar. 11, 2019) ......................................................... 15

27 *Suski v. Marden-Kane, Inc.*,

28     2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ......................................................... 24

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,

 83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................................... 20

*Tabler v. Panera LLC*,

 2020 WL 3544988 (N.D. Cal. June 30, 2020) ..................................................... 18

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,

 992 F. Supp. 2d 962 (C.D. Cal. 2014)................................................................... 21

*Tait v. BSH Home Appliances Corp.*,

 2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ..................................................... 25

*Taleshpour v. Apple Inc.*,

 2021 WL 1197494 (N.D. Cal. Mar. 30, 2021) ..................................................... 14

*Taragan v. Nissan N. Am., Inc.*,

 2013 WL 3157918 (N.D. Cal. June 20, 2013) ..................................................... 21

*Tilahun v. Nissan N. Am., Inc.*,

 2022 WL 3591068 (C.D. Cal. Aug. 16, 2022) ..................................................... 22

*Tipton v. Zimmer*,

 2016 WL 3452744 (C.D. Cal. June 23, 2016)...................................................... 19

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,

 363 U.S. 574 (1960) .............................................................................................. 10

*Ward v. Pickett*,

 2013 WL 5496549 (N.D. Cal. Oct. 3, 2013) ....................................................... 15

*Williams v. Tesla, Inc.*,

 2021 WL 2531177 (N.D. Cal. June 21, 2021) ..................................................... 12

*Williams v. Tesla, Inc.*,

 2022 WL 899847 (N.D. Cal. Mar. 28, 2022) ...................................................... 22

*Wilson v. Hewlett-Packard Co.*,

 668 F.3d 1136 (9th Cir. 2012)............................................................................... 17

*Wong v. Am. Honda Motor Co., Inc.*,

 2022 WL 3696616 (C.D. Cal. June 21, 2022)...................................................... 25

*Yetter v. Ford Motor Co.*,

    2019 WL 3254249 (N.D. Cal. July 19, 2019) ........................................................................ 12

*Young v. Tesla, Inc.*,

    2022 WL 3355832 (D.N.M. Aug. 15, 2022) ........................................................................ 16

**State Cases**

*A.A. Baxter Corp. v. Colt Indus., Inc.*,

    10 Cal. App. 3d 144 (1970) ........................................................................ 20

*Am. Suzuki Motor Corp. v. Superior Court*,

    37 Cal. App. 4th 1291 (1995) ........................................................................ 21

*Atkinson v. Elk Corp. of Tex.*,

    142 Cal. App. 4th 212 (2006) ........................................................................ 21

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,

    169 Cal. App. 4th 116 (2008) ........................................................................ 12

*Carrau v. Marvin Lumber & Cedar Co.*,

    93 Cal. App. 4th 281 (2001) ........................................................................ 12

*Kline v. Turner*,

    87 Cal. App. 4th 1369 (2001) ........................................................................ 11

*MetroPCS Commc'ns, Inc. v. Porter*,

    273 So.3d 1025 (Fla. 3d DCA 2018) ........................................................................ 9

*Mocek v. Alfa Leisure, Inc.*,

    114 Cal. App. 4th 402 (2003) ........................................................................ 21

*Oregel v. Am. Isuzu Motors, Inc.*,

    90 Cal. App. 4th 1094 (2001) ........................................................................ 20

*Outboard Marine Corp. v. Superior Court*,

    52 Cal. App. 3d 30 (3d Dist. 1975) ........................................................................ 25

*Robinson Helicopter Co. v. Dana Corp.*,

    34 Cal. 4th 979 (2004) ........................................................................ 22

*WA Southwest2, LLC v. First Am. Title Ins. Co.*,

    240 Cal. App. 4th 148 (2015) ............................................................................... 11

**Federal Statutes**

15 U.S.C. § 2310(d)(3) ............................................................................................ 24

15 U.S.C. § 2310(e) ................................................................................................. 25

Fed. R. Civ. P. 9(b) ............................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 1

Fed. R. Civ. P. 12(b)(2) ............................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

Fed. R. Evid. 201 ...................................................................................................... 4

Magnuson-Moss Warranty Act .......................................................................... *passim*

**State Statutes**

Cal. Civ. Code § 1782(a) ........................................................................................ 25

Cal. Civ. Code § 1791.2 .......................................................................................... 19

Cal. Civ. Code § 1792 ............................................................................................. 21

Cal. Civ. Code § 1795.6 .......................................................................................... 12

Cal. Com. Code § 2313 ........................................................................................... 19

California Consumer Legal Remedies Act .......................................................... *passim*

California False Advertising Law ........................................................................ *passim*

California Song-Beverly Act ............................................................................... *passim*

California Unfair Competition Law ..................................................................... *passim*

## NOTICE OF MOTION AND MOTION TO COMPEL AND STAY PENDING
## ARBITRATION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on March 23, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., located in Courtroom 2, 4th Floor of the United States Courthouse, 1 Clay Street, Oakland, CA 94612, Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC (collectively, "Tesla") will and hereby move this Court to (1) compel enforcement of the parties' arbitration agreement and stay the claims of Plaintiffs Brenda T. Broussard, Dominick Battiato, Christopher Mallow, and Jazmin Imaguchi pending arbitration and (2) dismiss the Consolidated Complaint as to Plaintiff Thomas LoSavio (and the other Plaintiffs should the Court deny the arbitration motion).[1]  This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Victor Barclay with Exhibits A-E, Declaration of Jasjit Ahluwalia with Exhibits A-E, the accompanying Request for Judicial Notice and Declaration of Allison Que with Exhibits A-L, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and oral argument of counsel.

## STATEMENT OF RELIEF SOUGHT

Defendants respectfully seek an order (1) compelling enforcement of the parties' arbitration agreement and staying the claims of Plaintiffs Broussard, Battiato, Mallow, and Imaguchi pending arbitration, pursuant to sections 3 and 4 of the Federal Arbitration Act and (2) dismissing the Consolidated Complaint as to Plaintiff LoSavio (and the other Plaintiffs should the Court deny the arbitration motion) pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

Since at least 2015, Tesla has offered a suite of advanced driver assistance features (ADAS) to its customers, providing them with the opportunity to purchase the early iterations of features on

---

[1] This arbitration motion satisfies Tesla's obligation to respond to the Consolidated Complaint as to Plaintiffs Broussard, Battiato, Mallow, and Imaguchi. *See, e.g.*, *Gutierrez v. FriendFinder Networks Inc.*, 2019 WL 1974900, at *2 (N.D. Cal. May 3, 2019).  By filing this motion to compel and stay with the motion to dismiss, Tesla does not waive any rights to arbitrate or to move to dismiss as to these four plaintiffs.  Were the arbitration motion denied as to these four plaintiffs, the same arguments raised in the motion to dismiss (*infra* III)—except for certain statutes of limitation arguments as discussed below—should be directed to these plaintiffs as well.

the march toward autonomous vehicles, on the understanding that those who purchase the package would have such features continuously improved through software updates over time.[2]

Tesla has also said that its cars are equipped with the hardware necessary to one day achieve "Full Self Driving Capability" (FSDC)—its most advanced suite of driver assistance features that are constantly updated to reach greater autonomous capabilities.  Since 2016, Tesla has made good on its promise by continuously improving the software and deploying it to customers via over-the-air software updates.  Tesla is vigilant when validating and releasing each version of the update; some of its most advanced ADAS features were initially released to smaller pools of customers with safer driving track records before broader releases.

Plaintiffs each bought a vehicle from Tesla, and all but one allegedly purchased the FSDC package.  Plaintiffs knew at the time of purchase that their cars were not completely autonomous.  And they knew that the timeline towards more complete autonomy was contingent upon numerous factors, including software development and regulatory approval.  Yet they now sue Tesla, complaining that their cars are not completely autonomous.

As a threshold matter, four out of five named plaintiffs (Broussard, Battiato, Mallow and Imaguchi) have valid arbitration agreements with Tesla that should be enforced and that cover all of their claims.  These four plaintiffs' claims therefore should be arbitrated and stayed pending arbitration.  LoSavio, the one plaintiff who opted out of arbitration, advances a consolidated complaint riddled with defects and that should be dismissed.

