FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
NABILAH A. HOSSAIN (SBN 329689)
nhossain@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
NICHOLAUS H. WOLTERING (SBN 337193)
nwoltering@bottinilaw.com
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Fax: (858) 914-2002

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
JEREMY ROBINSON (SBN 188325)
jrobinson@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
MICHAEL J. MORPHEW (SBN 304463)
mmorphew@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHEN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation**<br><br>This Case Relates To All Actions | Case No. 4:22-cv-05240-HSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND STAY PENDING ARBITRATION AND MOTION TO DISMISS**<br><br>Hon. Haywood S. Gilliam, Jr.<br>Date:  March 23, 2023<br>Time:  2:00 p.m.<br>Courtroom 2 – 4th Floor<br><br>Consolidated Am. Complaint filed: Oct. 28, 2022 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

FACTUAL ALLEGATIONS ................................................................................... 2

    A.   Summary of Plaintiffs' Allegations ............................................................ 2

    B.   Tesla's Reliance on Contrary Facts in its Motion ..................................... 4

ARGUMENT ............................................................................................................ 5

I.    THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED. ............... 5

    A.   Tesla has not shown a valid arbitration agreement with any plaintiff. ..................... 6

    B.   Tesla's arbitration agreement is unconscionable, and thus enforceable. .................. 7

    C.   Plaintiffs' claims for public injunctive relief are exempt from arbitration (Counts II-VI). ................................................................................................. 8

    D.   Tesla's "delegation clause" argument has been repeatedly rejected in this district. .. 9

II.   THE MOTION TO DISMISS SHOULD BE DENIED. ............................................ 10

    A.   All of Plaintiffs' claims are timely. ............................................................. 10

       1. The continuing violation doctrine applies to Plaintiffs' claims. ............................. 11

       2. Other accrual and tolling doctrines also apply Plaintiffs' claims. ......................... 13

    B.   Plaintiffs' Claims Are Adequately Pled under Rule 9(b). ........................................ 14

       1. Plaintiffs adequately plead misrepresentation and concealment. ............................ 14

       2. Tesla had a duty to disclose materials facts regarding its ADAS technology. .......... 16

       3. Plaintiffs adequately plead reliance. ......................................................... 18

    C.   Plaintiffs adequately plead their warranty claims. .................................................. 19

       1. Breach of Express Warranty (Count II) ..................................................... 19

          a. Plaintiffs plead an affirmation of fact, promise, or description of goods. .......... 19

          b. Plaintiffs adequately allege that Tesla's factual affirmations, promises, and descriptions were part of the basis of the bargain, and that Tesla breached. ...... 20

       2. Breach of Implied Warranty (Count III) ...................................................... 21

          a. Plaintiffs adequately plead breach of the implied warranty of merchantability. ........................................................................... 21

          b. Plaintiffs adequately plead breach of the implied warranty of fitness for a particular purpose, on which Tesla declines to seek dismissal. ..................... 22

    D.   Tesla's remaining arguments all lack merit. ........................................................... 23

1.  The economic loss rule does not bar Plaintiffs' common law claims (Counts VII-X). ..................................................................................................23

2.  Plaintiffs may plead unjust enrichment in the alternative. .......................................23

3.  Plaintiffs adequately plead their entitlement to seek equitable relief. ......................23

4.  Plaintiffs' CLRA claim for injunctive relief does not require pre-suit notice. .........25

**CONCLUSION** .................................................................................................................**25**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aryeh v. Canon Bus. Sols., Inc.,*
  55 Cal.4th 1185 (2013) ...................................................................................11, 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..............................................................................................10

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) ................................................................................23

*Baggett v. Hewlett-Packard Co.,*
  582 F.Supp.2d 1261 (C.D. Cal. 2007) ..................................................................16

*Bates v. United Parcel Serv., Inc.,*
  511 F.3d 974 (9th Cir. 2007) (en banc) ................................................................24

*Beaver v. Tarsadia Hotels,*
  816 F.3d 1170 (9th Cir. 2016) ..............................................................................10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..............................................................................................10

*Berman v. Freedom Fin. Network, LLC,*
  30 F.4th 849 (9th Cir. 2022) ..........................................................................5, 6, 7

*Blair v. Rent-A-Center, Inc.,*
  928 F.3d 819 (9th Cir. 2019) ..................................................................................8

*Brand v. Hyundai Motor Am.,*
  226 Cal.App.4th 1538 (2014) ...............................................................................21

*Brennan v. Opus Bank,*
  796 F.3d 1125 (9th Cir. 2015) ..........................................................................9, 10

*Burchfield v. Prestige Consumer Healthcare, Inc.,*
  534 F.Supp.3d 1192 (C.D. Cal. 2021) ..................................................................16

*In re Capacitors Antitrust Litig.,*
  106 F.Supp.3d 1051 (N.D. Cal. 2015) ..................................................................11

*Carter v. Rent-A-Center, Inc.,*
  718 F. App'x 502 (9th Cir. 2017) ...........................................................................8

*Chavez v. Bank of Am.,*
  2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ..........................................................5

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Opposition to Mot. to Compel and Stay Pending Arbitration and Mot. to Dismiss       iii
Case No. 4:22-cv-05240-HSG

*Cimoli v. Alacer Corp.*,
  546 F.Supp.3d 897 (N.D. Cal. 2021) ...................................................................................19

*Dytch v. Yoon*,
  2011 WL 839421 (N.D. Cal. Mar. 7, 2011) ......................................................................8, 22

*Edelson v. Travel Ins. Int'l, Inc.*,
  2021 WL 4334075 (S.D. Cal. Sept. 23, 2021)........................................................................24

*Ehret v. Uber Techs., Inc.*,
  68 F.Supp.3d 1121 (N.D. Cal. 2014).............................................................................18, 19

*Eiess v. USAA Fed. Sav. Bank*,
  404 F.Supp.3d 1240 (N.D. Cal. 2019) (Chen, J.) .................................................................10

*El Pollo Loco, Inc. v. Hashim*,
  316 F.3d 1032 (9th Cir. 2003) ...............................................................................................13

*Falk v. Gen. Motors Corp.*,
  496 F.Supp.2d 1088 (N.D. Cal. 2007).....................................................................................16

*FDIC v. Dintino*,
  167 Cal.App.4th 333 (2008) .....................................................................................................10

*Fox v. Ethicon Endo-Surgery*,
  35 Cal.4th 797 (2005)................................................................................................................11

*Gabriella v. Recology Inc.*,
  2022 WL 6271866 (N.D. Cal. Sept. 9, 2022) ........................................................................10

*Gherna v. Ford Motor Co.*,
  246 Cal.App.2d 639 (1966) ......................................................................................................19

*Grinnell v. Charles Pfizer & Co.*,
  274 Cal.App.2d 424 (1969) ......................................................................................................19

*Hastings v. Ford Motor Co.*,
  2020 WL 12688367 (S.D. Cal. Oct. 2, 2020) ..................................................................14, 23

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982).................................................................................................................12

*Herron v. Best Buy Co. Inc.*,
  924 F.Supp.2d 1161 (E.D. Cal. 2013) ....................................................................................17

*Ingalls v. Spotify USA, Inc.*,
  2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) (Alsup, J.) ....................................................10

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ...................................................................................................13

*Jiagbogu v. Mercedes-Benz USA,*
   118 Cal.App.4th 1235 (2004) ................................................................................ 21

*Keith v. Buchanan,*
   173 Cal.App.3d 13 (1985) ..................................................................................... 19

*Khoja v. Orexigen Therapeutics, Inc.,*
   899 F.3d 988 (9th Cir. 2018) ................................................................................. 15

*Komarova v. Nat'l Credit Acceptance, Inc.,*
   175 Cal.App.4th 324 (2009) ............................................................................ 11, 12

*Krieger v. Nick Alexander Imports, Inc.,*
   234 Cal.App.3d 205 (1991) ................................................................................... 10

*Krotin v. Porsche Cars N. Am., Inc.,*
   38 Cal.App.4th 294 (1995) .................................................................................... 21

*Kutza v. Williams-Sonoma, Inc.,*
   2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ........................................................ 25

*Lane v. C.A. Swanson & Sons,*
   130 Cal.App.2d 210 (1995) ............................................................................. 19, 20

*Lazy Y Ranch Ltd. v. Behrens,*
   546 F.3d 580 (9th Cir. 2008) ................................................................................. 10

*Lee v. Tesla, Inc.,*
   2020 WL 10573281 (C.D. Cal. Oct. 1, 2020)........................................................... 8

*Leyva v. Certified Grocers of Cal., Ltd.,*
   593 F.2d 857 (9th Cir. 1979) ................................................................................... 9

*Conservatorship of Link,*
   158 Cal.App.3d 138 (1984) ..................................................................................... 7

*Loop AI Labs Inc v. Gatti,*
   2015 WL 5158639 (N.D. Cal. Sept. 2, 2015) (Gilliam, J.)...................................... 23

*Lopez v. Dave Inc.,*
   2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) ....................................................... 6

*Luong v. Subaru of Am., Inc.,*
   2018 WL 2047646 (N.D. Cal. May 2, 2018)........................................................... 25

*Mandani v. Volkswagen Grp. of Am., Inc.,*
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) .......................................................... 23

*Marselian v. Wells Fargo & Co.,*
   514 F.Supp.3d 1166 (N.D. Cal. 2021) (Gilliam, J.) ........................................... 9, 10

*Mass. Mut. Life Ins. Co. v. Superior Court*,
　97 Cal.App.4th 1282 (2002) ........................................................................... 10

*McGee v. Mercedes-Benz USA, LLC*,
　2020 WL 1530921 (S.D. Cal. Mar. 30, 2020) ................................................. 21

*McGill v. Citibank, N.A.*,
　2 Cal.5th 945 (2017) ...................................................................................2, 8

*McVicar v. Goodman Global, Inc.*,
　1 F.Supp.3d 1044 (C.D. Cal. 2014) ................................................................. 21

*Meadows v. Dickey's BBQ Rests. Inc.*,
　144 F.Supp.3d 1069 (N.D. Cal. 2015) (Tigar, J.) ........................................... 10

*Meyer v. Uber Techs., Inc.*,
　868 F.3d 66 (2nd Cir. 2017) .............................................................................. 7

