1  David C. Marcus (SBN 158704)
   david.marcus@wilmerhale.com
2  WILMER CUTLER PICKERING
       HALE AND DORR LLP
3  350 South Grand Avenue, Suite 2400
   Los Angeles, California 90071
4  Tel: (213) 443-5312

5  Alan Schoenfeld (*pro hac vice*)
   alan.schoenfeld@wilmerhale.com
6  WILMER CUTLER PICKERING
       HALE AND DORR LLP
7  7 World Trade Center
   250 Greenwich Street
8  New York, New York 10007
   Tel: (212) 937-7294
9
   Allison Bingxue Que (SBN 324044)
10 allison.que@wilmerhale.com
   WILMER CUTLER PICKERING
11     HALE AND DORR LLP
   2600 El Camino Real, Suite 400
12 Palo Alto, California 94306
   Tel: (650) 858-6000
13
   *Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC*
14

15            **UNITED STATES DISTRICT COURT**

16    **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

17                                    )    CASE NO.: 4:22-cv-5240-HSG
                                      )
18                                    )    **REPLY IN SUPPORT OF DEFENDANTS
                                      )    TESLA, INC., TESLA LEASE TRUST,
19 IN RE TESLA ADVANCED DRIVER       )    AND TESLA FINANCE LLC'S MOTION
   ASSISTANCE SYSTEMS LITIGATION     )    TO COMPEL AND STAY PENDING
20                                    )    ARBITRATION AND MOTION TO
                                      )    DISMISS
21                                    )
                                      )
22                                    )
                                      )    Hon. Haywood S. Gilliam, Jr.
23                                    )    Date: March 23, 2023
                                      )    Time: 2:00 p.m.
24                                    )    Courtroom 2 – 4th floor
                                      )    Amended Consolidated Complaint Filed:
25                                    )    October 28, 2022
                                      )
26                                    )
                                      )
27                                    )
                                      )
28 ─────────────────────────────────

# **TABLE OF CONTENTS**

**Page**

I.    THE ARBITRATION PLAINTIFFS' CLAIMS SHOULD BE ARBITRATED...............1

II.   LOSAVIO'S CLAIMS SHOULD BE DISMISSED .........................................4

    A.    LoSavio's Claims Are All Time-Barred .................................................4

    B.    LoSavio Fails To State A Claim ...........................................................5

        1.    All The Claims Should Be Dismissed For Failing To State A Fraud

            Claim ........................................................................................5

        2.    The Complaint Fails To State Any Warranty Claim (Counts I-III) ...........9

            a)    The express warranty claim fails.................................................9

            b)    The implied warranty claim fails ................................................11

    C.    LoSavio's Claims Are Barred In Whole Or Part For Other Reasons...................13

        1.    The Economic Loss Rule Bars The Common Law Claims (Counts

            VII-X)......................................................................................13

        2.    The Unjust Enrichment Claim Should Be Dismissed (Count X)..............13

        3.    LoSavio Cannot Obtain Equitable Relief (Counts II-VI, X).....................14

        4.    The Court Lacks Jurisdiction Over The MMWA Claim (Count I)...........15

        5.    The Warranty Claims And Any Damages-Based CLRA Claim

            (Counts I-III, V) Should Separately Be Dismissed For Lack Of Pre-

            Suit Notice................................................................................15

III.   CONCLUSION .................................................................................15

Page(s)

**Federal Cases**

*Alfia v. Coinbase Glob., Inc.*,
   2022 WL 3205036 (N.D. Cal. July 22, 2022) ............................................................. 3

*Aquino v. Toyota Motor Sales USA, Inc.*,
   2016 WL 3055897 (N.D. Cal. May 31, 2016) ............................................................. 1

*Arakelian v. Mercedes-Benz USA, LLC*,
   2018 WL 6422649 (C.D. Cal. June 4, 2018) ............................................................. 11

*In re Arris Cable Modem Consumer Litig.*,
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................................. 9

*Ashton v. J.M. Smucker Co.*,
   2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) ............................................................. 15

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................. 7

*Beluca Ventures LLC v. Akiebolag*,
   2022 WL 3579879 (N.D. Cal. Aug. 19, 2022) ............................................................. 14

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ............................................................. 1

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ............................................................. 2

*Brown v. Madison Reed, Inc.*,
   2022 WL 3579883 (N.D. Cal. Aug. 19, 2022) ............................................................. 7

*Burchfield v. Prestige Consumer Healthcare, Inc.*,
   534 F. Supp. 3d 1192 (C.D. Cal. 2021) ............................................................. 6

*Cal. Crane Sch., Inc. v. Google LLC*,
   2022 WL 3348425 (N.D. Cal. Aug. 12, 2022) ............................................................. 3

*Caremark, LLC v. Chickasaw Nation*,

    43 F.4th 1021 (9th Cir. 2022) ................................................................ 2

*Circuit City Stores, Inc. v. Ahmed*,

    283 F.3d 1198 (9th Cir. 2002) ................................................................ 3

*Clark v. Hershey Co.*,

    2019 WL 913603 (N.D. Cal. Feb. 25, 2019) .......................................... 4

*Cohen v. CBR Sys., Inc.*,

    2022 WL 4087507 (N.D. Cal. Sept. 6, 2022) ........................................ 4

*Davidson v. Kimberly-Clark Corp.*,

    889 F.3d 956 (9th Cir. 2018) ................................................................ 14

*DiCarlo v. MoneyLion, Inc.*,

    988 F.3d 1148 (9th Cir. 2021) ................................................................ 4

*Dorward v. Macy's, Inc.*,

    2011 WL 2893118 (M.D. Fla. July 20, 2011) ....................................... 1

*Edleson v. Travel Insured Int'l, Inc.*,

    2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) ..................................... 14

*Ehret v. Uber Techs., Inc.*,

    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................... 8

*Falk v. Gen. Motors Corp.*,

    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ................................................ 7

*Fish v. Tesla, Inc.*,

    2022 WL 1552137 (C.D. Cal. May 12, 2022) ....................................... 1

*Floyd v. Am. Honda Motor Co.*,

    966 F.3d 1027 (9th Cir. 2020) .............................................................. 15

*Frere v. Medtronic, Inc.*,

    2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) ....................................... 11

*G.G. v. Valve Corp.*,

    799 F. App'x 557 (9th Cir. 2020) .......................................................... 2

*Gabriella v. Recology Inc.*,

    2022 WL 6271866 (N.D. Cal. Sept. 9, 2022)............................................................................ 2

*Gerlach v. Tickmark Inc.*,

    2021 WL 3191692 (N.D. Cal. July 28, 2021) ......................................................................... 2

*Guerrero v. Gates*,

    442 F.3d 697 (9th Cir. 2006)................................................................................................... 5

