# Exhibit 29



November 20, 2020                                                                                           *Via Email Only*

Miguel Acosta
Chief, Autonomous Vehicles Branch
California Department of Motor Vehicles
Registration Operations Division
P.O. Box 825393 (MS S441)
Sacramento, CA 94232-5393

**Re: City Streets – Pilot Release**

Dear Mr. Acosta:

Thank you for your letter on November 10 that posed questions about the FSD – City Streets feature. Your letter builds off several discussions with your office, including a recent demo of the feature on November 13. We address your questions below.

For context, and as we've previously discussed, City Streets continues to firmly root the vehicle in SAE Level 2 capability and does not make it autonomous under the DMV's definition. City Streets' capabilities with respect to the object and event detection and response (OEDR) sub-task are limited, as there are circumstances and events to which the system is not capable of recognizing or responding. These include static objects and road debris, emergency vehicles, construction zones, large uncontrolled intersections with multiple incoming ways, occlusions, adverse weather, complicated or adversarial vehicles in the driving path, unmapped roads. As a result, the driver maintains responsibility for this part of the dynamic driving task (DDT). In addition, the driver must supervise the system, monitoring both the driving environment and the functioning of City Streets, and he is responsible for responding to inappropriate actions taken by the system. The feature is not designed such that a driver can rely on an alert to draw his attention to a situation requiring response. There are scenarios or situations where an intervention from the driver is required but the system will not alert the driver. In the case of City Streets (and all other existing FSD features), because the vehicle is not capable of performing the entire DDT, a human driver must participate, as evidenced in part through torque-based steering wheel monitoring, or else the system will deactivate.

In addition, as with all other existing FSD features, prior to piloting City Streets to customers, the feature went through rigorous internal development, testing, and validation to ensure that it operates in a manner that is completely controllable by the driver. This includes accounting for appropriate driver engagement. The same hands-on-wheel requirements to use Autopilot carryover to using City Streets. If the driver ignores the prompts to remain attentive, the alerts will escalate until the driver



Tesla, Inc.
3500 Deer Creek Road, Palo Alto, CA 94304

strikes out and Autopilot disengages. Before opening the pilot, we explained to each non-employee driver the feature's capability, how to use it, its limitations, and their responsibility when using it.

1. *For this release of Tesla Navigate on Autopilot on City Streets, is the default approach of the vehicle slowing and stopping at an intersection until the driver approves continuing forward maintained for surface streets?*

No. The vehicle is designed to stop for traffic lights, stop signs, and other road markings at controlled intersections. The vehicle will not slow or stop at every intersection by default, and the driver is expected to supervise the crossing of such intersections.

2. *If the above default has been maintained, what constraint is in place to limit how early the driver's approval is given, to minimize the danger that a driver authorizes the vehicle to go through a light that changes to red after the authorization signal is given?*

In the pilot release, the driver does not approve travel through each intersection. The vehicle will approach controlled intersections as explained in the Traffic Light and Stop Sign Control ("Stops") section in the owner's manual, which is attached for convenience.

3. *Is a constraint in place when driving on surfaces streets that requires the driver to steer around a corner at an intersection, rather than the vehicle?*

When City Streets is engaged, the feature, together with Autosteer, will center the vehicle in the lane of travel through the intersection, whether straight through or as a left- or right-turn. If the driver does not apply steering wheel torque, the system will not continue to operate.

4. *What would happen in an urban street environment if Autopilot goes through an uncontrolled intersection where other road users (vehicles, cyclists, or pedestrians) may be crossing? Does Tesla apply any speed reductions to give the system a better possibility of detecting and responding to such hazards?*

By default, Autopilot is limited to 5 mph over the detected or mapped speed limit of the road. Applying additional speed reductions does not necessarily improve object detection because speed and detection are dependent on a multitude of factors. More importantly, we designed Autopilot to brake for objects in the vehicle's driving path to mitigate the kind of risk that your question suggests. If a cyclist or pedestrian veers into the vehicle's driving path, Autopilot is designed to react accordingly irrespective of speed. In addition, the driver is expected to continuously monitor the environment and act as a fallback in the case of a system performance failure.

5. *The owner's manual states that with the Traffic Light and Stop Sign Control system enabled, the vehicle assumes it has the right of way and proceeds through an intersection with a side road without hesitation. Does the system have a sufficient field of view to detect vehicles or cyclists who could be entering its path from the side road, the way an attentive driver would?*

Autopilot's field of view is 360°. When Stops is engaged, the vehicle will assume right of way and not slow or stop at intersections with no traffic control unless the vehicle detects an object in its driving path. Autopilot is designed to predict the paths of other objects and respond to those in path or expected to be in path, including stationary and crossing objects; however, path prediction is complex and can be incorrect, which is why the driver is expected to supervise and intervene when necessary.

6. *The owner's manual states that the Traffic Light and Stop Sign Control system may not recognize a T-junction that does not have a stop sign or stop line. What is being done to force driver engagement or attentiveness in this scenario?*

In the Stops section in the owner's manual, we are very explicit about the feature's limitations and the driver's responsibility. If Stops cannot recognize a T-junction because the junction does not have a stop sign or stop line or is not identified as a T-junction in the map data, then the vehicle may not stop. As such, the owner's manual correctly warns the driver that the vehicle may not stop at an unknown or unrecognizable T-junction and to be attentive and ready to intervene if necessary.

7. *The owner's manual states to not use Autosteer on city streets, in construction zones, or in areas where bicyclists or pedestrians may be present. This indicates that the Traffic Light and Stop Sign Control system should not be used with Autosteer, since the former's use cases would be on urban and residential streets with cyclists and pedestrians. Based on this information, why does the description of the Navigation on Autopilot system contain several references to Autosteer usage?*

Updating the owner's manual to account for the small handful of non-employee drivers in the pilot would have created unnecessary confusion for the rest of our customer fleet. Instead, we contacted each non-employee driver in the pilot and explained how to use City Streets, its limitations, and their responsibility when using it. When the pilot is complete and we are ready to release City Streets to all qualifying customer vehicles, then we will update the owner's manual accordingly.

\*   \*   \*

We look forward to continued collaboration with the DMV on this and other matters. If you have any questions or wish to discuss further, please feel free to contact me at erwilliams@tesla.com.

Sincerely,

*[signature: Eric C. Williams]*

Eric C. Williams

Associate General Counsel, Regulatory

3