FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
NABILAH A. HOSSAIN (SBN 329689)
nhossain@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
NICHOLAUS H. WOLTERING (SBN 337193)
nwoltering@bottinilaw.com
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Fax: (858) 914-2002

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
JEREMY ROBINSON (SBN 188325)
jrobinson@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
MICHAEL J. MORPHEW (SBN 304463)
mmorphew@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation**<br><br><br>*This Filing Relates To All Actions* | Case No. 4:22-cv-05240-HSG<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Date:   June 29, 2023<br>Time:  2:00 p.m.<br>Room: Courtroom 2, 4th Floor |

**<u>TABLE OF CONTENTS</u>**

I.  INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ....................................................................................................................... 2

    A.  Plaintiffs Are Entitled to a Preliminary Injunction ................................................ 3

        1.  Tesla's "Threshold" Arguments Are Meritless. ........................................ 3

        2.  Plaintiffs Are Likely to Succeed on the Merits.........................................4

        3.  Irreparable Injury Is Likely Absent an Injunction. ...................................7

        4.  The Balance of Hardships and Public Interest Factors Strongly Favor Plaintiffs. ............. 10

    B.  The Court Should Provisionally Certify the Class............................................... 13

    C.  The Requested Relief is Necessary and Appropriate........................................... 14

III.  CONCLUSION ................................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019) ...................................................................................3

6
7

*Brod v. Sioux Honey Ass'n Co-op.*,
   927 F.Supp.2d 811 (N.D. Cal. 2013) .......................................................................5

8

*Brown v. Ent. Merch. Ass'n*,
   564 U.S. 786 (2011) ...............................................................................................10

9
10

*Capriole v. Uber Techs., Inc.*,
   7 F.4th 854 (9th Cir. 2021) ......................................................................................3

11

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1998) .................................................................................10

12
13

*Central Hudson Gas v. Public Serv. Comm'n*,
   447 U.S. 557 (1980)..........................................................................................3, 10

14
15

*Cmty. House, Inc. v. City of Boise*,
   490 F.3d 1041 (9th Cir. 2007) ...............................................................................10

16

*Coe v. Gen. Mills, Inc.*,
   2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) .........................................................6

17
18

*Colgan v. Leatherman Tool Grp., Inc.*,
   135 Cal.App.4th 663, *rev. denied* (2006) .............................................................12

19
20

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*,
   4 Cal.App.4th 963 (1992) ...................................................................................9, 12

21

*CTIA - The Wireless Ass'n v. City of Berkeley*,
   928 F.3d 832 (9th Cir. 2019) .................................................................................11

22
23

*Cuviello v. City of Vallejo*,
   944 F.3d 816 (9th Cir. 2019) ...................................................................................9

24
25

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ...................................................................................4

26

*Doe v. Snyder*,
   28 F.4th 103 (9th Cir. 2022) ..................................................................................15

27
28

*In re Excel Innovations, Inc.*,
   502 F.3d 1086 (9th Cir. 2007) ...............................................................................10

*Exeltis USA Inc. v. First Databank, Inc.*,
  2017 WL 6539909 (N.D. Cal. Dec. 21, 2017)...................................................................9

*Farar v. Bayer AG*,
  2017 WL 5952876 (N.D. Cal. Nov. 15, 2017) ...................................................................4

*Fernandez v. Atkins Nutritionals, Inc.*,
  2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ........................................................................6

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*,
  356 F.Supp.2d 1048 (N.D. Cal. 2005)...............................................................................9

*First Resort, Inc. v. Herrera*,
  860 F.3d 1263 (9th Cir. 2017) .........................................................................................10

*People ex rel. Gascon v. Homeadvisor, Inc.*,
  49 Cal.App.5th 1073 (2020).............................................................................................11

*Goldstein v. GM LLC*,
  2022 WL 484995 (S.D. Cal. Feb. 16, 2022) ......................................................................4

*Hadley v. Kellogg Sales Co.*,
  273 F.Supp.3d 1052 (N.D. Cal. 2017)...............................................................................7

*Hadley v. Kellogg Sales Co.*,
  324 F.Supp.3d 1084 (N.D. Cal. 2018)..............................................................................14

*iCall, Inc. v. Tribair, Inc.*,
  2012 WL 5878389 (N.D. Cal. Nov. 21, 2012) .................................................................15

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ...........................................................................................12

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)......................................................................................14

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
  114 F.Supp.3d 852 (N.D. Cal. 2015).............................................................................6, 7

*LeGrand v. Abbott Labs.*,
  2023 WL 1819159 (N.D. Cal. Feb. 8, 2023) ......................................................................5

*Maney v. Brown*,
  516 F. Supp.3d 1161 (D. Or. 2021) ...................................................................................9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009) ...........................................................................................15

*McGill v. Citibank, N.A.*,
  2 Cal.5th 945 (2017)..........................................................................................................3

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                    iii

*Morales v. Kraft Foods Grp., Inc.*,
    2016 WL 11743532 (C.D. Cal. Dec. 2, 2016) ..................................................5

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ..................................................10

*Nationwide Biweekly Admin., Inc. v. Owen*,
    873 F.3d 716 (9th Cir. 2017) ..................................................10, 11

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*,
    762 F.2d 1347 (9th Cir. 1985) ..................................................9

*Org. for a Better Austin v. Keefe*,
    402 U.S. 415 (1971) ..................................................10

*People v. Toomey*,
    157 Cal.App.3d 1 (1984) ..................................................11

*Rogers v. Lyft, Inc.*,
    452 F.Supp.3d 904 (N.D. Cal. 2020) ..................................................3

*In re S.C. Johnson & Son*,
    2021 WL 3191733 (N.D. Cal. July 28, 2021) ..................................................4, 6

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018) (Gilliam, J.) ..................................................4

*Sears Roebuck & Co. v. FTC*,
    676 F.2d 385 (9th Cir. 1982) ..................................................6, 10

*In re Standard Oil of California*,
    84 F.T.C. 1401 (1974) ..................................................6

*In re StubHub Refund Litig.*,
    2022 WL 1028711 (N.D. Cal. Apr. 6, 2022) ..................................................3

*Sultanis v. Champion Petfoods USA Inc.*,
    2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ..................................................5

*Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*,
    609 F.3d 975 (9th Cir. 2010) ..................................................3

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    2021 WL 5915060 (N.D. Cal. Dec. 10, 2021) ..................................................4

*Turner v. Apple, Inc.*,
    2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ..................................................4

*U.S. v. Schiff*,
    269 F.Supp.2d 1262 (D. Nev. 2003) ..................................................11

*United States v. Gear Box Z Inc.*,
   526 F.Supp.3d 522 (D. Ariz. 2021) ......................................................................8, 9

