1   David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
2   WILMER CUTLER PICKERING
     HALE AND DORR LLP
3   350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
4   Tel: (213) 443-5312

5   Alan Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
6   WILMER CUTLER PICKERING
     HALE AND DORR LLP
7   7 World Trade Center
250 Greenwich Street
8   New York, New York 10007
Tel: (212) 937-7294
9

10  Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
    WILMER CUTLER PICKERING
11     HALE AND DORR LLP
2600 El Camino Real, Suite 400
12  Palo Alto, California 94306
Tel: (650) 858-6000
13

*Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC*
14

15          **UNITED STATES DISTRICT COURT**

16   **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| 17 | CASE NO.: 3:22-cv-5240-RFL |
| 18 | **DEFENDANTS TESLA, INC., TESLA LEASE TRUST, AND TESLA FINANCE LLC'S MOTION TO DISMISS CONSOLIDATED SECOND AMENDED COMPLAINT** |
| 19 IN RE TESLA ADVANCED DRIVER ASSISTANCE SYSTEMS LITIGATION | |
| 20 | |
| 21 | |
| 22 | Hon. Rita F. Lin |
| 23 | Date: February 27, 2024 Time: 10:00 a.m. |
| 24 | Courtroom 15 – 18th floor Second Amended Consolidated Complaint |
| 25 | Filed: October 30, 2023 |
| 26 | |
| 27 | |
| 28 | |

1

## <u>TABLE OF CONTENTS</u>

2
**Page**

3
NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

4
MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

INTRODUCTION ............................................................................................................................. 1

5
BACKGROUND ............................................................................................................................... 1

6
ARGUMENT ..................................................................................................................................... 3

7
I.      LOSAVIO'S CLAIMS REMAIN TIME-BARRED ................................................................. 4

8
        A.      The Statute Of Limitations Remains Expired For All LoSavio's Claims ............... 4

        B.      LoSavio Still Fails To Establish Any Tolling Exception ........................................ 6

9
II.     ALL THE CLAIMS SOUND IN FRAUD AND FAIL TO MEET RULE 9(B) ................. 8

10
III.    THE WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS I & II) ............... 11

11
        A.      The Warranty Claims Fail Due To The Lack Of Pre-Suit Notice ........................ 11

        B.      Even If LoSavio Had Provided The Pre-Suit Notice, The SAC Fails To

12
                Allege Any Warranty Claim .................................................................................. 11

13
                1.      The Express Warranty Claim Fails ........................................................... 11

                2.      The Implied Warranty Claim Fails ............................................................ 12

14
IV.     LOSAVIO FAILS TO SUFFICIENTLY PLEAD AN UNJUST ENRICHMENT CLAIM

15
        (COUNT IX) ..................................................................................................................... 14

16
V.      LOSAVIO CANNOT OBTAIN EQUITABLE RELIEF (COUNTS I-V) ...................... 14

CONCLUSION .............................................................................................................................. 15

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**FEDERAL CASES**

4

*Acedo v. DMAX, Ltd.*,

5

2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) ..........................................................................14

6

*Adams v. Cole Haan, LLC*,

7

2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ............................................................................15

8

*Alvarez v. Chevron Corp.*,

9

656 F.3d 925 (9th Cir. 2011) ......................................................................................................11

10

*Amans v. Tesla, Inc.*,

11

2022 WL 2952474 (N.D. Cal. July 26, 2022) ..............................................................................8

12

*In re Apple Processor Litig.*,

13

2022 WL 2064975 (N.D. Cal. June 8, 2022) .............................................................................15

14

*In re Arris Cable Modem Consumer Litig.*,

15

2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ..................................................................................8

16

*Becerra v. Gen. Motors LLC*,

17

241 F. Supp. 3d 1094 (S.D. Cal. 2017) ......................................................................................12

18

*Bettles v. Toyota Motor Corp.*,

19

645 F. Supp. 3d 978 (C.D. Cal. 2022)..........................................................................................5

20

*Bird v. First Alert, Inc.*,

21

2014 WL 7248734 (N.D. Cal. Dec. 19, 2014) ...........................................................................15

22

*Bohnak v. Marsh & McLennan Cos., Inc.*,

23

580 F. Supp. 3d. 21 (S.D.N.Y. 2022).........................................................................................15

24

*Brownfield v. Jaguar Land Rover N. Am. LLC*,

25

584 F. App'x 874 (9th Cir. 2014)...............................................................................................12

26

*Cepelak v. HP Inc.*,

27

2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ...........................................................................15

28

*Cervantes v. City of San Diego*,

    5 F.3d 1273 (9th Cir. 1993) ............................................................................................6

*Clark v. Am. Honda Motor Co., Inc.*,

    2021 WL 4260232 (C.D. Cal. Sept. 14, 2021) ...............................................................12

*Clemens v. DaimlerChrysler Corp.*,

    534 F.3d 1017 (9th Cir. 2008) ........................................................................................6

*Corzine v. Whirlpool Corp.*,

    2016 WL 6476172 (N.D. Cal. Nov. 2, 2016) .................................................................14

*Diaz v. Wells Fargo Bank*,

    2015 WL 7180617 (N.D. Cal. Nov. 16, 2015) .................................................................5

*Doe v. Epic Games, Inc.*,

    435 F. Supp. 3d 1024 (N.D. Cal 2020) .........................................................................14

*Dougherty v. Bank of Am., N.A.*,

    177 F. Supp. 3d 1230 (E.D. Cal. 2016) ..........................................................................4

*Drake v. Toyota Motor Corp.*,

    2021 WL 2024860 (C.D. Cal. May 17, 2021) .................................................................5

*Enea v. Mercedes-Benz USA, LLC*,

    2019 WL 402315 (N.D. Cal. Jan. 31, 2019) ..................................................................8

*Fish v. Tesla*,

    2022 WL 1552137 (C.D. Cal. May 12, 2022) ...............................................................12

*Guerrero v. Gates*,

    442 F.3d 697 (9th Cir. 2006) ..........................................................................................7

*Herremans v. BMW of N. Am. LLC*,

    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) .................................................................11

*Hutchins v. Bank of Am., N.A.*,

    2014 WL 722098 (N.D. Cal. Feb. 25, 2014) ..................................................................6

*Kacsuta v. Lenovo (United States) Inc.*,

    2013 WL 12126775 (C.D. Cal. July 16, 2013) .............................................................13

*Lukovsky v. City & Cnty. of S.F.*,

    535 F.3d 1044 (9th Cir. 2008).................................................................................................7