To start, LoSavio sued too late—five years after he purchased his vehicle and the optional software package, well after any of his claims accrued.  All his claims are time barred and should be dismissed.  Moreover, the hundreds-of-paragraphs, narrative complaint fails to support a single cognizable legal theory.  The Complaint makes no mention of the parties' written contract or Tesla's car warranty.  It instead cherry-picks numerous statements allegedly made by Tesla and attempts to manufacture claims for fraud and breach of warranty.  But that attempt fails.  Indeed, for all the

---

[2] All Tesla cars come standard with Autopilot (AP), a suite of ADAS features.  Customers also have the option to purchase Enhanced Autopilot (EAP), which provides access to additional features and functionality, and Full Self-Driving Capability (FSDC), Tesla's most advanced package.

1  claims (because they all sound in fraud), the Complaint fails to plead whether and when LoSavio

2  actually saw which statement and whether he relied on any of these statements when he purchased

3  the vehicle or the FSDC package, thus falling short of Rule 9(b).

4      This is no surprise given that the Complaint relies on a wide array of statements that did not

5  even appear to address the model LoSavio purchased or the FSDC package.  And none of the

6  cherry-picked statements is actionable.  The Complaint identifies no specific timeline promised by

7  Tesla to release fully autonomous capabilities to the general public.  Instead, in interviews or

8  speeches cited in the Complaint, Tesla repeatedly made clear that a formal release of fully

9  autonomous capabilities to the general public would require regulatory approval, a factor that is not

10  within Tesla's control and would require substantial validation to demonstrate a significantly high

11  level of performance, reliability, and consistency.  While this copycat lawsuit tries to piggyback on

12  various ongoing or allegedly anticipated regulatory investigations, none of them is evidence or proof

13  of anything.  The warranty claims fare no better.  The Complaint identifies nothing akin to an

14  "express warranty" or "unmerchantability" for the implied warranty claims.  The fact that LoSavio

15  does not allege that he tried to repair his Model S or stop driving it further dooms his warranty

16  claims.  In addition, as detailed below, all the statutory claims—those brought under the California

17  consumer protection statutes and the state and federal warranty statutes—suffer one or more other

18  flaws that require dismissal of those claims.

19  **I.      BACKGROUND**

20      **A.      Tesla's Driver Assistance Technology**

21          1.      <u>Tesla's First-Generation "Autopilot"</u>

22      Autonomous driving technology encompasses different levels of automation, with each level

23  enabled by different driver involvement and responsibility, along with varying software and

24  hardware features.  *See, e.g.*, Compl. ¶¶ 29, 30, 32, 35; *see also id.* ¶¶ 68, 69.  For Levels 0 to 2,

25  drivers are responsible for driving the vehicle while the driver assistance system provides different

26  types of assistance, such as lane centering and adaptive cruise control.  The highest level of

27  automation, SAE Level 5, requires a car that drives itself "under all conditions and on all roadways"

28  so that "[a] human driver is not needed."  *Id.* ¶¶ 33; *see also id.* ¶¶ 30, 32.

Currently, Tesla offers an advanced driver assistance system (ADAS) with its vehicles, with the goal that, through constant and rigorous improvements, it will achieve greater autonomous driving capabilities in the future.  *See* Compl. ¶ 30 ("Tesla and other companies are working on automated-driving systems that would eventually allow cars to drive themselves.").  Tesla's driver assistance technology comprises both hardware and software on its vehicles, as well as over-the-air software updates.  *See, e.g.*, *id.* ¶¶ 68, 69, 81.  In 2014, Tesla began equipping its Model S sedan with hardware that was intended to enable certain driver assistance features, including automated steering, braking, and acceleration.  *Id.* ¶ 40.  At the time, the necessary software was not yet fully developed or active.  *Id.*  The combined package was dubbed "Autopilot."  *Id.*  As Tesla's CEO Elon Musk repeatedly explained, "['] autopilot['] is a term that has been used for more than half a century as 'flying assistant,' in aircraft for pilots, that's why we chose to use it, it does not represent self-driving any more than what autopilot[] make an aircraft self-flying."  Que Decl. Ex. F at 7:12;[3] *see also* Ex. C at 3.

In October 2015, Tesla released its version 7.0 software that enabled Autopilot on Model S vehicles.  Compl. ¶ 44.  While the Complaint alleges that, two months later, "Musk was publicly stating that Tesla vehicles would drive themselves within about two years" (without identifying any existing or upcoming model) (*id.* ¶ 45), he cautioned in the same interview that "production software is hard, … [e]specially software that's going to work on millions of different roads all around the world in a wide range of circumstances—in winter, in summer, in rain, in dust—there's a world of difference there."  Que Decl. Ex. A at 3.  In another blog post, Musk again warned that "[i]t is important to emphasize that refinement and validation of the software will take much longer than putting in place the cameras, radar, sonar and computing hardware."  Que Decl. Ex. C at 3.

---

[3] The Complaint partially cites or paraphrases statements made by Tesla and Tesla's CEO, Elon Musk, thus incorporating the full documents by reference into the Complaint.  The Court may consider them on a motion to dismiss.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1007 (9th Cir. 2018).  Some of these documents are also properly subject to judicial notice under Federal Rule of Evidence 201.  *See* Declaration of Allison Que in Support of Defendants' Request for Incorporation by Reference/Judicial Notice (attaching documents).  Tesla reserves the right to request incorporation by reference and/or judicial notice of other documents cited in the Complaint in response to Plaintiffs' opposition.  *See U.S. ex rel. Jones v. Sutter Health*, 499 F. Supp. 3d 704, 709 (N.D. Cal. 2020); *Immanuel Lak v. Zogenix, Inc.*, 2020 WL 3820424, at *1, *4-5 (N.D. Cal. Jan. 27, 2020).

In addition, from early on, Tesla made clear that "there will still be a significant time gap, varying widely by jurisdiction, before true self-driving is approved by regulators."  Que Decl. Ex. C at 3; *see also* Que Decl. Ex. A at 6 ("Musk expects regulators will lag behind the technology."). This is partially because regulators "will want to see billions of miles of data to show that it is statistically true that there is a substantial improvement in safety if something is autonomous versus not autonomous."  Que Decl. Ex. B at 2:26.

2. <u>Tesla's Second-Generation Optional "Enhanced Autopilot" And "Full-Self Driving Capability"</u>

On October 19, 2016, Tesla announced that all new Tesla cars would be equipped with a suite of hardware comprising eight cameras, twelve ultrasonic sensors, and a forward-facing radar unit.  Compl. ¶ 55.  This set of advanced hardware would enable certain optional "Enhanced Autopilot" features.  *Id.*  Customers could also purchase the "Full Self Driving Capability" (FSDC) package, which provides even more advanced driver-assist features, plus the right to receive over-the-air software updates that are designed to improve functionality over time.  *Id.*  The announcement included a roughly 3.5-minute video that Plaintiffs claim "purported to show a Tesla driving itself without any human intervention from the person in the driver's seat," although there was a person sitting behind the wheel throughout this short video and the car was equipped with a braking pedal.  *Id.* ¶ 57; *see also* Que Decl. Ex. E.  Tesla's blog post posted on the same day said: "Before activating the features enabled by the new hardware, we will further calibrate the system using millions of miles of real-world driving to ensure significant improvements to safety and convenience. … As these features are robustly validated we will enable them over the air, together with a rapidly expanding set of entirely new features."  Que Decl. Ex. D at 2.

On the same day, Tesla held a conference call.  Compl. ¶ 58.  During that call, Musk reiterated that "it'll take us some time … to complete validation of the software and to get through required regulatory approval," that Tesla would roll out "improvements in autonomous capability" gradually, that "the system will always be operating in shadow mode, so we can gather a large volume of statistical data," that "at that point regulators likely [will] be comfortable approving it," and "we've always rolled out our autonomous functionality within the regulatory framework of any

given country," and that "approval process … is not something within our control," all of which are omitted from the Complaint.  Que Decl. Ex. F at 00:35-00:48, 5:40-6:15, 12:45-13:56.

### 3.   Tesla's Ongoing, Rigorous Validation Of Its FSDC Software

Tesla has been constantly improving its software through not just "a rigorous battery of internal testing," but also "pair[ing] it with unmatched fleet learning to train the software to perform safely, consistently, and predictably in real world conditions" before releasing it to the entire customer fleet.  Que Decl. Ex. I at 1, Ex. H at 1-2.