*Moore v. Mars Petcare US, Inc.*,
　966 F.3d 1007 (9th Cir. 2020) .................................................................. 14, 18

*Nager v. Tesla Motors, Inc.*,
　2019 WL 4168808 (D. Kan. Sept. 3, 2019) ...................................................... 6

*Nat'l R.R. Passenger Corp. v. Morgan*,
　536 U.S. 101 (2002) .......................................................................................... 16

*Nguyen v. Barnes & Noble Inc.*,
　763 F.3d 1171 (9th Cir. 2014) ........................................................................... 6

*Norcia v. Samsung Telecomms. Am., LLC*,
　845 F.3d 1279 (9th Cir. 2017) ........................................................................... 6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
　724 F.3d 1069 (9th Cir. 2013) ........................................................................... 9

*Pokorny v. Quixtar, Inc.*,
　601 F.3d 987 (2010) ........................................................................................... 8

*Pugliese v. Superior Court*,
　146 Cal.App.4th 1444 (2007) ........................................................................... 12

*RA Med. Sys., Inc. v. PhotoMedex, Inc.*,
　373 F. App'x 784 (9th Cir. 2010) ..................................................................... 13

*Richards v. CH2M Hill, Inc.*,
　26 Cal.4th 798 (2001) ....................................................................................... 12

*Roberts v. Corrothers*,
　812 F.2d 1173 (9th Cir. 1987) ........................................................................... 24

*Robinson Helicopter Co. v. Dana Corp.*,
  34 Cal.4th 979 (2004) ..................................................................................................23

*Romano v. Rockwell Int'l, Inc.*,
  14 Cal.4th 479 (1996) ..................................................................................................12

*Royal Primo Corp. v. Whitewater W. Indus., Ltd*,
  2016 WL 4080177 (N.D. Cal. July 29, 2016) ...........................................................14

*Rustico v. Intuitive Surgical, Inc.*,
  424 F.Supp.3d 720 (N.D. Cal. 2019), *aff'd*, 993 F.3d 1085 (9th Cir. 2021)...........................14

*Schmidlin v. City of Palo Alto*,
  157 Cal.App.4th 728 (2007), *as modified* (Jan. 2, 2008)........................................11

*Shank v. Presidio Brands, Inc.*,
  2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) ...........................................................25

*Sloan v. Gen. Motors LLC*,
  287 F.Supp.3d 840 (N.D. Cal. 2018) ..........................................................................22

*Smith v. Keurig Green Mountain, Inc.*,
  393 F.Supp.3d 837 (N.D. Cal. 2019) (Gilliam, J.) .....................................................19

*Snarr v. HRB Tax Grp., Inc.*,
  839 F. App'x 53 (9th Cir. Nov. 17, 2020) ....................................................................8

*In re StubHub Refund Litig.*,
  2022 WL 1028711 (N.D. Cal. Apr. 6, 2022) (Gilliam, J.) ...............................6, 8, 9

*Supermail Cargo, Inc. v. United States*,
  68 F.3d 1204 (9th Cir. 1995) .......................................................................................13

*Thornton v. Micro-Star Int'l Co.*,
  2018 WL 5291925 (C.D. Cal. Oct. 23, 2018).............................................................22

*In re Tobacco II Cases*,
  46 Cal.4th at 328 ...........................................................................................................19

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014) (Koh, J.), *aff'd*, 840 F.3d 1016 (9th Cir. 2016)........................................................................................................................10

*United States v. Stein*,
  37 F.3d 1407 (9th Cir. 1994) .......................................................................................13

*Vu v. Prudential Prop. & Cas. Ins. Co.*,
  26 Cal.4th 1142 (2001) ................................................................................................14

*Watts v. Crocker-Citizens Nat'l Bank*,
  132 Cal.App.3d 516 (1982) .........................................................................................13

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Opposition to Mot. to Compel and Stay Pending Arbitration and Mot. to Dismiss
Case No. 4:22-cv-05240-HSG                                                                                    vii

*Weatherly v. Universal Music Publ'g Grp.*,
   125 Cal.App.4th 913 (2004) ................................................................. 13

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal.App.4th 1213 (2010) .............................................................. 21

*Wherry v. Award, Inc.*
   192 Cal.App.4th 1242 (2011) ................................................................ 7

*Wildin v. FCA US LLC*,
   2018 WL 3032986 (S.D. Cal. June 19, 2018) ...................................... 24

*Wool v. Tandem Computers Inc.*,
   818 F.2d 1433 (9th Cir. 1987) .............................................................. 16

*Yanowitz v. L'Oreal USA, Inc.*,
   36 Cal.4th 1028 (2005) .................................................................. 11, 12

**Statutes**

Business & Professions Code:

   § 17208 ................................................................................................ 10

California Civil Code:

   § 338(a) ............................................................................................... 10
   § 338(d) ............................................................................................... 10
   § 1782(a), (d) ...................................................................................... 25
   § 1783 ................................................................................................. 10
   § 1791.2(a)(1)-(2) ............................................................................... 19

California Code, Commercial Code:

   § 2725 ................................................................................................. 10

**Other Authorities**

Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1298 & n.22 (4th ed. Apr. 2022 update) ......... 14

**Rules**

Federal Rules of Civil Procedure:

   Rule 9(b) ...................................................................................... *passim*
   Rule 12(b)(1) ............................................................................... 1, 2, 24
   Rule 12(b)(6) ............................................................................... 1, 2, 10
   Rule 12(b)(6), (a) ................................................................................... 2

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Opposition to Mot. to Compel and Stay Pending Arbitration and Mot. to Dismiss
Case No. 4:22-cv-05240-HSG            viii

## INTRODUCTION

After nearly a decade of Tesla and its CEO Elon Musk continually misleading the public about the capabilities of Tesla's advanced driver assistance systems ("ADAS") and its timeline for developing a fully self-driving vehicle, state and federal regulators with both civil and criminal jurisdiction are finally investigating Tesla's marketing practices. These consolidated cases, which were filed in September 2022 before many of those investigations began or were made public, are part of this larger effort to hold Tesla and Musk accountable.

Plaintiffs LoSavio, Broussard, Battiato, Mallow, and Imaguchi ("Plaintiffs") bring this suit against Defendants Tesla Inc., Tesla Lease Trust, and Tesla Finance LLC ("Defendants" or "Tesla"), on behalf of themselves and a proposed nationwide class of Tesla vehicle owners and lessees who paid Tesla thousands of dollars for the company's supposedly cutting-edge ADAS technology, along with access to future software updates that Tesla repeatedly promised would soon make the car fully self-driving. After years of Tesla having made little progress despite continually publicizing that it was just a year or so away from developing a fully self-driving car, Plaintiffs sued Tesla for its empty promises and projections that lured them into purchasing a Tesla car with an ADAS package.

In their Consolidated Amended Complaint (ECF 23) ("Complaint"), Plaintiffs bring claims for breach of express and implied warranty, violations of state-law consumer protection statutes (FAL, CLRA, and UCL), and common law claims for fraud, negligent misrepresentation, negligence, and unjust enrichment. They seek remedies including damages, restitution, and public injunctive relief.

In response, Tesla has filed a Motion to Compel and Stay Pending Arbitration and Motion to Dismiss (ECF 30) ("Motion"), which seeks to compel to arbitration the claims of all Plaintiffs except LoSavio (who, Tesla concedes, opted out of arbitration), and to have LoSavio's claims dismissed under Rules 12(b)(1) and 12(b)(6). Tesla's Motion suffers from numerous fatal flaws. Among other problems, it ignores binding precedent and significant contrary case law, fails to present the evidence necessary to prevail on its motion to compel arbitration, and improperly asks this Court to dismiss the Complaint based on non-judicially noticeable facts that are outside (and often in direct conflict with) the Complaint. The Motion should be denied.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs' claims (except those of LoSavio) can be compelled to arbitration, and, if so, whether the *McGill* rule nevertheless requires Tesla's motion be denied as to Plaintiffs' state-law claims seeking public injunctive relief. *See McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017).

2.      Whether, under Rule 12(b)(6), (a) Plaintiffs' claims are within the applicable statute of limitations and/or subject any tolling doctrines, (b) Plaintiffs' claims that are subject to Rule 9(b) are adequately pled, (c) Plaintiffs adequately plead breach of warranty claims (Counts I-III), and (d) the parties' contracts or the economic loss rule bars Plaintiffs' common law claims (Counts VII-X).

3.      Whether, under Rule 12(b)(1), Plaintiffs have standing to seek public injunctive relief.

**FACTUAL ALLEGATIONS**

**A.  Summary of Plaintiffs' Allegations**

The five Plaintiffs purchased or leased new vehicles from Tesla in January 2017 (LoSavio), September 2018 (Imaguchi), November 2019 (Mallow), June 2021 and March 2022 (Battiato), and May 2002 (Broussard). ¶¶ 16-20.[1] Tesla has historically offered customers a choice of three ADAS packages, which it markets as Autopilot (a suite of two ADAS features that comes standard on all new Tesla vehicles), Enhanced Autopilot (Autopilot plus several additional ADAS features, which costs thousands of additional dollars above the vehicle base price), and Full Self-Driving Capability ("FSDC") (the most expensive option, consisting of Enhanced Autopilot plus some additional features). ¶¶ 41-42, 55, 78.[2] Here, Plaintiffs each paid Tesla thousands of additional dollars to add an Enhanced Autopilot or FSDC package to their new Tesla car. ¶¶ 16-20.

Plaintiffs purchased these ADAS packages because they were misled by Tesla's nearly decade-long, ongoing practice of intentionally and/or negligently misrepresenting (1) the *current*

---

[1] "¶" refers to a paragraph in the operative Complaint, unless otherwise indicated.

[2] Tesla's misleading argument that the Complaint's allegations concerning problems with "Autopilot" are irrelevant to Plaintiffs who purchased Enhanced Autopilot or FSDC packages (Mot. at 16:16-17) is belied by the fact that all Tesla's ADAS packages are based on Autopilot, and also that the public and *even Tesla itself* frequently use the term "Autopilot" as a shorthand way of referring to *all* the company's ADAS technologies. *See, e.g.*, ¶¶ 3, 57 fn.29 (referencing Tesla's "Autopilot" webpage, https://tesla.com/autopilot, which provides marketing information about all the company's ADAS technologies, including FSDC); ¶ 81 (quoting Musk as saying that "Autopilot" would soon be "capable of full self-driving").