*Haskin v. Symantec Corp.*,

    2014 WL 2450996 (N.D. Cal. June 2, 2014) ......................................................................... 9

*Havens Realty Corp. v. Coleman*,

    455 U.S. 363 (1982) ............................................................................................................... 5

*Hernandez v. United HealthCare Servs., Inc.*,

    2018 WL 7458649 (C.D. Cal. July 26, 2018) ....................................................................... 2

*Hodges v. Comcast Cable Commc'ns, LLC*,

    21 F.4th 535 (9th Cir. 2021)................................................................................................... 4

*Holt v. Globalinx Pet, LLC*,

    2013 WL 3947169 (C.D. Cal. July 30, 2013) ..................................................................... 13

*Jackson v. S.A.W. Ent. Ltd.*,

    629 F. Supp. 2d 1018 (N.D. Cal. 2009) ................................................................................ 3

*Johnson v. Glock, Inc.*,

    2021 WL 1966692 (N.D. Cal. May 17, 2021) ...................................................................... 4

*Kearns v. Ford Motor Co.*,

    567 F.3d 1120 (9th Cir. 2009)................................................................................................ 7

*Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*,

    2022 WL 172315 (E.D. Cal. Jan. 19, 2022)........................................................................ 14

*Kumandan v. Google LLC*,

    2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ..................................................................... 7, 8

*Kutza v. Williams-Sonoma, Inc.*,

    2018 WL 5886611 (N.D. Cal. Nov. 9, 2018)...................................................................... 14

*Lee v. Tesla, Inc.*,

  2020 WL 10573281 (C.D. Cal. Oct. 1, 2020) .................................................................. 3

*Lukovsky v. City & Cnty. of S.F.*,

  535 F.3d 1044 (9th Cir. 2008) ........................................................................................ 5

*Luong v. Subaru of America, Inc.*,

  2018 WL 2047646 (N.D. Cal. May 2, 2018) ............................................................ 14, 15

*In re MacBook Keyboard Litig.*,

  2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................................................ 14

*Magill v. Wells Fargo Bank, N.A.*,

  2021 WL 6199649 (N.D. Cal. June 25, 2021) ................................................................. 4

*Mathison v. Bumbo*,

  2008 WL 8797937 (C.D. Cal. Aug. 18, 2008) .............................................................. 11

*McGee v. Mercedes-Benz USA, LLC*,

  2020 WL 1530921 (S.D. Cal. Mar. 30, 2020) .......................................................... 12, 13

*Mohamed v. Uber Techs.*,

  848 F.3d 1201 (9th Cir. 2016) ........................................................................................ 3

*Moore v. Mars Petcare US, Inc.*,

  966 F.3d 1007 (9th Cir. 2020) .................................................................................... 8, 9

*Nacarino v. KSF Acquisition Corp.*,

  2022 WL 17178688 (N.D. Cal. Nov. 23, 2022) ............................................................ 14

*Nager v. Tesla Motors, Inc.*,

  2019 WL 4168808 (D. Kan. Sep. 3, 2019) .................................................................... 1

*Nguyen v. Tesla, Inc.*,

  2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) ................................................................... 1

*Pace Indus. v. Three Phx. Co.*,

  813 F.2d 234 (9th Cir. 1987) ......................................................................................... 4

*Patterson v. RW Direct, Inc.*,

  2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) .............................................................. 15

1    *Peterson v. Mazda Motor of Am., Inc.*,

2      44 F. Supp. 3d 965 (C.D. Cal. 2014) ........................................................ 12

3    *Pilgrim v. Gen. Motors Co.*,

4      408 F. Supp. 3d 1160 (C.D. Cal. 2019) ..................................................... 15

5    *Raebel v. Tesla, Inc.*,

6      451 F. Supp. 3d 1183 (D. Nev. 2020) .................................................... 1, 3

7    *Raynaldo v. Am. Honda Motor Co., Inc.*,

8      2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ........................................ 7, 8

9    *Robinson v. J.M. Smucker Co.*,

10      2019 WL 2029069 (N.D. Cal. May 8, 2019) ............................................. 13

11    *Rodrigue v. Ctr. for the Advancement of Sci. in Space, Inc.*,

12      2022 WL 3012214 (C.D. Cal. May 10, 2022) .............................................. 2

13    *Shank v. Presidio Brands, Inc.*,

14      2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) ........................................... 14

15    *Sharma v. Volkswagen AG*,

16      524 F. Supp. 3d 891 (N.D. Cal. 2021) .................................................... 14

17    *Sloan v. General Motors LLC*,

18      287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................... 12

19    *Smith v. Keurig Green Mountain, Inc.*,

20      393 F. Supp. 3d 837 (N.D. Cal. 2019) .................................................... 10

21    *Snarr v. HRB Tax Group, Inc.*,

22      839 F. App'x 53 (9th Cir. 2020) .............................................................. 4

23    *Stockinger v. Toyota Motor Sales USA Inc.*,

24      2017 WL 10574372 (C.D. Cal. July 7, 2017) ........................................... 11

25    *In re StubHub Refund Litigation*,

26      2021 WL 5447006 (N.D. Cal. Nov. 22, 2021) ............................................ 4

27    *Suarez v. Uber Techs., Inc.*,

28      2016 WL 2348706 (M.D. Fla. May 4, 2016) .............................................. 3

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,

    83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................................. 13