*United States v. Philip Morris USA Inc.*,
   855 F.3d 321 (D.C. Cir. 2017)..................................................................................11

*California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*,
   766 F.2d 1319, *as modified by* 775 F.2d 998 (9th Cir. 1985)................................12

*Walker v. Nestle USA, Inc.*,
   2020 WL 3317194 (S.D. Cal., June 17, 2020) .........................................................6

*Warner-Lambert Co. v. FTC*,
   562 F.2d 749 (D.C. Cir. 1977), *cert. denied*, 435 U.S. 950 (1978) ..................11, 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .................................................................................5, 6

*Young v. Tesla, Inc.*,
   2022 WL 3355832 (D.N.M. Aug. 15, 2022) ............................................................7

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985)............................................................................................10, 11

**Statutes**

Bankruptcy Act..........................................................................................................10

**Rules**

Federal Rules of Civil Procedure:

    Rule 23(a) ............................................................................................................13

    Rule 23(b)(2) ...........................................................................................13, 14, 15

    Rule 65(c) .............................................................................................................12

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG
v

## I.   <u>INTRODUCTION</u>

Tesla's opposition to Plaintiffs' Motion for Preliminary Injunction ("Motion") rests on an interpretation of the term "full self-driving" that only a lawyer could devise. Tesla admits that its Level 2 Full Self Driving Capability ("FSD") system is "not autonomous" and should *never* be relied on to go anywhere without the "active and constant [] supervision" of a hypervigilant human driver who pays "*extra* attention," uses "*additional* caution," "*always* maintain[s] control," and is "prepared to act *immediately*" because FSD is "inconsistent," "may do the wrong thing at the worst time," and drivers can "[n]ever depend" on it. Opp. 1:13, 5:13, 7:16, 7:26-27, 8:8, 12:7-8 (emphases added); *see also id.* 8:19 (using FSD requires "a higher level of vigilance"). Nevertheless, Tesla argues it is still entirely accurate for it to market FSD as making cars "fully self-driving" because the system can, after all, literally "drive" the car by making it go forwards and backwards, left and right, and do some other things too. *Id.* 1:5-10, 5:13-16. Tesla argues that just because FSD cannot *safely* or *reliably* drive the car does not mean that its name is deceptive, or that it does not make cars "fully self-driving."

Nonsense. When a major vehicle manufacturer uses the term "self-driving" (not to mention "fully self-driving") to describe technology intended for consumer use on public roadways, it implies the technology has a reasonable level of technological competency, reliability, and safety. Whatever that level is, it does not include technology that drives cars at high speed into emergency vehicles, tractor trailers, or overturned box trucks, suddenly veers toward concrete walls, or slams on the brakes at highway speed for no apparent reason. *See* Mot. at 2:8-12, 5:27-6:1, 11:22-23, 15:20-23, 20:21-24. Nor does it include defects like those identified in the recent NHTSA FSD recall (Ex. 16; Mot. at 12), disregarding flashing school bus stop signs and injuring children (Ex. 129), causing multi-vehicle pile-ups by stopping on the highway for no apparent reason (Exs. 102-104), or otherwise driving with the "decision-making … of a 14-year-old who has been learning to drive for the last week and sometimes appears to consume hard drugs" (Ex. 98 at 3).

Obviously, this is not a reasonable interpretation of the phrase "full self-driving," or what the phrase conjures up in the mind of the average consumer. Nor is it the image of FSD that Musk and Tesla have been painting for decades. *See, e.g.*, Opp. 1:4, 2:9, 4:19 (lavishing FSD with praises, such as "ground-breaking," "revolutionary," and "cutting edge"). Like its marketing of FSD, much of

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                                1

1   Tesla's response rests on alternative facts and Tesla expecting the world to accept things based on

2   nothing more than its own say-so. As Plaintiffs' evidence including the supplemental declarations

3   submitted with this reply demonstrate, the same Tesla practices that have previously deceived

4   Plaintiffs and so many others pose a continual danger to the public. The significant threat of physical

5   harm will continue unless Tesla's conduct is immediately enjoined.

6   **II.    ARGUMENT**

7           Tesla's Opposition is filled with false and unsupported. Starting with the false claims, Tesla

8   asserts FSD can already perform "*all* the functions associated with operating a vehicle." Opp. 5:14.

9   Setting aside that FSD can perform many of these functions only *poorly*, there are numerous everyday

10  "situations" and "conditions" in which Tesla admits FSD will likely "falter," or will be "particularly

11  unlikely" or unable to perform. Opp. 7:4-10; 8:19-20; Opp. Ex. K at 71, 82, 87, 89, 91, 101, 102

12  (vehicle manual) (in "bright light," when "objects [are] partially in a driving lane," etc.). Equally false

13  is Tesla's insistence that it "has always made clear … the [FSD] vehicles are not autonomous." Opp.

14  1:10-13. Plaintiffs' voluminous evidence shows the opposite.

15          Then there are the claims unsupported by any evidence, such as the purported "safety" benefits

16  of FSD. Tesla repeats like a mantra that FSD is a "safety-enhancing technology" that offers

17  unspecified "safety advancements," which make FSD "arguably safer than manual driving," based on

18  unspecified "aggregate statistics." Opp. 3:9, 12:24, 18:17, 23:21. Tesla goes on to assert that FSD even

19  "reduce[s] accidents, injuries, and deaths," and that yet more unspecified analyses of undisclosed data

20  show that "cars using FSDC are [] many times less likely to be in accidents." Opp. 2:10, 2:14-15; *see*

21  *also id.* at 3:26 (asserting Autopilot "reduc[es] human error"). Remarkably, Tesla cites no evidence to

22  support any of these assertions.[1] Yet it uses them to repeatedly argue, also without evidence, that

23  temporarily deactivating FSD would somehow "make vehicles less safe." *See, e.g.*, Opp. 2:26, 18:3,

24  20:24-25. At one point, Tesla even implies that deactivating FSD might reduce safety by also

25  deactivating Tesla's "active safety features" warning systems (i.e., blind spot warning, collision

26  warning, and automatic emergency braking). Opp. 4 n.1. But those features *come standard on all*

27  _____

28  [1] Tesla interweaves a series of claims about the "top safety ratings" of Tesla *vehicles*, but those are
    irrelevant because Plaintiffs do not challenge the safety of Tesla *vehicles*, but rather the safety of
    Tesla's *ADAS software*. *See, e.g.*, Opp. 2:9-11, 3:18, 6:4, 18:9; Opp. Exs. L-O.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                    2

*Tesla vehicles* and, thus, are not part of the optional, add-on FSD software suite. *See* Opp. Ex. C at 2.[2]

One last example: Tesla argues its "hands-on" Autopilot system is like autopilot in aviation, but the

latter has long "provide[d] for 'hands off' flight." Ex. 120 at 10-1-1; *accord* Ex. 117 at 4.