*Lusson v. Apple, Inc.*,

    2016 WL 6091527 (N.D. Cal. Oct. 19, 2016)........................................................................10

*Mance v. Mercedes-Benz USA*,

    901 F. Supp. 2d 1147 (N.D. Cal. 2012) ................................................................................11

*Mandani v. Volkswagen Grp. of Am.*,

    2019 WL 3753433 (N.D. Cal. Aug. 8, 2019)..........................................................................8

*Mandani v. Volkswagen Grp. of Am., Inc.*,

    2020 WL 3961975 (N.D. Cal. July 13, 2020) .....................................................................4, 6

*Maneely v. Gen. Motors Corp.*,

    2108 F.3d 1176 (9th Cir. 1997) .............................................................................................12

*Marchante v. Sony Corp. of Am.*,

    801 F. Supp. 2d 1013 (S.D. Cal. 2011) .................................................................................13

*Mathison v. Bumbo*,

    2008 WL 8797937 (C.D. Cal. Aug. 18, 2008) ......................................................................13

*Peterson v. Mazda Motor of Am., Inc.*,

    44 F. Supp. 3d 965 (C.D. Cal. 2014).....................................................................................13

*Plumlee v. Pfizer, Inc.*,

    2014 WL 695024 (N.D. Cal. Feb. 21, 2014)...........................................................................4

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,

    944 F.2d 597 (9th Cir. 1991).................................................................................................15

*Richardson v. Reliance Nat'l Indem. Co.*,

    2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ...........................................................................9

*Robie v. Trader Joe's Co.*,

    2021 WL 2548960 (N.D. Cal. June 14, 2021) .......................................................................15

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*,

    965 F. Supp. 2d 1141 (E.D. Cal. 2013).................................................................................11

1   *Shum v. Intel Corp.*,

2      2008 WL 4414722 (N.D. Cal. Sept. 26, 2008)............................................................11

3   *Sloan v. Gen. Motors LLC*,

4      2017 WL 3283998 (N.D. Cal. Aug. 1, 2017)..............................................................11

5   *Sonner v. Premier Nutrition Corp.*,

6      971 F.3d 834 (9th Cir. 2020)......................................................................................15

7   *Sparks-Magdaluyo v. New Penn Fin., LLC*,

8      2017 WL 3534992 (N.D. Cal. Aug. 16, 2017)..............................................................5

9   *Srinvasan v. Kenna*,

10      2019 WL 1118123 (N.D. Cal. Mar. 11, 2019)..............................................................8

11   *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,

12      992 F. Supp. 2d 962 (C.D. Cal. 2014)........................................................................13

13   *Tait v. BSH Home Appliances Corp.*,

14      2011 WL 3941387 (C.D. Cal. Aug. 31, 2011)............................................................11

15   *Taleshpour v. Apple Inc.*,

16      2021 WL 1197494 (N.D. Cal. Mar. 30, 2021)..............................................................8

17   *Taragan v. Nissan N. Am., Inc.*,

18      2013 WL 3157918 (N.D. Cal. June 20, 2013) ......................................................13, 14

19   *Tipton v. Zimmer*,

20      2016 WL 3452744 (C.D. Cal. June 23, 2016)............................................................12

21   *Ward v. Pickett*,

22      2013 WL 5496549 (N.D. Cal. Oct. 3, 2013)................................................................8

23   *Watkins v. MGA Ent., Inc.*,

24      550 F. Supp. 3d 815 (N.D. Cal. 2021) ......................................................................14

25   *Williams v. Tesla, Inc.*,

26      2021 WL 2531177 (N.D. Cal. June 21, 2021)..............................................................6

27   *Wilson v. Hewlett-Packard Co.*,

28      668 F.3d 1136 (9th Cir. 2012)....................................................................................10

*Young v. Tesla, Inc.*,

    2022 WL 3355832 (D.N.M. Aug. 15, 2022) ........................................................................9

**STATE CASES**

*Am. Suzuki Motor Corp. v. Superior Court*,

    37 Cal. App. 4th 1291 (1995)........................................................................................13

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,

    169 Cal. App. 4th 116 (2008)..........................................................................................6

*Kline v. Turner*,

    87 Cal. App. 4th 1369 (2001)..........................................................................................5

*Mocek v. Alfa Leisure, Inc.*,

    114 Cal. App. 4th 402 (2003)........................................................................................13

*Oregel v. Am. Isuzu Motors, Inc.*,

    90 Cal. App. 4th 1094 (2001)........................................................................................12

*Peterson v. Cellco P'Ship*,

    164 Cal. App. 4th 1583 (2008)......................................................................................14

*Salazar v. Target Corp.*,

    83 Cal. App. 5th 571 (2022)..........................................................................................15

*WA Southwest2, LLC v. First Am. Title Ins. Co.*,

    240 Cal. App. 4th 148 (2015)..........................................................................................5

*Williams v. Beechnut Nutrition Corp.*,

    185 Cal. App. 3d 135 (1986)........................................................................................12

**FEDERAL STATUTES**

Fed. R. Civ. P. 9(b)............................................................................................... *passim*

Fed. R. Civ. P. 11 ..........................................................................................................2, 4

Fed. R. Civ. P. 12 ...........................................................................................................1

Fed. R. Civ. P 12(b)(1)...............................................................................................1, 15

Fed. R. Civ. P 12(b)(6).................................................................................................1

**STATE STATUTES**

Cal. Civ. Proc. Code § 338(d) ........................................................................5

Cal. Civ. Code § 1791.1(c) ...........................................................................13

Cal. Civ. Code § 1791.2(a)(1) .......................................................................11

Cal. Civ. Code § 1795.6 .................................................................................6

Cal. Com. Code § 2313 .................................................................................12

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on February 27, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Rita F. Lin, located in Courtroom 15, 18th Floor of the United States Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC (collectively, "Tesla") will and hereby move this Court to dismiss the Consolidated Second Amended Complaint ("SAC").  This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the pleadings and other documents on file in this case, all other matters of which the Court may take judicial notice, and oral argument of counsel.  Tesla respectfully seeks an order dismissing the SAC pursuant to Rules 12(b)(1) and 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