As part of its march towards improved autonomous capabilities, in late December 2020, Tesla released its "FSD – City Streets feature" to 200 Tesla owners, 54 of whom were non-employees, based on various factors including their safe driving record.  Que Decl. Ex. H at 2.  When enabled on vehicles, this feature could "make lane changes off highway, select forks to allow a set navigation route, navigate around other vehicles and objects, and make left and right turns."  *Id.* at 1.  Tesla cautioned, both in writing and orally, that participants would need to "pay constant attention to the road and to be prepared to act immediately, especially around blind corners, crossing intersections, and in narrow driving situations."  *Id.*  In early July 2021, Tesla released the Beta 9 version of its FSD software to certain Tesla vehicle owners.  Compl. ¶ 87.

### B.   Plaintiffs Bring This Lawsuit

Plaintiffs' Consolidated Complaint asserts ten causes of action arising from the same allegations regarding Tesla's marketing of its driver assistance technology, falling into three categories:  (1)  warranty claims (express or implied, under both California's Song-Beverly Act and the federal Magnuson-Moss Warranty Act (MMWA)); (2) consumer protection claims (under California's False Advertising Law (FAL), Consumer Legal Remedies Act (CLRA), and Unfair Competition Law (UCL)); and (3) common-law tort claims (fraud and deceit, negligent misrepresentation, negligence, and unjust enrichment).  The Complaint alleges that each Plaintiff bought one or more Tesla vehicles, and that all but one of them also bought the optional FSDC package, at different times between January 2017 and May 2022.  Compl. ¶¶ 16-20.  The crux of all their claims is that Tesla misrepresented that "[its] ADAS technology made its vehicles capable of

being fully self-driving at the time of [each Plaintiff]'s purchase, or that it would do so within a reasonably short period thereafter." *Id.* ¶¶ 16-20, 128, 152, 192, 201, 207, 221.

The Complaint cherry-picks statements made by Tesla or Musk, both before and after each Plaintiff's purchase, many of which did not even specify the car model or software version, claiming that "Tesla and Musk have routinely promised Tesla's SAE Level 2 ADAS technology (including Autopilot and FSD) would rapidly advance to SAE Level 5 abilities within a year or other short period of time." *Compl.* ¶ 34.

**C.      All The Named Plaintiffs Except For LoSavio Have An Arbitration Agreement With Tesla**

Tesla sells and leases its vehicles on its website.  Ahluwalia Decl. iso MTC/S ¶ 5.  Customers who want to buy or lease a vehicle from Tesla can start the process by placing an order online through either the desktop or mobile version of Tesla's website.  *Id.*  At the end of the online order process, an Order Payment screen is shown that includes a "Place Order" button that must be clicked to complete the process.  Barclay Decl. iso MTC/S ¶¶ 3, 6.  The "Place Order" button is directly below or above language stating that, "By placing this order you agree to the [applicable car model] Order Agreement[,]" or a slight variation of this language.  *Id.* ¶ 3.[4]  At all relevant times, the text "Model 3 Order Agreement" or "Model Y Order Agreement" was a direct hyperlink to an online copy of the referenced Order Agreement as indicated by the bolded, colored or underlined font.  *Id.*

Tesla's records confirm that Broussard, Battiato, Mallow, and Imaguchi (the "Arbitration Plaintiffs") each placed an online order of either a Model 3 or Model Y through the process described above and accepted the Order Agreement as part of their purchase.  Ahluwalia Decl. ¶¶ 10, 12, 14, 16, 18.  In each of these Plaintiffs' Order Agreement, which runs between three and four pages, the arbitration clause ("Arbitration Agreement") is prominently displayed in a standalone text box and includes the following provisions, including the right to opt out of arbitration within 30 days:

> **Agreement to Arbitrate.**  Please carefully read this provision, which applies to any dispute between you and Tesla, Inc. and its affiliates, (together "Tesla").

---

[4] The full title of the Order Agreements applicable to the Arbitration Plaintiffs' orders were either "Motor Vehicle Order Agreement" or "Motor Vehicle Purchase Agreement," and these agreements are referenced collectively herein as an "Order Agreement."  Ahluwalia Decl. ¶ 3.

*** 

[Y]ou agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules.  This includes claims arising before this Agreement, such as claims related to statements about our products.

We will pay all AAA fees for any arbitration, which will be held in the city or county of your residence.

*** 

The arbitrator may only resolve disputes between you and Tesla, and may not consolidate claims without the consent of all parties.  The arbitrator cannot hear clear or representative claims or request for relief on behalf of others purchasing or leasing Tesla vehicles.  In other words, you and Tesla may bring claims against the other only in your or its individual capacity and not as a plaintiff or class member in any class or representative action.  If a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim or relief or remedy, then that claim or remedy (and only that claim or remedy) must be brought in court and any other claims must be arbitrated.

If you prefer, you may instead take an individual dispute to small claims court.

You may opt out of arbitration within 30 days after signing this Agreement by sending a letter to [Tesla's designated address].

Ahluwalia Decl. Exs. A-E.  None of the Arbitration Plaintiffs chose to opt out of their Arbitration Agreement.  Ahluwalia Decl. ¶¶ 11, 13, 15, 17, 19.

## II.   THE ARBITRATION PLAINTIFFS' CLAIMS SHOULD BE ARBITRATED

The Arbitration Plaintiffs entered into standard arbitration agreements with Tesla, which courts in this Circuit routinely enforce.  *See, e.g., Fish v. Tesla, Inc.*, 2022 WL 1552137, at *4 (C.D. Cal. May 12, 2022); *Nguyen v. Tesla, Inc.*, 2020 WL 2114937, at *3 (N.D. Cal. Apr. 6, 2020), *appeal dismissed*, 2020 WL 6875203 (9th Cir. Nov. 20, 2020); *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1189 (D. Nev. 2020).

There is no basis to decide otherwise here.  As required by applicable California and Florida law "govern[ing] the formation of contracts," *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), (1) each Arbitration Plaintiff was capable of contracting; (2) the Arbitration Agreements were made for a lawful purpose, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); and (3) the Arbitration Agreements are supported by valid consideration, namely the parties' mutual promises to arbitrate disputes, *see, e.g., Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th

Cir. 2002); *Hill v. Hospice of The Emerald Coast, Inc.*, 2020 WL 12189180, at *3 (N.D. Fla. Apr. 27, 2020).  Each Arbitration Plaintiff manifested his or her assent to arbitration by accepting the Order Agreement electronically, clicking a button on a screen that directly linked to the Order Agreement and advised that "[b]y placing this order you agree to the [applicable Order Agreement]" or some immaterial variation (*supra* I.C).  *Nguyen v. Tesla*, 2020 WL 2114937, at *1; *MetroPCS Commc'ns, Inc. v. Porter*, 273 So.3d 1025, 1028 (Fla. 3d DCA 2018) (similar).  While each Arbitration Plaintiff was given the opportunity to opt out, none did.  *Supra* I.C.  Thus, the Arbitration Agreement applies and each Arbitration Plaintiff's claims should be arbitrated.  *See, e.g.*, *Aquino v. Toyota Motor Sales USA, Inc.*, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) (plaintiff agreed to arbitrate by failing to opt out).

If there is any question about the arbitrability of the Arbitration Plaintiffs' claims—and Tesla sees none—the parties have agreed that the arbitrator will answer them rather than the Court.  Where, as here, the parties' assented-to arbitration agreement includes a provision delegating questions of arbitrability to the arbitrator, "the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Gabriella v. Recology Inc.*, 2022 WL 6271866, at *1 (N.D. Cal. Sept. 9, 2022) (Gilliam, J.).  Here, the parties expressly incorporated AAA's Consumer Arbitration Rules, which provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer Arbitration Rules at R-14(a).  This Court and the Ninth Circuit have both held that incorporation of these rules is "clear and unmistakable evidence" that the parties intended the arbitrator to decide any threshold issues concerning arbitrability.  *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1175-76 (N.D. Cal. 2021) (Gilliam, J.) (same).  So, to the extent the Arbitration Plaintiffs raise any question about arbitrability, an arbitrator and not the Court must resolve them.