*abilities* of its SAE Level 2 ADAS technology at all relevant times (*e.g.*, ¶¶ 1-2, 35-36, 53, 98, 101); and (2) that it was *perpetually on the cusp* of advancing its ADAS technology to the point that a Tesla car could fully drive itself from origin to destination, without the driver needing to pay any attention, in all or nearly all circumstances (i.e., SAE Level 4 or 5) (*e.g.*, ¶¶ 1-2, 35-36).[3] As to the latter, it is now clear that Tesla has never been remotely close to achieving Level 4 or 5 technology, in part because of Musk's decision to go it alone (against emerging expert consensus) by relying heavily on cameras to exclusion of other necessary sensors, such as lidar. *See* ¶¶ 2, 4, 34-36, 84.

Plaintiffs allege a long list of particularized misrepresentations (both affirmative and by omission) that Tesla has made over the years. These include Tesla: **(1)** releasing a 2016 video that purports to show a Tesla car flawlessly "driving itself" but omits that Tesla had to repeatedly run the car on the same route with assistance from commercial 3D mapping software not available to Tesla customers, and that the car crashed during filming (¶¶ 3, 6, 57); **(2)** continuing to feature the 2016 video on its website even after it was revealed to be misleading (¶¶ 3, 57 & fn.29); **(3)** marketing its ADAS packages under the names "Autopilot" and "Full Self-Driving Capability," which are inherently misleading because they do not reflect the limitations of Tesla's Level 2 technology (¶¶ 10, 51, 58-59, 90, 92, 95, 110, 112); **(4)** continually representing the *current capabilities* of its ADAS technology as cutting-edge and unrivaled despite numerous Tesla rivals having more advanced technology (¶¶ 35, 101), and despite Tesla's ADAS technology having problems executing routine driving maneuvers (¶¶ 9, 70, 74, 82, 87, 94, 96-97, 104) and crashing into large stationary objects, such as overturned box trucks and concrete barriers (¶¶ 4, 49, 53, 61, 67, 71, 89); **(5)** representing that, notwithstanding Tesla's legal disclaimers about drivers needing to remain fully attentive and keep their hands on the steering wheel at all times, Tesla vehicles could already basically drive themselves, (¶¶ 63, 66 [Musk nonchalantly engaging in no-hands driving on national television shows in 2018], ¶ 108 [October 2022 statement that a forthcoming 2022 FSD software upgrade "will be able to take you from your home to your work, your friend's house, the grocery store without you touching the wheel"]); and **(6)** making objectively unrealistic projections about Tesla's likely future timeline

---

[3] The six-level SAE scale is the industry-standard taxonomy for classifying the relative sophistication of driver-assistance (Levels 1-2) and autonomous-vehicle (Levels 3-5) technologies. *See* ¶¶ 29-36.

for achieving Level 4 or 5 technology (¶¶ 4-5, 7), such as repeatedly telling the public that it would do so by the end of that year or within the "next year" (*e.g.*, ¶¶ 3, 8, 34, 108),[4] and at the same time disavowing those statements in private communications with regulators (*e.g.*, ¶¶ 82-83).

Based on this years-long pattern of misleading conduct, Tesla recently became the target of a host of investigations into whether its conduct is unfair, deceptive, or otherwise misleading the public. *See, e.g.*, ¶ 85 (California legislature); ¶ 90 (U.S. Senate), ¶ 91 (NHTSA); ¶ 112 (California DMV); ¶ 113 (USDOJ Criminal Division); *see also* ¶¶ 92, 95, 109 (sharply critical comments of Tesla and Musk from present and former NTSB and NHTSA officials). While Tesla can argue that the fact of these investigations is not "evidence or proof of anything" (Mot. at 3:12-13), their existence certainly boosts the *plausibility* of Plaintiffs' allegations, which is the relevant standard on a motion to dismiss.

**B. Tesla's Reliance on Contrary Facts in its Motion**

In its motion to dismiss, Tesla inappropriately seeks to counter Plaintiffs' allegations with its own alternative facts, many of which are *directly contrary* to specific allegations in the Complaint. For example, Tesla's assertion that its ADAS technology makes cars "autonomous" (Mot. at 2:3-5, 2:11-14, 4:2-3 [asserting FSDC makes cars partially "autonomous" and is "constantly updated to reach greater autonomous capabilities"]) is directly contrary to Plaintiffs' allegations and Tesla's own prior admissions that its ADAS technology is Level 2, whereas "autonomous" technology is Levels 3-5 (¶¶ 33-34, 77-78). Tesla also asserts that its cars "are equipped with the hardware necessary to one day achieve Full Self-Driving Capability" (Mot. at 2:3-4, 2:11-14), which ignores that Plaintiffs allege an expert consensus that "truly autonomous, self-driving cars" require some use of lidar, "which Tesla has always refused to use" (¶¶ 36, 84). Tesla even avers it knows what each Plaintiff *knew*, asserting that "Plaintiffs knew at the time of purchase that their cars were not completely autonomous," and "that the timeline towards more complete autonomy was contingent on [] factors" outside Tesla's control (Mot. at 2:11-14), which is directly contrary to Plaintiffs' allegations that they

---

[4] The Complaint cites video of Musk making such statements from 2014 to 2021 (¶ 8 & fn.5) and discusses specific such statements made in 2016 (¶¶ 6, 46, 50, 58 ["next year," "in [about] 2 years," "less than two years away," by the end of next year]); 2019 (¶¶ 8, 68 [cars without steering wheels or pedals "next year for sure"]); 2020 (¶¶ 10, 79 ["100%" "confident" that "Tesla will have level five next year"]); 2021 (¶¶ 81, 82, 88 ["Level 5" "later this year"]); and 2022 (¶¶ 100, 102, 106, 108 ["Full Self-Driving this year," and "self-driving cars without … people behind the wheel in about a year"]).

1    believed Tesla's representations that its "ADAS technology made its vehicles capable of being fully

2    self-driving at the time of [] purchase, or … within a reasonably short period thereafter" (¶¶ 16-20).[5]

3          Tesla's motion also doubles-down on the company's long-standing tactic, which Plaintiffs

4    allege is itself misleading (¶¶ 52, 107-08) of insinuating that its failure to develop a fully autonomous

5    vehicle is somehow attributable to a lack of "regulatory approval" (i.e., the fact that unspecified

6    regulators have yet to approve Tesla's nonexistent Level 4 or 5 technology). *See* Mot. at 2:12-13

7    (arguing Plaintiffs "knew that the timeline towards complete autonomy was contingent upon …

8    regulatory approval"); *id.* at 3:6-11 (arguing "Plaintiffs fail to identify a specific timeline promised by

9    Tesla to release fully autonomous capabilities to the general public," which "Tesla repeatedly made

10   clear would require regulatory approval"); *id.* at 5:1-6, 5:24-6:2, 16:17-23 (similar). To be clear,

11   Plaintiffs' claims are not based on Tesla's failure to deliver on things that are outside its control (such

12   as obtaining regulatory approval to use Level 4 or 5 technology on public roads), but on Tesla

13   intentionally, recklessly, and/or negligently misleading Plaintiffs regarding the then-existing

14   capabilities of its ADAS technology and when it would likely achieve Level 4 or 5 technology.

15                                              **ARGUMENT**

16   **I.     THE MOTION TO COMPEL ARBITRATION SHOULD BE DENIED.**

17          To prevail on a motion to compel arbitration, the movant must show (1) "a valid arbitration

18   agreement exists," and (2) "the agreement encompasses the dispute at issue." *Berman v. Freedom Fin.*

19   *Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). Here, Tesla fails to prove either requirement.

20          First, Tesla's evidence does not even establish what webpage content Plaintiffs saw when they

21   ordered their cars, making it impossible to determine whether Tesla gave Plaintiffs the required

22   "conspicuous notice" that they were agreeing to arbitration. *See Berman*, 30 F.4th at 856; *see also*

23   *Chavez v. Bank of Am.*, 2011 WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011) (courts must "constru[e] all

24   facts and reasonable inferences … in a light most favorable to the non-moving party" on a motion to

25   compel arbitration). For related reasons, Plaintiffs also argue the arbitration clause is unconscionable.

26

27   ─────────────────────
     [5] Tesla also makes numerous disputed assertions that are more in the nature of spin and provide a
     taste of what Tesla is constantly telling the public. *See, e.g.*, Mot. at 1:24-2:1 (Tesla is "on the march
28   toward autonomous vehicles"); *id.* at 2:2, 2:6-7, 4:2 (Tesla "continuously" makes "constant and
     rigorous improvements" to, and "vigilant[ly] [] validat[es]," its ADAS software); *id.* at 19, fn.12.

Second, under binding California law, Tesla's arbitration clause is unenforceable as to Plaintiffs' claims seeking public injunctive relief. *See In re StubHub Refund Litig.*, 2022 WL 1028711 (N.D. Cal. Apr. 6, 2022) (Gilliam, J.) (citing *McGill v. Citibank, N.A*., 2 Cal.5th 945 (2017)).

### A. Tesla has not shown a valid arbitration agreement with any plaintiff.

Tesla must prove that each Plaintiff agreed to arbitration under state-law principles of contract formation. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Because this case involves online activity, Tesla must show that (1) its website "provides reasonably conspicuous notice of the terms to which the [Plaintiffs] will be bound," and (2) each Plaintiff took some action manifesting his or her assent to those terms. *Berman*, 30 F.4th at 856.

Here, Plaintiffs challenge the first requirement because the evidence proffered by Tesla fails to prove it gave Plaintiffs "conspicuous notice" of the relevant terms. Since it has no evidence that Plaintiffs had actual knowledge of its arbitration clause, Tesla must show Plaintiffs were on "inquiry notice." *Lopez v. Dave Inc.*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) (quoting *Berman*, 30 F.4th at 856); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). This requires that notice of the arbitration clause "be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856.