*Tabler v. Panera LLC*,

    2020 WL 3544988 (N.D. Cal. June 30, 2020) ................................................. 8, 9

*Tipton v. Zimmer*,

    2016 WL 3452744 (C.D. Cal. June 23, 2016) ................................................... 10

*Wildin v. FCA USA, LLC*,

    2018 WL 3032986 (S.D. Cal. June 19, 2018) ................................................... 14

*Wilson v. Hewlett-Packard Co.*,

    668 F.3d 1136 (9th Cir. 2012) ............................................................................ 8

*Wong v. Am. Honda Motor Co., Inc.*,

    2022 WL 3696616 (C.D. Cal. June 21, 2022) ................................................... 15

*Young v. Tesla, Inc.*,

    2022 WL 3355732 (D.N.M. Aug. 15, 2022) ....................................................... 6

**State Cases**

*Aanderud v. Superior Court*,

    13 Cal. App. 5th 880 (2017) ................................................................................ 2

*Aryeh v. Canon Bus. Sols. Inc.*,

    55 Cal. 4th 1185 (2013) ....................................................................................... 5

*Brand v. Hyundai Motor America*,

    226 Cal. App. 4th 1538 (2014) .......................................................................... 12

*Conservatorship of Link*,

    158 Cal. App. 3d 138 (1984) ............................................................................... 1

*DeNike v. Mathew Enter., Inc.*,

    76 Cal. App. 5th 371 (2022) .............................................................................. 15

*Grinnell v. Charles Pfizer & Co.*,

    274 Cal. App. 2d 424 (1969) ............................................................................. 10

*Jiagbogu v. Mercedes-Benz USA*,

    118 Cal. App. 4th 1235 (2004)..................................................................... 11

*Komarova v. Nat'l Credit Acceptance, Inc.*,

    175 Cal. App. 4th 324 (2009)........................................................................ 5

*Krotin v. Porsche Cars N. Am., Inc.*,

    38 Cal. App. 4th 294 (1995)........................................................................ 11

*Lane v. C.A. Swanson & Sons*,

    130 Cal. App. 2d 210 (1955)....................................................................... 10

*Mexia v. Rinker Boat Co., Inc.*,

    174 Cal. App. 4th 1297 (2009).............................................................. 11, 12

*Morgan v. AT&T Wireless Servs., Inc.*,

    177 Cal. App. 4th 1235 (2009)...................................................................... 6

*Pugliese v. Superior Court*,

    146 Cal. App. 4th 1444 (2007)...................................................................... 5

*Richards v. CH2M Hill, Inc.*,

    26 Cal. 4th 798 (2001).................................................................................. 5

*Robinson Helicopter Co., Inc. v. Dana Corp.*,

    34 Cal. 4th 979 (2004)................................................................................ 13

*Romano v. Rockwell Int'l, Inc.*,

    14 Cal. 4th 479 (1996).................................................................................. 5

*Silvio v. Ford Motor Co.*,

    109 Cal. App. 4th 1205, 1209 (2003) ........................................................ 11

*Weinstat v. Dentsply Int'l, Inc.*,

    180 Cal. App. 4th 1213 (2010).................................................................... 10

**Federal Statutes**

Fed. R. Civ. P. 9(b)............................................................................... 5, 6, 7, 9

**State Statutes**

Cal. Civ. Code 1791.1(c)............................................................................ 11

Cal. Civ. Code § 1793.22(b)(1) ................................................................................................ 11

## I.    THE ARBITRATION PLAINTIFFS' CLAIMS SHOULD BE ARBITRATED

The Arbitration Plaintiffs ignore the cases in which courts in this Circuit have enforced Tesla's standard arbitration agreements, including those based on evidence of assent like what Tesla submitted here (Mot. 8). *Fish v. Tesla, Inc.*, 2022 WL 1552137, at *4 (C.D. Cal. May 12, 2022); *Nguyen v. Tesla, Inc.*, 2020 WL 2114937, at *3 (C.D. Cal. Apr. 6, 2020); *Raebel v. Tesla, Inc.*, 451 F. Supp. 3d 1183, 1188 (D. Nev. 2020). Moreover, they ignore entirely that in addition to manifesting their assent to arbitrate at purchase, they independently manifested assent by failing to opt out of the Arbitration Agreements. Each of them placed the order online, received a copy of the Order Agreement in their online "Tesla Account" after placing the order, and did not opt out within the specified time frame. *Compare* Mot. 7-9 *and* Opp. 6; ECF No. 30-7, ¶¶ 6, 8, 11, 13, 15, 17, 19. That independently suffices to establish assent to arbitrate. *See, e.g.*, *Aquino v. Toyota Motor Sales USA, Inc.*, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) (cited at Mot. 9); *Dorward v. Macy's, Inc.*, 2011 WL 2893118, at *10 (M.D. Fla. July 20, 2011). *Nager v. Tesla Motors, Inc.*, 2019 WL 4168808 (D. Kan. Sep. 3, 2019) (cited at Opp. 6), is inapposite because the plaintiffs there submitted evidence showing that they placed their order over the telephone, which led the court to conclude that they would not have been presented with the arbitration agreement through the online process. *Id.* at *3-4. No such contradicting evidence is presented here.[1]

Because Tesla formed an arbitration agreement with each Arbitration Plaintiff, and because the Arbitration Agreements all contain a delegation clause whose enforceability is not specifically challenged by the Arbitration Plaintiffs, this Court's role "is limited to determining whether there is

---

[1] The inquiry on assent can stop here. In any event, contrary to the Arbitration Plaintiffs' argument (Opp. 6-7), each of them had sufficient notice of the hyperlink to the Order Agreement. The early 1980s case they cite regarding the minimum typeface in written contracts, *id.* at 7 (citing *Conservatorship of Link*, 158 Cal. App. 3d 138, 141 (1984)), has no applicability in today's online world where users are free to zoom in and out on a webpage. The Arbitration Plaintiffs' argument that "underlining alone is insufficient" is belied by the facts (ECF Nos. 30-2 to 30-5) and also misreads *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). The hyperlink in *Berman* was displayed "in a tiny gray front" surrounded by "comparatively larger" text that "naturally direct[ed] the user's attention everywhere else," and "sandwiched" between other larger buttons such as "Continue." 30 F. 4th at 854, 856-857, Apps. A & B. In addition, "the textual notice [was] further deemphasized by the overall design of the webpage, in which other visual elements," including a bright blue border, a red Target gift card, and condensed text that occupied almost the bottom half of the webpage, "dr[ew] the user's attention away from the barely readable critical text." *Id.* No similar distractors existed here. *See* ECF Nos. 30-1, ¶ 3; 30-2 to 30-6.

clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Gabriella v. Recology Inc.*, 2022 WL 6271866, at *1 (N.D. Cal. Sept. 9, 2022) (Gilliam, J.); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). As the Arbitration Plaintiffs have acknowledged, incorporation of AAA rules constitutes "clear and unmistakable evidence" of delegation. Opp. 9 (citing *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015)). Their main quarrel is that *Brennan* does not apply to consumer cases. But the "greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties," including in consumer cases. *Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021). This trend aligns with the Ninth Circuit's recent opinion in *G.G. v. Valve Corp.*, 799 F. App'x 557 (9th Cir. 2020) (unpublished), that the degree of sophistication was irrelevant because courts presume that "parties to an agreement have read all parts of the entire contract" and "intend what is stated in its objective terms." *Id.* at 558 (applying Washington law).

The Arbitration Plaintiffs also argue (Opp. 9) that the reference to "a court or arbitration" in the Arbitration Agreements' severability clause negates "clear and unmistakable evidence" of delegation. This argument is supported by no authority because it contradicts the law. *See Brennan*, 796 F.3d at 1133 (delegation clause deals with "different issues" and is a "separate agreement[]" from the broader arbitration agreement). Regardless, the reference to "a court" in a severability clause does not contradict the delegation clause, where, as here, the Arbitration Agreements "recognize that limited disputes that do not fall within the arbitration contract may end up in Court," *Hernandez v. United HealthCare Servs., Inc.*, 2018 WL 7458649, at *7 (C.D. Cal. July 26, 2018), "acknowledge that some disputes may lie outside the scope of the arbitration agreement," *id.*, or "contain[] a carve-out" for certain remedies, *Rodrigue v. Ctr. for the Advancement of Sci. in Space, Inc.*, 2022 WL 3012214, at *3 (C.D. Cal. May 10, 2022).