**A.     Plaintiffs Are Entitled to a Preliminary Injunction**

    **1.     Tesla's "Threshold" Arguments Are Meritless.**

    ***Arbitration.*** Tesla argues that four Plaintiffs (Battiato, Broussad, Imaguchi, and Mallow)

agreed to arbitration and therefore cannot seek public injunctive relief in this Court. This argument

fails for the same reasons discussed in Plaintiffs' Opposition to the MTC/D (ECF 37 at 5-10), two of

which merit mention here. First, Tesla's arbitration clause (even if valid) provides that the parties are

*not* agreeing to arbitrate claims for public injunctive relief: "The arbitrator cannot hear class or

representative claims or requests for relief on behalf of others," which impliedly "must be brought in

court." ECF 30-8 at 4. Second, binding California law provides a categorical rule (i.e., the *McGill* rule)

that arbitration agreements cannot divest a court of jurisdiction over claims for *public* injunctive relief

under the CLRA, FAL, and UCL. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019)

(citing *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017)); *In re StubHub Refund Litig.*, 2022 WL

1028711, at *1-2 (N.D. Cal. Apr. 6, 2022) (Gilliam, J.). Tesla's arbitration arguments are therefore

irrelevant to Plaintiffs' Motion.[3]

    ***Statutes of Limitations.*** Tesla's limitations argument, which focuses exclusively on Plaintiff

LoSavio, fails for two reasons. First, Tesla ignores its prior concession that all other Plaintiffs' CLRA,

FAL, and UCL claims *are* timely. *See* ECF 30 at 10 n.6 (Tesla conceding its time-bar argument for

these claims "applies to LoSavio only"). As for LoSavio claims, Tesla's argument fails because

multiple delayed accrual and tolling doctrines apply, as Plaintiffs have argued. *See* ECF 37 at 10-14.

---

[2] To the extent those active safety features are technically part of the Autopilot system (which also comes standard on all new cars), the requested relief does not affect Autopilot. *See* Ntc. Mot. ¶¶ 2, 4.

[3] Tesla's two cited cases (*see* Opp. 14:9-15) are easily distinguishable because they do not concern *public* injunctive relief (to which the *McGill* rule applies), but rather *private* injunctive relief sought by a party bound to arbitration. *See Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 978, 980 (9th Cir. 2010); *Rogers v. Lyft, Inc.*, 452 F.Supp.3d 904, 912, 920-21 (N.D. Cal. 2020) (rejecting plaintiffs' request to "sidestep" motion to compel arbitration in employment action seeking paid sick leave, where plaintiffs "dubious[ly]" pled their claim for a private injunction as a UCL claim for a public injunction); *accord Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 871 (9th Cir. 2021) (discussing this aspect of *Rogers*).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                                      3

1    **Standing.** Tesla's standing argument (Opp. 14-15) again ignores Ninth Circuit precedent in

2    *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018). *See* Opp. to the MTC/D

3    ECF 37 at 24-25; *see also Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 528 (N.D. Cal.

4    2018) (Gilliam, J.). Under *Davidson*, a consumer plaintiff's past deception gives her standing so long

5    as it impacts her future purchase or use of the product. *See Turner v. Apple, Inc.,* 2022 WL 445755, at

6    *4 (N.D. Cal. Feb. 14, 2022). Here, Plaintiffs' detailed declarations—which Tesla ignores—amply

7    show that they were previously deceived by Tesla's FSD claims,[4] can no longer rely on what Tesla

8    says about FSD's abilities and limitations, and would purchase a *truly* self-driving car from Tesla in

9    the future if they could regain their trust in Tesla's self-driving claims.[5] This establishes Plaintiffs'

10   standing, both as *current* Tesla and FSD and as potential *future* customers who cannot rely on Tesla's

11   claims about their future self-driving products. *See Davidson*, 889 F.3d at 969-70; *see also In re S.C.*

12   *Johnson & Son,* 2021 WL 3191733, at *3-5 (N.D. Cal. July 28, 2021) (Gilliam, J.); *Farar v. Bayer*

13   *AG*, 2017 WL 5952876, at *9 (N.D. Cal. Nov. 15, 2017).

14       Finally, Plaintiffs also have standing to seek injunctive relief requiring Tesla to notify FSD

15   owners of the NHTSA recall, and to remedy the NHTSA-identified defects. Ntc. Mot. ¶¶ 2, 4, 5; *see,*

16   *e.g.*, *In re Toyota RAV4 Hybrid Fuel Tank Litig.,* 2021 WL 5915060, at *18 (N.D. Cal. Dec. 10, 2021)

17   (observing plaintiffs "would likely have standing to pursue an injunction seeking to repair the Vehicles

18   if Toyota's ongoing repair efforts prove unsatisfactory"); *Goldstein v. GM LLC*, 2022 WL 484995, at

19   *8 (S.D. Cal. Feb. 16, 2022) (plaintiffs had standing to seek injunction "compelling Defendant to

20   reform its warranty to cover the injury alleged and to notify all Class Members").

21       **2.    Plaintiffs Are Likely to Succeed on the Merits.**

22       Ironically, Tesla's Opposition offers some of the best evidence yet that an injunction is

23   warranted, and that Plaintiffs are likely to prevail on the merits of their CLRA, FAL, and UCL claims.

24   Tesla concedes that its ADAS technology does not make cars "autonomous" (*e.g.*, Opp. 1:13, 16:11),

25   and further concedes that it ADAS technology does not make cars "self-driving" or "fully self-

26   driving" under any reasonable interpretation of those terms by ordinary consumer. Tesla advances a

---

[4] *See* ECF 42-9, Ex. B ¶¶ 3-7 (Broussard); ECF 42-10, Ex. C ¶¶ 3-6 (Imaguchi); ECF 42-11, Ex. D ¶¶ 3, 5-7 (LoSavio); ECF 42-12, Ex. E ¶¶ 2-5 (Mallow).

[5] *See* ECF 42-8, Ex. A ¶¶ 4-8 (Battiato); ECF 42-9, Ex. B ¶¶ 8-11, 14 (Broussard); ECF 42-10, Ex. C ¶¶ 7-9, 11 (Imaguchi); ECF 42-11, Ex. D ¶ 8, 10-12 (LoSavio); ECF 42-12, Ex. E ¶¶ 16-11 (Mallow).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                    4

1  tortured interpretation of "self-driving" that no reasonable consumer would anticipate. *See supra* § II.

2  Nor does Tesla explain what meaning the word "fully" adds, and why a reasonable consumer would

3  not interpret "*fully* self-driving" to be synonymous with "autonomous." After all, a vehicle cannot get

4  more self-driving than *fully* self-driving.