LoSavio's amended complaint fails for the same reason that Judge Gilliam dismissed his prior complaint, and more.  LoSavio's claims that Tesla misrepresented the autonomy and safety of his vehicle when he bought it in 2017 are time-barred, as Judge Gilliam concluded.  As Judge Gilliam observed, his "injury appears to have occurred and was apparent in January 2017 when he first purchased the car … that did not work as he thought," and "presumably, he could ascertain the limitations of his ADAS system each time he drove his car."  MTD Order (Dkt. 57) 16-17.  No tolling doctrine applies, and nothing alleged in the amended complaint changes that conclusion.  On the merits, which Judge Gilliam did not reach, LoSavio's claims have only gotten weaker.  Tesla's opening motion showed that Tesla made clear, repeatedly, the limits and timeline for autonomous capabilities of its vehicles.  LoSavio now admits he knew those limits at the outset, but—despite acknowledging the steady progress Tesla made over time—vaguely alleges that things did not proceed as quickly as he expected.  Those generalized and highly individualized assertions fail to state a claim under Rules 12 and 9(b).  LoSavio's complaint should now be dismissed with prejudice.

### BACKGROUND

LoSavio bought a new Tesla Model S in January 2017 and paid an additional $8,000 for the "Full Self-Driving Capability" ("FSDC") package.  SAC ¶¶ 16, 19.  The FSDC package builds on

the Enhanced Autopilot and Basic Autopilot packages.  Basic Autopilot includes Traffic-Aware Cruise Control and Autosteer, which help drivers match their speed to surrounding traffic and maintain direction within clearly marked lanes, reducing human error.  Enhanced Autopilot offers various features such as Auto Lane Change, Autopark, Navigate on Autopilot, and more.  *Id.* ¶¶ 153-154.  On top of those features, the FSDC package allows customers access to Tesla's continually improving advanced driver assistance ("ADAS") technology through over-the-air software updates.  *Id.* ¶ 17. Both Enhanced Autopilot and FSDC are optional parts of Tesla's suite of ADAS features.

LoSavio acknowledges that the auto industry has multiple levels of driving automation, ranging from "no driving automation" (SAE Level 0) to "full driving automation" (SAE Level 5).  SAC ¶ 30.  For Levels 0 to 2, drivers control the vehicle at all times while the automation system provides certain assistance, such as lane centering and adaptive cruise control.  *Id.* ¶ 32.  Only a vehicle at the highest level of automation, SAE Level 5, drives itself "under all conditions and on all roadways" so that "[a] human driver is not needed."  *Id.* ¶ 33; s*ee also id.* ¶¶ 30, 32.

In Plaintiffs' first consolidated amended complaint, LoSavio alleged that Tesla had misrepresented that its ADAS technology was on the precipice of full autonomy.  MTD Order at 1.  He also alleged that Tesla's ADAS system was unsafe and caused accidents.  *Id.* at 1-2.  Judge Gilliam dismissed LoSavio's claims as untimely, holding that LoSavio's injury occurred and was apparent in January 2017 when he purchased the car and paid extra for the ADAS package that allegedly did not work as he thought.  *Id.* at 16, 18.  Judge Gilliam also held that LoSavio failed to establish the applicability of any tolling doctrine—in particular, continuing violation, fraudulent concealment, or equitable estoppel.  *Id.* at 15-18.  Judge Gilliam stated that it was "not clear at this time that Plaintiff can amend his complaint to address these deficiencies," but permitted an opportunity to amend "consistent with counsel's Rule 11 obligations."  *Id.* at 14, 18.

LoSavio then filed the SAC, still premised on the claim that Tesla misrepresented the current and upcoming autonomous capability, and safety, of his car.  *See, e.g.*, SAC ¶¶ 11, 17.  It remains undisputed that five years passed between his purchase of the car and this lawsuit.  MTD Order 14.  The injury alleged in the SAC remains the same—that LoSavio overpaid for his car.  Indeed,

1   LoSavio now admits that "he knew that his vehicle would not be self-driving at the time of

2   purchase."  SAC ¶ 18.  In some places, he claims that he thought his car would become *fully*

3   autonomous "within a year or two, or some other reasonably short time, after his purchase."  *Id.* ¶

4   163.[1]  Elsewhere, he alleges that he thought "his car would be capable of driving itself *in at least*

5   *some circumstances*" "within a year or two after his purchase" "and that Tesla's self-driving

6   technology would only continue to expand and improve over the life of his car," without explaining

7   what those "some circumstances" are.  *Id.* ¶ 18.  But he also acknowledges that at the time of his

8   purchase, the existing Enhanced Autopilot and FSDC features included self-driving technology such

9   as "autosteering and navigating on autopilot," *id.* ¶ 154, and he admits that "[i]n every year from

10  2017 to the present," he received "regular software updates to his vehicle that were accompanied by

11  release notes that described updates related to self-driving features," *id.* ¶ 159; *see also id.* ¶ 161

12  (describing the many updates to LoSavio's car, including, *e.g.*, improvements to Autosteer,

13  Automatic Lane Change, and Autopark).  In short, what "misrepresentation" underpins this highly

14  individualized claim is unclear.

15                                              **ARGUMENT**

16      LoSavio's claims remain time-barred for the reasons Judge Gilliam already held.  As with

17  the prior complaint, there can be no dispute that LoSavio bought his car five years before filing suit,

18  rending all his claims time-barred without some tolling doctrine.  MTD Order 14.  His alleged injury

19  remains the same—that he overpaid for his car.  As with his prior complaint, although the SAC

20  names several tolling doctrines, it attempts to allege facts only on a fraudulent concealment theory.

21  SAC ¶¶ 151-169.  And as with the FAC, it alleges no "active conduct by [Tesla], above and beyond

22  the wrongdoing upon which [LoSavio]'s claim is filed, to prevent him from suing in time."  MTD

23  Order at 18.  It also still fails to plead with particularity "an excuse for late discovery of the facts,"

24  *id.*, especially in light of LoSavio's vague characterization of the underlying misrepresentations or

25  concealment, which itself falls short of Rule 9(b).  So Judge Gilliam's conclusion that the claims

26  are time-barred applies just as strongly to the loosely amended claims.

27      LoSavio's claims all sound in fraud and are all subject to dismissal for failure to state a

28

---

[1] Emphasis added and internal citations omitted unless specified otherwise.