Finally, there can be no dispute that the Arbitration Plaintiffs' claims are covered by the Arbitration Agreements.  Bearing in mind that disputes are covered by the arbitration agreement "unless it may be said with positive assurance that the arbitration clause is not susceptible of an

1  interpretation that covers the asserted dispute," and that "[d]oubts should be resolved in favor of

2  coverage," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83

3  (1960), each Arbitration Plaintiff agreed to arbitrate "any dispute arising out of or relating to any

4  aspect of the relationship between [the Arbitration Plaintiff] and Tesla." *Supra* at 8.  In addition,

5  the Arbitration Agreements specifically cover "claims arising before this Agreement, such as claims

6  related to statements about our products." *Id.*  This language plainly covers the claims in this case,

7  which arise from allegations that Tesla engaged in misleading marketing about its ADAS package.

8  *See, e.g.*, *Fish*, 2022 WL 1552137, at *4 (Tesla's arbitration agreements cover "defects in batteries

9  and deficient battery performance").[5]

10  **III.    THE COMPLAINT SHOULD BE DISMISSED AS TO PLAINTIFF LOSAVIO[6]**

11         For LoSavio, the only plaintiff not bound to arbitrate, the Complaint should be dismissed.

12  *First*, LoSavio's claims are time barred:  He bought his vehicle in January 2017 and filed suit in

13  September 2022, well beyond the limitations period.  *Second*, he fails to state a claim for at least

14  two reasons:  (1) all his claims sound in fraud but fail to satisfy Rule 9(b) and (2) he alleges no

15  express or implied warranty sufficient to support his warranty claims.  *Third*, his claims are barred

16  in whole or part for other reasons, namely that (1) his common law claims are barred by the

17  economic loss rule, (2) his unjust enrichment claim cannot proceed because of the parties'

18  undisputed contract, *i.e.*, the express warranty, (3) he cannot obtain equitable relief, (4) there is no

19  subject matter jurisdiction over the MMWA claim, and (5) he did not provide pre-suit notice of

20  the warranty and CLRA claims.

21

22

23

24         [5] Because Tesla has established that "(1) the parties agreed to arbitration and (2) the scope

25  of that agreement to arbitrate encompasses the claims at issue," the burden is on the Arbitration
    Plaintiffs to "establish[] a defense to the agreement's enforcement by a preponderance of the
    evidence." *Fontana v. Chef's Warehouse Inc.*, 2017 WL 2591872, at *2 (N.D. Cal. June 15, 2017).

26  Tesla reserves its right to respond to any challenge to the enforceability of the Arbitration
    Agreements in its reply brief.

27         [6] As mentioned (*supra* n.1), should the Court deny the arbitration motion, all the arguments

28  in Sections III.B-C should be directed to Plaintiffs Broussard, Battiato, Mallow, and Imaguchi as
    well.  Section III.A applies to Plaintiff LoSavio only, except that the argument relating to the
    negligence claim would also apply to Plaintiffs Mallow and Imaguchi.

## A.    LoSavio's Claims Are All Time-Barred

LoSavio bought his Tesla Model S with the FSDC package in January 2017.  Compl. ¶ 16. He did not sue until September 2022, more than five years after his purchase.  All his claims are therefore time-barred under California law governing each cause of action.  No exception to the statute of limitations applies.

### 1.    The statute of limitations has expired for all LoSavio's claims

The two-year statute of limitations for LoSavio's negligence claim has expired because it accrued upon LoSavio's alleged injury, *i.e.*, when he purchased the non-completely autonomous, and allegedly unsafe, Model S.  *See Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1244 (E.D. Cal. 2016) (statute of limitations for negligence accrues when plaintiff sustains an injury).

The statutes of limitations for all the fraud-based common law claims have also expired because LoSavio should have discovered the underlying facts more than three years before he brought this lawsuit.  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373-74 (2001) (citing Cal. Civ. Code § 338, subd. (d)); *Diaz v. Wells Fargo Bank*, 2015 WL 7180617, at *3 (N.D. Cal. Nov. 16, 2015) (applying three-year limitations period to the negligent misrepresentation claim sounding in fraud). LoSavio cannot invoke the discovery rule because the Complaint cites various marketing statements allegedly made by Tesla, incident reports, and media reports allegedly regarding Tesla's ADAS technology, all published years *before* he bought his vehicle.  Therefore, to the extent LoSavio claims his vehicle was not completely autonomous and was unsafe at the time of the purchase, he had already been put on notice of that asserted fact.  To the extent he claims he was misled to believe that his vehicle would become completely autonomous shortly after the purchase, the Complaint is silent on LoSavio's "diligence" or exactly how he was allegedly unable "to have made earlier discovery despite reasonable diligence."  *WA Southwest2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015).  Indeed, if LoSavio construed Musk's October 19, 2016, statement as saying that Tesla's vehicles would become capable of being completely autonomous "all the way from LA to New York … by the end of next year" (Compl. ¶ 58), the clock would have started running in December 2017, which means the 3-year statutes of limitations would have expired by December 2020.  Instead, he apparently has kept driving his Tesla car for over five years.

The statutes of limitations for both the warranty claims and the consumer protection claims have also expired because they all accrued from the time of purchase. *See Mandani v. Volkswagen Grp. of Am., Inc.*, 2020 WL 3961975, at *3 (N.D. Cal. July 13, 2020) (Gilliam, J.) ("*Mandani III*") (MMWA and the Song-Beverly Act claims have a limitations period of four years from the purchase); *Yetter v. Ford Motor Co.*, 2019 WL 3254249, at *3 (N.D. Cal. July 19, 2019) (similar); *Comley v. Giant Inland Empire RV Ctr., Inc.*, 2014 WL 12470016, at *3 (C.D. Cal. May 13, 2014) (similar); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *7 (N.D. Cal. Feb. 21, 2014) (FAL and CLRA claims have imitations period of three years, and UCL claims have four years, from the purchase).[7]

### 2.   No exception to the statute of limitations applies

Recognizing his claims are untimely, LoSavio asserts various exceptions to the statute of limitations:   equitable tolling, the repair rule, class action tolling, and equitable estoppel or fraudulent concealment. *See* Compl. ¶ 121.   None of them applies.

Equitable tolling does not apply because LoSavio does not allege his "pursuit of a remedy in another forum" by which he provided "timely notice to the defendants in filing the first claim." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir. 1993); *Hutchins v. Bank of Am., N.A.*, 2014 WL 722098, at *6-7 (N.D. Cal. Feb. 25, 2014).   The "repair rule" does not apply, assuming LoSavio refers to "the repair doctrine" under California Civil Code Section 1795.6, because "[t]he plain language of the provision makes clear that [it] addresses extending the 'warranty period,' not tolling the statute of limitations, during the time of repair"; nor does LoSavio allege he took his vehicle to be repaired, *Mandani III*, 2020 WL 3961975, at *3.   Class action tolling

---

[7] Although an express warranty claim may be tolled by the delayed discovery rule (which is not asserted by Plaintiffs) if "the seller has expressly agreed to warrant its product *for a specific and defined period of time*," *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 130 (2008) (emphasis in original), this so-called "future performance" exception does not apply here because LoSavio alleges no warranty for a "specific and defined period of time." *See id.* ("An express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period."); *Carrau v. Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281, 292 (2001) (holding that general assertions as to the performance or durability of a product, such as the assertions in advertisements and literature "do not rise to the level of a warranty explicitly extending to future performance").   Courts, including this Court, have routinely held that this rule does not apply to implied warranty claims. *See, e.g., Williams v. Tesla, Inc.*, 2021 WL 2531177, at *6 (N.D. Cal. June 21, 2021) (Gilliam, J.); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 854, n.3 (N.D. Cal. 2020); *Mandani III*, 2020 WL 3961975, at *2-3.

does not apply because while "[i]n some instances, a plaintiff can rely on the filing of a prior class action to vindicate the right in question and toll the statute in the event that the class is not ultimately certified," *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008), LoSavio's action was the first filed in this consolidated action.