As a threshold matter, proving this would require Tesla to show the online ordering process that each Plaintiff followed, and what they saw during that process. Apparently lacking this critical evidence, Tesla instead produces what it calls "examples" of Order Placement webpages from various time periods, coupled with a vague and equivocal assertion that its examples are "substantially identical" to what Plaintiffs "would have seen" when they ordered their cars. Barclay Decl., ¶¶ 7-10. This is insufficient for Tesla to carry its burden. *See Nager v. Tesla Motors, Inc.*, 2019 WL 4168808, at *3 (D. Kan. Sept. 3, 2019) (denying motion to compel arbitration on similar evidence where Tesla "provided affidavits attesting to how purchases are generally made, but they have not proffered any evidence that plaintiffs actually went through these processes to purchase their vehicle").

Additionally, even if one were to accept on faith that Tesla's "example" webpages are identical to what Plaintiffs saw, those webpages fail to provide inquiry notice of the relevant terms for three reasons. *First*, the language Tesla relies on ("By placing this order, I agree to the Model [] Order

1   [¶] Agreement, Terms of Use, and Privacy [¶] Notice.") is small and difficult to read, even on a full-

2   page print out. *See* Barclay Decl., Exs. A-D; *see also Conservatorship of Link*, 158 Cal.App.3d 138,

3   141 (1984) ("Typeface smaller than eight-point is an unsatisfactory reading medium."). And since

4   Tesla's records don't show whether Plaintiffs ordered their cars from a mobile device, *see* Barclay

5   Decl., ¶ 6, the font size that Plaintiffs saw could have been even smaller. *Second*, while websites may

6   disclose terms and conditions through hyperlinks, the hyperlinking must be conspicuous. *Berman*, 30

7   F.4th at 857. Tesla's hyperlinks fail that test because, in addition to the small font and confusing line

8   breaks, they lack the traditional underlining that (in addition to contrasting font color) is necessary to

9   alert a reasonably prudent user to hyperlinking. *Compare Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78-

10   79 (2nd Cir. 2017) (finding hyperlinks reasonably conspicuous because they were in blue font and

11   underlined), *with Berman*, 30 F.4th at 857 (underlining alone is insufficient). *Third*, even if a

12   particularly prudent user was able to read the tiny language on Tesla's example webpages, realized it

13   was hyperlinked, and clicked through to the "Order Agreement" containing the arbitration clause, the

14   font size in that document is even smaller than on the Order Placement page. *See* Ahluwalia Decl.,

15   Exs. A-E. In other words, "[t]he text disclosing the existence of the terms and conditions on these

16   websites is the antithesis of conspicuous." *Berman*, 30 F.4th at 856.

17   **B.   Tesla's arbitration agreement is unconscionable, and thus enforceable.**

18   Tesla's arbitration agreement is also procedurally and substantively unconscionable. "The

19   former focuses on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly

20   harsh' or 'one-sided' results." *See Wherry v. Award, Inc*. 192 Cal.App.4th 1242, 1246 (2011). Both

21   elements are required, but the more one is present, the less the other is required. *Id.*

22   The agreement is procedurally unconscionable because it is not referenced on the Order page.

23   Instead, it is buried in small font in the middle of an Order Agreement, which is only accessible

24   through an inconspicuous hyperlink. *See supra* Section I.A.1. Such "surprise" is unconscionable.

25   Further, the agreement's 30-day opt-out clause does nothing to cure this because it is illusory. It

26   typically takes much more than 30 days for Tesla to configure and deliver a car, which deprives

27   customers of any opportunity to inspect before the 30 days expire. *See* Ahluwwalia Decl., Exs. A-E

28   (repeatedly referencing an "estimated delivery date" subject to numerous contingencies).

The agreement is also substantively unconscionable because Tesla "fail[ed] to provide the applicable arbitration rules to [the] signatory at the time of signing." *Lee v. Tesla, Inc*., 2020 WL 10573281, at *6 (C.D. Cal. Oct. 1, 2020); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 999-1000 (2010). Further, the agreement compels consumers to waive their right to participate in class arbitration. While such a class waiver is not "by itself … unconscionable," *Carter v. Rent-A-Center, Inc.,* 718 F. App'x 502, 504 (9th Cir. 2017), such a waiver weighs in favor of substantive unconscionability.

**C. Plaintiffs' claims for public injunctive relief are exempt from arbitration (Counts II-VI).**

Even if the Court were to find a valid arbitration agreement as to one or more Plaintiffs, the *McGill* rule provides that "[a]greements to arbitrate claims for public injunctive relief under the CLRA, the UCL, or the [FAL] are not enforceable in California." *McGill*, 2 Cal.5th at 956, 961 (citing Civ. Code § 3515); *see also Blair v. Rent-A-Center, Inc*., 928 F.3d 819, 822 (9th Cir. 2019) (holding the FAA does not preempt the *McGill* rule). Tesla's Motion ignores this binding law.

In a similar case, this Court recently cited the *McGill* rule in denying a motion to compel arbitration of consumer plaintiffs' UCL, CLRA, and FAL claims seeking public injunctive relief. *In re StubHub Refund Litig.*, 2022 WL 1028711, at *1-2. The same result should apply here. Plaintiffs seek public injunctive relief in connection with their UCL, CLRA, and FAL claims, ¶¶ 167, 183, 198 (seeking "injunctive relief to protect the consuming public"), as well as their state-law claims for breach of warranty, ¶¶ 142, 157 (seeking "an injunction prohibiting … false, deceptive, or misleading statements to the public"). *See McGill*, 2 Cal.5th at 951 (public injunctive relief is any "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public"); *Snarr v. HRB Tax Grp., Inc*., 839 F. App'x 53, 54-56 (9th Cir. Nov. 17, 2020). Tesla's motion should be denied as to those five claims in their entirety.[6]

---

[6] In addition to ignoring *McGill* and its progeny, Tesla makes no argument that Plaintiffs' CLRA, FAL, UCL, and state-law warranty claims should be severed based on relief sought and divvied up between this Court (public injunctive relief) and arbitration (all other relief sought). As such, Tesla has waived the argument and should not be permitted to raise it for the first time on reply. *See Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011). Even if it had made the argument, the CLRA claim cannot be severed because it seeks only public injunctive relief (¶ 183), and the other claims cannot be severed because the operative language in the arbitration clause is vague as to whether only "claims" subject to the arbitration must be arbitrated, or if the same is also true of "remedies." *See* Barclay Decl., Exs. A-D (providing that any "claim or remedy" found to be exempt from arbitration "must be brought in court," and "*any other claims* must be arbitrated" (emphasis added)); *Blair v.*

**D. Tesla's "delegation clause" argument has been repeatedly rejected in this district.**

Tesla's final argument is that its arbitration agreement has a purported "delegation clause" depriving the Court of any power to decide gateway issues of arbitrability. Mot. at 9:11-25. Arbitrability "is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *accord Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (key issue is whether there is "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Marselian v. Wells Fargo & Co.*, 514 F.Supp.3d 1166, 1171 (N.D. Cal. 2021) (Gilliam, J.) (same).

Tesla's delegation argument falls far short of the "clear and unmistakable evidence" standard, for two reasons. First, Tesla ignores that the arbitration clause's only *express* provision concerning delegation provides that issues of arbitrability may be decided by "a court or arbitrator." Ahluwalia Decl., Exs. A-E ("[I]f a court or arbitrator decides that any part of this agreement to arbitrate cannot be enforced as to a particular claim for relief or remedy …."). This language makes it impossible to find the requisite "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. Tellingly, none of Tesla's cited cases involve an arbitration clause with a similar provision.

Second, Tesla's reliance on the arbitration clause's single reference to certain AAA rules, *see* Ahluwalia Decl., Exs. A-E (requiring that disputes be resolved "in an arbitration administered by the [AAA] under its Consumer Arbitration Rules"), is unavailing under current law. While Tesla is correct that the Ninth Circuit in *Brennan* held that incorporation of AAA rules can be "clear and unmistakable evidence" of delegation, Tesla ignores that *Brennan* expressly limited its holding to the *commercial* context. 796 F.3d at 1131; *accord Marselian*, 514 F.Supp.3d at 1176 n.4. Worse, Tesla ignores that judges in this district have repeatedly rejected the very argument it makes here—i.e., that

---

*Rent-A-Center*, 928 F.3d 819, 824 (9th Cir. 2019) (vague severance clauses are not enforceable); *In re StubHub Refund Litig.*, 2022 WL 1028711, at *2 (same).

Tesla similarly fails to make, and thus waives, any argument that in the event some claims go to arbitration and others do not, those that remain in court should be stayed pending arbitration. *See* Mot. at 1:7-9, 2:17-18, 25:11-13 (making only a *pro forma* request that all Plaintiffs' claims, except those of LoSavio, be stayed pending arbitration). In any event, a stay would not warranted here, as it would be neither "efficient" nor "the fairest course for the parties." *Leyva v. Certified Grocers of Cal., Ltd.,* 593 F.2d 857, 863-64 (9th Cir. 1979). This case also raises significant issues of state and national public safety, which militates strongly against staying any claims seeking public injunctive relief.

1    *Brennan* should be extended to consumer cases.[7] Instead, Tesla relies on two readily distinguishable

2    cases involving sophisticated plaintiffs (an executive and business owner) and express delegation

3    clauses. *See id.*; *Gabriella v. Recology Inc.*, 2022 WL 6271866, at *3 (N.D. Cal. Sept. 9, 2022).

4    **II.    THE MOTION TO DISMISS SHOULD BE DENIED.**

5         Tesla moves to dismiss all Plaintiffs' claims under Rule 12(b)(6). To defeat such a motion, a

6    plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

7    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff alleges facts that

8    "allow[] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556

9    U.S. 662, 678 (2009). Courts must accept plaintiffs' allegations as true, construing them in the light

10   most favorable to plaintiffs and drawing all reasonable inferences in their favor. *Lazy Y Ranch Ltd. v.*

11   *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Thus, a complaint may survive a motion to dismiss "even

12   if it strikes a savvy judge that actual proof of those facts is improbable. *Twombly*, 550 U.S. at 570.

13   **A. All of Plaintiffs' claims are timely.**

14        Tesla first argues that all claims by Plaintiff LoSavio[8] are time-barred because all his claims

15   have limitation periods of 2-4 years,[9] he purchased his vehicle and FSDC package more than five

16   years before filing suit, and no exceptions or tolling doctrines apply. Mot. at 11-14.