Because there is a mutually agreed delegation clause, any scope (which the Arbitration Plaintiffs do not challenge), unconscionability, or *McGill* challenges against the Arbitration Agreements should be decided by the arbitrator. *See, e.g.*, *Caremark*, 43 F.4th at 1029 (unconscionability); *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 897 (2017) (scope and *McGill*). In any event, the Arbitration Plaintiffs' arguments on unconscionability and *McGill* fail.

1   *First*, the Arbitration Plaintiffs fail to carry their burden to show either procedural or
2   substantive unconscionability. Because "there is an opportunity to opt out, the arbitration agreement
3   is not adhesive, and thus not procedurally unconscionable." *Cal. Crane Sch., Inc. v. Google LLC*,
4   2022 WL 3348425, at *3 (N.D. Cal. Aug. 12, 2022) (Gilliam, J.); *see also Suarez v. Uber Techs.,*
5   *Inc.*, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) (same). Courts have rejected the Arbitration
6   Plaintiffs' argument (Opp. 7), that "30 days was too short a period in which to make a decision."
7   *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002); *see also Raebel*, 451 F.
8   Supp. 3d at 1189-1190. Nor can the Arbitration Plaintiffs rely on some purported "surprise" (Opp.
9   7), because each Arbitration Agreement is part of a three- or four-page Order Agreement, drafted in
10  plain English, and featured prominently in its own standalone text box (ECF Nos. 30-8 to 30-12).
11  *See, e.g.*, *Jackson v. S.A.W. Ent. Ltd.*, 629 F. Supp. 2d 1018, 1023 (N.D. Cal. 2009) (no "surprise"
12  when "the arbitration provision is not overly complex," is contained with a two-page contract, and
13  is a distinct clause not "buried in fine print"); *Lee v. Tesla, Inc.*, 2020 WL 10573281, at *6 (C.D.
14  Cal. Oct. 1, 2020) (same arbitration agreement as here held to be procedurally conscionable).
15  Indeed, the Ninth Circuit has held that even when a plaintiff claims that an arbitration or opt-out
16  provision was "buried," that "does not change this analysis" regarding enforceability because "one
17  who signs a contract is bound by its provision and cannot complain of unfamiliarity with the
18  language of the instrument." *Mohamed v. Uber Techs.*, 848 F.3d 1201, 1211 (9th Cir. 2016).

19  Because the Arbitration Plaintiffs fail to show procedural unconscionability, the Court need
20  not proceed with substantive unconscionability, which the Arbitration Plaintiffs fail to demonstrate
21  in any event. They identify no case that supports their drive-by argument that an arbitration
22  agreement is substantively unconscionable unless the business "provide[s] the applicable arbitration
23  rules to the signatory at the time of signing" (Opp. 8); they cite *Lee v. Tesla, Inc.*, but the court there
24  rejected a substantive unconscionability challenge to Tesla's arbitration terms. 2020 WL 10573281,
25  at *5-6. Their other argument based on the Arbitration Agreement's inclusion of a class action
26  waiver fails under case law from the Supreme Court and the Ninth Circuit. *See Alfia v. Coinbase*
27  *Glob., Inc.*, 2022 WL 3205036, at *4 (N.D. Cal. July 22, 2022) (Gilliam, J.) (citing cases).

28  *Second*, the Arbitration Plaintiffs' invocation of *McGill* is misplaced because nothing in the

Arbitration Agreements prohibits public injunctive relief in court, arbitration, or elsewhere and in any event allows remedy to be severed (ECF Nos. 30-8 to 30-12). *See, e.g.*, *Magill v. Wells Fargo Bank, N.A.*, 2021 WL 6199649, at *6 (N.D. Cal. June 25, 2021) (quoting *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021)) (*McGill* violated "*only if it* 'bars public injunctive relief *in both court* and arbitration'") (emphasis in original); *Cohen v. CBR Sys., Inc.*, 2022 WL 4087507, at *3 (N.D. Cal. Sept. 6, 2022) (Gilliam, J.) (same).[2]  The two cases cited by the Arbitration Plaintiffs (Opp. 8) are thus inapposite because the party seeking to enforce the arbitration agreement in both cases conceded that the agreement waived the right to public injunctive relief.  *In re StubHub Refund Litigation*, 2021 WL 5447006, at *10 (N.D. Cal. Nov. 22, 2021); *Snarr v. HRB Tax Group, Inc.*, 839 F. App'x 53, 54 (9th Cir. 2020).

## II.    LOSAVIO'S CLAIMS SHOULD BE DISMISSED

### A.    LoSavio's Claims Are All Time-Barred

Recognizing that the statute of limitations has expired for his claims (Mot. 11-12), LoSavio falls back on the continuing violation or equitable estoppel and fraudulent concealment doctrines that provide for delayed accrual or tolling to save his case from dismissal.  They do not.[3]

***Continuing Violation.***  In the false advertising context, the continuing violation doctrine might apply when "a consumer repeatedly purchased a product, even if the first purchase was outside the limitations period"—but not in cases based on "a single purchase."  *See, e.g.*, *Johnson v. Glock, Inc.*, 2021 WL 1966692, at *5 (N.D. Cal. May 17, 2021); *Clark v. Hershey Co.*, 2019 WL 913603, at *7 (N.D. Cal. Feb. 25, 2019).  This distinction makes sense; a continuing violation "is one in which the plaintiff's interests are repeatedly invaded" and in which each act "inflict[s] a new and accumulating injury on the plaintiff."  *Pace Indus. v. Three Phx. Co.*, 813 F.2d 234, 237-238

---

[2] Nor does the language barring "representative claims or requests for relief on behalf of others" violate *McGill*.  *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (public injunctive relief "[does] not require … representative action, either on behalf of a class or the general public").

[3] Tesla has explained (Mot. 11) why the discovery rule does not toll LoSavio's fraud-based common law claims.  LoSavio offers no response in the opposition and therefore has forfeited this argument.  Likewise, LoSavio has abandoned his other theories, *i.e.*, equitable tolling, the repair rule, class action tolling, by not addressing them in the opposition.  *Compare* Mot. 12-13 *and* Opp. 10-14.