5  To the extent Tesla actually expects ordinary consumers to know that the company has its own

6  idiosyncratic meanings for the terms "autopilot," "self-driving," "fully self-driving," and

7  "autonomous," and that none of them except the latter mean the car can reasonably drive itself, this is

8  not a reasonable position under California law. As Tesla's own cases show, the standard is whether its

9  conduct is "likely to deceive" a "reasonable consumer," *Williams v. Gerber Prods. Co.*, 552 F.3d 934,

10  938 (9th Cir. 2008), with an "ordinary mind[]," *Brod v. Sioux Honey Ass'n Co-op.*, 927 F.Supp.2d 811,

11  828 (N.D. Cal. 2013), and who "is not necessarily [] particularly sophisticated." *Sultanis v. Champion*

12  *Petfoods USA Inc.*, 2021 WL 3373934, at *8, 10 (N.D. Cal. Aug. 3, 2021) (rejecting view that

13  defendant's peculiar definition of "Free-run chicken" would be known to ordinary consumers).

14  "The ultimate question under the UCL, FAL, and CLRA is not how the industry defines [a

15  particular term]; it is whether the reasonable consumer is likely to be deceived by the phrase." *Morales*

16  *v. Kraft Foods Grp., Inc.*, 2016 WL 11743532, at *13 (C.D. Cal. Dec. 2, 2016). Tesla's strained

17  argument that its interpretation of "self-driving" is technically "accurate" because FSD does "drive"

18  the car in a literal sense (Opp. 1:14), even if somehow plausible, does nothing to help its position

19  because accuracy is not the standard. *See LeGrand v. Abbott Labs.*, 2023 WL 1819159, at *10 (N.D.

20  Cal. Feb. 8, 2023) ("While statements such as '#1 Doctor Recommended Brand' and 'With Nutrients

21  for Immune System Support' may be accurate, that does not prevent them from creating a false

22  impression of health when read in the context of the packaging"); *Sultanis*, 2021 WL 3373934, at *11

23  ("the fact that the Products contain some wild-caught fish does not mean that the statement "brimming

24  with wild-caught fish" is not misleading"). Tesla's interpretation of "self-driving" in its Opposition

25  dooms its position, and makes clear Plaintiffs are highly likely to prevail on this issue.

26  To avoid this outcome, Tesla points to the various disclaimers on its website, vehicle manuals,

27  and in-vehicle pop-up messages and alerts, almost none of which are seen by consumers before buying

28  FSD. Such an argument—i.e., that Tesla can give its products misleading names and Musk can say

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                                    5

1   whatever he wants regarding FSD, so long as disclaimers are available elsewhere—is contrary to

2   California law. Just as consumers are not required to "look beyond misleading representations on the

3   front of the box to discover the truth from the ingredient list in small print on the side of the box,"

4   *Williams*, 552 F.3d at 939-40; *accord Coe v. Gen. Mills, Inc.*, 2016 WL 4208287, at *5 (N.D. Cal.

5   Aug. 10, 2016), consumers are not required to go to a company website in search of disclaimers, or to

6   read vehicle manuals cover-to-cover to discover the truth.[6] Moreover, when a seller's representation

7   conveys more than one meaning to reasonable consumers, one of which is deceptive, the seller is

8   liable for that deception. *See, e.g.*, *Sears Roebuck & Co. v. FTC*, 676 F.2d 385, 387-88 (9th Cir. 1982)

9   (advertising about dishwasher deceptive even though contradicted by owner's manual); *In re Standard*

10  *Oil of California*, 84 F.T.C. 1401, 1471 (1974) (ad about cleaner air or emissions reduction, paired

11  with unqualified statements such as "no dirty smoke", created uncertainty about qualifications).

12  Moreover, unlike Tesla, Plaintiffs provide evidence that reasonable and even highly-educated

13  consumers have been deceived by Tesla's FSD representations. *See* Mot. at 10:14-23.

14       Finally, Tesla claims it has never promised that "Tesla vehicles either were full autonomous or

15  would become fully autonomous within a definite period of time," Opp. 15, but rather all their detailed

16  and concrete FSD projections (i.e., about when FSD would achieve Level 4 or Level 5, complete fully

17  autonomous cross-country trips, become robotaxis, and much more, *see, e.g.*, Mot. at 7:23-25 & n.2)

18  were merely Tesla "explaining its plans and aspirations to its customers." Opp. 16. This is not a

19  serious argument, given that Musk has repeatedly claimed that achieving objective benchmarks like

20  Level 4 or 5 was just around the corner, giving concrete projections, often with "100%" and other high

21  degrees of confidence. *See* Mot. at 7-9 & n.2. Moreover, California courts reject that "aspirational

22  statements are immune from liability under the false advertising laws." *L.A. Taxi Coop., Inc. v. Uber*

23  *Techs., Inc.*, 114 F.Supp.3d 852, 860 (N.D. Cal. 2015) (rejecting argument that advertising including

24  vague, aspirational phrases that defendant "is committed to," "works hard to," or is "doing everything

25

26  _____

    [6] *See Walker v. Nestle USA, Inc.*, 2020 WL 3317194, at *3 (S.D. Cal., June 17, 2020) ("Even if the
    website contained sufficient information to dispel the allegedly deceptive message on the product
27  labels … this would not undermine Plaintiff's claims."); *Fernandez v. Atkins Nutritionals, Inc.*, 2018
    WL 280028, at *8 n.6 (S.D. Cal. Jan. 3, 2018) ("misleading statement on a product label" cannot be
28  cured by "a further explanation of the statement on the manufacturer's website."); *accord In re S.C.
    Johnson & Son*, 2021 WL 3191733, at *3-5 (Gilliam, J.).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                    6

1  we can to," automatically shields defendant from false advertising liability). Even aspirational or

2  hedgy statements such as those in *L.A. Taxi* can be actionable if they contribute to the overall

3  deceptiveness of the product. *Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1085, 1089 (N.D. Cal.

4  2017). Further, Tesla's statements were significantly more concrete than those in *L.A. Taxi*.[7]

5         **3.**       **Irreparable Injury Is Likely Absent an Injunction.**

6         Tesla's deceptive claims about FSD's abilities and limitations have and will continue to pose a

7  significant danger to class members and the public. Appropriate injunctive relief, including stopping

8  use of the misleading FSD label and informing drivers their vehicles are not self-driving, is necessary

9  to mitigate this ongoing threat. The public continues to be deceived about FSD's abilities, as shown by

10  ever more examples of drivers over-relying on FSD, despite Tesla's contradictory warnings to drivers

11  that they must "constantly supervise" their "fully self-driving" vehicle.