1   claim.  Yet the only two Tesla statements on which he purportedly relied did not promise any

2   definitive timeline for fully autonomous driving, but rather made clear that more advanced

3   autonomous capabilities would be released over an unspecified period of time, would require

4   substantial validation to demonstrate a significantly high level of performance, reliability, and

5   consistency, and would be subject to regulatory approval—a factor that is beyond Tesla's control.

6   His warranty claims fare no better.  The SAC still fails to allege that LoSavio gave Tesla any pre-

7   suit notice—a prerequisite for his warranty claims.  Regardless, the SAC alleges nothing akin to an

8   "express warranty"—an unequivocal statement to preserve or maintain any features.  After all,

9   LoSavio asserts that Tesla failed to improve its technology.  For the implied warranty claim, the

10  SAC identifies no manifestation of unmerchantability or unfitness of LoSavio's car during the one-

11  year statutory period or at any time.  For these reasons and more, the SAC fails to state a claim.

12  **I.      LOSAVIO'S CLAIMS REMAIN TIME-BARRED**

13          Judge Gilliam held that LoSavio's claims are all time-barred and that "[i]t is not clear at this

14  time that [LoSavio] can amend his complaint to address these deficiencies."  MTD Order 18.  "[O]ut

15  of abundance of caution," he provided LoSavio an opportunity to "address these deficiencies"

16  "consistent with counsel's Rule 11 obligations."  *Id.* at 18, 20.  LoSavio has failed to do so.

17          **A.      The Statute Of Limitations Remains Expired For All LoSavio's Claims**

18          Judge Gilliam has held that the statutes of limitations for LoSavio's claims "range from two

19  to four years" so, because LoSavio filed suit over five years after his purchase, "without some kind

20  of tolling, all his claims would be time-barred."  MTD Order 14 n.5.  That remains the case.

21          The two-year statute of limitations for LoSavio's negligence claim expired long ago because

22  it accrued upon LoSavio's alleged injury, *i.e.*, when he purchased the purportedly defective Model

23  S in January 2017 (SAC ¶ 11).  *Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1244 (E.D.

24  Cal. 2016) (statute of limitations for negligence accrues when plaintiff sustains an injury).  Likewise,

25  the four-year limitations period for the warranty claims and the four-year or three-year limitations

26  period for the various consumer protection claims remain expired because they all accrued from the

27  time of purchase.  *See Mandani v. Volkswagen Grp. of Am., Inc.*, 2020 WL 3961975, at *3 (N.D.

28  Cal. July 13, 2020) ("*Mandani II*") (Song-Beverly Act claims); *Plumlee v. Pfizer, Inc.*, 2014 WL

1    695024, at *7 (N.D. Cal. Feb. 21, 2014) (FAL, CLRA, UCL claims).

2           That leaves the fraud-based common law claims, which are subject to a three-year limitations

3    period that accrues from the time the plaintiff discovers or has reason to discover the alleged

4    wrongdoing.  *See Kline v. Turner*, 87 Cal. App. 4th 1369, 1373-74 (2001) (citing Cal. Civ. Proc.

5    Code § 338, subd. (d)); *Diaz v. Wells Fargo Bank*, 2015 WL 7180617, at *3 (N.D. Cal. Nov. 16,

6    2015) (applying three-year limitations period to the negligent misrepresentation claim sounding in

7    fraud).  The SAC on its face shows that LoSavio discovered the underlying facts more than three

8    years before he brought this lawsuit.  To cite one example, LoSavio alleges that when he purchased

9    his vehicle in January 2017, he read statements from Tesla's website and press coverage stating that

10   "Tesla vehicles [would become] self-driving cars *in about a year, or two years at most*."  SAC ¶ 152

11   (emphasis added).  Thus, by January 2019 at the latest, LoSavio knew or should have known of the

12   alleged misrepresentations that formed the basis of his fraud-based claims.

13          Moreover, the SAC is devoid of either LoSavio's "diligence" or how he was allegedly unable

14   "to have made earlier discovery despite reasonable diligence."  *WA Southwest2, LLC v. First Am.*

15   *Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015); *Sparks-Magdaluyo v. New Penn Fin., LLC*, 2017

16   WL 3534992, at *5 (N.D. Cal. Aug. 16, 2017) (the statute of limitations for the fraud claims under

17   section 338(d) "effectively codifies the delayed discovery rule" under common law).  As Judge

18   Gilliam observed, LoSavio "could ascertain the limitations of his ADAS system each time he drove

19   his car."  MTD Order 16-17.  When he allegedly "recall[ed] see[ing] press coverage … stating that

20   Tesla cars would be self-driving in about a year" "during each of the first three years after purchase,"

21   he did no diligence; he "*assumed* that Musk was making these statements in good faith" (SAC ¶

22   157) (emphasis added) and admittedly "thought that complex projects do not always go perfectly to

23   plan" (*id.* ¶ 156).  Indeed, the SAC "identifies numerous sources of information concerning the

24   defect that would have been revealed by such a [quick internet] search."  *Bettles v. Toyota Motor*

25   *Corp.*, 645 F. Supp. 3d 978, 985 (C.D. Cal. 2022).  Yet the SAC alleges no steps that LoSavio took

26   to investigate other than reading Tesla's websites and visiting service centers (SAC ¶¶ 163-168).

27   *Bettles*, 645 F. Supp. 3d at 985; *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *3 (C.D. Cal.

28   May 17, 2021) (finding "[t]he 'reasonable investigation' requirement is not satisfied by pursuing a

1  plainly futile course of action—at least not when other avenues of pursuit are readily and obviously

2  available").

3      Together, the SAC alleges no new facts calling Judge Gilliam's conclusion into question:

4  that LoSavio's complaint is time-barred.

5      **B.    LoSavio Still Fails To Establish Any Tolling Exception**

6      Nor does the SAC allege facts plausibly showing that the limitations periods were tolled.

7  None of the tolling doctrines named in the SAC applies here.  SAC ¶ 151.

8      *Equitable tolling* only applies when the plaintiff is seeking relief in two separate forums, and

9  LoSavio has no "pursuit of a remedy in another forum" by which he provided "timely notice to the

10 defendants in filing the first claim." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir.

11 1993); *Hutchins v. Bank of Am., N.A.*, 2014 WL 722098, at *6-7 (N.D. Cal. Feb. 25, 2014).