Finally, equitable estoppel (also known as "fraudulent concealment") does not apply both because LoSavio does not allege that Tesla actively concealed facts preventing him from pursuing his claim and because LoSavio *does* plead facts showing he was on notice. Tolling for fraudulent concealment requires "active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006) (emphasis added). Rule 9(b) applies to such alleged conduct. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999). "The primary problem with plaintiff'[s] argument is that [his] alleged basis for equitable estoppel is the same as [his] cause of action." *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (declining to apply equitable estoppel because plaintiffs failed to "point to any misrepresentation by the Defendants that concealed" the alleged discrimination). LoSavio alleges no additional active conduct by Tesla that concealed the facts of his claim, *i.e.*, that his vehicle was not and would not shortly become completely autonomous.

Instead, what LoSavio does plead shows he was on notice of the relevant facts. "Because [the fraudulent concealment] doctrine protects diligent suitors, it is unavailable, 'whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'" *Mandani v. Volkswagen Grp. of Am.*, 2019 WL 3753433, at *7 (N.D. Cal. Aug. 8, 2019) ("*Mandani II*") (Gilliam, J.). The "notice of a potential claim" does not have to be "notice of the availability of a particular cause of action"; rather, it concerns only "awareness of the relevant facts from which a diligent plaintiff would learn of potential claims." *Id.* As with the plaintiffs in *Mandani II*, LoSavio "plead[s] too much, rather than too little, as [he] affirmatively allege[s] facts showing he had 'actual or constructive knowledge of facts sufficient to put [him] on' notice of the alleged [defects]" in or before January 2017, when he purchased his vehicle. *Id.* He claims that he "decided to purchase this vehicle and ADAS package after researching, reviewing, and relying on

1   Tesla's online and other public statements." Compl. ¶ 16.  Based on the public sources dated before

2   January 2017 that are cited in the Complaint, he must have known that his vehicle was not

3   completely autonomous at the time of the purchase, and any opposite allegation would be

4   contradicted by his own allegations in the Complaint.  *See, e.g.*, *id.* ¶¶ 55, 56. To the extent LoSavio

5   asserts that Tesla fraudulently concealed when the vehicles would become completely autonomous

6   in the unspecified future or that Tesla's existing ADAS technology was unsafe, he fails to satisfy

7   the Rule 9(b) standard because the Complaint is silent on "when the fraud was discovered, the

8   circumstances under which it was discovered, the circumstances indicating that they were not at

9   fault for failing to discover it earlier, and the fact that they had no actual or constructive knowledge

10   of facts sufficient to put them on inquiry." *Mandani II*, 2019 WL 3753433, at *7.  Nor does LoSavio

11   "plead why, in the exercise of reasonable diligence, [he] could not have discovered the defect

12   earlier." *Id.*  He therefore cannot invoke this doctrine to toll his time-barred claims.

13   **B.    LoSavio Fails To State A Claim**

14   As mentioned, LoSavio's claims fall into three buckets:  consumer protection claims,

15   common law claims, and warranty claims.  All three buckets of claims are predicated on an alleged

16   fraud—that Tesla fraudulently misrepresented or concealed when the vehicles would become

17   completely autonomous in the unspecified future or that Tesla's existing ADAS technology was

18   unsafe—but fail to satisfy Rule 9(b).  And the warranty claims fail because LoSavio does not allege

19   that Tesla made any express or implied warranty that the alleged conduct would violate.

20   1.    <u>All The Claims Sound In Fraud And Fail To Meet Rule 9(b)</u>

21   LoSavio's claims all sound in fraud.  The crux of all the claims is that Tesla misrepresented

22   that the vehicles were fully autonomous at the time of purchase or lease, or would be within a short

23   period thereafter, and concealed information that "would cause a reasonable consumer to develop

24   material doubts … regarding the time period" in which Tesla vehicles would become completely

25   autonomous.  Compl. ¶¶ 117, 128, 135, 152, 162, 175, 180, 188, 192, 201, 208, 216, 221.  The

26   Complaint also seems to suggest that Tesla misrepresented or concealed the safety level of its ADAS

27   technology. *Id.* ¶¶ 139, 154, 177.  As a result, each claim must be pled with the particularity required

28   by Rule 9(b).  *See Taleshpour v. Apple Inc.*, 2021 WL 1197494, at *7 (N.D. Cal. Mar. 30, 2021)

(Song-Beverly Act); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) (FAL, CLRA, UCL); *Amans v. Tesla, Inc.*, 2022 WL 2952474, at *2 (N.D. Cal. July 26, 2022) (unfair and unlawful UCL prongs that were based on the same theory as the fraudulent prong); *Ward v. Pickett*, 2013 WL 5496549, at *5 (N.D. Cal. Oct. 3, 2013) (fraud and fraudulent deceit); *Srinvasan v. Kenna*, 2019 WL 1118123, at *6 (N.D. Cal. Mar. 11, 2019) (Gilliam, J.) (negligent misrepresentation claims that sound in fraud or grounded in fraud).  The Complaint's allegations do not satisfy Rule 9(b) in multiple respects.

   ***No misrepresentation or concealment.***  To start, the Complaint identifies no statement that Tesla made that was fraudulent.  *Enea v. Mercedes-Benz USA, LLC*, 2019 WL 402315, at *4-5 (N.D. Cal. Jan. 31, 2019) ("To properly plead fraud with particularity under Rule 9(b), a pleading must identify … what is false or misleading about the purportedly fraudulent statement, and why it is false."); *Richardson v. Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) ("[M]erely pointing to statements and alleging their falsity does not satisfy Rule 9(b).  [citation] Plaintiff may not simply 'set forth conclusory allegations of fraud punctuated by a handful of neutral facts.'").  The Complaint identifies no statement that the Tesla vehicles—including those equipped with the FSDC package—were fully autonomous at the time of LoSavio's purchase.  And Tesla's website made clear that they were not.  *Compare* Que Decl. Ex. L at 4 (FSDC "is designed *to be able to* conduct short and long distance trips with no action required *by the person in the driver's seat*" (emphasis supplied)) *and* Compl. ¶ 30 (SAE Level 5 does not require a human driver).  Thus, "Tesla's online and other public statements" that LoSavio allegedly "research[ed]" and "review[ed]" before buying his vehicles (*id.* ¶ 16) plainly show that the labels "Autopilot," "Enhanced Autopilot," or "Full Self-Driving Capability" did not mean the vehicles were already fully autonomous, as did Tesla's user manuals, sources that reasonable consumers would normally consult when buying a car.

   Nor would any reasonable consumer purchase a Tesla vehicle with the belief that it is fully autonomous based solely on these labels.  *See, e.g.*, *Minkler v. Kramer v. Lab'ys, Inc.*, 2013 WL 3185552, at *4 (C.D. Cal. Mar. 1, 2013) ("Reasonable consumers do not use drugs without consulting the warnings and disclaimers included on the FDA-mandated labeling."); *cf. Freeman v.*

*Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (considering what a reasonable customer would do when reading marketing materials); *Beshwate v. BMW of N.A., LLC*, 2017 WL 6344451, at *16 (E.D. Cal. Dec. 12, 2017) (because "when buying a used car the fact that the vehicle comes with the manufacturer's warranty is relied[] upon by the consumer in deciding to purchase a specific vehicle," "a reasonable consumer would understand that there exists a manufacturer's warranty that would also provide coverage for the vehicle"); *Int'l Medical Devices, Inc. v. Cornell*, 2022 WL 17080130, at *7 (C.D. Cal. Sept. 26, 2022) ("When deciding whether to purchase an item, customers are expected to exercise a higher degree of care when the item is more expensive."). Indeed, each Plaintiff alleges that he or she, like LoSavio, "decided to purchase [his or her] vehicle and the ADAS packages after researching, reviewing, and relying on Tesla' online and other public statements." *See* Compl. ¶¶ 17-20. LoSavio's assertion that Tesla promised the vehicles *were* already fully autonomous when they were sold rings hollow.

His assertion that Tesla promised to release completely autonomous capabilities "within a reasonable time after" his purchase fares no better. Compl. ¶¶ 135-136. No allegations show that Tesla promised that the FSDC package would enable full autonomy within a specified period of time. Many of the statements quoted in the Complaint did not even concern the FSDC package and therefore are irrelevant to LoSavio's claims. In addition, the quoted statements were also often accompanied by and subject to the qualifier that a release of fully autonomous capabilities to the general public would require government approval, a variable over which Tesla had no control, and that any regulatory clearance would require a vast amount of data to show that completely autonomous driving is significantly safer than human driving. *See, e.g.*, Que Decl. Ex. A; Ex. F at 14:38-54 ("[W]e look carefully at the regulations and make sure that what we do is in line with those. We can't do anything other than that because it would be against the law.").