17        Tesla's argument fails for two reasons. First, numerous doctrines of delayed accrual and

18   tolling apply to Plaintiffs' claims—most notably the continuing violation doctrine, but also the

19   discovery rule, the fraudulent concealment rule, and equitable estoppel doctrine. *See* ¶ 121 (alleging

---

20

21   [7] *See, e.g.*, *Eiess v. USAA Fed. Sav. Bank*, 404 F.Supp.3d 1240, 1253 (N.D. Cal. 2019) (Chen, J.); *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *3-4 (N.D. Cal. Nov. 14, 2016) (Alsup, J.); *Meadows v. Dickey's BBQ Rests. Inc.*, 144 F.Supp.3d 1069, 1078 (N.D. Cal. 2015) (Tigar, J.); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014) (Koh, J.), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).

22

23   [8] All arguments in this Section II.A apply equally to Mallow's and Imaguchi's negligence claims, which Tesla argues are also time-barred. Mot. at 10 fn.6.

24   [9] The governing limitation periods here are (a) *warranty claims: 4 years* from "when tender of delivery is made," subject to "the law on tolling" and "except [] where a warranty explicitly extends

25   to future performance of the goods" (Comm. Code § 2725; *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal.App.3d 205, 215 (1991)); (b) *FAL and CLRA: 3 years* from discovery (Code Civ. Proc.

26   § 338(a); Civ. Code § 1783; *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1295 (2002)); (c) *UCL: 4 years* (Bus. & Prof. Code § 17208; *Beaver v. Tarsadia Hotels*, 816 F.3d 1170,

27   1178 (9th Cir. 2016); (d) *fraud and deceit: 3 years* from discovery (Code Civ. Proc. § 338(d));

28   (e) *negligent misrepresentation: 2 or 3 years* (*id.* §§ 338(a), 339); (f) *negligence: 2 years* (*id.* § 335.1); and (g) *unjust enrichment: 2, 3, or 4 years* (*see FDIC v. Dintino*, 167 Cal.App.4th 333, 348 (2008)).

1  Plaintiffs' claims are not time-barred and providing a non-exhaustive list of potentially applicable

2  rules and doctrines). Second, Tesla's argument is premature because it would require this Court to

3  resolve complex factual disputes on a motion to dismiss. *See, e.g.*, *Fox v. Ethicon Endo-Surgery*, 35

4  Cal.4th 797, 810 (2005) (noting that "the statute of limitations issue is normally a question of fact" to

5  be resolved at summary judgment or trial, not the pleading stage); *In re Capacitors Antitrust Litig.*,

6  106 F.Supp.3d 1051, 1065 (N.D. Cal. 2015) (stating similar rule as to fraudulent concealment).

7  **1.   The continuing violation doctrine applies to Plaintiffs' claims.**

8  "The soundness of a statute of limitations defense depends on four variables: (1) What is the

9  governing limitations period? (2) On what date did the cause of action accrue, such that the

10  limitations period began to run? (3) How much time elapsed between accrual and the filing of the

11  complaint? (4) For what period(s) of time, if any, was the running of the statute suspended (tolled)?"

12  *Schmidlin v. City of Palo Alto*, 157 Cal.App.4th 728, 746-47 (2007), *as modified* (Jan. 2, 2008).

13  The continuing violation doctrine goes to the second variable regarding when a cause of action

14  accrues. It recognizes there are often situations where a defendant's ongoing course of wrongful

15  conduct causes "injuries [that] are the product of a series of small harms," in which case the plaintiff

16  "should not be handicapped by the inability to identify with certainty when harm has occurred or has

17  risen to a level sufficient to warrant action." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal.4th 1185, 1197-

18  98 (2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002)); *see also*

19  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1058 (2005) (doctrine delays accrual when plaintiff

20  "may not yet recognize" the defendant's wrongful conduct "as part of a pattern"). The continuing

21  violation doctrine thus "permits recovery for actions that take place outside the limitations period if

22  these actions are sufficiently linked to unlawful conduct within the limitations period." *Komarova v.*

23  *Nat'l Credit Acceptance, Inc.*, 175 Cal.App.4th 324, 343 (2009).

24  "The key is whether the conduct complained of constitutes a continuing pattern and course of

25  conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if … the most

26  recent violation [occurred during the governing limitations period], and the entire course of conduct is

27  at issue." *Id.* (citing *Joseph v. J.J. Mac Intyre Cos., LLC*, 281 F.Supp.2d 1156, 1161 (N.D. Cal.

28  2003)); *accord Aryeh*, 55 Cal.4th at 1198 (doctrine applies to "a pattern of reasonably frequent and

1   similar acts"). In deciding whether the doctrine applies, courts should keep in mind that the purpose

2   of statutes of limitations is "to keep stale claims out of the courts," and that this "concern disappears"

3   when the challenged conduct is continuing in nature. *Havens Realty Corp. v. Coleman,* 455 U.S. 363,

4   380 (1982); *see also Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 488 (1996) (similar).

5           Here, Tesla's alleged conduct neatly fits into the continual violation doctrine because: Tesla's

6   challenged conduct does not arise from "unrelated discrete acts" (*Komarova*, 175 Cal.App.4th at 343)

7   but from "a pattern of reasonably frequent and similar acts" (*Aryeh*, 55 Cal.4th at 1198); Plaintiffs and

8   other consumers understandably did not appreciate Tesla was engaged in a pattern of misrepresenting

9   its ADAS technology (*see Yanowitz*, 36 Cal.4th at 1058); and Plaintiffs' theory of the case of a nearly

10  decade-old, ongoing pattern of routinely misrepresenting the current capabilities of Tesla's ADAS

11  technology and when it would achieve Level 4 or 5 technology puts Tesla's "entire course of conduct

12  is at issue" (*Komorova*, 175 Cal.App.4th at 343). Plaintiffs believed Tesla's representations that its

13  "ADAS technology made its vehicles capable of being fully self-driving at the time of [] purchase, or

14  that it would do so within a reasonably short period thereafter." ¶¶ 16-20. After Plaintiffs purchased

15  their cars and realized they were not fully self-driving, Tesla continued its misrepresentations that it

16  was perpetually on the cusp of achieving Level 4 or 5 technology. *See, e.g.*, *supra* at 3-4 & note 4.

17          Indeed, Plaintiffs' allegations here are an even better fit with the continuing violation

18  doctrine's requirements than many cases in which the doctrine has been found to apply. *See, e.g.*,

19  *Komarova*, 175 Cal.App.4th at 345 (applying doctrine to factually disparate violations of debt

20  collection law that were nevertheless deemed part of "a continuing course of conduct"); *Pugliese

21  v. Superior Court*, 146 Cal.App.4th 1444, 1452-54 (2007) (applying doctrine to alleged domestic

22  abuse over 15-year period). Importantly, because Tesla has never "ma[de] clear" to the public that it

23  still is not, and never has been, anywhere near being able to deliver on its promises, Plaintiffs' claims

24  have still not yet accrued. *Richards v. CH2M Hill, Inc.,* 26 Cal.4th 798, 820-23 (2001) (holding that

25  continuing violation doctrine applies to employer's "failure over time to reasonably accommodate" an

26  employee under the ADA and delays accrual of employee's claims until employer definitively

27  "makes clear" it will not provide an accommodation). In continuing to misrepresent that its release of

28  Level 4 or 5 technology is still imminent (*see* ¶ 108), Tesla's conduct is analogous to sending "lulling

letters" intended to "reassure the victim that all is well, discouraging him from investigating and uncovering the fraud." *United States v. Stein*, 37 F.3d 1407, 1409 (9th Cir. 1994).

### 2. Other accrual and tolling doctrines also apply Plaintiffs' claims.

In addition to the continuing violation doctrine, at least two other accrual or tolling doctrines apply to Plaintiffs' claims: the fraudulent concealment rule and equitable estoppel.

*First*, the fraudulent concealment rule provides that "a defendant cannot hinder the plaintiff's discovery through misrepresentations and then fault the plaintiff for failing to investigate." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003); *Weatherly v. Universal Music Publ'g Grp.*, 125 Cal.App.4th 913, 919 (2004). The recipient of a misrepresentation "is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he undertaken an investigation." *El Pollo Loco*, 316 F.3d at 1040; *accord RA Med. Sys., Inc. v. PhotoMedex, Inc.*, 373 F. App'x 784, 786-87 (9th Cir. 2010). The alleged "fraud may include intentional [] and also negligent misrepresentation." *Watts v. Crocker-Citizens Nat'l Bank*, 132 Cal.App.3d 516, 523 (1982).

This rule applies here to toll Plaintiffs' claims. Viewing the Complaint's detailed allegations in the light most favorable to Plaintiffs, Plaintiffs "may be able to prove a set of facts" that would show the fraudulent concealment rule applies to toll Plaintiffs' claims and render them timely. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995). Tesla cannot show at this early stage that Plaintiffs' allegations, "read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Tesla's argument that Plaintiffs "allege[] no [] active conduct by Tesla that concealed the facts of his claim" ignore virtually all of Plaintiffs' relevant allegations, including that Tesla was continually making new misrepresentations every few months reassuring Plaintiffs and the public that Tesla's achievement of Level 4 or 5 technology was still imminent. *See supra* at 3-4 & note 4.

*Second*, Tesla should be equitably estopped from invoking a statutes of limitation defense both because of its omissions (as argued above), and also its affirmative misrepresentations to Plaintiffs and the public that, although it had failed to meet its past projections about when it would develop a fully self-driving car, it was advancing rapidly toward that goal and within striking distance

of achieving it. Given Tesla's pattern of misleading conduct, Plaintiffs should not be penalized for believing Tesla or giving it the benefit of the doubt, and Tesla should not be permitted to argue Plaintiffs were dilatory in bringing their claims. In sum, the facts alleged here meet all four elements of equitable estoppel because Tesla (1) "kn[e]w the facts" and (2) "intended that [its] conduct shall be acted upon," and Plaintiffs (3) were "ignorant of the true state of facts" and (4) detrimentally relied on Tesla's conduct. *Rustico v. Intuitive Surgical, Inc.*, 424 F.Supp.3d 720, 732 (N.D. Cal. 2019), *aff'd*, 993 F.3d 1085 (9th Cir. 2021); *see also Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal.4th 1142, 1152 (2001) (estoppel can apply even if "there was no designed fraud on the part of" defendant).