(9th Cir. 1987). LoSavio purchased just one vehicle from Tesla, so his interests were not "invaded" by any statement Tesla may have made after that purchase. LoSavio's reliance on cases involving repeatedly invaded interests (Opp. 11-12) is therefore misplaced.[4]

**Fraudulent Concealment & Equitable Estoppel.** Tolling for equitable estoppel or fraudulent concealment requires "active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706-707 (9th Cir. 2006) (emphasis added); *see also Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1052 (9th Cir. 2008) (cited at Mot. 13) (noting California law is in accord with federal common law). LoSavio has not satisfied this requirement, let alone with Rule 9(b) specificity, by alleging that "Tesla was continually making new misrepresentations every few months." Opp. 13. Those alleged misrepresentations form the basis of his claims; they are not "above and beyond," as the law requires. Separately, LoSavio offers no explanation why the fact that he already had notice of his claims does not foreclose fraudulent concealment and equitable estoppel, nor does he address his failure to plead why he could not have discovered any of his claims earlier by exercising reasonable diligence. *Compare* Mot. 11, 13-14 *and* Opp. 13-14.

### B. LoSavio Fails To State A Claim

#### 1. All The Claims Should Be Dismissed For Failing To State A Fraud Claim

LoSavio does not dispute that all his claims are subject to Rule 9(b). *Compare* Mot. 14-15 *and* Opp. 14-19. But his allegations do not meet the heightened pleading standard.

**No misrepresentation.** LoSavio's misrepresentation-based claims focus almost exclusively on Tesla's alleged promise as to when to deliver a fully autonomous vehicle. *See* Opp. 14-16.[5] But his opposition fails to rebut Tesla's argument that none of Tesla's statements constitutes a

---

[4] These distinguishable cases are *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009) (repeated attempts at debt collection); *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (repeated fair housing violations); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479 (1996) (wrongful discharge; whether continuing violation should apply was not at issue); *Pugliese v. Superior Court*, 146 Cal. App. 4th 1444 (2007) (repeated domestic abuse); *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798 (2001) (repeated denials of workplace accommodation). And *Aryeh v. Canon Bus. Sols. Inc.*, 55 Cal. 4th 1185 (2013), held the continuing violation doctrine did not apply even though, unlike here, that case involved periodically recurring bills. *Id.* at 1198, 1201.

[5] Plaintiffs identified only one paragraph that purportedly relates to representations regarding an alleged safety issue (Compl. ¶ 96), which plainly fails to meet Rule 9(b).

- 5 -

misrepresentation. Tesla decidedly does not concede that it has failed in its quest for autonomous driving functionality; regardless, as a matter of law, allegations suggesting a failure to meet long term goals is insufficient to satisfy Rule 9(b). Mot. 17.

As to the "Autopilot" and FSDC labels, LoSavio fails to demonstrate how a reasonable consumer who "decided to purchase [his or her] vehicle and the ADAS package[] after researching, reviewing, and relying on Tesla's online and other public statements" would interpret the labels to mean that the vehicle at the time was fully autonomous, contrary to what was said in those "online and other public statements." *See* Mot. 15-16.[6] As to the October 2016 video and other statements that LoSavio says promised a timeline toward releasing a fully autonomous car, most of them are not relevant because they did not specify the model of the vehicle or the version of the software (*e.g.*, Compl. ¶¶ 3, 6, 45-46, 50, 57-58, 68, 79, 99, 100, 102). And he has failed to show the remaining few statements were false when made (*e.g.*, *id.* ¶¶ 81, 106). He also does not deny that the quoted statements were often accompanied by and subject to the qualifier that a release of fully autonomous capabilities to the general public would require governmental approval, which in turn would require the accumulation of data to show that completely autonomous driving is significantly safer than human driving. Mot. 16 (citing *Young v. Tesla, Inc.*, 2022 WL 3355732, at *10 (D.N.M. Aug. 15, 2022)). Acknowledging that Tesla's statements are "technically true," LoSavio nonetheless argues they are actionable because they "are couched in a manner that is likely to mislead or deceive a consumer, such as by omitting relevant information." Opp. 16. But neither of the two cases he cites applies because they both involved defendants' alleged failure to disclose information that rendered some partial representation misleading. *See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255-1256 (2009); *Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1201 (C.D. Cal. 2021). That is not the case here, where the

---

[6] LoSavio does not and cannot deny that, among this wide array of "Tesla's online and other public statements" on which he purportedly relied, Musk explained that "Autopilot" "does not represent self-driving any more than what autopilot[] make an aircraft self-flying" (Mot. 4). But now he says the Court should not consider those statements. Opp. 15 n.10. As explained in the concurrently filed Reply in Support of Tesla's Request for Incorporation by Reference and Judicial Notice, LoSavio's argument is belied by "the gravamen of [his] allegations," which is that "Tesla has spent nearly a decade continually misrepresenting the abilities of its ADAS technology and its timeline for developing a fully autonomous vehicle." Opp. 14.

alleged statements were explicitly accompanied by cautionary language.

Failing to identify any particular misrepresentation, LoSavio argues that "the Complaint, taken as a whole, plausibly alleges a complex scheme of systematic deception over a long period of time." Opp. 14. This cannot suffice because it fails to demonstrate either that (1) Tesla "knew the alleged misrepresentations were false when made" or (2) "[Tesla]'s intent to defraud at the time of the alleged misrepresentation," the two "indispensable elements of a fraud claim." *Kumandan v. Google LLC*, 2022 WL 103551, at *7, *11-12 (N.D. Cal. Jan. 11, 2022). On the contrary, without specific misrepresentations, there is no way for LoSavio to allege facts showing they were false when made and Tesla knew and intended it—or for Tesla to defend itself against those allegations, as Rule 9(b) requires. A generic "complex scheme of systematic deception over a long period of time" (maybe "nearly a decade" (Opp. 14), maybe since "October 2016" (*id.* at 16), is precisely the sort of imprecise allegation Rule 9(b) prohibits.

***No omission or concealment.*** LoSavio is wrong to argue that his omission-based claims are subject to a more relaxed standard than his misrepresentation-based claims. Opp. 16. "The Ninth Circuit held in *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1225 (9th Cir. 2009), that Rule 9(b) applies to *any* claim that is grounded [on] fraud[,]" including omission-based claims. *Raynaldo v. Am. Honda Motor Co., Inc.*, 2022 WL 4358096, at *7 (N.D. Cal. Sept. 20, 2022) (Gilliam, J.); *Brown v. Madison Reed, Inc.*, 2022 WL 3579883, at *3 (N.D. Cal. Aug. 19, 2022) (same). LoSavio's pre-*Kearns* cases are therefore inapposite. *See Raynaldo*, 2022 WL 4358096, at *7 (declining to follow *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007), which in turn relied on *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)).