12         This risk is not "speculative" or "too attenuated" as Tesla contends, but one that continues to

13  grow. As one example among many, since this Motion was filed, Tesla's long-standing "phantom

14  braking" problem has continued to generate scores of NHTSA complaints from Tesla owners who

15  experienced potentially threatening life-threatening incidents due to this obvious failure of Tesla's

16  ADAS technology.[8] Just days before this reply brief was filed, a 2022 Tesla Model Y disregarded a

17  school bus's flashing stop sign and struck and injured a teenage student. Exs. 128-129. This is in

18  addition to other recent accidents, some fatal, with glaring links to Tesla's ADAS technology. S*ee, e.g.*,

19  Exs. 17, 103-105, 108-109. As for the NHTSA recall defects, Tesla has offered the Court only vague

20  and inconsistent assurances, without any supporting evidence, that it already issued either one or

21  multiple software updates (Tesla's assurances vary) that either "remedied" or merely "began" to

22  remedy the defects (again, it varies).[9] Whatever Tesla's exact representation is, Plaintiffs'

---

[7] *Young v. Tesla, Inc.*, 2022 WL 3355832 (D.N.M. Aug. 15, 2022), cited by Tesla, is distinguishable because it did not involve false advertising claims. *See id.*, at *7.

[8] *See, e.g.*, Ex. 121 at 4 (Apr. 8, 2023 NHTSA complaint) ("at random times the vehicle will slam on the brakes although there is nothing in front of it. It has happened with vehicles behind me and I averted multiple crashes by luck"); Ex. L ¶ 15 (Freeman) (15 incidents); Ex. M ¶ 8 (Wiley); Ex. N ¶ 8 (Mallow); Ex. O ¶ 11 (Imaguchi); Ex. P ¶ 9 (Valdovinos); *see generally* Exs. 94, 122-123, 127.

[9] *Compare* Opp. 18:22-23 ("Tesla deployed *an* over-the-air fix"), *id.* at 19:27-28 (recall "was remedied in March [2023] with *an* over-the-air update"), *id.* at 2:19 (same), *with id.* at 9:9-10 ("Tesla *began* deploying an over-the-air update" with "changes addressing [the] recall" in March 2023); *id.* at 10:7 ("Tesla *began* deploying those over-the-air software improvements by March 6, 2023").

1    supplemental declarations cast doubt on the issuance of any such software update.[10]

2         In response to this untenable situation, Tesla argues that the evidence in this case amounts to

3    only a few accidents and a single NHTSA recall with no definitive FSD connection. Opp. 18:11-19:2.

4    Its position ignores the mountain of facts presented by Plaintiffs. In addition to evidence of incidents

5    with obvious ADAS connections, discussed above, this evidence also includes: (1) several NHTSA

6    investigations and recalls of Tesla's ADAS technology (Exs. 7, 9, 11, 16-17, 94, 108-110, 122-123);

7    (2) NHSTA data showing Tesla's ADAS technology has been responsible for approximately 70% of

8    the hundreds of ADAS-involved crashes in the U.S. (Ex. 126); (3) Plaintiff and declarant testimony of

9    their own experience with Tesla's ADAS deception and defective technology;[11] (4) countless

10   examples of FSD failing to safely execute routine maneuvers (*e.g.*, Exs. 77, 85, 91-92, 96, 98);

11   (5) studies showing large numbers of consumers think cars can already drive themselves, and that

12   drivers over-rely on the capabilities of over-hyped ADAS systems (Exs. 1, 112-113); (6) Tesla and

13   Musk's unrelenting false claims that Tesla is on the cusp of perfecting FSD (*see* Mot. at 7-9 & n.2);

14   (7) Tesla's still-published sham demonstration video (*id.* at 6:17-7:8); and (8) the several state and

15   federal investigations into Tesla's deceptive marketing of its ADAS technology (*id.* at 12:7-15). Tesla

16   tries to distract by pointing to the "top safety ratings" of its *vehicles*, but none of those vehicle safety

17   ratings concern the safety of FSD or Autopilot. *See supra* § II.

18        Interestingly, Tesla cites none of its own authority to argue that Plaintiffs' requested relief is

19   improper. Instead, it simply tries to pick off the cases cited by Plaintiffs by distinguishing them. For

20   example, Tesla argues the *Playskool* case is irrelevant because "none of [Tesla's] representations [are]

21   misleading." Opp. 19:11-12. But just like the *Playskool* defendant, Tesla has *conceded* its labeling is

22   false by admitting that FSD does not make cars "self-driving" (much less "fully self-driving") under

23   any reasonable definition of that phrase. Tesla also attempts to distinguish *United States v. Gear Box Z*

24   *Inc.,* 526 F.Supp.3d 522 (D. Ariz. 2021), as arising from a unique situation in which the defendant was

---

[10] *See, e.g.*, Ex. 121 at 36 (Mar. 27, 2023) (FSD regularly 30-35 MPH under or over the posted speed limit); Ex. L ¶ 16 (Freeman) (no software update or notice after NHTSA recall); Ex. M ¶ 9 (Wiley) (same); Ex. N ¶ 9 (Mallow) (same); Ex. O ¶ 12 (Imaguchi) (same); Ex. P ¶ 10 (Valdovinos) (same).
[11] *See* ECF 42-9, Ex. B ¶¶ 7-12 (Broussard); ECF 42-10, Ex. C ¶¶ 7-10 (Imaguchi); ECF 42-12, Ex. E ¶¶ 6-9 (Mallow); ECF 42-13, Ex. F ¶¶ 8-9 (Cornetti); ECF 42-14, Ex. G ¶¶ 8-11 (Foreman); ECF 42-15, Ex. H ¶¶ 7-10 (Meyer); ECF 42-16, Ex. I ¶¶ 7-10 (Thomas); ECF 42-17, Ex. J ¶¶ 7-11 (Valdovinos); ECF 42-18, Ex. K ¶¶ 9-12 (Wiley).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                 8

1  enjoined from continuing to sell a product despite a "concluded" EPA investigation find the product

2  unlawful. Opp. 19:16. But *Gear Box* never mentions a "concluded" investigation, but only that the

3  EPA had issued an administrative "Notice of Violation" regarding the product. That makes clear how

4  analogous the facts of *Gear Box* are here, where Tesla's ADAS technology is the subject of numerous

5  investigations and recalls, including official recalls issued by another federal agency, NHTSA. In sum,

6  Tesla's false advertising is causing a serious threat to human health or safety, meriting the kind of

7  injunctive relief courts can and often do impose in such situations. *See Consumers Union of U.S., Inc.*

8  *v. Alta-Dena Certified Dairy,* 4 Cal.App.4th 963, 972-74 (1992) (collecting cases).