12     The "*repair rule*"—presumably "the repair doctrine" under California Civil Code Section

13 1795.6—does not apply because "[t]he plain language of the provision makes clear that [it]

14 addresses extending the 'warranty period,' not tolling the statute of limitations, during the time of

15 repair"; nor does LoSavio allege he had his vehicle repaired, *Mandani II*, 2020 WL 3961975, at *3.

16     *Class action tolling* does not apply because while "[i]n some instances, a plaintiff can rely

17 on the filing of a prior class action to vindicate the right in question and toll the statute in the event

18 that the class is not ultimately certified," *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025

19 (9th Cir. 2008), LoSavio's action was the first filed in this consolidated action.

20     Nor does the *discovery rule* (also known as the "delayed discovery rule") apply, for the same

21 reasons the codified discovery rule for fraud-based claims does not apply (*supra* 5).[2]

22     To the extent LoSavio attempts to invoke the *continuing violation doctrine*—which he has

23 never pleaded—he still "does not suggest that he made any ongoing or new purchases from Tesla

24

25     [2] In any event, the discovery rule does not apply to implied warranty claim. *Williams v.
26 Tesla, Inc.*, 2021 WL 2531177, at *6 (N.D. Cal. June 21, 2021).  While an express warranty claim
   may be tolled by the delayed discovery rule if "the seller has expressly agreed to warrant its product
27 for a specific and defined period of time," *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal.
   App. 4th 116, 130 (2008), this so-called "future performance" exception does not apply here
28 because, as explained below (*infra* 11-12), LoSavio alleges no warranty, let alone one for a
   "specific and defined period of time." *Id.* ("An express warranty which makes no reference at all
   to any future date should not be allowed to extend past the limitations period.").

1    based on their subsequent representations about their technology" and his injury "appears to remain

2    the same:  the ADAS system still does not work as originally promised."  MTD Order 16-17.

3         This leaves *equitable estoppel*, "also termed *fraudulent concealment*."  *Guerrero v. Gates*,

4    442 F.3d 697, 706-07 (9th Cir. 2006) (emphasis added).   Fraudulent concealment requires

5    allegations that the defendant took active steps to conceal its wrongdoing, *above and beyond* the

6    alleged misrepresentations themselves.  Like the FAC, the SAC still fails to plead any "active

7    conduct by [Tesla], above and beyond the wrongdoing upon which [LoSavio]'s claim is filed, to

8    prevent him from suing in time," let alone with any particularity.  MTD Order 18 (citing cases).

9    "The primary problem with plaintiff'[s] argument is that [his] alleged basis for equitable estoppel is

10   the same as [his] cause of action."  *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051-52 (9th

11   Cir. 2008) (declining to apply equitable estoppel because plaintiffs failed to "point to any

12   misrepresentation by the Defendants that concealed" the alleged discrimination).  Any allegation in

13   the SAC that is conceivably relevant to fraudulent concealment would overlap completely with

14   LoSavio's allegations for his claims, which are based on Tesla's purported misrepresentations about

15   the ADAS technology development timeline.  That suffices to reject fraudulent concealment.

16        Even if LoSavio had plausibly alleged concealment, and he has not, he would also need to

17   plead with particularity "an excuse for late discovery of the facts"—specifically, "(1) when the fraud

18   was discovered; (2) the circumstances under which it was discovered; and (3) that [he] was not at

19   fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put

20   him on inquiry."  MTD Order at 18.  LoSavio pleads none of those required elements.  *First*, to the

21   extent that LoSavio asserts that Tesla fraudulently concealed facts relating to the safety of ADAS

22   technology, he fails to plead when he discovered the alleged "fraud" or the circumstances under

23   which it was discovered.  Indeed, LoSavio does not even claim that FSDC features rendered his car

24   unsafe in any way.  *Second*, if LoSavio's theory is that Tesla fraudulently concealed Tesla's inability

25   to achieve the promised development timeline in the unspecified future, the SAC nowhere explains

26   when and how LoSavio discovered that Tesla's vehicles would not meet the purported timeline.

27   LoSavio cannot sleep on his claims for years and then fall back on a loosely self-defined timeline.

28   *Last*, if LoSavio's theory is that Tesla fraudulently concealed that the vehicles would not reach the

originally promised autonomous capability *within one or two years of his purchase*, the SAC has failed to "plead why, in the exercise of reasonable diligence, [he] could not have discovered the defect earlier." *Mandani v. Volkswagen Grp. of Am.*, 2019 WL 3753433, at *7 (N.D. Cal. Aug. 8, 2019) ("*Mandani I*").  "[The fraudulent concealment] doctrine protects diligent suitors, it is unavailable, 'whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'" *Id.*; *supra* 5.

In sum, LoSavio's shotgun tolling doctrines all fail.  The SAC does not contain new facts that would change Judge Gilliam's well-reasoned decision on LoSavio's first complaint:  that his claims are time-barred and no exception to their limitations periods apply.

## II.    ALL THE CLAIMS SOUND IN FRAUD AND FAIL TO MEET RULE 9(B)

LoSavio's claims all sound in fraud, premised on the allegation that Tesla misrepresented the development timeline of its ADAS technology and concealed information that "would cause a reasonable consumer to develop material doubts … regarding the time period" for complete autonomy.  SAC ¶ 147; *id.* ¶¶ 171, 188, 198, 211, 216, 224, 228, 237, 244, 252, 257.  The SAC also suggests that Tesla misrepresented or concealed the safety level of its ADAS technology.  *Id.* ¶¶ 175, 190, 213.  Each claim thus must be pled with the particularity required by Rule 9(b).[3]

LoSavio identifies no fraudulent Tesla statement on which he relied.  *Enea v. Mercedes-Benz USA, LLC*, 2019 WL 402315, at *4-5 (N.D. Cal. Jan. 31, 2019) ("To properly plead fraud with particularity under Rule 9(b), a pleading must identify … what is false or misleading about the purportedly fraudulent statement, and why it is false.").  Instead, LoSavio fills the SAC with quotes of statements that do not even relate to the Enhanced Autopilot or the FSDC packages he purchased—all of which are irrelevant to LoSavio's claims, which are premised on his overpayment for those two packages (SAC ¶ 19).  None of LoSavio's allegations show that Tesla promised that either package would enable full autonomy within one or two years of his purchase.