Just recently, another federal court held that similar statements do not constitute fraud because they "indicat[e] that [Tesla] was not making the absolute representation Plaintiff asserts he was." *Young v. Tesla, Inc.*, 2022 WL 3355832, at *10 (D.N.M. Aug. 15, 2022). Same here. Especially under the heightened Rule 9(b) standard, no allegation suggests that the aspirational statements that Tesla did make were, somehow, false when made. *See Richardson*, 2000 WL

1   284211, at *5 (applying Rule 9(b) to the falsity element of promissory fraud).  To the contrary,

2   allegations in the Complaint demonstrate that Tesla has been constantly improving its ADAS

3   technology by releasing software updates, with a goal of achieving more and better autonomy

4   capabilities in the future.  *See, e.g.*, Compl. ¶¶ 49, 69, 87.  Mere failure to realize a long-term,

5   aspirational goal is not fraud.  *Canard v. Bricker*, 2015 WL 846997, at *6 (N.D. Cal. Feb. 25, 2015)

6   ("Courts have oft rejected the argument that a plaintiff can prove the fraudulent intent by simply

7   pointing to the defendant's subsequent failure to perform under the agreement.").

8        Finally, the Complaint fails Rule 9(b) for any claim premised on the safety level of Tesla's

9   existing ADAS technology.  The only relevant statements cited in the Complaint (¶¶ 50, 58) compare

10  Tesla's ADAS technology to human driving, but the Complaint does nothing to demonstrate that

11  comparison was false, for example, by comparing the accident rate involving Tesla's ADAS

12  technology to that of human driving under the same road condition.  This cannot meet Rule 9(b).

13  *See Richardson*, 2000 WL 284211, at *4 ("A plaintiff must establish with particularity that a

14  defendant's statement was false.").

15       And the Complaint is equally lacking in specific allegations of Tesla's concealing (rather

16  than actively misrepresenting) facts about the existing ADAS technology's safety.  There are no

17  allegations showing "deliberate concealment" with specificity, in particular how Tesla "took

18  affirmative steps to cover up" the alleged defects of Tesla's existing ADAS technology.  *Lusson v.*

19  *Apple, Inc.*, 2016 WL 6091527, at *3 (N.D. Cal. Oct. 19, 2016).  Again, it alleges the opposite:

20  Tesla has been constantly updating its software to improve its ADAS technology.  *See, e.g.*, Compl.

21  ¶¶ 21, 49, 76.  Nor does the Complaint allege facts showing Tesla had a duty to disclose some fact

22  it concealed, which without an affirmative misrepresentation can only arise due to a "safety issue."

23  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  But there was no "safety

24  issue" sufficiently alleged:  Although the Complaint pointed to two accidents that predated the two

25  safety-related statements (Compl. ¶¶ 47, 49), those allegations neither show that safety issues with

26  ADAS technology were the cause of those accidents nor, in any event, that there were "an unusual

27  number of complaints, such that the manufacturer would be on notice of a specific problem."  *Sloan*

28  *v. Gen. Motors LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (holding 81 consumer

complaints to the NHTSA and consumer forums about excessive oil consumption were insufficient to establish GM's knowledge of the cause).[8]

*No reliance.*   Separately, courts in this Circuit "have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon." *In re Arris Cable Modem*, 2018 WL 288085, at *8 (citing cases); *see also Tabler v. Panera LLC*, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020).[9]   That is the case here.   Despite citing various statements made by Tesla or Musk, making materially different points at different times over the course of several years, the Complaint fails to identify whether and when LoSavio actually saw which statement, and whether he relied on any of these statements when he purchased the vehicle in January 2017.   A conclusory allegation that he relied on a wide array of representations is insufficient by any standard. *Haskins v. Symantec Corp.*, 2014 WL 2450996, at *1 (N.D. Cal. June 2, 2014) (plaintiff's conclusory allegation that "she 'relied' on a very long list of representations, and that she was 'exposed to' those representations" falls short of Rule 9(b)), *aff'd*, 654 F. App'x 338 (9th Cir. 2016).[10]

---

[8] The constructive fraud claim separately fails for lack of a fiduciary relationship. *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, 965 F. Supp. 2d 1141, 1152 (E.D. Cal. 2013). The Complaint does not allege that Tesla owed LoSavio any fiduciary duty, and no fiduciary relationship is formed out of an ordinary transaction between him as a consumer and Tesla. *See Herremans v. BMW of N. Am. LLC*, 2014 WL 5017843, at *6, *12 (C.D. Cal. Oct. 3, 2014); *Shum v. Intel Corp.*, 2008 WL 4414722, at *5 (N.D. Cal. Sept. 26, 2008) (explaining why California courts are reluctant "to extend fiduciary obligations to relationships where the imposition of such an affirmative duty is deemed to be unwarranted").

[9] This requirement also applies to the unlawful and unfair prongs of the UCL claim because they "stem[] from the exact same alleged misrepresentations and false advertisements." *Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127, at *6 & n.5 (C.D. Cal. June 12, 2013); *Maxwell v. Unilever United States, Inc.*, 2014 WL 4275712, at *4 (N.D. Cal. Aug. 28, 2014).

[10] LoSavio, of course, could not possibly have relied on any statements that *post-date* his purchase in January 2017. *See Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) ("Borrowers … did not show how Borrowers could have been misled by Lender's statement that their application was complete when the statement was made after the foreclosure sale had taken place.").   The Complaint's reference to the purportedly ongoing or anticipated investigations into Tesla's marketing of its ADAS technology (Compl. ¶¶ 109-113), all of which occurred *after* LoSavio's purchase, is a transparent effort to piggyback a baseless civil lawsuit on ongoing regulatory inquiries. None of these purported investigations is relevant to any of the claims and none of them is concluded.   And in any event, as stated aobe, the Complaint identifies no actionable misrepresentation or concealment (*supra* at 15-18).

1

2.   The Complaint Fails To State Any Warranty Claim (Counts I-III)

2   This case is an ill fit for LoSavio's express and implied warranty claims.[11]  The Complaint

3   relies exclusively on public statements by Tesla or Musk, ignoring the actual written warranty terms

4   that apply.  It identifies no written statement, sample or model about autonomous capabilities that

5   could constitute an "express warranty," let alone any terms that are incorporated into the sale, and

6   LoSavio does not allege he ever brought his car to repair, a prerequisite for the express warranty

7   claims.  Likewise, the fact that he does not allege he ever stopped driving his car or experienced any

8   accident dooms his implied warranty claims.

9   *a)   The express warranty claim fails*

10   *First*, the Complaint fails to allege the existence of any "express warranty," let alone any

11   breach.  None of the statements cited in the Complaint fits the statutory definition of "express

12   warranty" under Cal. Civ. Code § 1791.2.  In none of those statements did Tesla "undertake[] to

13   *preserve or maintain*" any features, certainly not through "a specific and unequivocal written

14   statement," *Tipton v. Zimmer*, 2016 WL 3452744, at *6 (C.D. Cal. June 23, 2016).  Instead, those

15   statements demonstrated that Tesla would and did keep improving, refining, and validating its

16   various ADAS features, with the goal to achieve more advanced autonomous driving in the

17   unspecified future.[12]  The Complaint also fails to identify any "samples" or "models" (Compl. ¶

18   136) to which LoSavio's car must conform.  The three-minute-and-a-half video (*id.* ¶ 3) is neither a

19   "sample" nor a "model"—it did not even identify the model of the car.  *See* Cal. Com. Code § 2313,

20   com. 6 (a "sample" is "actually drawn from the bulk of goods which is the subject matter of the

21

22   [11] The Complaint brings warranty claims under California's Song-Beverly Act and the
23   federal Magnuson-Moss Warranty Act, and the merits those claims rise or fall together.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) ("The substantive elements are the same under the Song-Beverly Act and Magnuson-Moss Act."); *Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp.
24   3d 1116, 1128 (N.D. Cal. 2019) ("Where a MMWA claim is based on a claim for breach of warranty under state law, the MMWA claim generally rises or falls with the state law claim.").