## B. Plaintiffs' Claims Are Adequately Pled under Rule 9(b).

Contrary to Tesla's arguments, Plaintiffs' allegations meet the heightened pleading standard of Rule 9(b) by identifying the "the who, what, when, where, and how" of the alleged wrongful conduct, as to provide Tesla with sufficient information to defend against the charge. *Hastings v. Ford Motor Co.*, 2020 WL 12688367, at *2 (S.D. Cal. Oct. 2, 2020). The Complaint adequately pleads that Tesla engaged in affirmative misrepresentation and concealment, that Tesla had and breached a duty to disclose, and that Plaintiffs relied on Tesla's misrepresentation and concealment to their detriment.

### 1. Plaintiffs adequately plead misrepresentation and concealment.

Tesla's argument that the Complaint identifies no fraudulent statement made by Tesla (Mot. at 15:8-9) ignores that the gravamen of Plaintiffs' allegations is that Tesla has spent nearly a decade continually misrepresenting the abilities of its ADAS technology and its timeline for developing a fully autonomous vehicle. Because the Complaint, taken as a whole, plausibly alleges a complex scheme of systematic deception over a long period of time, the typical Rule 9(b) requirement of pleading individual fraudulent statements is "less stringently applied." *Royal Primo Corp. v. Whitewater W. Indus., Ltd*, 2016 WL 4080177, at *8 (N.D. Cal. July 29, 2016); *accord* Wright & Miller, 5A FED. PRAC. & PROC. CIV. § 1298 & n.22 (4th ed. Apr. 2022 update) (collecting cases). Plaintiffs' Complaint satisfies the Rule 9(b) heightened pleading standard by alleging "what is false or misleading about a statement, and why it is false." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020).

Even if the law were otherwise, Plaintiffs' numerous detailed allegations about Tesla's misleading statements amply satisfy Rule 9(b), which is intended to ensure Tesla has sufficient information to defend against the charge. For example, Plaintiffs allege "Tesla knew for years its statements regarding its ADAS technology were deceptive and misleading." ¶ 5; *see also* ¶¶ 45, 46, 50, 52, 68, 107-08 (similar). These misleading and deceptive statements include Tesla branding its *Level 2 driver assistance* technology as "Autopilot" and "Full Self-Driving Capability" (¶¶ 10, 51, 58-59, 90, 92, 95, 110, 112),[10] its now-debunked October 2016 video that the company continues to feature on its website (¶¶ 3, 6, 57), its October 2016 statements suggesting it was on the brink of developing "full self-driving" cars with "full autonomy" (¶¶ 55-60), numerous subsequent misrepresentations indicating Tesla would likely or certainly have a fully self-driving car within a specific time period (¶¶ 2-4, 7-8, 34, 45, 50, 68, 81, 99), and many other detailed allegations about the time, place, and content, as well as the circumstances indicating falseness, of numerous specific misrepresentations summarized above. *See supra* at 3-4 & note 4. These statements were deceptive and misleading because they were both contrary to any objectively reasonable view, and Tesla's actual view, of then-existing limitations of its Level 2 ADAS technology, and how long it would realistically take to achieve a Level 4 or 5 technology (*see* ¶¶ 5-6, 10, 36, 70, 76, 79, 81-84, 89). Plaintiffs support this with detailed allegations regarding (among other things) Tesla engineers raising concerns about these misrepresentations internally (¶¶ 40, 44 & fn.13, 59), and Tesla disavowing its misrepresentations in private communications with California DMV regulators (¶¶ 82-83).

Tesla counters that many of its alleged misrepresentations cannot be considered fraudulent because it also made other statements that qualified, disclaimed, or otherwise cut the other way, such as its repeated qualification that "any release of fully autonomous capability would be subject to government approval." Mot. at 16:16-20. In so arguing, Tesla only serves to highlight Plaintiffs' allegation that Tesla's recurring tactic of speaking about the need for regulatory approval, while

---

[10] Tesla's contrary argument that the name Autopilot is not misleading based on Musk's say-so about what the term means in aviation (Mot. at 4:9-13) rests on disputed factual assertions that are outside the Complaint and cannot be considered here, regardless of whether they are in a document subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *see also* Pls.' Opp'n to Tesla's RJN.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1    technically true, is itself misleading (¶¶ 52, 107-08), and ignores that technically true statements are

2    actionable if they are couched in a manner that is likely to mislead or deceive a consumer, such as by

3    omitting relevant information. *See Morgan*, 177 Cal.App.4th at 1255. Whether or not these

4    "qualified" statements are deceptive is a question of fact that is not appropriate for consideration on a

5    motion to dismiss since it requires "weighing of evidence from both sides." *Burchfield v. Prestige*

6    *Consumer Healthcare, Inc.*, 534 F.Supp.3d 1192, 1200 (C.D. Cal. 2021).

7         Likewise, Tesla's argument that the Complaint lacks specific allegations of Tesla concealing

8    facts about its Level 2 ADAS technology's safety issues and limitations (Mot at 17:15-18) simply

9    ignores Plaintiffs' allegations that Tesla has concealed such information from the inception of

10   Enhanced Autopilot and FSDC in October 2016 (¶¶ 3, 5-6) and on an ongoing basis thereafter (¶¶ 8-

11   10, 57, 76-79, 96, 187). Courts recognize plaintiffs in a fraudulent concealment suit will not be able to

12   specify the time, place, and specific content of an omission as precisely as a plaintiff in a false

13   representation claim. *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1098-99 (N.D. Cal. 2007).

14   Because "such a plaintiff is alleging a failure to act instead of an affirmative act," they "cannot point

15   out the specific moment when the defendant failed to act." *Baggett v. Hewlett-Packard Co.*, 582

16   F.Supp.2d 1261, 1267 (C.D. Cal. 2007). Given these circumstances, a claim based on fraud by

17   omission or concealment "can succeed without the same level of specificity required by a normal

18   fraud claim." *Id*. Tesla's insistence that Plaintiffs are required to plead the affirmative steps Tesla

19   took to conceal the shortcomings of its ADAS technology (Mot. at 17:16-18) is contrary to well-

20   recognized rule that Rule 9(b)'s particularity requirement is "relaxed" in cases where "the facts

21   supporting the fraud are exclusively within the defendants' possession." *Migliaccio*, 436 F.Supp.2d at

22   1106; *see also Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). And even if

23   Plaintiffs were required to plead affirmative steps of concealment, the Complaint's particularized

24   allegations about Tesla's concealment of critical facts are enough to satisfy Rule 9(b).

25        **2.   Tesla had a duty to disclose materials facts regarding its ADAS technology.**

26        Tesla also argues that the Complaint does not allege any "safety issue" with its ADAS

27   technology, which Tesla implies is necessary to trigger a duty to disclose information it concealed.

28   Mot. at 17:15-22. Tesla's argument ignores that the Complaint is replete with allegations of safety

1   issues and that Tesla had a duty to disclose for two other reasons: (1) because Tesla made partial

2   representations but also suppressed some materials facts, and (2) because Tesla had exclusive

3   knowledge of material facts not known to Plaintiffs. *See Herron v. Best Buy Co. Inc.,* 924 F.Supp.2d

4   1161, 1174-75 (E.D. Cal. 2013).

5       First, Tesla had a duty to disclose because it made partial representations about the purported

6   abilities of its ADAS technology without revealing materials facts about the technology's inability to

7   perform safely under routine traffic and road conditions. For example, the complaint alleges that

8   Tesla proclaimed its ADAS technology to be safer than a human, but failed to disclose material facts

9   suggesting the opposite, such as the technology's repeated failure to detect large stationary objects

10  and navigate routine roadway scenarios (¶¶ 4, 47, 49, 53, 61, 67, 71, 74, 89, 96, 109); dissent among

11  Tesla engineers over safety concerns and whether the company "has potentially put customer lives at

12  risk" (¶¶ 40, 44 & fn.13, 59); Tesla's apparent false statements about having fixed a problem with

13  recognizing perpendicular tractor trailers that killed one Tesla driver, only to have the same problem

14  kill another driver years later (¶ 67); and numerous detailed allegations about the host of problems

15  plaguing the limited releases of Tesla's FSD Beta software, including cars having difficulty making

16  routine turns, running red lights, driving toward large stationary objects, steering into oncoming

17  traffic, and generally performing "like a drunken or distracted driver." ¶¶ 70, 74, 87, 94, 97, 103, 104.

18      Moreover, Tesla's exclusive knowledge of material facts also gives rise to a duty to disclose

19  safety related information. For example, in *Scherer v. FCA US, LLC*, the court found that allegations

20  that the defendant vehicle manufacturer's unique knowledge of safety issues based partially upon data

21  it alone collected about vehicle performance made it plausible that defendant possessed exclusive

22  knowledge about the issues causing a safety defect, thereby triggering a duty to disclose. 565

23  F.Supp.3d 1184, 1995 (S.D. Cal. 2021). The same is true here, where Tesla has unparalleled access to

24  voluminous data that it continuously receives from vehicles using its ADAS technology, including

25  data related to safety issues such as the causes of crashes and accidents (¶¶ 9, 79), which it has a

26  pattern of selectively disclosing to the public only when it will benefit the company (¶¶ 62, 91, 93).

27      In sum, the Complaint's extensive allegations regarding Tesla's affirmative misrepresentations

28  and concealment of material safety and performance issues with Tesla's ADAS technology gives rise

1   to a duty to disclose that is plead with sufficient particularity under Rule 9(b).

2       **3.  Plaintiffs adequately plead reliance.**

3       Plaintiffs adequately allege reliance on Tesla's false advertisements, misrepresentations, and

4   concealment. At the pleading stage, "actual reliance is inferred from the misrepresentation of a

5   material fact." *Moore*, 966 F.3d at 1021. Materiality is generally a question of fact that cannot be

6   decided at the pleading stage. *Id.*. A plaintiff pleads reliance by plausibly alleging a reasonable person

7   would attach importance to the misrepresentations or omissions in conducting the transaction. *Id.*

8       All Plaintiffs, including LoSavio, allege that they purchased their Tesla vehicles and ADAS

9   packages after researching, reviewing, and relying on Tesla's online and other public statements,

10  including those representing that Tesla's ADAS technology made its vehicles fully self-driving at the

11  time of purchase, or that it would do so within a reasonably short period thereafter. ¶¶ 16-20. The

12  Complaint details Tesla's misrepresentations and how the existence of fully-self driving capability at

13  the time of purchase, or a time shortly thereafter, was material in their decisions to purchase the

14  ADAS add-on package when buying their vehicles. This is all that is required under Rule 9(b) for

15  claims premised on false advertising and misrepresentations to consumers. *Id.*

16      It is also plausible that a reasonable consumer, would at least partially rely on the branding of

17  Tesla's ADAS technology as "Autopilot" and "Full Self-Driving Capability" as a material factor in

18  purchasing a Tesla vehicle or additional ADAS package. "[L]abels matter … because consumers rely

19  on the accuracy of those [label] representations in making their buying decisions." *Moore*, 966 F.3d at

20  1021 (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011)).