LoSavio fails to satisfy this heightened pleading standard. It is unclear from the Complaint what specific safety defect was omitted from which disclosure. LoSavio now points to (i) accidents allegedly involving Tesla's ADAS technology, (ii) the alleged internal disagreement within Tesla on the ADAS technology's capabilities, and (iii) customer reports regarding Tesla's ADAS technology. He argues that Tesla "failed to disclose … the technology's repeated failure to detect large stationary objects and navigate routine roadway scenarios." Opp. 16-17. But he does not allege "where the omitted information should or could have been revealed," nor has he "provide[d]

representative samples of advertisements, offers, or other representations that [he] relied on to make [his] purchase but that failed to include the allegedly omitted information," let alone with specificity. *Raynaldo.*, 2022 WL 4358096, at *7.

Separately, the omission-based claims fail due to the lack of allegations showing that Tesla "knew of [any] specific defect at the time of sale." *Raynaldo*, 2022 WL 4358096, at *8; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012). Because LoSavio has failed to plead Tesla's knowledge of any specific defect, his speculative argument that Tesla had "exclusive knowledge" of some unspecified "safety related information" to trigger a duty to disclose necessarily fails. Opp. 17. Indeed, to the extent LoSavio argues that Tesla had a duty to disclose any of the issues later, that argument is undermined by the public availability of news and consumer reports on the purported limitations of Tesla's ADAS technology—the exact sources on which LoSavio relies throughout his Complaint. *Kumandan*, 2022 WL 103551, at *9.

And to the extent that LoSavio relies on a theory of active concealment (as opposed to mere omission), he "ha[s] not plausibly pled any affirmative acts by [Tesla] 'to suppress information in the public domain or obscure the consumers' ability to discover it." *Raynaldo*, 2022 WL 4358096, at *9. Again, the Complaint pleads the opposite by citing myriad news reports and customer reports on Tesla's ADAS technology.

***No reliance.*** LoSavio does not distinguish any of the cases cited by Tesla that require him to identify from the wide array of representations cited in the Complaint the exact ones he saw and relied on, which he has failed to do. Mot. 18. This lack of specificity is exacerbated by the fact that those cited statements made materially different points at different times. *Tabler v. Panera LLC*, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020) ("problematic" that the complaint includes a number of representative advertisements with different language). The two cases LoSavio does cite do not help him. *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121 (N.D. Cal. 2014), is readily distinguishable because the alleged misrepresentation there was a simple one—that "all of the additional 20% charge over and above the 'metered fare' was a 'gratuity,'" *id.* at 1127—and not a long list of representations as here. And *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020), which LoSavio argues shows that "actual reliance [can be] inferred from the

misrepresentation of a material fact" (Opp. 18), is inapposite because the issue there was not whether plaintiffs sufficiently pled reliance under Rule 9(b), but whether plaintiffs had standing to bring the UCL and FAL claims, 966 F.3d at 1021. Whatever standard California law requires for UCL or FAL claims, federal law requires fraud claims to meet Rule 9(b). *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *7 (N.D. Cal. Jan. 4, 2018) (cited at Mot. 18). In any event, for the reasons stated above, there was no misrepresentation. *Supra* 5-7.[7]

Finally, LoSavio invokes *Tobacco II*'s "long-term marketing campaign" exception. Opp. 18-19. But that exception is "narrow and unavailable under the facts alleged." *Tabler*, 2020 WL 3544988, at *6. LoSavio's "failure to identify the specific advertisements upon which [he] relied renders impossible an assessment of whether the advertising campaign was extensive or pervasive." *Id.* at *10. In any event, the exception only applies when a campaign is sufficiently lengthy in nature to infer reliance, and LoSavio's allegations suggest the opposite—he bought his vehicle shortly after the alleged campaign started in late 2016. *See Haskin v. Symantec Corp.*, 2014 WL 2450996, at *2 (N.D. Cal. June 2, 2014) (purchase within two years of the alleged misleading marketing practice "falls well short of the 'decades-long campaign in *Tobacco II*'"). Nor does it apply when the advertisements are not sufficiently similar to each other, as they are not here. *Supra* 8.

### 2. The Complaint Fails To State Any Warranty Claim (Counts I-III)[8]

#### a) The express warranty claim fails

*First*, LoSavio has yet to articulate a "specific and unequivocal written statement" made by Tesla that could give rise to an express warranty. He claims that the "descriptive names, 'Autopilot,' 'Enhanced Autopilot,' and 'Full Self-Driving,' together with Tesla's and Musk's other public statements, constitute express warranties that the product has *or* will soon have full-self driving capability." Opp. 19-20 (emphasis added). That argument suffers several flaws. To begin, LoSavio cites no authority that considers a disjunctive phrase unequivocal enough to constitute an express

---

[7] LoSavio does not deny that he could not possibly have relied on any statements that postdate his purchase in January 2017. *Compare* Mot. 18 n.10 *and* Opp. 18-19.

[8] LoSavio has withdrawn the MMWA claim, and his request for leave to amend should not be entertained. *Infra* 15. In any event, he does not deny that his MMWA claim would rise or fall with his Song-Beverly Act claims. *Compare* Mot. 19 n.11 *and* Opp. 22 n.11.

warranty.  As Tesla explained and LoSavio does not deny, an express warranty must "undertake[] to *preserve or maintain*" a certain feature.  Mot. 19 (citing *Tipton v. Zimmer*, 2016 WL 3452744, at *6 (C.D. Cal. June 23, 2016)).  A statement saying that something "has or will soon have" a feature, or that something "will soon have" a feature in the unspecified future, clearly does not meet this standard.  But even assuming the alleged express warranty said that "[Tesla]'s ADAS packages [were] Level 4 or 5 technology" at the time of sale (Opp. 20), that construction is belied by the other pre-purchase statements on which LoSavio claims to have relied.  Mot. 5-6.  LoSavio's reliance on *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837 (N.D. Cal. 2019), is misplaced because that case did not involve qualifying statements that directly negate the plaintiff's construction of the label.  *See id.* at 848 ("check locally to recycle empty cup" does not render the other statement "recyclable" equivocal).  LoSavio also argues an express warranty could be formed based solely on the names of Tesla's ADAS technology because "inspection by the buyer is not possible and the seller knows the quality of the goods and the buyer does not."  Opp. 19-20.  That argument defies common sense—whether a car is fully autonomous or not *is* inspectable at the time of sale and thus presents a fundamentally different scenario than the two cases cited by LoSavio (Opp. 19)—one involving the label of "boned chicken" on a can and the other involving description of side effects on a vaccine's package insert.  *See Lane v. C.A. Swanson & Sons*, 130 Cal. App. 2d 210, 216 (1955); *Grinnell v. Charles Pfizer & Co.*, 274 Cal. App. 2d 424, 439-440 (1969).