9  Tesla has three final arguments. First, it argues Plaintiffs' several month "delay" in filing this

10  Motion (i.e., about 4.5 months after filing the CAC) is somehow disqualifying. Opp. 19-20. In addition

11  to ignoring that "delay is only one factor among many what we consider in evaluating … irreparable

12  harm," *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019), Tesla's argument ignores that

13  Plaintiffs' three primary reasons for bringing the Motion when they did was due to recent events that

14  all occurred after the CAC was filed: Tesla's enormous expansion of FSD to hundreds of thousands of

15  drivers in late November 2022, the unprecedented nationwide FSD recall in February 2023, and recent

16  instances of Musk's continuing misrepresentations. Considering the recall occurred in mid-February

17  2023, there was virtually no delay in bringing this complex Motion. Tesla's cited cases are irrelevant,

18  as they all involve years-long delays in business disputes with no threat to human health or safety. *See*

19  *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1347, 1378 (9th Cir. 1985); *First Franklin*

20  *Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F.Supp.2d 1048, 1055 (N.D. Cal. 2005).

21  Second, Tesla argues Plaintiffs cannot seek injunctive relief based on irreparable harm to class

22  members. Opp. 20 (referring to class members as "third parties"). Not so. Tesla's reliance on *Exeltis*

23  *USA Inc. v. First Databank, Inc.*, 2017 WL 6539909 (N.D. Cal. Dec. 21, 2017), is sorely misplaced

24  because that case was not a class action, but a business dispute brought by a vitamin manufacturer to

25  protect its own interests, and who improperly argued irreparable harm to the public. *Id.*, at *9-10. By

26  contrast, in class actions, courts consider harm to class members, not just named plaintiffs, in the

27  irreparable injury analysis. *See, e.g.*, *Maney v. Brown*, 516 F. Supp.3d 1161, 1182-83 (D. Or. 2021).

28  Finally, Tesla argues the Motion is improper because Plaintiffs' false advertising claims only

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                9

1  concern "whether they overpaid for their vehicles." Opp. 17:24. This ignores Plaintiffs' allegations

2  and arguments. *See* CAC ¶¶ 12, 114, 167, 18, 198; Mot. at 22:4-15.[12]

3  **4.    The Balance of Hardships and Public Interest Factors Strongly Favor Plaintiffs.**

4  On the last two *Winters* factors, Tesla makes four arguments, all of which fail.

5  ***First Amendment.*** Despite effectively conceding that FSD does not make cars fully self-

6  driving, Tesla claims a First Amendment right to continue its false advertising on the theory that any

7  injunction would be a "prior restraint" on its speech that must satisfy strict scrutiny. Opp. 22:4-21.[13]

8  Not true. "The Constitution affords *no* protection to false or misleading commercial speech." *First*

9  *Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017) (emphasis added); *accord Sears Roebuck*

10  *& Co. v. FTC*, 676 F.2d 385, 399 (9th Cir. 1982) ("no first amendment protection whatsoever");

11  *Central Hudson Gas v. Public Serv. Comm'n*, 447 U.S. 557, 560 (1980) (same, and further noting that

12  "government may ban forms of communication more likely to deceive the public than to inform it").

13  Thus, the First Amendment poses *no* obstacle to this Court prohibiting Tesla from using the FSD name

14  and the descriptors "self-driving" and "autonomous" (Ntc. Mot. ¶ 1) if the Court finds that those

15  names and descriptors are likely to deceive the public.

16  The same is true of requiring Tesla to inform its customers about the NHTSA recall and any

17  false advertising findings from this Court. *See* Ntc. Mot. ¶¶ 3, 5. These would be mandated disclosures

18  subject only to "rational basis review" under *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626

19  (1985). *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 732 (9th Cir. 2017) (applying

20  *Zauderer* to uphold law requiring disclosures in mortgage advertising). In *Zauderer*, which upheld a

21  law requiring certain disclosures in attorney advertising, the U.S. Supreme Court established the

22

23  [12] Tesla's remaining cases are distinguishable. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093-
   94 (9th Cir. 2007) (Bankruptcy Act case where the usual preliminary injunction standard was

24  inapplicable and "court does not need to demonstrate … irreparable harm"); *Caribbean Marine Servs.*
   *Co., Inc. v. Baldrige*, 844 F.2d 668 (9th Cir. 1998) (decision based on finding of speculation).

25  [13] Tellingly, Tesla's cited cases all involve speech that, unlike the speech here, is entitled to heightened

26  First Amendment protection because it concerns matters of politics, religion, and artistic expression.
   *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2378 (2018) (invalidating law

27  related to abortions); *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 793-94 (2011) (invalidating ban on
   sale of "violent" video games to minors); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419-20

28  (1971) (vacating injunction related to protests); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041,
   1056-57 (9th Cir. 2007) (enjoining Establishment Clause related to exercise of religion).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                    10

1   guiding principle in this area of the law that "the extension of First Amendment protection to

2   commercial speech is justified principally by the value to consumers of the information such speech

3   provides." 471 U.S. at 651. Thus, a business's "constitutionally protected interest in *not* providing any

4   particular factual information in [its] advertising is minimal," and the State has correspondingly broad

5   authority to mandate disclosures in advertising and labeling "to dissipate the possibility of consumer

6   confusion or deception." *Id*. Under the *Zauderer* test, mandated disclosures—including court-ordered

7   corrective statements—are constitutional so long as they (1) contain "purely factual and

8   uncontroversial information"; (2) are not "unduly burdensome," and (3) are "reasonably related to

9   the State's interest in preventing deception of consumers." *Id.* The limited factual disclosures that

10  Plaintiffs seek here easily satisfy those minimal requirements.[14]

11       ***Financial Burden.*** Tesla's argument that it will incur significant costs, including to its

12  reputation and goodwill, if required to cease its false advertising of FSD and issue corrective

13  statements (Opp. 21:13-22) warrants no weight. Courts routinely require corrective statements

14  regardless of the impact on goodwill or reputation. *See Nationwide Biweekly*, 873 F.3d at 732 (noting

15  corrective advertising relief is proper regardless of whether it "harms the [defendant's] reputation,"

16  "disturbs the … [defendant's] customers," or "discourages [consumers] from purchasing the product

17  or service at issue"); *People ex rel. Gascon v. Homeadvisor, Inc.*, 49 Cal.App.5th 1073, 1087 (2020)

18  (rejecting constitutional arguments and upholding preliminary injunction barring defendant's false

19  advertising of its pregnancy counseling services); *U.S. v. Schiff*, 269 F.Supp.2d 1262, 1276 (D. Nev.