---

[3] *Taleshpour v. Apple Inc.*, 2021 WL 1197494, at *7 (N.D. Cal. Mar. 30, 2021) (Song-Beverly Act); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) (FAL, CLRA, UCL); *Amans v. Tesla, Inc.*, 2022 WL 2952474, at *2 (N.D. Cal. July 26, 2022) (unfair and unlawful UCL prongs that were based on the same theory as the fraudulent prong); *Ward v. Pickett*, 2013 WL 5496549, at *5 (N.D. Cal. Oct. 3, 2013) (fraud and fraudulent deceit); *Srinvasan v. Kenna*, 2019 WL 1118123, at *6 (N.D. Cal. Mar. 11, 2019) (negligent misrepresentation claims that sound in fraud or grounded in fraud).

To the contrary, the only two statements that LoSavio alleges he saw when he purchased his vehicle said the exact opposite.  LoSavio alleges that before purchasing his car, he saw (1) the "Autopilot" page of Tesla's website and (2) a November 12, 2016 Tesla newsletter that described the autopilot and FSDC technologies.  SAC ¶¶ 153-154.  But both statements clearly differentiated FSDC from Enhanced Autopilot and suggested that only the former has the potential to enable full autonomy in the future.  *Id.*  In addition, both statements explicitly disclosed that new features would be released over time and that such releases would be subject to completion of validation, which itself would be subject to government approval, a variable over which Tesla had no control.  *Id.* Neither statement provided that LoSavio's car "would be capable of driving itself in at least some circumstances" "within a year or two after his purchase."  *Id.* ¶ 18.  In short, the only two Tesla statements LoSavio allegedly relied on for his purchase did not promise any timeline—whether one year or two years or "some other reasonably short time" after his purchase (*id.*).[4]  In fact, the statements said the exact opposite—"It is not possible to know exactly when each element of the functionality described above will be available…."  *Id.* ¶ 153.  His claims should be dismissed under Rule 9(b) for failing to allege a misrepresentation with specificity.

If LoSavio intends to rely on the generalized statements about timelines that he alleges (that a car would become fully, or even just more, autonomous within one year, two years, or a shortly reasonable period of time thereafter), such statements lack the specificity to support a fraud claim.  SAC ¶ 152 (alleging that prior to purchasing his vehicles, LoSavio saw statements that said that software updates "would make[] Tesla vehicles self-driving cars in about a year, or two years at most").  As another federal court has held, this kind of statements "indicat[e] that [Tesla] was not making the absolute representation Plaintiff asserts he was."  *Young v. Tesla, Inc.*, 2022 WL 3355832, at *10 (D.N.M. Aug. 15, 2022).  No allegation suggests that they were false when made,

---

[4] It is also unclear what LoSavio means by "capable of driving itself in at least some circumstances" (SAC ¶ 18).  But it appears to align with what actually happened—LoSavio concedes that he has been able to download and install at least some software updates that appeared to be self-driving features since 2017.  *Id.* ¶¶ 161-162.  Nor does he deny that his car is at least at SAE Level 2—"Partial Driving Automation."  *Id.* ¶¶ 30, 91.  At the very least, LoSavio's allegation that he expected his car to be "capable of driving itself in at least some circumstances" falls short of Rule 9(b) because he has yet identified the circumstances in which his car was expected to become autonomous but did not.

1   *see Richardson v. Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000)

2   (applying Rule 9(b) to promissory fraud), nor do they plausibly (much less specifically) show

3   Tesla's knowledge of the falsity.  To the contrary, the SAC demonstrates that Tesla has been

4   constantly improving its ADAS technology by releasing software updates, with a goal of achieving

5   more and better autonomy capabilities in the future.  SAC ¶ 161.

6       The SAC falls equally short of Rule 9(b) for any misrepresentation claim premised on the

7   safety level of Tesla's existing ADAS technology.  *Richardson*, 2000 WL 284211, at *5 ("A plaintiff

8   must establish with particularity that a defendant's statement was false.").  The only potentially

9   relevant statements cited in the SAC (¶¶ 51, 60) compare Tesla's ADAS technology to human

10  driving, but the SAC does nothing to demonstrate how that comparison was false—let alone

11  knowingly false—by, for example, comparing the accident rate involving Tesla's ADAS technology

12  to that of human driving under the same road conditions.  This cannot meet Rule 9(b).

13      Finally, to the extent LoSavio asserts a concealment claim, the SAC is equally lacking in

14  specific allegations under Rule 9(b).  LoSavio must but fails to "allege deliberate concealment or

15  failure to comply with a duty to disclose."  *Lusson v. Apple, Inc.*, 2016 WL 6091527, at *3 (N.D.

16  Cal. Oct. 19, 2016).  He fails to allege with specificity, for example, how Tesla "took affirmative

17  steps to cover up" the alleged incapability or unsafety of Tesla's ADAS technology.  *Id.*  The closest

18  LoSavio alleges is that Tesla purportedly concealed some "key facts" regarding a 2016 video

19  showing "a Tesla driving itself without any human intervention from the person in the driver's seat."

20  SAC ¶¶ 59(a).  Setting aside the fact that the video did not specify the Tesla model and was a

21  demonstration of the vehicle's future capabilities, the video is simply irrelevant because LoSavio

22  clearly did not rely on it when he purchased his car in January 2017.  After all, "he knew that his

23  vehicle would not be self-driving at the time of purchase."  *Id.* ¶ 18.  Nor does the SAC allege facts

24  showing Tesla had a duty to disclose facts it allegedly concealed. A duty to disclose only arises

25  when the product's alleged defect relates to a "safety issue."  *Wilson v. Hewlett-Packard Co.*, 668

26  F.3d 1136, 1141 (9th Cir. 2012).  But there was no "safety issue" sufficiently alleged.  Although the

27  SAC pointed to two accidents that predated the two safety-related statements (SAC ¶¶ 47, 50), those

28  allegations show neither that safety issues with ADAS technology were the cause of those accidents

1  nor, in any event, that there were "an unusual number of complaints, such that the manufacturer

2  would be on notice of a specific problem." *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *7

3  (N.D. Cal. Aug. 1, 2017) (holding 81 consumer complaints to the NHTSA and consumer forums

4  about excessive oil consumption were insufficient to establish GM's knowledge of the cause).[5]

5  **III.    THE WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS I & II)**

6      **A.    The Warranty Claims Fail Due To The Lack Of Pre-Suit Notice**

7          The two Song-Beverly Act warranty claims fail at the threshold.   Both are subject to a

8  pre-suit notice requirement.  *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1153 n.4 (N.D.