25   [12] *See, e.g.*, Que Decl. Ex. D at 2 ("As these features are robustly validated we will enable
26   them over the air, together with a rapidly expanding set of entirely new features."); Ex. J at 5 ("we've made massive progress on Full Self-Driving. …   And with each successful release of the
27   beta FSD software … it's really improving rapidly."); Ex. K at 14 ("But I think anyone who's been in the FSD beta program, I mean, if they were just to plot the progress of the beta interventions per
28   mile, it's obviously trending to a very small number of interventions per mile and the pace of improvement is fast.  And there are several profound improvements to the FSD stack that are coming in the next few months.").

sale," and a "model" "is offered for inspection when the subject matter is not at hand and which has not been drawn from the bulk of the goods."). And that short video in no way suggested the car was completely autonomous "in all conditions," "everywhere," without human intervention—the definition for SAE Level 5 (Compl. ¶ 32).[13]

*Second*, an express warranty must be "a term of the parties' contract," *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015), not some "antecedent statement made as an inducement to the contract," *A.A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144, 153-54 (1970). The Complaint does not allege that any of the quoted statements around the ADAS system—and certainly not any Tweet or interview—was incorporated into Tesla's contract for sale. Because the Complaint fails to sufficiently allege "the terms of the warranty," it necessarily fails to allege "what specific defects and nonconformities to the warranty were present in [LoSavio's] own vehicle." *Kodjanian v. Mercedes-Benz USA, LLC*, 2022 WL 1515683, at *2 (C.D. Cal. Mar. 17, 2022) (dismissing express warranty claim).

*Third*, even assuming there was any nonconformity, LoSavio does not allege that he presented his vehicle to Tesla for repair or that Tesla did not repair the nonconformity after a reasonable number of repair attempts. *See Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001) (citing Cal. Civ. Code § 1793.2); *see also Knafo v. Jaguar Land Rover N. Am., LLC*, 2019 WL 6482231, at *2 (C.D. Cal. July 12, 2019) ("Courts have interpreted the language of this provision to require a plaintiff to show multiple attempts to repair the product to a confirming state."). Because the Complaint does not allege LoSavio ever brought his vehicle in for repair, the express warranty claim should be dismissed. *See, e.g.*, *Fish.*, 2022 WL 1552137, at *11-12; *Clark v. Am. Honda Motor Co., Inc.*, 2021 WL 4260232, at *3 (C.D. Cal. Sept. 14, 2021); *cf. Brownfield v. Jaguar Land Rover N. Am. LLC*, 584 F. App'x 874, 875 (9th Cir. 2014).

---

[13] Indeed, in another later, short video cited in the Complaint, Musk was behind the wheel and maintaining control. When an alarm sounded during his drive, he explained that it did so because his "hands [were] not on the wheel," and said it "is a hands-on system, not self-driving system." Que Decl. Ex. G at 1:17-1:20, 1:40-1:48.

1

b)      *The implied warranty claim fails*

2       Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in this

3    state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the

4    goods are merchantable." Cal. Civ. Code § 1792.  The applicable implied warranty period is one

5    year from the time of purchase.  Compl. ¶ 145 (citing Cal. Civ. Code § 1791.1(c)); *see also Atkinson*

6    *v. Elk Corp. of Tex.*, 142 Cal. App. 4th 212, 231 (2006).  The Complaint fails to allege facts showing

7    any manifestation of unmerchantability in LoSavio's vehicle during the one-year implied warranty

8    period upon his purchase in January 2017.  His implied warranty claim fails for this reason alone.

9    *See, e.g.*, *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014);

10   *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011).

11      In any event, the Complaint fails to allege facts showing that LoSavio's vehicle was

12   unmerchantable *at any time*.  A state law implied warranty requires only that a product "provides

13   for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291,

14   1296 (1995).  "[A] breach of the implied warranty of merchantability means the product did not

15   possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114

16   Cal. App. 4th 402, 406 (2003).  And "[i]n the case of automobiles, the implied warranty of

17   merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the

18   vehicle unfit for its ordinary purpose of providing transportation." *Taragan v. Nissan N. Am., Inc.*,

19   2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013); *see also Tae Hee Lee v. Toyota Motor Sales,*

20   *U.S.A., Inc.*, 992 F. Supp. 2d 962, 979-80 (C.D. Cal. 2014) (similar).  Tellingly, the Complaint does

21   not allege that LoSavio stopped driving his Tesla vehicle or sought a replacement, thus "fall[ing]

22   far short of demonstrating that the [vehicle] does not 'possess even the most basic degree of fitness

23   for ordinary use.'" *Kacsuta v. Lenovo (United States) Inc.*, 2013 WL 12126775, at *3 (C.D. Cal.

24   July 16, 2013).  To the extent the Complaint suggests that Tesla's existing ADAS technology were

25   unsafe, the implied warranty claim still fails because LoSavio alleges no incident actually

26   experienced by himself, let alone when using the ADAS technology. *See, e.g., Taragan*, 2013 WL

27   3157918, at *4 ("It is not enough to allege that a product line contains a defect or that a product is

28   at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually

1   exhibited the alleged defect."); *Acedo v. DMAX, Ltd.*, 2015 WL 12696176, at *26 (C.D. Cal. Nov.

2   13, 2015) ("[the alleged] risks alone are not sufficient to state a plausible claim, absent allegations

3   that he has actually experienced the risks.").  The implied warranty claim therefore should also be

4   dismissed.

5         **C.    LoSavio's Claims Are Barred In Whole Or Part For Other Reasons**

6         Even if LoSavio's claims were timely (and they are not), and even if his allegations

7   sufficiently supported them (and they do not), they would still be barred in whole or in part for

8   other reasons.  *First*, his common law claims are barred by the economic loss rule.  *Second*, his

9   unjust enrichment claim cannot proceed because of the parties' undisputed contract.  *Third*, he

10  cannot obtain equitable relief.  *Fourth*, there is no subject matter jurisdiction over the MMWA

11  claim.  *Fifth*, he did not provide pre-suit notice of the warranty and CLRA claims.

12              1.    The Economic Loss Rule Bars The Common Law Claims (Counts VII-X)

13        LoSavio's litany of common law claims all suffer from the same fatal flaw:  None can

14  overcome the economic loss rule.  That rule limits contractual parties to recovery in contract, not

15  tort, for purely economic loss, "unless [they] can demonstrate harm above and beyond a broken

16  contractual promise."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004); *see*

17  *also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) ("Purely

18  economic damages to a plaintiff which stem from disappointed expectations from a commercial

19  transaction must be addressed through contract law; negligence is not a viable cause of action for

20  such claims.").  Under this doctrine, a plaintiff bringing tort claims based on a defective product

21  must also allege "personal injury, damage to other property, or affirmative misrepresentations."

22  *Williams v. Tesla, Inc.*, 2022 WL 899847, at *6 (N.D. Cal. Mar. 28, 2022) (Gilliam, J.) (citing

23  *Robinson*, 34 Cal. 4th at 988-91).  As explained (*supra* at 15-18), there was no affirmative

24  misrepresentation, nor does the Complaint allege that LoSavio suffered any personal injury or

25  damage to any other property.  The economic loss rule therefore applies in full force and compels

26  dismissal of all the common-law claims.[14]

27  ─────────────────────

28        [14] To the extent the tort claims are based on any alleged fraudulent omission or concealment (which is not sufficiently alleged in the Complaint, *supra* at 15-18), they are similarly barred by the economic loss rule because they "overlap entirely with [the] warranty-based claims for economic loss."  *Tilahun v. Nissan N. Am., Inc.*, 2022 WL 3591068, at *3 (C.D. Cal. Aug. 16,

1

2.   The Parties' Contract Precludes The Unjust Enrichment Claim (Count X)

2   LoSavio's unjust enrichment claim is "an action in quasi-contract, which does not lie when

3   an enforceable, binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v.*

4   *Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  This is the case here because there is

5   an express warranty—as required for LoSavio's Song-Beverly express warranty claim, and "[i]t is

6   undisputable that the Song-Beverly Act is rooted in contract law," *Parker v. Alexander Marine Co.*

7   *Ltd.*, 2015 WL 12712083, at *20 (C.D. Cal. May 26, 2015).  *See Mandani v. Volkswagen Grp. of*

8   *Am., Inc.*, 2019 WL 652867, at *9 (N.D. Cal. Feb. 15, 2019) ("*Mandani I*") (dismissing unjust

9   enrichment claim) (Gilliam, J.).  This express warranty precludes the unjust enrichment claim.