21      In *Ehret v. Uber Techs., Inc.*, 68 F.Supp.3d 1121 (N.D. Cal. 2014), plaintiff alleged she paid a

22  20% fee based on Uber's misrepresentation that it was a gratuity to drivers. Rejecting Uber's

23  argument that the plaintiff failed to plead reliance under Rule 9(b) because she did not allege exactly

24  when and where she saw the misrepresentation, the Court found her allegations sufficient because it

25  could be reasonably inferred that she saw the misrepresentation on the Uber app or website on or

26  before the date of her transaction. *Id.* at 1129. Likewise, here, Plaintiffs are not required to "plead

27  with an unrealistic degree of specificity that [they] relied on particular advertisements or statements"

28  where they allege Tesla's misrepresentations were part of an extensive, long-term marketing

1   campaign. *See In re Tobacco II Cases*, 46 Cal.4th at 328*; Ehret*, 68 F.Supp.3d at 1129.

2   **C. Plaintiffs adequately plead their warranty claims.**

3   **1. Breach of Express Warranty (Count II)**

4   Plaintiffs bring state-law claims for breach of express warranty, alleging that Tesla both made

5   written statements and used samples or models warranting that Plaintiffs' vehicles were "fully self-

6   driving" at the time of purchase, "or that they would be fully self-driving within a reasonable time

7   after" purchase. ¶¶ 135-36; *see* Civ. Code § 1791.2(a)(1)-(2). Plaintiffs adequately allege all three

8   elements of a breach of warranty claim: (1) a seller statement constituting an affirmation of fact or

9   promise, or a description of the goods, (2) that was part of the basis for the bargain, and (3) seller's

10  breach. *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897, 904 (N.D. Cal. 2021). Tesla's contrary arguments

11  rest largely on disputing Plaintiffs' allegations and rewriting Plaintiffs' theory of the case.

12  **a. Plaintiffs plead an affirmation of fact, promise, or description of goods.**

13  The first element of breach of express warranty requires a "specific and unequivocal written

14  statement." *Smith v. Keurig Green Mountain, Inc.*, 393 F.Supp.3d 837, 846 (N.D. Cal. 2019) (Gilliam,

15  J.). Such statements can include those made to the public to induce sales. *See Keith v. Buchanan,* 173

16  Cal.App.3d 13, 21 (1985); *Gherna v. Ford Motor Co.,* 246 Cal.App.2d 639, 652-53 (1966). They can

17  also include "descriptive names" and statements about a "special quality" of the product, "especially

18  where inspection by the buyer is not possible and the seller knows the quality of the goods and the

19  buyer does not." *Lane v. C.A. Swanson & Sons*, 130 Cal.App.2d 210, 213-14 (1995); *accord Grinnell*

20  *v. Charles Pfizer & Co.*, 274 Cal.App.2d 424, 440 (1969). Courts "construe liberally" in favor of the

21  consumer "to enlarge the responsibility of the seller to construe every affirmation by him to be a

22  warranty when such construction is at all reasonable." *Id.* at 214-15 (finding ambiguity in descriptive

23  name "boned chicken" could be resolved by seller's statement in ad that product is "bone free"). To

24  prevail on a motion to dismiss, the defendant must generally prove that its interpretation of an alleged

25  statement is the *only* reasonable one; otherwise, there is a dispute of fact that cannot be resolved at the

26  pleading phase. *See Smith*, 393 F.Supp.3d at 846.

27  Here, Plaintiffs allege that Tesla's descriptive names, "Autopilot," "Enhanced Autopilot," and

28  "Full Self-Driving," together with Tesla's and Musk's other public statements, constitute express

warranties that the product has or will soon have full self-driving capability. ¶¶ 1, 3, 6-8, 11, 20, 22, 34, 40-44, 46, 49-60, 68, 70, 128, 135. Tesla's descriptive names warranted to Plaintiffs and other reasonable consumers that its ADAS packages are Level 4 or 5 technology that make its vehicles capable of driving themselves (¶¶ 29-36), especially considering that Tesla was repeatedly warned about the misleading nature of these names by own engineers and government regulators (*e.g.*, ¶¶ 40, 44, 51, 53-54, 59, 85, 90, 92, 95), and that the ADAS packages themselves are beyond the reasonable consumer's understanding, such that "inspection by the buyer is not possible and the seller knows the quality of the goods and the buyer does not." *Lane*, 130 Cal.App.2d 210 at 213-14. Moreover, any ambiguity in the names "Autopilot" and "Full Self-Driving Capability" are resolved by Tesla's other public written statements, such as Musk's voluminous tweets (*e.g.*, ¶¶ 6-8, 56, 60, 68, 70, 128) and the infamous written statement at the beginning of the October 2016 video, which Plaintiffs allege is a model and sample of Tesla's ADAS technology, that "The person in the driver's seat is only there for legal reasons. He is not doing anything. The car is driving itself." (¶¶ 3, 57-58, 136).

Tesla's contrary arguments rely on fighting Plaintiffs' allegations. *See* Mot. at 19-20. According to Tesla, its continuous statements about its ADAS technology were always merely aspirational, and its misleading 2016 video was not a model or sample because no reasonable consumer who saw it would believe the vehicle was fully autonomous. Mot. at 19-20 (parsing the technical requirements Level 5 technology, while ignoring Levels 3 and 4). Such merits arguments both ignore Plaintiffs' actual allegations and are premature on a motion to dismiss.

> **b. Plaintiffs adequately allege that Tesla's factual affirmations, promises, and descriptions were part of the basis of the bargain, and that Tesla breached.**

Plaintiffs allege that Tesla's misrepresentations regarding its ADAS packages were part of the basis of the bargain, in part because they lured and induced Plaintiffs to purchase Tesla vehicles with ADAS packages (¶¶ 128, 130-31, 135), and that Tesla breached by its express warranties by selling Plaintiffs cars that could not safely drive themselves at the time of purchase or within a reasonably short period thereafter (¶¶ 130, 138).

Tesla's contrary argument that its alleged factual affirmations, promises, and descriptions were not "incorporated into the sale" (Mot. at 19:2-5) ignores the *presumption* that a seller's

affirmations go to the basis of the bargain, which Tesla can only rebut with "clear and affirmative proof" to the contrary. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 1227 (2010). Tesla also ignores that affirmations and descriptions made after a purchase can become part of the basis of the bargain. *Id.* at 1230; *McVicar v. Goodman Global, Inc.*, 1 F.Supp.3d 1044, 1057 (C.D. Cal. 2014). Likewise, Tesla's argument that Plaintiffs' warranty claims fail because they never "presented [their] vehicle to Tesla for repair" (Mot. at 20:15-16) ignores the obvious—i.e., that such "repairs" would have been futile. *See* ¶¶ 34-36, 76-79, 82-84 (alleging Tesla has never been remotely near having Level 4 or 5 technology); *see also Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal.App.4th 294, 302-03 (1995) (customers' only obligation is to allow a "reasonable opportunity" for repairs); *Jiagbogu v. Mercedes-Benz USA*, 118 Cal.App.4th 1235, 1245 (2004) (new vehicle manufacturer is presumed to have had reasonable opportunity to repair defects likely to result in death or serious bodily injury).

### 2. Breach of Implied Warranty (Count III)

#### a. Plaintiffs adequately plead breach of the implied warranty of merchantability.

Plaintiffs allege that Tesla is in breach of the implied warranty of merchantability because Tesla's ADAS packages fail to meet the affirmations and promises in their descriptive names, and because they are substantially unsafe. ¶¶ 148, 151. Fitness for ordinary use requires more than a vehicle simply being able to go from point A to point B. *McGee v. Mercedes-Benz USA, LLC*, 2020 WL 1530921, at *5 (S.D. Cal. Mar. 30, 2020). It also requires the vehicle to be in a safe condition and substantially free of defects. *Brand v. Hyundai Motor Am.*, 226 Cal.App.4th 1538, 1546 (2014). This minimum guarantee of safety in the implied warranty of merchantability runs not only to the purchaser, but also to the public generally. *Id.* Plaintiffs allege in detail that Tesla's vehicles and ADAS packages are neither in a safe condition nor substantially free of defects. *See, e.g.*, ¶¶ 3-4, 47, 49, 53, 61, 64, 71, 73, 96 (alleging myriad issues with Tesla's ADAS technology, including running red lights, crashing into large stationary objects, "phantom braking," failing to execute routine driving maneuvers, and causing numerous major collisions in the face of routine roadway scenarios.

In response, Tesla argues Plaintiffs' claim fails for failure to allege unmerchantability within one year after the date of purchase. Mot. at 21:4-10 (citing Civ. Code § 1791.1(c)). This is wrong for two reasons. First, Tesla is wrong about the law because an implied warranty of merchantability has a

prospective existence beyond the time of delivery, and there is no requirement that a purchaser discover and report latent defects to the seller within that time. *Mexica*, 174 Cal.App.4th at 1309 (holding the one-year provision is not a deadline for notice of breach). Second, Plaintiffs allege that Tesla's vehicles and ADAS packages were never merchantable at any time during the Class Period beginning on January 1, 2016 (¶ 114), so Tesla was necessarily in breach during the one-year period regardless of when it started to run. *See also* ¶¶ 40, 55-60 (alleging Tesla began using the misleading descriptive names at issue in 2015-2016); ¶¶ 47, 49, 53, 61, 64, 71, 73, 103 (alleging Tesla's ADAS technology performed erratically and hazardously throughout the Class Period).

Tesla also challenges Plaintiffs' allegations that its ADAS packages were not merchantable "at any time," arguing that such a claim requires a personal incident involving the defect. Mot. at 21. This argument has been rejected before, and it should be rejected here. *See Sloan v. Gen. Motors LLC*, 287 F.Supp.3d 840, 879-80 (N.D. Cal. 2018) (rejecting argument that plaintiff claiming breach of implied warranty must allege a personal safety incident where plaintiff alleged an unreasonable safety hazard that could occur without warning).