Separately, LoSavio cannot rely on the three-minute-and-a-half video as a "sample" or a "model."  As Tesla explained, that video did not identify the model of the car, did not fit into the definition of "sample" or "model," and in any event did not suggest the car was fully autonomous.  Mot. 19-20.  LoSavio offers no response to any of those points.  Opp. 20.

*Second*, LoSavio has identified nothing promising fully autonomous capability as "part of the basis of the bargain," such as in "product manuals and other materials that are given to the buyer at the time of delivery."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1230 (2010) (Opp. 21).  Some of the statements he has identified were made years after he bought the car and therefore cannot possibly form the basis of his bargain with Tesla.  Compl. ¶ 137 (alleging that the vehicles and ADAS technology at issue "were not as warranted *when they left Tesla's factories, reached*

*Plaintiffs and Class members*") (emphasis added).  And where, as here, a plaintiff relies on "articles in [industry] journals, advertising and/or other documents and/or promotional materials," courts have declined to find that those sources "contained statements that [may constitute] 'part of the basis of the bargain.'"  *Frere v. Medtronic, Inc.*, 2016 WL 1533524, at *8 (C.D. Cal. Apr. 6, 2016).

*Third*, LoSavio concedes that he did not present his vehicle for repair, a prerequisite for bringing his express warranty claim.  *Compare* Mot. 20 *and* Opp. 21.  He argues instead that he was exempted from doing so because any repairs would be "futile."  Opp. 21.  Neither of his two cases (*id.*) discussed this "futility" argument.  *See Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 297-299, 303 (1995) (confirming that a manufacturer's duty under the warranty is triggered "if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts," which were supported by undisputed evidence); *Jiagbogu v. Mercedes-Benz USA*, 118 Cal. App. 4th 1235, 1245 (2004) (quoting § Cal. Civ. Code § 1793.22(b)(1), under which a *reasonable number* of repair attempts can be presumed when "a condition that is likely to cause death or serious bodily injury" occurs "within 18 months from delivery to the buyer or 18,000 miles on the odometer of the vehicle" *and* "if the vehicle is driven and the nonconformity has been subject to repair two or more times … and the buyer or lessee has at least once directly notified the manufacturer of the need for the repair of the nonconformity").  And this "futility" argument has repeatedly been rejected.  *See, e.g.*, *Stockinger v. Toyota Motor Sales USA Inc.*, 2017 WL 10574372, at *7 (C.D. Cal. July 7, 2017) (collecting cases from courts in the Ninth Circuit); *Arakelian v. Mercedes-Benz USA, LLC*, 2018 WL 6422649, at *3 (C.D. Cal. June 4, 2018) ("no court has ever held that futility actually provides an exception to the holding in *Silvio* [*v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1209 (2003)], that one repair attempt is never enough").  The express warranty claim fails.

### b)  The implied warranty claim fails

LoSavio fails to state an implied warranty claim based on either unmerchantability or unfitness because the one-year period set forth in section 1791.1(c) of the Song-Beverly Act limits both grounds, *see* Cal. Civ. Code 1791.1(c); *Mathison v. Bumbo*, 2008 WL 8797937, at *10 (C.D. Cal. Aug. 18, 2008), and the Complaint alleges no manifestation of unmerchantability or unfitness of LoSavio's vehicle during the one-year period.  LoSavio counters that *Mexia v. Rinker Boat Co.*,

*Inc.*, 174 Cal. App. 4th 1297 (2009) exempts him from the one-year limitation, but *Mexia*'s holding is limited to situations where latent unmerchantability existed at the point of purchase, *see Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 971 (C.D. Cal. 2014) (collecting cases) (cited at Mot. 21), and therefore does not apply to LoSavio's unfitness claim. Nor does *Mexia* help the unmerchantability claim because the Complaint identifies no "latent defect" at the time of sale; indeed, whether a car is fully autonomous is readily detectable at any time.

To the extent LoSavio's claim was premised on his allegation that his vehicle was unsafe at some unspecified time, that claim nonetheless fails because LoSavio does not allege that his own vehicle exhibited the alleged defect. Ignoring the cases cited by Tesla (Mot. 21-22), LoSavio cites *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018), and argues he is excused from making those specific allegations. Opp. 22. That argument misconstrues *Sloan*. There, the court held that the named plaintiffs "created a fact question for the jury regarding the reliability and safety of the vehicles" by "adequately [pleading] an unreasonable safety hazard." 287 F. Supp. 3d at 879. And the court found "an unreasonable safety hazard" was adequately pled because the plaintiffs adequately alleged the nature of the defect, the contributing factors to the alleged defect, and how the alleged defect could lead to the examples of injury. *Id.* at 869-870, 879. Here, the allegations identified by LoSavio (Opp. 22) are not even close—together, they fail to demonstrate the exact defect of the ADAS technology, the purported causes of that defect, or how the alleged defect led to each of the reported accidents.

The lack of any alleged personal incidents further undermines LoSavio's claim that his car is not fit for ordinary use. Mot. 21. Again ignoring Tesla's cases, LoSavio resorts to *Brand v. Hyundai Motor America*, 226 Cal. App. 4th 1538 (2014), and *McGee v. Mercedes-Benz USA, LLC*, 2020 WL 1530921 (S.D. Cal. Mar. 30, 2020), both of which prove Tesla's point. In *Brand*, the plaintiff had to "exit[] the highway" because the defective sunroof switch "caused tax returns and other documents to suddenly swirl about the cabin," 226 Cal. App. 4th at 1541; and in *McGee*, the court held that the plaintiff failed to raise a factual dispute on either unfitness or unmerchantability because he and his wife never experienced any problems with the allegedly defective airbag, 2020 WL 1530921, at *6. *McGee* further confirms that dismissal of the implied warranty claim is

warranted because LoSavio "[has] not claimed that [he] stopped using [his] vehicle." *Id.*; Mot. 21.[9]

## C. LoSavio's Claims Are Barred In Whole Or Part For Other Reasons

### 1. The Economic Loss Rule Bars The Common Law Claims (Counts VII-X)

LoSavio has failed to identify any "[Tesla]'s affirmative misrepresentation on which [he] reli[ed] *and* which expose[d] [him] to liability for personal damages independent of [LoSavio]'s economic loss." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004). In *Robinson*, a helicopter manufacturer sued a helicopter parts supplier for fraud and intentional misrepresentation after discovering that the supplier had provided false certificates of conformance and that the faulty products had exposed the plaintiff to "liability for personal damages if a helicopter crashed and to disciplinary action by the" Federal Aviation Administration. *Id.* at 991. By contrast, here, even assuming there were any misrepresentation on which LoSavio relied (and there was not, *supra* 5-7, 8-9), the Complaint fails to explain how the misrepresentation exposed LoSavio to any "independent" personal liability beyond his claimed economic loss. *See also Robinson v. J.M. Smucker Co.*, 2019 WL 2029069, at *5 (N.D. Cal. May 8, 2019) (Gilliam, J.).

LoSavio also argues that this case falls into the situation where "the means used to breach the contract are tortious." Opp. 23. But he has not identified any allegation showing that Tesla engaged in any independent tortious means beyond the alleged misrepresentation in breaching the so-called "warranty." The economic loss doctrine therefore does not apply.

### 2. The Unjust Enrichment Claim Should Be Dismissed (Count X)

LoSavio concedes that "Plaintiffs cannot ultimately recover under both contract and [unjust enrichment] theories," and says he is nonetheless allowed to plead in the alternative. Opp. 23. But that is not how he pleads (*see* Compl. ¶¶ 220-225), and his unjust enrichment claim should be dismissed because he "does not set up unjust enrichment as an alternative claim to any cause of action," *Holt v. Globalinx Pet, LLC*, 2013 WL 3947169, at *13 (C.D. Cal. July 30, 2013), or "identif[y] [any] allegations to support an alternative theory that no contractual remedy is available,"

---

[9] The unfitness claim also separately fails because LoSavio fails to allege a "particular purpose" for which he bought his Tesla vehicle and which "differs from the ordinary purpose for which the [car] [is] used." *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 877 (N.D. Cal. 2015) (collecting cases).

*Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*, 2022 WL 172315, at *6 (E.D. Cal. Jan. 19, 2022); *see also Beluca Ventures LLC v. Akiebolag*, 2022 WL 3579879, at *3-4 (N.D. Cal. Aug. 19, 2022).

### 3. LoSavio Cannot Obtain Equitable Relief (Counts II-VI, X)

LoSavio has abandoned his request for disgorgement; and he does not deny that his request for *retrospective* injunctive relief will fail where, as here, he does not plead any actionable misrepresentation or omission. *Compare* Mot. 24 *and* Opp. 23-25. His opposition argues only that he has sufficiently pleaded both inadequate legal remedy for his equitable relief requests *and* his standing for the injunctive relief request. Neither argument has merit.

On pleading sufficiency, contrary to LoSavio's assertion (Opp. 24), "[t]he issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) (cited at Mot. 23); *see also Nacarino v. KSF Acquisition Corp.*, 2022 WL 17178688, at *5 (N.D. Cal. Nov. 23, 2022) (similar). The two cases LoSavio cites discussed the former, not the latter.[10] Regardless, courts have rejected LoSavio's argument that he could sufficiently allege inadequate legal remedy based solely on some "continuing" alleged harm without "explain[ing] why those consumers could not sufficiently be 'made whole' by monetary damages." *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (cited at Mot. 23).

On standing, LoSavio fails to address that requests for prospective injunctive relief are dismissed, where, as here, a plaintiff fails to allege that he intends to purchase the accused products from the defendant again in the future. *Compare* Mot. 24 *and* Opp. 24. Thus, three of the four cases he cites (Opp. 24-25 & n.13)[11] are distinguishable because the plaintiffs in those cases indeed alleged so. Equally distinguishable is *Luong v. Subaru of America, Inc.*, 2018 WL 2047646 (N.D. Cal. May 2, 2018), where the plaintiffs sufficiently pled their standing by alleging that they "ha[d]

---

[10] *Edleson v. Travel Insured Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021); *Wildin v. FCA USA, LLC*, 2018 WL 3032986, at *7 & n.4 (S.D. Cal. June 19, 2018)

[11] These distinguishable cases are *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018); *Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *3 (N.D. Cal. Nov. 9, 2018).

an interest in Subaru providing non-defective replacements for their windshields in their current vehicles." *Id.* at \*6. Here, the crux of LoSavio's claims is that his vehicle will never become fully autonomous, *see* Opp. 3 (asserting that "Tesla has never been remotely close to achieving Level 4 or 5 technology"); *id.* at 21 (asserting that any "repair" of the alleged defect "would have been futile"), so he cannot show how any prospective injunctive relief would prevent him from suffering any "imminent or actual threat of *future* harm."

### 4. The Court Lacks Jurisdiction Over The MMWA Claim (Count I)

LoSavio "concede[s] that the Court lacks jurisdiction over [the] MMWA class claim because it is brought by fewer than 100 plaintiffs," but asks for leave to amend. Opp. 22 n.11. His request is unsupported and indeed runs afoul of case law from this Circuit, including cases postdating *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020), and therefore should not be entertained.[12]

### 5. The Warranty Claims And Any Damages-Based CLRA Claim (Counts I-III, V) Should Separately Be Dismissed For Lack Of Pre-Suit Notice

LoSavio concedes that he fails to allege that he gave Tesla any pre-suit notice and that failure dooms his Song-Berkely Act and MMWA claims. *Compare* Mot. 25 *and* Opp. 25. He argues only that notice is not required for his CLRA claim because he does not seek damages under that claim. His position contradicts the request for monetary relief sought by Imaguchi (one of the other Plaintiffs) for compensation for "all injuries caused by Tesla's misrepresentation of the capabilities of Class Vehicles resulting in Class Members' harm, including costs associated with the repair needed to ensure Class Vehicle functionality and safety, and restitution of all monies paid for the sales price of the Class Vehicles and diminished value of the Class Vehicles." Thus, should LoSavio decide to join that request, he is foreclosed from doing so. *DeNike v. Mathew Enter., Inc.*, 76 Cal. App. 5th 371, 379-380 (2022) ("action for damages" under the CLRA covers restitution).

## III. CONCLUSION

The Court therefore should grant Tesla's Motion (ECF No. 30).

---

[12] *See, e.g.*, *Wong v. Am. Honda Motor Co., Inc.*, 2022 WL 3696616, at \*5 (C.D. Cal. June 21, 2022) (without leave to amend); *Ashton v. J.M. Smucker Co.*, 2020 WL 8575140, at \*14 (C.D. Cal. Dec. 16, 2020) (same); *Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1169 (C.D. Cal. 2019) (citing *Patterson v. RW Direct, Inc.*, 2018 WL 6106379, at \*2 (N.D. Cal. Nov. 21, 2018)) (same, noting in particular that amendment would be futile).

Respectfully submitted,

Dated: January 12, 2023

WILMER CUTLER PICKERING
   HALE AND DORR LLP

By:   */s/ Alan Schoenfeld*
        Alan Schoenfeld

*Attorneys for Defendants Tesla, Inc., Tesla
Lease Trust, Tesla Finance LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2023, I electronically filed the above document and supporting documents with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: January 12, 2023                    By:    */s/ Alan Schoenfeld*
                                                        Alan Schoenfeld