20  2003) (rejecting constitutional challenges to preliminary injunction enjoining defendant's advertising

21  of abusive tax scheme). Additionally, Tesla's notion of a *no-reputational-harm* injunction is both an

22  oxymoron, and also contrary to the FAL, CLRA, and UCL's shared purpose of "deter[ring] the

23  defendant and others from engaging in such practices in the future." *People v. Toomey*, 157

24

---

25  [14] *See, e.g.*, *United States v. Philip Morris USA Inc.*, 855 F.3d 321, 326, 328 (D.C. Cir. 2017)
    (applying *Zauderer* to uphold validity of corrective statement on cigarette packs that begins "A

26  Federal Court has ordered…"); *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 761, 763-64 (D.C. Cir.
    1977), *cert. denied*, 435 U.S. 950 (1978) (upholding FTC order requiring company to cease false

27  claims that its mouthwash prevents colds, and to include corrective statements in its next $10 million
    of advertising); *see also CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 848 (9th Cir.

28  2019) (applying *Zauderer* to uphold ordinance compelling cell phone retailers to make additional
    human-health-related disclosures beyond those required by the FCC).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                    11

Cal.App.3d 1, 20 (1984); *accord Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 695, 701-02, *rev. denied* (2006) (requiring defendant to publicize its false advertising in 50+ publications as within California courts' "broad authority … to fashion a remedy to deter" future false advertising).[15]

Similarly baseless are Tesla's vague and unsupported assertions that an injunction should not issue because it would impose on Tesla costs that are "unreasonably high" and even "devastating." Opp. 21:5, 21:22-23. Tesla provides no explanation or evidence of how much these costs would be, and no supporting case law. Nor is it plausible that the limited injunctive relief Plaintiffs seek would be "devastating" to a $585 billion company. *See* https://www.nasdaq.com/market-activity/stocks/tsla. Tesla's related argument that the Court require Plaintiffs to post a bond under Rule 65(c), Opp. 21 n.7, should therefore be rejected.[16]

**Plaintiffs' Harm.** Tesla's argument that Plaintiffs will suffer no harm absent an injunction ignores Plaintiffs' overwhelming evidence of the threat of injury to Plaintiffs, class members, and the broader public. *See* Mot. at 19-21. First, Plaintiffs, class members, and the public would all benefit from barring Tesla from continuing to deceptively market its ADAS systems as making cars "autonomous" or "self-driving," including by prohibiting Tesla from using the deceptive FSD name. Ntc. Mot. ¶ 1. This is particularly true considering Plaintiffs' declaration testimony that they would purchase another Tesla if the company were to develop technology that actually made its vehicles autonomous or self-driving, but that they cannot currently rely on Tesla's claims.[17] Second, without an injunction, Plaintiffs and the public will continue to be at increased risk of death or serious bodily

---

[15] *See also Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal.App.4th 963, 970, 972-73 (1992) (affirming FAL and UCL injunction adding product warning to correct present effects of defendant's years of false advertising that product was "safer" and "superior to" similar products); *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 761 (D.C. Cir. 1977) (not combatting "the impression built up by prior [false] advertising … would [itself] be unfair and deceptive.").

[16] Rule 65(c) gives courts "discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Dispensing with a bond is appropriate when "requiring security would effectively deny access to judicial review," particularly when the likelihood of success on the merits favors little or no bond. *California ex rel. Van de Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325, *as modified by* 775 F.2d 998 (9th Cir. 1985). Here, Plaintiffs are ordinary consumers who should not be required to post security, they are highly likely to prevail on the merits, and granting injunctive relief is in the public interest. The Court should thus exercise its discretion to dispense with requiring a bond.

[17] *See* ECF 42-8, Ex. A ¶¶ 4-5, 8 (Battiato); ECF 42-9, Ex. B ¶¶ 11, 14 (Broussard); ECF 42-10, Ex. C ¶¶ 8-9, 11 (Imaguchi); ECF 42-11, Ex. D ¶ 12 (LoSavio); ECF 42-12, Ex. E ¶¶ 10-11 (Mallow).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1  harm from drivers continuing to over-rely on FSD to drive their cars for them, and from unremedied

2  FSD defects that Tesla has suggested it might have fixed, but without adequate explanation or any

3  evidence. *See supra* § II.A.3 & n.9. Moreover, Tesla has a history of falsely asserting that fatal FSD

4  flaws have been fixed only for the same problem to later cause additional deaths and injuries. *See* Mot.

5  at 11:25-12:1-5. This makes it appropriate for the Court to verify Tesla's representations of remedies,

6  and order other related relief. *See* Ntc. Mot. ¶¶ 6-7. By contrast, denying injunctive relief would leave

7  millions of people (360,000 FSD owners and the public) at continuing risk of death and injury.

8      ***Public Interest.*** Immediate injunctive relief is strongly in the public interest. *See* Mot. at 22: 4-

9  15. Tesla's argument once again ignores Plaintiffs' overwhelming evidence of: (1) Tesla's continuing

10  false and deceptive marketing of FSD's purported abilities, as well as the continuing and pervasive

11  effects of its past marketing on consumers (*id.* at 4-9); (2) consumers' continued reliance on this

12  marketing (*id.* at 9-10); and (3) scores of fatal and other serious accidents resulting from drivers' over-

13  reliance on Tesla's unsafe, unreliable, and defective ADAS systems (*id.* at 10-12). The public interest

14  factor thus strongly favors entering the requested relief. *See infra* § II.C; Ntc. Mot. ¶¶ 1-7

15  **B.  The Court Should Provisionally Certify the Class.**

16      In their Motion, Plaintiffs showed that provisional certification of the proposed Rule 23(b)(2)

17  class was appropriate. *See* Mot. at 22-25. In response, Tesla makes three arguments, all of which fail.

18      ***Rule 23(a).*** First, Tesla argues Plaintiffs cannot adequately represent "everyone" who owns a

19  car with FSD because, according to Tesla, many of those owners would not want Plaintiffs' requested

20  relief of deactivating FSD until known safety defects are remedied (*see* Ntc. Mot. ¶ 4), and that this

21  creates an insuperable conflict between those class members and Plaintiffs. Not so. For starters, Tesla

22  ignores that the primary thrust of the requested relief is to prohibit Tesla and Musk from "continuing

23  their false and deceptive claims about Tesla's [ADAS] technology," including their claims that the

24  company's technology makes vehicles "autonomous" or "self-driving." Ntc. Mot. at 1, ¶ 1. Tesla

25  cannot plausibly argue that any class member has a lawful interest in Tesla continuing to make these

26  false and deceptive claims, or that any class member would be harmed by receiving a purely factual

27  notice about the NHTSA recall or false advertising findings made by this Court. *See id.* ¶¶ 3, 5.

28      Second, to the extent any class members might object to a *temporary* pause in new FSD sales

1   and further use of FSD until the safety defects identified by NHTSA are remedied (Ntc. Mot. ¶¶ 2, 4,

2   6(b), 7(c)), it is not a legitimate objection that class members would be harmed by their temporary

3   inability to use an *unsafe* technology on public roadways while known defects remain unremedied.

4   That is particularly true here, where Tesla has offered the Court only vague and inconsistent

5   assurances, without evidence, that it has issued a fix. *See supra* § II.A.3 & n.9. Tesla's appeals to

6   freedom of choice for consumers interested in purchasing FSD ignore that many of those consumers

7   will be deceived into making that purchase, just like Plaintiffs and other declarants. *See* Mot. at 10. In

8   sum, Tesla's speculative argument fails to show that any class member who is aware of Tesla's false

9   advertising and FSD's defects would object to a temporary pause in new FSD sales and trips. Until

10  FSD's defects are remedied, class members and the public should be protected from the serious

11  hazards posed by the use of this defective and unreliable technology on public roadways.

12      ***Rule 23(b)(2).*** Tesla also argues Plaintiffs cannot satisfy Rule 23(b)(2), because Tesla has not

13  acted on grounds generally applicable to the class. Opp. 24-25. But this argument is just a rehash of

14  Tesla's demonstrably false merits position that it has never deceptively represented its ADAS

15  technology. Tesla's other argument, which raises differences in what each Plaintiff saw and relied on,

16  is irrelevant to the class certification analysis, which "does not consider whether each class member

17  saw and relied on each of the Challenged Statements and in what combination, but instead whether the

18  Challenged Statements were used consistently through the Class Period, supporting an inference of

19  classwide exposure, and whether the Challenged Statements would be material to a reasonable

20  consumer." *Hadley v. Kellogg Sales Co.*, 324 F.Supp.3d 1084, 1095 (N.D. Cal. 2018); *accord*

21  *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-64 (N.D. Cal. 2020).

22  **C.      The Requested Relief is Necessary and Appropriate.**

23      Plaintiffs seek necessary and tailored injunctive relief to stem the significant increase in risk to

24  public safety due the recent events of Tesla's enormous FSD expansion, the NHTSA recall and Tesla's

25  ongoing lack of transparency about the remedy, and Tesla's continuing deceptive claims. The relief

26  sought is tailored to these developments. It includes ordering Tesla to stop making false and deceptive

27  claims about its ADAS technology (Ntc. Mot. ¶ 1), to provide class members with purely factual

28  corrective statements and other information *incidental* to that relief (*id.* ¶¶ 3, 5, 6(a)), and to

1    *temporarily* pause new sales and uses of FSD until the NHTSA-identified defects are conclusively

2    remedied (*id.* ¶¶ 2, 4, 6(b), 7(c)), as well as further necessary and incidental relief (*id.* ¶¶ 6(c), 7-9).

3              In an attempt to paint Plaintiffs as unreasonable, Tesla mischaracterizes Plaintiffs as seeking

4    relief that would, for example, "ban[]" FSD, "effectively shut down Tesla's FSD advancements," and

5    "dismantle Tesla's self-driving program." Opp. 1:17, 3:6, 12:23-24. Tesla similarly attacks the relief

6    as "requiring it to make major modification to its products." *Id.* at 2:25-26. None of this is true. *See*

7    Ntc. Mot. ¶¶ 1-9. Tesla also incorrectly contends that the relief sought—every aspect of it,

8    apparently—is a "highly disfavored" mandatory injunction. *See*, *e.g.*, Opp. 1:19-21, 3:10-12, 12:23,

9    13:9-19. Tesla bases its argument on a case law snippet describing a mandatory injunction as one that

10   "orders the responsible party to take action," *id.* at 13:10, which Tesla lifts from a clearly

11   distinguishable case in which preliminary injunction sought was denied for numerous reasons,

12   including because it "was identical to the ultimate relief sought." *Doe v. Snyder*, 28 F.4th 103, 110-11

13   (9th Cir. 2022). A more instructive case is *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &*

14   *Co.*, 571 F.3d 873, 879 (9th Cir. 2009), where a two-part preliminary injunction ordering the defendant

15   to cease manufacturing and distributing a dietary supplement was deemed prohibitory, while the part

16   compelling the defendant to recall already-distributed supplements was deemed mandatory for going

17   well beyond simply "preserv[ing] the status quo." *Id.* at 878; *see also iCall, Inc. v. Tribair, Inc.*, 2012

18   WL 5878389, at *4 (N.D. Cal. Nov. 21, 2012) (similar).

19             Here, Plaintiffs seek relief that is neither the same nor substantially the same as the relief they

20   would seek at the end of the case. Rather, Plaintiffs seek prohibitory relief, summarized above, that is

21   intended to "preserve[] the status quo." *Marlyn*, 571 F.3d at 878. To the extent this Court disagrees

22   and concludes that some of the relief sought is more mandatory in nature, Plaintiffs still meet the

23   heightened standard for obtaining such relief because their evidence amply shows that the product at

24   issue poses "a substantial risk of danger to the public." *Id.* at 879.

25   **III.     CONCLUSION**

26             For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion

27   provisionally certify the proposed class under Rule 23(b)(2), and enter a preliminary injunction as set

28   forth in Plaintiffs' Notice of Motion and proposed order.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiffs' Reply ISO Motion for Preliminary Injunction and Provisional Class Certification
Case No. 4:22-cv-05240-HSG                                                                          15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  April 12, 2023

**COTCHETT, PITRE & McCARTHY, LLP**

By:    */s/ Frank M. Pitre*
          FRANK M. PITRE

*Attorneys for Plaintiffs Thomas LoSavio,*
*Brenda Broussard, and the Proposed Class*

Dated:  April 12, 2023

**BOTTINI & BOTTINI, INC.**

By:    */s/ Francis A. Bottini, Jr.*
          FRANCIS A. BOTTINI, JR.

*Attorneys for Plaintiff Dominick Battiato*
*and the Proposed Class*

Dated:  April 12, 2023

**CASEY GERRY SCHENK FRANCAVILLA**
**BLATT & PENFIELD, LLP**

By:    */s/ Gayle M. Blatt*
          GAYLE M. BLATT

*Attorneys for Plaintiffs Christopher Mallow,*
*Jazmin Imaguchi, and the Proposed Class*

**<u>ATTORNEY ATTESTATION</u>**

I, Frank M. Pitre, am the ECF User whose ID and password are being used to file Plaintiffs' Reply in Support of Motion for Preliminary Injunction and Provisional Class Certification. In compliance with Civil Local Rule 5-l(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.

Dated:  April 12, 2023

By:   *<u>/s/ Frank M. Pitre</u>*
　　　Frank M. Pitre