9  Cal. 2012).  LoSavio already conceded when responding to the prior motion to dismiss that he failed

10 to allege that he gave Tesla any pre-suit notice (*compare* ECF No. 30 at 25 *and* ECF No. 37 at 25),

11 and the SAC says nothing otherwise.  These claims should be dismissed for this reason alone.  *Tait*

12 *v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *4 (C.D. Cal. Aug. 31, 2011) (dismissing

13 express warranty claim with prejudice); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)

14 (the pre-suite notice requirement applies to implied warranty claims).

15     **B.    Even If LoSavio Had Provided The Pre-Suit Notice, The SAC Fails To Allege**
        **Any Warranty Claim**
16

17           1.    The Express Warranty Claim Fails

18         LoSavio's theory—that Tesla promised his car would have further improved autonomous

19 capability within an uncertain period of time (SAC ¶ 171)—cannot support a Song-Beverly express

20 warranty claim because (1) he fails to allege an unequivocal promise to *preserve or maintain* any

21 feature, given that his core allegation is that Tesla failed to *improve* his car; (2) the SAC identifies

22 no "model" or "sample" to which his car must conform; and (3) he does not allege that he ever

23 presented his FSDC package for repair, a prerequisite for his express warranty claim.

24         To start, the purported promise is the opposite of an "undertaking to *preserve or maintain*"

25 certain features.  Cal. Civ. Code § 1791.2(a)(1).  Indeed, the various Tesla statements identified in

26 _____

27         [5] The constructive fraud claim separately fails for lack of a fiduciary relationship.
   *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, 965 F. Supp. 2d 1141, 1152 (E.D. Cal. 2013).
   LoSavio does not allege that Tesla owed LoSavio any fiduciary duty, and no fiduciary relationship
28 is formed out of an ordinary transaction between him as a consumer and Tesla.   *Herremans v.*
   *BMW of N. Am. LLC*, 2014 WL 5017843, at *6, *12 (C.D. Cal. Oct. 3, 2014); *Shum v. Intel Corp.*,
   2008 WL 4414722, at *5 (N.D. Cal. Sept. 26, 2008).

1   the SAC show that Tesla would and did keep improving, refining, and validating its various ADAS

2   features, with the goal of achieving more advanced autonomous driving in the unspecified future.

3   *See, e.g.*, SAC ¶¶ 153-154.  Nor is the purported promise—for which LoSavio is unable to pinpoint

4   either a due date or a specific level of autonomy—"a specific and unequivocal written statement."

5   *Tipton v. Zimmer*, 2016 WL 3452744, at *6 (C.D. Cal. June 23, 2016).  In short, LoSavio has failed

6   to plead the most fundamental element of his express warranty claim: the terms of the alleged

7   warranty.  *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1113 (S.D. Cal. 2017) (dismissing

8   express warranty claim where "[p]laintiffs have provided the Court with only a general description

9   of the alleged express warranty without reference to its exact terms") (citing *Williams v. Beechnut*

10  *Nutrition Corp.*, 185 Cal. App. 3d 135 (1986) and *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176,

11  1181 (9th Cir. 1997)).

12          The SAC also fails to identify any "samples" or "models" to which LoSavio's car must

13  conform.  The three-and-a-half-minute video (SAC ¶ 3) is neither a "sample" nor a "model"—it did

14  not even identify the model of the car.  *See* Cal. Com. Code § 2313, com. 6 (a "sample" is "actually

15  drawn from the bulk of goods which is the subject matter of the sale," and a "model" "is offered for

16  inspection when the subject matter is not at hand and which has not been drawn from the bulk of

17  the goods.").  Nor did the video speak to the capability of LoSavio's vehicle in an unspecified future.

18          All this explains why LoSavio fails to allege that he presented the FSDC package he

19  purchased for repair, a prerequisite for his express warranty claim.  *Oregel v. Am. Isuzu Motors,*

20  *Inc.*, 90 Cal. App. 4th 1094, 1101 (2001).  The essence of his claim is not that Tesla failed to

21  "preserve or maintain" any feature of the FSDC or that his FSDC-equipped car failed to conform to

22  any preexisting model or sample; instead, his core argument is that Tesla failed to deliver

23  *improvements*.  There was nothing to repair, which alone compels dismissal.  *Fish v. Tesla*, 2022

24  WL 1552137, at *11-12 (C.D. Cal. May 12, 2022); *Clark v. Am. Honda Motor Co., Inc.*, 2021 WL

25  4260232, at *3 (C.D. Cal. Sept. 14, 2021); *cf. Brownfield v. Jaguar Land Rover N. Am. LLC*, 584 F.

26  App'x 874, 875 (9th Cir. 2014).

27                       2.      <u>The Implied Warranty Claim Fails</u>

28          LoSavio's implied warranty claim fares no better.  There is no express warranty claim, there

1   is no accompanying duration for his implied warranty claim.  Nor does he allege any manifestation

2   of merchantability or unfitness of his car for a particular purpose within one year or at any time.

3        LoSavio concedes that the duration of any implied warranty would be coextensive with the

4   duration of any applicable express warranty and in any event cannot exceed a year.  SAC ¶ 181

5   (citing Cal. Civ. Code § 1791.1(c)).  As explained above, there is no express warranty regarding the

6   ADAS technology development timeline (*supra* 11-12), and thus no accompanying express

7   warranty period.  Regardless, the implied warranty claim fails because he alleges no manifestation

8   of unmerchantability or unfitness of his car during the one-year statutory period.  Cal. Civ. Code

9   § 1791.1(c); *Mathison v. Bumbo,* 2008 WL 8797937, at *10 (C.D. Cal. Aug. 18, 2008).  Rather, the

10  SAC shows that he continued driving his car within the year of his purchase.  SAC ¶¶ 159, 163, 164.

11  Even construing the allegations in a light most favorable to LoSavio, he alleges at most that his car

12  did not reach the expected autonomous level after one year of his purchase, and thus says nothing

13  about the one-year implied warranty period.  His implied warranty claim fails for this reason alone.

14  *See, e.g.*, *Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014);

15  *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1021 (S.D. Cal. 2011).

16       Indeed, the SAC fails to allege facts showing that LoSavio's vehicle was unmerchantable or

17  unfit for a particular purpose *at any time*.  As to *merchantability*, a state law implied warranty

18  requires only that a product "provides for a minimum level of quality."  *Am. Suzuki Motor Corp. v.*

19  *Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995).  "[A] breach of the implied warranty of

20  merchantability means the product did not possess even the most basic degree of fitness for ordinary

21  use."  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  "In the case of automobiles,

22  the implied warranty of merchantability can be breached only if the vehicle manifests a defect that

23  is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation."  *Taragan*

24  *v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013); *Tae Hee Lee v. Toyota*

25  *Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979-80 (C.D. Cal. 2014) (similar).  Tellingly,

26  LoSavio does not allege that he stopped driving his Tesla vehicle or sought a replacement, thus

27  "fall[ing] far short of demonstrating that the [vehicle] does not 'possess even the most basic degree

28  of fitness for ordinary use.'"  *Kacsuta v. Lenovo (United States) Inc.*, 2013 WL 12126775, at *3

1   (C.D. Cal. July 16, 2013).  To the extent the SAC suggests that Tesla's existing ADAS technology

2   was unsafe, the implied warranty claim still fails because LoSavio alleges no incident "actually

3   experienced" by himself, let alone when using the ADAS technology.  *Acedo v. DMAX, Ltd.*, 2015

4   WL 12696176, at *26 (C.D. Cal. Nov. 13, 2015); *Taragan*, 2013 WL 3157918, at *4 (similar).

5         Nor has LoSavio established that his car was *unfit* for his implied warranty claim.  *First*,

6   "[a]n essential element of a claim for breach of implied warranty of fitness for a particular purpose

7   is that a plaintiff 'intended to use the product for a particular purpose, *i.e.*, a use different from the

8   ordinary purpose of the product.'"  *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 832 (N.D. Cal.

9   2021).  Yet LoSavio offers no allegations to demonstrate "any particular purpose different from the

10  ordinary purpose of a [vehicle with advanced driving assistance features]," that is, driving with

11  certain level of autonomy.  *Corzine v. Whirlpool Corp.*, 2016 WL 6476172, at *3 (N.D. Cal. Nov.

12  2, 2016).  *Second*, to the extent LoSavio argues that his "particular purpose" was to have a fully

13  autonomous car in an unspecified future, his claim still fails because the SAC alleges nothing—

14  indeed, it alleges the opposite—of Tesla's knowledge of that particular purpose (*supra* 9).  *Watkins*,

15  550 F. Supp. 3d at 832 ("[A]n implied warranty of fitness for a particular purpose exists if at the

16  time of contracting the seller knows or has reason to know that the buyer is relying on the seller's

17  skill or judgment to select or to furnish suitable goods for certain purpose.").

18  **IV.   LOSAVIO FAILS TO SUFFICIENTLY PLEAD AN UNJUST ENRICHMENT
        CLAIM (COUNT IX)**

19

20        LoSavio fails to sufficiently plead an unjust enrichment claim, which requires "receipt of a

21  benefit and the unjust retention of the benefit at the expense of another."  *Peterson v. Cellco P'Ship*,

22  164 Cal. App. 4th 1583, 1593 (2008).  Here, the only "benefit" LoSavio identifies is his payment

23  for the FSDC-equipped car (SAC ¶ 257), but that alone—without any allegation of "mistake, fraud,

24  coercion, or request"—is insufficient to support an unjust enrichment claim.  *Doe v. Epic Games,
    Inc.*, 435 F. Supp. 3d 1024, 1052 (N.D. Cal 2020).

25  **V.    LOSAVIO CANNOT OBTAIN EQUITABLE RELIEF (COUNTS I-V)**

26        LoSavio cannot seek injunctive relief and other equitable relief in relation to the

27  Song-Beverly Act warranty, FAL, CLRA, and UCL claims.  *See* SAC ¶¶ 178, 193, 203, 219, 234.

28        *First*, LoSavio fails to plead that he has an inadequate remedy at law, a prerequisite to

seeking equitable relief.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842-43 (9th Cir. 2020).

Under *Sonner*, plaintiffs must "plead the basic requisites of the issuance of equitable relief."

*Cepelak v. HP Inc.*, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021).  Here, LoSavio does not

allege that he lacks an adequate remedy at law, and in any event fails to allege facts demonstrating

such.  *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *6 (N.D. Cal. June 14, 2021).

*Second*, requests for prospective injunctive relief should be dismissed under Rule 12(b)(1)

because LoSavio lacks standing given that he "will clearly not purchase the product again."  *Bird v.

First Alert, Inc.*, 2014 WL 7248734, at *5 (N.D. Cal. Dec. 19, 2014).  Indeed, he alleges no

irreparable harm or injury justifying injunctive relief beyond conclusory statement that cannot

survive *Iqbal*.  *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020).

Moreover, LoSavio's claims for injunctive relief fail because they "are based upon the same facts

as [his] claims for monetary relief, which indicates that [his] harms are compensable through money

damages, and precludes a finding of irreparable harm."  *Bohnak v. Marsh & McLennan Cos., Inc.*,

580 F. Supp. 3d. 21, 31 (S.D.N.Y. 2022) (dismissing injunction claims); *Rent-A-Ctr., Inc. v. Canyon

Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (mere "economic injury"

"does not support a finding of irreparable harm").

*Third*, the requests for retrospective injunctive relief also fail because, as explained (*supra*

8-10), LoSavio fails to identify any actionable misrepresentation or omission.  *In re Apple Processor

Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022).

*Last*, LoSavio lacks standing to bring claims under at least FAL, CLRA, and UCL because

he fails to plead facts showing the only two statements on which he purportedly relied contained

any misleading statements.  *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 577-78 (2022) (UCL,

CLRA, FAL plaintiffs "must demonstrate actual reliance on the allegedly deceptive or misleading

statements to have standing").

## CONCLUSION

Because the SAC demonstrates that all the claims remain time-barred, any further

amendment would be futile.  LoSavio's claims should all be dismissed with prejudice.  *Fareed-

Sepehry-Fard© v. U.S. Bank Nat'l Ass'n*, 2018 WL 4203658, at *3 (N.D. Cal. Sept. 4, 2018).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: December 4, 2023

WILMER CUTLER PICKERING
HALE AND DORR LLP

By:    */s/ Alan Schoenfeld*
       Alan Schoenfeld

*Attorneys for Defendants Tesla, Inc., Tesla
Lease Trust, Tesla Finance LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: December 4, 2023                    By:   */s/ Alan Schoenfeld*
                                                              Alan Schoenfeld