10

3.   LoSavio Cannot Obtain Equitable Relief (Counts II-VI)

11   The Complaint seeks injunctive relief and other equitable relief in relation to the

12   Song-Beverly Act warranty claims, FAL, CLRA, and UCL claims.  *See* Compl. ¶¶ 142, 157, 167,

13   183, 198.  These requests fail for several reasons.

14   *First*, the Complaint fails to plead that LoSavio has an inadequate remedy at law, a

15   prerequisite to seeking equitable relief such as restitution, declaratory relief, or an injunction.

16   *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842-43 (9th Cir. 2020).  Under *Sonner*, plaintiffs

17   must "plead the basic requisites of the issuance of equitable relief."  *Cepelak v. HP Inc.*, 2021 WL

18   5298022, at *2 (N.D. Cal. Nov. 15, 2021); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907

19   (N.D. Cal. 2021) ("The issue is not whether a pleading may seek distinct forms of relief in the

20   alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not

21   demonstrate the inadequacy of a legal remedy.  On that point, *Sonner* holds that it does not."); *In re*

22   *MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (collecting cases).

23   Here, the Complaint does not allege LoSavio lacks an adequate remedy at law, and in any event

24   fails to allege facts explaining why legal remedies would be inadequate absent any equitable relief.

25   The equitable relief claims therefore should be dismissed.  *See, e.g.*, *Cepelak*, 2021 WL 5298022,

26

27   ─────────────

28   2022) (noting the Ninth Circuit recently certified to the California Supreme Court the question of
whether, "[u]nder California law, are claims for fraudulent concealment exempted from the
economic loss rule" and "pending further guidance, the Court will adhere to its resolution of this
issue" under the current caselaw).

1  at *3; *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021).

2  *Second*, as to the requests for prospective injunctive relief, LoSavio lacks standing to seek

3  injunctive relief because he "will clearly not purchase the product again." *Bird v. First Alert, Inc.*,

4  2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014); *see also Raebel*, 451 F. Supp. 3d at 1190-91

5  (no standing when "Plaintiffs' FAC contains no factual allegations indicating that they intend to use

6  their Model 3, or any Model 3, again in the future").  Indeed, the Complaint lacks allegations (even

7  in a conclusory fashion) of any irreparable harm or injury justifying injunctive relief.  *See Adams v.*

8  *Cole Haan, LLC*, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) ("conclusory statement about

9  irreparable injury cannot survive [*Iqbal*]").  In any event, LoSavio's claims for injunctive relief fail

10  because they "are based upon the same facts as [his] claims for monetary relief, which indicates that

11  [his] harms are compensable through money damages, and precludes a finding of irreparable harm."

12  *Bohnak v. Marsh & McLennan Cos., Inc.*, 500 F. Supp. 3d. 21, 31 (S.D.N.Y. 2022) (dismissing

13  injunction claims); *Rent-A-Ctr., Inc. v. Canyon TV & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th

14  Cir. 1991) (mere "economic injury" "does not support a finding of irreparable harm").

15  *Last*, the requests for retrospective injunctive relief also fail because, as explained (*supra* at

16  15-18), the Complaint fails to state any actionable misrepresentation or omission.  *In re Apple*

17  *Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022) ("a restitution claim based on

18  fraud or consumer protection claims must nonetheless be dismissed if the plaintiff fails to

19  sufficiently plead an actionable misrepresentation or omission").[15]

20      4.    <u>The Court Lacks Jurisdiction Over The MMWA Claim (Count I)</u>

21  The MMWA claim should be dismissed because federal courts lack jurisdiction over

22  MMWA claims where "the number of named plaintiffs is less than one hundred."  15 U.S.C.

23  § 2310(d)(3); *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034-35 (9th Cir. 2020) ("CAFA may

24  not be used to evade or override the MMWA's specific numerosity requirement"); *see also id.* at

25  1034 ("[the] text is clear that a requirement for an MMWA class action in federal court is at least

26  one hundred named plaintiffs"); *La Fosse v. Sanderson Farms, Inc.*, 2020 WL 3617786, at *2 (N.D.

27

28      [15] There is no unjust enrichment claim for disgorgement in California, which LoSavio seeks in the alternative (Compl. ¶ 180 & Prayer).  Instead, the remedy is limited to restitution.  *See Suski v. Marden-Kane, Inc.*, 2022 WL 3974259, at *5 (N.D. Cal. Aug. 31, 2022).

1  Cal. July 2, 2020) ("courts in this District have dismissed MMWA claims for failure to meet the

2  [numerosity] requirement before class certification"); *Wong v. Am. Honda Motor Co., Inc.*, 2022

3  WL 3696616, at *5 (C.D. Cal. June 21, 2022) (following *Floyd* and dismissing with prejudice).[16]

4              5.    <u>The Warranty Claims And The CLRA Claim (Counts I-III, V) Should</u>

5                  <u>Separately Be Dismissed For Lack Of Pre-Suit Notice</u>

6       The warranty claims under the Song-Beverly Act, the MMWA claim, and the CLRA claim

7  are all subject to a pre-suit notice requirement.  *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d

8  1147, 1153 n.4 (N.D. Cal. 2012); 15 U.S.C. § 2310(e); Cal. Civ. Code § 1782(a).  Because the

9  Complaint does not allege LoSavio gave Tesla any such notice, these claims should be dismissed.[17]

10 **IV.  CONCLUSION**

11      The Court should compel enforcement of the parties' arbitration agreement and stay

12 Plaintiffs Brenda T. Broussard, Dominick Battiato, Christopher Mallow, and Jazmin Imaguchi's

13 claims pending arbitration of these Plaintiffs' claims.  The Court should dismiss the Consolidated

14 Complaint as to Plaintiff Thomas LoSavio (and the other Plaintiffs, should the Court deny the

15 arbitration motion).

---

20     [16] Alternatively, the Court should at least dismiss the classwide MMWA claim.  *See Sanchez v. Kia Motors Am., Inc.*, 2021 WL 4816834, at *9 (C.D. Cal. Aug. 9, 2021).

22     [17] *See, e.g.*, *Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) (dismissing the express warranty claim with prejudice); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (the pre-suite notice requirement applies to implied warranty claims); *Nunez. v. Microsoft Corp.*, 2008 WL 11337499, at *2 (S.D. Cal. Aug. 22, 2008) (the implied warranty provision under the Song-Beverly Act incorporates the UCC's notification requirement); *Rojas*, 386 F. Supp. 3d at 1128 (pre suit notice is required from the representative plaintiff bringing an MMWA claim in a class action); *Alley v. Shadow Indus., Inc.*, 2016 WL 11756840, at *5 (C.D. Cal. July 27, 2016) ("Under the MMWA, a representative plaintiff must provide 'a reasonable opportunity to cure.'") (citing *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *9 n.8 (N.D. Cal. June 5, 2009)); *Morrison v. Ross Stores, Inc.*, 2018 WL 5982006, at *5 & n.4 (N.D. Cal. Nov. 14, 2018) (addressing the CLRA claim, "the argument that a class action need not provide pre-suit notice is wholly without support") (collecting cases).  To the extent that Imaguchi asserts that she served the CLRA notice, that notice is defective because she did not properly serve the notice on each defendant before she joined the lawsuit, *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30 (3d Dist. 1975), and certainly did not wait for 30 days after serving the notice to bring her suit, *Postpichal v. Cricket Wireless, LLC*, 2021 WL 2322418 (N.D. Cal. June 7, 2021).

Respectfully submitted,

Dated: November 28, 2022

WILMER CUTLER PICKERING
   HALE AND DORR LLP

By:   */s/ Alan Schoenfeld*
       Alan Schoenfeld

*Attorneys for Defendants Tesla, Inc., Tesla
Lease Trust, Tesla Finance LLC*

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that on November 28, 2022, I electronically filed the above document and

3   supporting documents with the Clerk of the Court using CM/ECF which will send electronic

4   notification of such filing to all registered counsel.

5

6   Dated: November 28, 2022                     By:   */s/ Alan Schoenfeld*
                                                        Alan Schoenfeld
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28