### b. Plaintiffs adequately plead breach of the implied warranty of fitness for a particular purpose, on which Tesla declines to seek dismissal.

Plaintiffs also claim Tesla breached its implied warranty of fitness for a particular purpose, which arises when (1) a buyer intends to use goods for a particular purpose and (2) relies on the seller's skill or judgment to furnish goods for that particular purpose, and (3) the seller has reason to know of the buyer's intent and reliance at the time of contracting. *Thornton v. Micro-Star Int'l Co.*, 2018 WL 5291925, at *9 (C.D. Cal. Oct. 23, 2018). Plaintiffs adequately plead each of those required elements, as well as Tesla's breach. ¶¶ 150-53. Tesla does not make, and thus has waived, any argument for dismissing this aspect of Plaintiffs' implied warranty claim. *See* Mot. at 21-22; *Dytch v. Yoon*, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011).[11]

---

[11] Plaintiffs concede that the Court lacks jurisdiction over their MMWA class claim because it is brought by fewer than 100 plaintiffs. *See* Mot. at 24-25 (citing 15 U.S.C. § 2310(d)(3) and *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034-35 (9th Cir. 2020)). However, the claim should be dismissed with leave to amend so that Plaintiffs can meet that requirement.

**D. Tesla's remaining arguments all lack merit.**

**1.   The economic loss rule does not bar Plaintiffs' common law claims (Counts VII-X).**

Tesla's argument that Plaintiffs common law claims are barred by the economic loss rule errs for multiple reasons. First, the argument relies entirely on Tesla's assertion that the Complaint does not allege any affirmative misrepresentation (*see* Mot. at 22:20-26), which disregards Plaintiffs' allegations (*see supra* Section II.B.1). *See also Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 991 (2004) (economic loss rule did not apply to fraud claim based on seller's misrepresentations about a defective helicopter part creating a risk of crash that was not bargained for); *id.* at 993 ("No rational party would enter into a contract anticipating that they are or will be lied to"). Additionally, the economic loss rule also does not apply when, as here, contractual "breach is accompanied by a traditional common law tort, such as fraud," or when "the means used to breach the contract are tortious," such as deceit. *Id.* at 990; *Hastings*, 2020 WL 12688367, at *5. Both situations apply here.

**2.   Plaintiffs may plead unjust enrichment in the alternative.**

Plaintiffs plead an unjust enrichment claim in the alternative to their warranty claims. Courts construe such a claim as a quasi-contract claim seeking restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). While Tesla is correct that Plaintiffs cannot ultimately recover under both contract and quasi-contract theories, its argument that the theories cannot be pled in the alternative is foreclosed by Ninth Circuit precedent, as this Court has itself recognized. *See Astiana*, 783 F.3d at 762-63 (unjust enrichment claim being "duplicative of or superfluous to [] other claims … is not grounds for dismissal"); *Loop AI Labs Inc v. Gatti*, 2015 WL 5158639, at *7 (N.D. Cal. Sept. 2, 2015) (Gilliam, J.) ("*Astiana* precludes this Court from dismissing [plaintiff's] unjust enrichment claim on the ground that it is superfluous given its other causes of action").[12]

**3.   Plaintiffs adequately plead their entitlement to seek equitable relief.**

Plaintiffs seek various equitable relief, including injunctive relief to prevent future harm from Tesla's continued reliance on its challenged business practices, including as recently one week before

---

[12] Tesla's cases either pre-date *Astiana* or are factually distinguishable. *See Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *9 (N.D. Cal. Feb. 15, 2019) (dismissing unjust enrichment claim where plaintiffs argued it "covers fraud or bad-faith activities of Defendant separate from those covered by the express warranty," but "failed to plead any such fraudulent acts in the [] complaint").

LAW OFFICES
COTCHETT, PITRE &
McCarthy, LLP

1    the Complaint was filed. ¶ 108. Tesla seeks dismissal of these requested remedies, arguing Plaintiffs

2    fail to plead an inadequate legal remedy and that Plaintiffs lack Article III standing to seek injunctive

3    relief. Mot. at 23-24. Both arguments fail.

4         Tesla's argument on the adequacy of legal remedies (Mot. at 23:14-24:1) errs for two reasons.

5    First, Tesla is wrong to assert that Plaintiffs fail to plead inadequate legal remedies. That is precisely

6    what Plaintiffs allude to in alleging that Tesla's continued implementation of its challenged business

7    practices will continue to harm Plaintiffs and other members of the consuming public absent

8    injunctive relief. ¶¶ 141, 156, 166, 182, 197. Second, Tesla's argument is premature. *See Edelson v.*

9    *Travel Ins. Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021) ("no controlling authority

10   prevents a plaintiff from asserting alternative legal remedies at the pleading stage"); *Wildin v. FCA*

11   *US LLC*, 2018 WL 3032986, at *7 & n.4 (S.D. Cal. June 19, 2018) (similar).

12        As for Article III standing, courts should not resolve disputed factual issues on a Rule 12(b)(1)

13   motion for lack of standing where "jurisdiction is dependent on the resolution of factual issues going

14   to the merits." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (cleaned up). Class claims

15   may be adjudicated if any Class Plaintiff has standing. *Bates v. United Parcel Serv., Inc.*, 511 F.3d

16   974, 985 (9th Cir. 2007) (en banc). Here, all Plaintiffs have standing to seek injunctive relief because

17   they own or lease Tesla vehicles with ADAS technology, and they have an interest in knowing

18   whether they can rely on Tesla's statements about their cars and technology.

19        The controlling case is *Davidson v. Kimberly-Clark Corp.*, where the Ninth Circuit held "that

20   a previously deceived consumer may have [Article III] standing to seek an injunction against false

21   advertising or labeling, even though the consumer now knows or suspects that the advertising was

22   false at the time of the original purchase," due to her inability to rely on the defendant's advertising or

23   labeling in the future. 889 F.3d 956, 969 (9th Cir. 2018). The plaintiff in *Davidson* purchased the

24   defendant's wipes advertised and labeled as "flushable," which she believed meant they would

25   quickly disintegrate. *Id.* at 964-65. However, she later noticed that the wipes did not disintegrate in

26   the toilet like typical flushable products, and further research indicated that the wipes could damage

27   pipes. *Id*. Plaintiff did not buy the "flushable" wipes again but alleged that she desired to buy "truly

28   flushable" wipes in the future. *Id.* at 970. The Ninth Circuit found that the plaintiff "properly alleged

1    that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's

2    labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at

3    967. As the Ninth Circuit reasoned, "[k]nowledge that the advertisement or label was false in the past

4    does not equate to knowledge that it will remain false in the future." *Id.* at 969.

5         The reasoning of *Davidson* applies even more strongly here, where Plaintiffs are not just

6    future potential Tesla customers, but current customers who continue to own and use Tesla vehicles

7    with ADAS technology, and thus have a significant interest in knowing whether they can trust Tesla's

8    claims in the future.[13] This interest is particularly heightened in the automobile context, where the

9    potential consequences of believing a false claim by Tesla about the safety or performance of its

10   ADAS technology is serious injury or death.

11        **4.  Plaintiffs' CLRA claim for injunctive relief does not require pre-suit notice.**

12        Tesla is wrong that Plaintiffs' CLRA claim is subject to a pre-suit notice requirement. Mot. at

13   25:6-8 (citing Civ. Code § 1782(a)). The statute expressly provides that requirement applies only to

14   CLRA claims "for damages," and not CLRA claims "for injunctive relief." Civ. Code § 1782(a), (d).

15   Here, Plaintiffs' CLRA claim here does not seek damages but only injunctive relief (¶ 183).

16                                    **CONCLUSION**

17        For the foregoing reasons, Tesla's motion to compel arbitration and stay, and its motion to

18   dismiss, should be denied. If any part of the motion to dismiss is granted, Plaintiffs respectfully

19   request leave to amend.

20

21

22

23

24

---

25   [13] *See Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (consumer
     plaintiffs had standing to seek injunctive relief based on allegation they could not trust defendant's
26   claims about its products); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov.
     9, 2018) (same); *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018)
27   (rejecting argument that standing required plaintiffs' intent to buy another vehicle with defective
     windshield, holding instead that imminent future harm was plead by contending they continued to
28   own their vehicles and had an interest in being provided non-defective replacement windshields).



1

Respectfully submitted,

2

Dated:  December 28, 2022

**COTCHETT, PITRE & McCARTHY, LLP**

3

By:  */s/ Frank M. Pitre*

4

FRANK M. PITRE
NABILAH A. HOSSAIN

5

ANDREW F. KIRTLEY

6

*Attorneys for Plaintiffs Thomas LoSavio,*

7

*Brenda Broussard, and the Proposed Class*

8

9

Dated:  December 28, 2022

**BOTTINI & BOTTINI, INC.**

10

By:  */s/ Francis A. Bottini, Jr.*

11

FRANCIS A. BOTTINI, JR.
NICHOLAUS H. WOLTERING

12

*Attorneys for Plaintiff Dominick Battiato*

13

*and the Proposed Class*

14

Dated:  December 28, 2022

**CASEY GERRY SCHENK FRANCAVILLA**

15

**BLATT & PENFIELD, LLP**

16

By:  */s/ Gayle M. Blatt*

17

DAVID S. CASEY, JR.
GAYLE M. BLATT

18

JEREMY ROBINSON
P. CAMILLE GUERRA

19

MICHAEL J. MORPHEW

20

*Attorneys for Plaintiffs Christopher Mallow,*
*Jazmin Imaguchi, and the Proposed Class*

21

22

23

24

25

26

27

28

1

## ATTORNEY ATTESTATION

2

     I, Frank M. Pitre, am the ECF User whose ID and password are being used to file this

3

Opposition to Defendants' Motion to Compel and Stay Pending Arbitration and Motion to Dismiss. In

4

compliance with Civil Local Rule 5-l(h)(3), I hereby attest that concurrence in the filing of this

5

document has been obtained from each signatory.

6

7

  Dated:  December 28, 2022

By:   */s/ Frank M. Pitre*
         Frank M. Pitre

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP