1  FRANK M. PITRE (SBN 100077)
   fpitre@cpmlegal.com
2  NABILAH A. HOSSAIN (SBN 329689)
   nhossain@cpmlegal.com
3  ANDREW F. KIRTLEY (SBN 328023)
   akirtley@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
5  San Francisco Airport Office Center
   840 Malcolm Road
6  Burlingame, CA 94010
   Telephone: (650) 697-6000
7  Fax: (650) 697-0577
8
   FRANCIS A. BOTTINI, JR. (SBN 175783)
9  fbottini@bottinilaw.com
   NICHOLAUS H. WOLTERING (SBN 337193)
10 nwoltering@bottinilaw.com
11 **BOTTINI & BOTTINI, INC.**
   7817 Ivanhoe Avenue, Suite 102
12 La Jolla, CA 92037
   Telephone: (858) 914-2001
13 Fax: (858) 914-2002

14 *Attorneys for Plaintiffs and the Proposed Class*

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
JEREMY ROBINSON (SBN 188325)
jrobinson@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
MICHAEL J. MORPHEW (SBN 304463)
mmorphew@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811

15

16                  **UNITED STATES DISTRICT COURT**

17                 **NORTHERN DISTRICT OF CALIFORNIA**

18                                              Case No. 3:22-cv-05240-RFL

19 **In re Tesla Advanced Driver Assistance     PLAINTIFF LOSAVIO'S OPPOSITION TO
   Systems Litigation**                         **DEFENDANTS' MOTION TO DISMISS
20                                              CONSOLIDATED SECOND AMENDED
                                                COMPLAINT**
21
22 *This Filing Relates To All Actions*          Judge: Hon. Rita F. Lin
                                                Date:  February 27, 2024
23                                              Time:  10:00 a.m.
                                                Courtroom: 15 – 18th Floor
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

II.   INTRODUCTION ...................................................................................................... 1

III.  FACTUAL ALLEGATIONS..................................................................................... 2

   A.   Tesla's Development and Marketing of its Level 2 ADAS Technology (2014-2016) ... 2

   B.   LoSavio's Reliance on Tesla's Statements in Purchasing FSD in 2017 ........................ 4

   C.   LoSavio's Delayed Discovery due to Tesla's Post-Purchase Conduct ........................... 4

   D.   Tesla's Alternative Facts in its Motion ........................................................................ 5

IV.  ARGUMENT............................................................................................................. 6

   A.   All LoSavio's claims are timely because multiple tolling doctrines apply. .............. 6

      1.   Under the discovery rule, LoSavio's claims did not accrue until April 2022. ........ 6

      2.   The equitable estoppel doctrine also applies because Tesla's continual false and
           deceptive projections lulled LoSavio into waiting to file suit. ................................ 8

   B.   LoSavio's claims are adequately pleaded under Rule 9(b), if it applies. ................. 9

      1.   Rule 9(b) does not apply to LoSavio's negligence-based claims. .......................... 9

      2.   LoSavio's allegations of fraud satisfy Rule 9(b)'s heightened pleading
           requirements. ........................................................................................................ 10

   C.   LoSavio adequately pleads his warranty claims. ...................................................... 12

      1.   Breach of Express Warranty ................................................................................. 12

      2.   Breach of Implied Warranty ................................................................................. 14

   D.   LoSavio's unjust enrichment claim is adequately pleaded. ...................................... 14

   E.   LoSavio adequately pleads his entitlement to equitable relief. ................................ 15

V.   CONCLUSION ......................................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Amans v. Tesla, Inc.*,
5
    2022 WL 2952474 (N.D. Cal. July 26, 2022) ......................................................... 10

6
*In re Arris Cable Modem Consumer Litig.*,
    2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................................. 10
7

8
*Aryeh v. Canon Bus. Sols., Inc.*,
    55 Cal.4th 1185 (2013) (UCL) .................................................................................. 7

9
*Baggett v. Hewlett-Packard Co.*,
10
    582 F.Supp.2d 1261 (C.D. Cal. 2007) ..................................................................... 13

11
*Bettles v. Toyota Motor Corp.*,
    645 F.Supp.3d 978 (C.D. Cal. 2022) ......................................................................... 8
12

13
*Bily v. Arthur Young & Co.*,
    3 Cal.4th 370 (1992) ................................................................................................ 10

14
*Brand v. Hyundai Motor Am.*,
15
    226 Cal.App.4th 1538 (2014) ................................................................................... 15

16
*California Bagel Co. v. Am. Bagel Co.*,
    2000 WL 35798199 (C.D. Cal. June 7, 2000) ........................................................... 7
17

18
*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .................................................................................... 16

19
*Diaz v. Wells Fargo Bank*,
20
    2015 WL 7180617 (N.D. Cal. Nov. 16, 2015) ........................................................... 7

21
*Doe v. Epic Games, Inc.*,
    435 F.Supp.3d 1024 (N.D. Cal. 2020) ..................................................................... 15
22

23
*Drake v. Toyota Motor Corp.*,
    2021 WL 2024860 (C.D. Cal. 2021) .......................................................................... 8

24
*Ehret v. Uber Techs., Inc.*,
25
    68 F.Supp.3d 1121 (N.D. Cal. 2014) ....................................................................... 12

26
*Ekstrom v. Cong. Bank*,
    2020 WL 6565251 (D. Md. Nov. 9, 2020) ............................................................... 12
27

28
*El Pollo Loco, Inc. v. Hashim*,
    316 F.3d 1032 (9th Cir. 2003) .................................................................................... 8

*Falk v. Gen. Motors Corp.*,
    496 F.Supp.2d 1088 (N.D. Cal. 2007) .................................................................... 13

*Fernandez v. Atkins Nutritionals, Inc.*,
    2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ............................................................... 8

*Fox v. Ethicon Endo-Surgery*,
    35 Cal.4th 797 (2005) ........................................................................................... 7, 8

*Gagne v. Bertran*,
    43 Cal.2d 481 (1954) ................................................................................................ 7

*Gherna v. Ford Motor Co.*,
    246 Cal.App.2d 639 (1966) ................................................................................... 13

*Graham v. Cent. Garden & Pet Co.*,
    2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) ....................................................... 16

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ................................................................................... 7

*Jiagbogu v. Mercedes-Benz USA*,
    118 Cal.App.4th 1235 (2004) ................................................................................ 14

*Keith v. Buchanan*,
    173 Cal.App.3d 13 (1985) ..................................................................................... 13

*Krotin v. Porsche Cars N. Am., Inc.*,
    38 Cal.App.4th 294 (1995) .................................................................................... 14

*Kutza v. Williams-Sonoma, Inc.*,
    2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ........................................................ 16

*Lane v. C.A. Swanson & Sons*,
    130 Cal.App.2d 210 (1995) .............................................................................. 13, 14

*Luong v. Subaru of Am., Inc.*,
    2018 WL 2047646 (N.D. Cal. May 2, 2018) ........................................................ 16

*McGee v. Mercedes-Benz USA, LLC*,
    2020 WL 1530921 (S.D. Cal. Mar. 30, 2020) ...................................................... 15

*Migliaccio v. Midland Nat'l Life Ins. Co.*,
    436 F.Supp.2d 1095 (C.D. Cal. 2006) .................................................................. 13

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ......................................................................... 10, 11

*Morgan v. AT&T Wireless Servs.*,
    177 Cal.App.4th 1235 (2009) ................................................................................ 12

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Opposition to Defendants' MTD SAC
Case No. 3:22-cv-05240-RFL

iii

*Njoku v. Geico Gen. Ins. Co.*,
   2020 WL 4915433 (N.D. Cal. May 6, 2020) (Tigar, J.) ........................................................ 10

*Norgart v. Upjohn Co.*,
   21 Cal.4th 383 (1999) .......................................................................................................... 7

*Opperman v. Path, Inc.*,
   84 F.Supp.3d 962 (N.D. Cal. 2015) .................................................................................... 12

*Royal Primo Corp. v. Whitewater W. Indus., Ltd*,
   2016 WL 4080177 (N.D. Cal. July 29, 2016) ..................................................................... 11

*Rubke v. Capitol Bancorp Ltd*,
   551 F.3d 1156 (9th Cir. 2009) .............................................................................................. 9

*Santa Clara Valley Water Dist. v. CH2M Hill, Inc.*,
   2020 WL 4252677 (N.D. Cal. July 24, 2020) (Koh, J.) ...................................................... 10

*Scherer v. FCA US, LLC*,
   565 F.Supp.3d 1184 (S.D. Cal. 2021) ................................................................................. 13

*Shank v. Presidio Brands, Inc.*,
   2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) ..................................................................... 16

*Sloan v. Gen. Motors LLC*,
   287 F.Supp.3d 840 (N.D. Cal. 2018) .................................................................................. 15

*Smith v. Keurig Green Mountain, Inc.*,
   393 F.Supp.3d 837 (N.D. Cal. 2019) ............................................................................. 13, 14

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
   1 Cal.3d 586 (1970) ............................................................................................................. 8

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 9, 10

*Walker v. Nestle USA, Inc.*,
   2020 WL 3317194 (S.D. Cal., June 17, 2020) ...................................................................... 8

*Warren v. Whole Foods Market Cal., Inc.*,
   2022 WL 2644103 (N.D. Cal. July 8, 2022) ....................................................................... 16

*Weinstat v. Dentsply Int'l, Inc.*,
   180 Cal.App.4th 1213 (2010) .............................................................................................. 14

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
   10 Cal.App.5th 56 (2017) ..................................................................................................... 9

*Woods v. Davol, Inc.*,
   2017 WL 3421973 (E.D. Cal. Aug. 9, 2017) ...................................................................... 10

*Young v. Tesla, Inc.*,
    2022 WL 3355832 (D.N.M. Aug. 15, 2022) .......................................................................... 12


**Statutes**

Cal. Comm. Code § 2725(b)(2) ....................................................................................................... 7


**Other Authorities**

Wright & Miller, 5A FED. PRAC. & PROC. CIV. § 1298 & n.22
    (4th ed. Apr. 2023 update) ........................................................................................................ 11

Federal Rules of Civil Procedure:

    Rule 8(a) ................................................................................................................................... 10

    Rule 9(b) ............................................................................................................................ *passim*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether, under Rule 12(b)(6), (a) Plaintiff's claims are timely because they are within the applicable statute of limitations and/or subject to tolling doctrines, (b) Plaintiff's claims that are subject to Rule 9(b) are adequately pled, (c) Plaintiff's warranty claims and unjust enrichment claim (Counts 1, 2, and 9) are adequately pled.

2.      Whether Plaintiff has standing to seek public injunctive relief.

## I.      INTRODUCTION

Since 2014, Tesla and its CEO Elon Musk began continually misrepresenting the abilities of its advanced *driver assistance* systems ("ADAS") software, and continually projected that Tesla was only a year or so away from improving that software to the point of making Tesla cars "self-driving." This had several predictable effects, including enormous media coverage that boosted investor interest and sales at a time when the company was bleeding cash and headed for financial collapse. ¶¶21-22, 94, 152.[1] The projections also led tens of thousands of consumers to purchase new Tesla vehicles, and to *pre*-purchase the nearly completed software that Tesla promised would soon take them wherever they wanted to go, and do so more safely than a human driver. ¶¶7, 51, 58, 60, 62, 153.

One of those consumers was Plaintiff Thomas LoSavio. ¶16. In January 2017, he bought a new Tesla Model S and paid an extra $8,000 to pre-purchase Tesla's "Full Self-Driving" ("FSD") software, reasonably believing Tesla's projections that software development would be complete in the next 1-2 years. ¶¶16-19. But after his purchase, Tesla kept pushing back the expected completion date a little bit at a time, deceptively assuring LoSavio and its other FSD customers that it was still on the cusp of completing software development, it just needed a little more time to finish the job. When the software still had not arrived by April 2022, LoSavio began to suspect that he had been deceived about the state of Tesla's purported self-driving technology and was being strung along.

In September 2022, these consolidated putative class actions were filed against Tesla, bringing California consumer protection claims (FAL, CLRA, and UCL), warranty claims, and common law claims for intentional and negligent misrepresentation, negligence, and unjust enrichment. The central allegation is that Tesla knew or should have known that its representations about the current state of its ADAS software, and its projections of the time required to improve that software to make cars self-driving, were false, deceptive, and had no reasonable factual basis. ¶¶1, 5-6, 10, 223, 245, 252. The next month, Reuters reported the USDOJ had launched a criminal investigation into Tesla's marketing practices at issue. ¶143. Plaintiffs filed a Consolidated Amended Complaint ("FAC") (ECF 23), and Tesla filed a combined motion to compel arbitration and motion to dismiss.

In September 2023, Judge Gilliam ruled on that motion. He compelled to arbitration the claims

---

[1] "¶" refers to a paragraph in the Consolidated Second Amended Complaint ("SAC") (ECF 61).

1  of all Plaintiffs except Losavio, and dismissed LoSavio's claims on statute of limitations grounds with

2  leave to amend. ECF 57 ("MTD Order") at 13, 18. The dismissal was based on the prior complaint,

3  which had only one short paragraph of allegations specific to each Plaintiff. *See* FAC ¶¶16-20. This

4  lack of detail led Judge Gilliam to mistakenly assume that LoSavio had received Tesla's FSD software

5  when he purchased it in 2017, from which he reasoned it should have been "apparent" to LoSavio from

6  the outset and "each time he drove his car" that FSD did not make his car self-driving. MTD Order at

7  16:17-17:8 (citing FAC ¶16). But as the SAC's new allegations make clear (*see* ¶¶16-19, 151-169),

8  LoSavio only *pre*-purchased the FSD software in January 2017, which Tesla still had not delivered to him

9  as of April 2022. *See also* Decl. of Andrew F. Kirtley, Exhibit A (redline comparing SAC and FAC).

10     Now before the Court is Tesla's Motion to Dismiss the SAC (ECF 71) ("Motion"), which seeks

11  dismissal of all LoSavio's claims as barred by statutes of limitations and inadequately pleaded under

12  Rule 9(b). Tesla also argues that three of LoSavio's nine causes of action should be dismissed for failure

13  to state a claim, and that LoSavio lacks standing to seek injunctive relief. The Motion ignores many of

14  the SAC's key new allegations and improperly relies on alternative facts. It should be denied.

## II.    FACTUAL ALLEGATIONS

### A.    Tesla's Development and Marketing of its Level 2 ADAS Technology (2014-2016)

17     Driving automation technologies are categorized from SAE Level 0 (most basic) to Level 5

18  (most advanced). ¶¶29-36. Level 0–2 technologies provide only "driver assistance" or "driver support"

19  features; they do not make vehicles self-driving. ¶¶30, 32-33 (SAE graphic: "**You are driving** whenever

20  these driver support features are engaged"; NHTSA graphic: "You drive"). By contrast, when SAE Level

21  3-5 technologies are used, the vehicle drives itself. *Id.* (SAE graphic: "**You are not driving** when these

22  [Level 3-5] automated driving features are engaged"; NHTSA graphic: "system drives, you ride").

23  California requires regulatory approval to operate Level 3-5 on public roads. *See* ¶¶90, 98, 127.

24     Tesla has historically offered three relevant software packages, all of which are SAE Level 2

25  (also known as ADAS) technologies. ¶¶57, 59, 90-91; Mot. at 1:28-2:8. The basic package is Autopilot,

26  which was first introduced in 2015 and comes standard on Tesla cars. ¶¶44, 57, 59, 90-91. The other

27  two packages are Enhanced Autopilot and Full Self-Driving Capability, which build on Autopilot by

28  adding additional Level 2 features and cost extra. *Id.*; Mot. at 1:28-2:8. Tesla and Musk typically refer

to Full Self-Driving Capability as "Full Self-Driving" or "FSD." ¶¶8, 86, 161(c), 164, 167-168. Tesla does not use conventional advertising; its marketing relies on Musk's public statements, which routinely receive significant media coverage, to publicize and generate buzz for its products. ¶22.

From the beginning, Tesla and Musk have made bold claims. In October 2014, Musk stated on CNN that a Tesla car would be able to do "90 percent of your miles … on auto[pilot]" by "next year." ¶43. In October 2015, Musk stated: "We're being especially cautious at this stage, so we're advising drivers to keep their hands on the wheel just in case." ¶44. By the end of 2015, Musk was stating that Tesla cars would be able to drive themselves in about two years ("It's a much easier problem than people think it is") (¶45), and in early 2016 that Autopilot was "probably better" than a human driver (¶46). Months later, Musk said Autopilot was "almost twice as good" as a human driver. ¶49.

Thus, by early 2016, two of the main kinds of false and deceptive statements at issue were already in play: (1) misrepresenting the *current* abilities of Tesla's ADAS software, by stating or insinuating that the software is already able to drive cars at a level of safety equal to or greater than a human driver, which is false and deceptive because Tesla's software has major safety issues not present in human drivers,[2] and because such statements create a false impression that Tesla's ADAS software is closer to a Level 4 or 5 technology than it actually is; and (2) making false, misleading, and objectively unrealistic projections about when Tesla will develop Level 4 or 5 software (¶¶3-5, 7-8, 34, 123), such as projections about which Musk is "100%" "confident" (¶92),[3] even while Tesla attorneys and engineers are telling regulators Musk's projections do "not match engineering reality" (¶¶97-98).

---

[2] *See, e.g.*, ¶¶4, 50, 54, 67, 76, 82, 104, 138 (many fatal crashes, and NHTSA investigations, due Tesla vehicles with ADAS engaged driving at high speed into large stationary objects, such as parked emergency vehicles, concrete barriers, tractor trailers, and overturned box trucks); ¶¶4, 9, 87, 102, 111-112, 119, 133, 139 (issues running stop signs and red lights, ignoring speed limits, driving on the wrong side of the road, and slamming on brakes for no apparent reason); ¶81 (2019 Consumer Reports review of Tesla ADAS feature that drove erratically "like a drunken or distracted driver"); ¶112 (2021 CNN review that FSD required driver intervention "every couple blocks or so" to avoid a crash); ¶119 (journalist concluded in 2022 that FSD's "decision-making is still the equivalent of a 14-year-old who has been learning to drive for the last week and sometimes appears to consume hard drugs").

[3] The SAC quotes specific Musk statements made in **2016** (¶¶6, 46, 51, 60 ["next year," "autonomous driving" is "basically a solved problem," "less than two years from complete autonomy," by "end of next year"]); **2017** (¶¶64-65 ["fully autonomous" cross-country trip by "end of 2017," "end of year"]); **2018** (¶¶66, 73 [by "end of next year," "in about a year. Then up to regulators"]); **2019** (¶¶8, 77-79 ["this year," "second quarter of next year," "Level 5 without a geofence" by "next year for sure"]); **2020** (¶¶10, 84-85, 92 ["this year" with "[r]egulatory approval" expected "next year," "we are very close," "100%" "confident that Tesla will have level five next year"]); **2021** (¶¶95, 97, 103, 114 ["confident" Tesla will achieve Level 5 in 2021, Tesla "will solve level 4 … likely … next year"]); and **2022** (¶¶115, 117,

3

In October 2016, Tesla announced it would begin selling its Enhanced Autopilot and FSD packages, and that all new Tesla cars were being made with all the hardware necessary for "full self-driving." ¶¶57-58, 60. Tesla said the new system would "see[] in every direction simultaneously and on wavelengths that go far beyond the human sense," and that "[f]ull autonomy will enable a Tesla to be substantially safer than a human driver." ¶58. Tesla also posted a video that purported to show a Tesla flawlessly driving itself; it begins with the statement: "**The person in the driver's seat is only there for legal reasons. He is not doing anything. The car is driving itself.**" ¶¶3, 59. Musk shared the video on Twitter, tweeting "Tesla drives itself (no human input at all) …." ¶59. Years later, *The New York Times* and *Bloomberg News* would report that the car used commercial 3D route-mapping software not available to Tesla customers, that the car crashed during filming, and that Musk personally directed the video be edited together from multiple takes. ¶¶3, 59. The video is still on Tesla's website. ¶¶3, 59.

**B.    LoSavio's Reliance on Tesla's Statements in Purchasing FSD in 2017**

In January 2017, LoSavio purchased a new Model S Tesla and paid an additional $8,000 to pre-purchase Tesla's FSD software. ¶¶16, 152, 154.[4] LoSavio is a retired attorney who "typically read[s] three newspapers daily." ¶¶16, 156. LoSavio purchased FSD after doing significant online research. ¶¶16-17, 152. He read and relied on statements from Musk and Tesla **(1)** that all new Tesla cars had "all the hardware necessary to become fully self-driving through future software updates" (¶152); **(2)** that Tesla's ADAS software "was already as safe as, or safer than, a human driver, and that it would only continue to get safer over time" (¶17; *cf.* ¶¶46, 49, 51, 60); **(3)** "that a Tesla would soon drive itself coast-to-coast across the country" (¶152; *cf.* ¶¶60, 62, 152 fn.119); **(4)** that the self-driving software would be available "in the next year or two, or some similar reasonable time after his purchase, as the software was refined and validated" (¶¶18, 152-153, 155; *cf. supra* note 3). LoSavio's purchase was motivated in part by his concern that driving might get harder and less safe as he aged. ¶17.

**C.    LoSavio's Delayed Discovery due to Tesla's Post-Purchase Conduct**

Following the purchase, LoSavio looked for news about Tesla's FSD software development. **(1)** He continued reading three newspapers daily. ¶156. **(2)** "At regular intervals," he saw "news

---

121, 123 ["this year," "cars without … people behind the wheel in about a year," coming FSD update "will be able to take you [on routine trips] without you touching the wheel")]). *See also* ¶8 fn.5 (video).

[4] Tesla invoiced LoSavio $5,000 for Enhanced Autopilot and $3,000 for FSD, but this is equivalent to paying $8,000 for FSD because FSD includes Enhanced Autopilot. *See* ¶¶16, 91; Mot. at 1:28-2:8.

reports that Tesla and particularly Musk … indicating that the release of self-driving features … was coming reasonably soon, often in a year or so." *Id.*; *cf. supra* note 3. LoSavio believed Tesla and Musk were making these statements in "objective and subjective good faith." ¶¶156-157. **(3)** Every year, LoSavio visited Tesla's website seeking updates and saw statements that Tesla vehicles would soon be self-driving. ¶¶156, 158. **(4)** Every year, LoSavio also saw messages on his vehicle touchscreen indicating it was receiving FSD software updates, even though FSD was not active on his vehicle, and read each update's "release notes." ¶¶159-162. **(5)** LoSavio also "regularly stayed in contact with and sought out information from Tesla employees," including at Tesla "showrooms" and "service centers." ¶163. **(6)** He scheduled service appointments to get FSD activated, but Tesla cancelled appointments as they approached. ¶¶163-164, 166. In November 2021, Tesla told him his car needed an additional camera to be compatible with FSD (which he still had not received), but the camera was out of stock for months. ¶¶165-168. When April 2022 arrived, LoSavio "considered Tesla's numerous delays" to date and "realized for the first time that the most likely explanation for why FSD was not activated on his vehicle was that Tesla and Musk had misled him about the current state of its self-driving technology" and "the likely timeline for Tesla being able to make his car self-driving." ¶169.

Today, LoSavio contends that Tesla has never been close to achieving Level 4-5 software. ¶¶2, 4. He contends this is due, at least in part, to Musk's decision to rely heavily on cameras, contrary to expert consensus that Level 4-5 technology requires the use of cameras, radar, and lidar. ¶¶36, 99, 111. Consistent with SAE and NHTSA guidance discussed above (at 2), LoSavio contends that technology makes a car "self-driving" only if it is SAE Level 3-4 (self-driving under specified circumstances) and "fully self-driving" only if it is SAE Level 5. He joins auto industry experts (¶¶52, 93), former Tesla engineers (¶¶40, 61, 113), past and present NHTSA and NTSB officials (¶¶107, 110, 137), and the California DMV (¶142) in alleging that Tesla marketing a Level 2 ADAS system as allowing a car to operate on "autopilot" or be "self-driving" is false and deceptive. ¶¶1, 10, 52, 60-61, 105, 107, 110, 138, 142; *see also* ¶134 (October 2023 MIT study finding 22% of 3,000 respondents falsely believed that "Tesla" or "Autopilot" are "fully automated" driving technologies); ¶¶72, 124 (similar studies).

**D.     Tesla's Alternative Facts in its Motion**

Tesla improperly seeks to counter LoSavio's allegations with its own alternative facts, many of

which are directly contrary to allegations in the SAC. The most important examples: **(1)** Tesla repeatedly cites Judge Gilliam's mistaken assumption that LoSavio was able to use and assess Tesla's FSD software since 2017, which is directly contrary to LoSavio's new allegations. Mot. at 1:15-18, 2:17-20, 5:17-19, 14:22; ¶¶18-19, 169. **(2)** Tesla repeatedly states that LoSavio's claims arise from the purchase of his "*vehicle*" and that his alleged injury is he "overpaid for his *car*," whereas the SAC makes clear that LoSavio's claims arise from his purchase of *software* that Tesla promised would make his car self-driving. Mot. at 1:14-15, 2:26-28, 3:19, 4:22-23. **(3)** Tesla refers to its Level 2 features as being "self-driving technology"; the SAC alleges the opposite. Mot. at 3:8; ¶¶10, 52, 61, 110, 142.[5]

## IV.   ARGUMENT

### A.   All LoSavio's claims are timely because multiple tolling doctrines apply.

Tesla's statute of limitations argument rests heavily on Judge Gilliam's September 2023 Order. *See, e.g.*, Mot. at 3:16-26, 4:13-20, 8:7-9. That order was based on the prior complaint, which had only one short paragraph about LoSavio, resulting in Judge Gilliam's mistaken assumption that LoSavio must have been able to use FSD as soon as he received his car in 2017 and that he, thus, should have instantly realized FSD did not make his car self-driving. Order at 16:17-17:10 (citing FAC ¶16). Tesla repeats that mistaken assumption like a mantra (Mot. at 1:15-18, 2:17-20, 5:17-19), even though it is directly contradicted by LoSavio's new allegations (*see* ¶¶16-19, 151-169; *cf.* Kirtley Decl., Ex. A), which make clear that FSD was still not available for LoSavio to use as of April 2022 (¶¶168-169).

Any doubt the Court has on this should be resolved in LoSavio's favor at this early stage, as a statute of limitation issues is normally a "**question of fact**" not properly resolved on a motion to dismiss. *Fox v. Ethicon Endo-Surgery*, 35 Cal.4th 797, 810 (2005); *see also Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980) (tolling allegations must be "read with the required liberality").

#### 1.   Under the discovery rule, LoSavio's claims did not accrue until April 2022.

The discovery rule tolls accrual of a claim until the plaintiff "discovers the cause of action" or "has notice or information of circumstances to put a reasonable person on inquiry." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397-98 (1999); *accord Aryeh*, 55 Cal.4th at 1192. The rule applies to all LoSavio's

---

[5] Other examples: **(4)** Tesla insinuates its failure to develop self-driving software is attributable to a lack of "regulatory approval" ("a factor that is beyond Tesla's control"), even though Tesla has not developed any Level 3-5 software for regulators to approve. Mot. at 4:5; ¶¶53, 122-123. **(5)** Tesla says its 2016 video was "a demonstration of the vehicle's future capabilities," contrary to the SAC's allegations, including Musk's tweet sharing the video ("Tesla drives itself"). Mot. at 10:20-21; ¶¶3, 59.

1    claims.[6] Here, LoSavio purchased full self-driving software in January 2017 to be delivered by Tesla at

2    a future date, and delivery still had not occurred as of April 2022. ¶¶168-169. LoSavio alleges that he did

3    not discover and was not on inquiry notice of his claims until April 2022 at the earliest. *See* ¶¶156-169.

4         An instructive case is *Diaz v. Wells Fargo Bank*, 2015 WL 7180617 (N.D. Cal. 2015). Like in

5    *Diaz*, there was nothing about LoSavio's pre-purchase of FSD in 2017 to alert him to the false and

6    deceptive nature of Tesla's projection of developing self-driving software in 1-2 years—a matter on

7    which Tesla and Musk had unique expertise and information, and LoSavio had none.[7] LoSavio decided

8    to pre-purchase FSD because he reasonably relied on these projections (¶¶18-19, 156-157), which were

9    consistent with Tesla and Musk statements that his vehicle had all the hardware needed to be self-driving

10   (¶¶58, 158, 165) and that the software needed to be "validated" and submitted for regulatory approval,

11   impliedly representing the software was in an advanced state of development (¶¶17-19, 57-59, 88, 152).

12        When the first two years passed without Tesla having developed a self-driving car, LoSavio

13   reasonably believed Musk's post-2017 statements that Tesla was getting ever closer to achieving full

14   self-driving, it just kept needing a little more time. ¶¶156-157; *e.g.*, ¶¶66, 75, 78-79, 84-85, 92, 94-95,

15   103, 114-115. Tesla criticizes LoSavio for having "*assumed* that Musk was making these statements in

16   good faith" instead of being suspicious and investigating, Mot. at 5:21-22 (quoting ¶157), but the

17   recipient of a misrepresentation "is justified in relying upon its truth" and not required to "undertake[]

18   an investigation." *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003).[8] Tesla similarly

19   misses the mark in arguing the SAC is "devoid" of allegations of LoSavio's diligence. Mot. at 5:13. It

20   ignores allegations from which a reasonable jury could conclude that LoSavio was, in fact, much more

---

[6] *See, e.g.*, *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal.4th 1185, 1189 (2013) (UCL); *Diaz v. Wells Fargo Bank*, 2015 WL 7180617, *3 (N.D. Cal. Nov. 16, 2015) (fraud); Cal. Comm. Code § 2725(b)(2) (warranty claims accrue "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance[,] the cause of action accrues when the breach is or should have been discovered").

[7] *See, e.g.*, *California Bagel Co. v. Am. Bagel Co.*, 2000 WL 35798199, at *8 n.61 (C.D. Cal. June 7, 2000) (applying California law) (negligent misrepresentation can include "[a] prediction of future events … where made by a party presumably possessed of superior knowledge to a party who is situated so as to reasonably rely on that opinion"); *Gagne v. Bertran*, 43 Cal.2d 481, 489 (1954) (same for statement of "opinion" that "necessarily implied [defendant] knew facts that justified his statement").

[8] Although not directly applicable, cases regarding the level of investigation a deceived consumer must have undertaken to have a CLRA, UCL, or FAL claim are instructive. *See Fernandez v. Atkins Nutritionals, Inc.*, 2018 WL 280028, at *8 n.6 (S.D. Cal. Jan. 3, 2018) (consumer could reasonably rely on misleading statement on product label and need not go to company website for further explanation); *Walker v. Nestle USA, Inc.*, 2020 WL 3317194, at *3 (S.D. Cal., June 17, 2020) (similar).

1    informed and diligent than should reasonably be expected of consumers, who purchase myriad

2    products and have busy lives. *See supra* § III.B, C. Despite his diligence, LoSavio reasonably believed

3    that Tesla, although behind schedule, was advancing toward its goal and making projections in good

4    faith. ¶¶18, 156-158. He thus continued to wait, as Tesla employees told him to. ¶¶163-168.

5        In sum, a jury could easily find it reasonable that LoSavio did not discover that he had been

6    deceived by Tesla's FSD marketing practices, and thus that his claims did not accrue, until April 2022

7    at the earliest. *See* ¶¶168-169; *cf. Fox*, 35 Cal.4th at 810 (issue of when a person should discover facts

8    giving rise to a claim is a fact question for the jury); *United States Liab. Ins. Co. v. Haidinger-Hayes,*

9    *Inc.*, 1 Cal.3d 586, 597 (1970) (similar).[9] LoSavio's allegations dispose of Tesla's arguments that he

10   should have discovered that FSD did not make his car self-driving when he received his car in 2017,

11   or "by January 2019 at latest" for claims based on Tesla's projections. Mot. at 4:21-5:1, 5:17-19.[10]

12
13   **2.    The equitable estoppel doctrine also applies because Tesla's continual false and deceptive projections lulled LoSavio into waiting to file suit.**

14       A defendant can be equitably estopped from raising a statute of limitations defense if (1) the

15   defendant's conduct induced the plaintiff to refrain from filing a timely suit and (2) the plaintiff's

16   reliance on the defendant's conduct was reasonable. *Wind Dancer Prod. Grp. v. Walt Disney Pictures*,

17   10 Cal.App.5th 56, 78-79 (2017). These are both questions of fact. *See id.* at 81-82. The defendant is

18   not required to have acted in bad faith or intended to mislead. *Id.* at 78-79.

19       ***First***, LoSavio details how Tesla's conduct induced him to refrain from filing suit. He alleges

20   seeing a series of statements that Tesla just needed another year or so to make good on its promise to

21   complete development of Level 4-5 software (¶¶153-158, 162-163; *cf.* ¶¶8, 102, 107-108, 110-111);

22   that LoSavio's car needed "retrofits" and an out-of-stock camera to be compatible with FSD (making

23   the fact he had not yet received the software seem academic) (¶¶163-64); that FSD still was not

24

25

---

26   [9] Tesla's reliance on two cases finding plaintiffs had inquiry notice of vehicle defects, *Bettles v. Toyota Motor Corp.*, 645 F.Supp.3d 978, 985 (C.D. Cal. 2022), and *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, *3 (C.D. Cal. 2021), is misplaced because the defects were "persistent" and "clearly identifiable" from simply driving the cars. *Id.*, at *2.

27   [10] Even if the Court rejects all LoSavio's arguments, Tesla's "January 2019 at the latest" argument concedes that LoSavio's claims based on deceptive projections could not have accrued until January 2019, making timely his UCL and warranty claims with 4-year statutes. *See* Mot. at 4:25-28, 5:11-12.

28

activated on his car as of April 2022 (¶¶168-169); and that the FSD name is inherently misleading if it is just a Level 2 "driver assistance" system (¶¶10, 52, 61, 105, 107, 110, 138, 142).

**Second**, LoSavio alleges he reasonably relied on Tesla's conduct because he reasonably assumed at the time that Musk's and Tesla's projections were being made in good faith (¶¶18, 156-158), especially since they seemed consistent with Tesla's other apparent good-faith efforts, such as "FSD Beta" testing on public roads (¶¶153-155, 162-163; *cf.* ¶¶102, 107-108, 110-111) and LoSavio's car receiving what appeared to be FSD updates, even though FSD was not yet activated (¶¶159-162).

**B.     LoSavio's claims are adequately pleaded under Rule 9(b), if it applies.**

**1.     Rule 9(b) does not apply to LoSavio's negligence-based claims.**

When a plaintiff brings claims in which "fraud is not an essential element" based on "allegations of both fraudulent and non-fraudulent conduct," Rule 9(b) applies only to the allegations of fraudulent conduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1104-05 (9th Cir. 2003). Tesla invokes an exception to this rule that applies when an entire complaint "sounds in fraud" because all claims "rely entirely" on a unified course of fraudulent conduct. *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009).

Here, some or all aspects of LoSavio's claims (except his fraud claim) are not subject to Rule 9(b) because they do not rely entirely on alleged fraudulent conduct. Negligent misrepresentation, for example, can occur "[w]here the defendant makes false statements, *honestly believing they are true*, but without reasonable ground for such belief." *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 407-08 (1992) (emphasis added); *cf.* ¶¶ 245, 252. Because such conduct is not fraudulent, "[a] growing trend of authority applies Rule 8, and not Rule 9(b), to a California law negligent misrepresentation claim." *Woods v. Davol, Inc.*, 2017 WL 3421973, at *6 (E.D. Cal. Aug. 9, 2017) (collecting cases).[11] If the Court follows this growing trend, LoSavio's negligence claims survive dismissal because the only grounds on which Tesla has challenged them (besides statute of limitations) is failure to satisfy Rule 9(b).

The same conclusion applies LoSavio's UCL, FAL, and CLRA claims. The Ninth Circuit has repeatedly noted that Rule 9(b) may not apply to these claims because "[f]raud is not an essential element of a claim under these statutes," *Vess*, 317 F.3d at 1105, and because "a defendant can violate

---

[11] *Accord Santa Clara Valley Water Dist. v. CH2M Hill, Inc.*, 2020 WL 4252677, at *8 (N.D. Cal. July 24, 2020) (Koh, J.) (declining to apply Rule 9(b) to negligent misrepresentation claim); *Njoku v. Geico Gen. Ins. Co.*, 2020 WL 4915433, at *3 (N.D. Cal. May 6, 2020) (Tigar, J.) (same).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

the UCL, FAL, and CLRA by acting with mere negligence." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020). That is consistent with what LoSavio alleges here. *See* ¶¶198, 211-212 (alleging Tesla violated FAL by making "untrue or misleading" statements, and violated CLRA by engaging in "unfair or deceptive acts or practices").[12] If the Court determines that any of LoSavio's negligence-based claims rely in part on allegations of fraudulent conduct that do not satisfy Rule 9(b), the Court must "strip" those allegations from the claim and "examine the allegations that remain to determine whether they state a claim" under Rule 8(a). *Vess*, 317 F.3d at 1105.

    2.    **LoSavio's allegations of fraud satisfy Rule 9(b)'s heightened pleading requirements.**

    With respect to LoSavio's fraud claim and any other claim to which the Court determines Rule 9(b) applies, LoSavio's allegations amply satisfy the Rule's heightened pleading requirements because they "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false," such that there is "sufficient detail to put Defendants on notice as to the fraud claim." *Moore*, 966 F.3d at 1019-1020. Specifically, LoSavio alleges at least six false or misleading Tesla and Musk statements from 2014 to 2016 on which he relied, and why they are false. These include statements: (1) that new Tesla cars have all the hardware needed to be self-driving (false because they lack lidar and because we now know the software was in such an early stage of development); (2) that Tesla's software was as safe or safer than a human (false because Tesla cars with ADAS engaged are crashing at high speed into large stationary objects, cannot consistently perform routine driving tasks, and cannot follow basic rules of the road, *see supra* note 3); (3) that a cross-country autonomous trip was imminent (false and wildly unrealistic, especially considering the lack of lidar); and (4) that Tesla would develop full self-driving software in 1-2 years (false for the same reason). *See supra* § III.B. These statements were contrary to any objectively reasonable view, and Tesla's actual view (¶122), of then-existing limitations of its Level 2 ADAS technology, and how long it would realistically take to achieve Level 4-5 technology.[13]

---

[12] Tesla's cases (Mot. at 8 n.3) are distinguishable because they involve a single theory of fraudulent conduct. *See Amans v. Tesla, Inc.*, 2022 WL 2952474, at *2 (N.D. Cal. July 26, 2022) (single theory of offering "an artificially low price with plans to increase it later"); *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) (single theory of concealing product defect).

[13] *See also* ¶5 ("Tesla knew … its statements …were deceptive and misleading"); ¶¶45, 46, 50, 53, 78, 122-123 (similar); ¶¶40, 44, 61 (Tesla engineers expressing concerns); ¶¶97-98 (Tesla's own attorneys and lead engineer disavowing Musk's statements in communications with California DMV).

1    Tesla's three main arguments against this conclusion all fail. ***First***, Tesla argues LoSavio

2   identifies no fraudulent statement on which he relied, and instead sets forth pages quoting "irrelevant"

3   Musk statements. Mot. at 8:17-22. The first part of this argument ignores the SAC's allegations,

4   summarized in the prior paragraph *(see also supra* § III-B), and also that "reliance is inferred from the

5   misrepresentation of a material fact" at the pleading stage so long as a reasonable person would attach

6   importance to the misrepresentation (or omission) in conducting the transaction. *Moore*, 966 F.3d at

7   1021 (materiality is generally a question of fact).[14] The second part overlooks that when a complaint

8   plausibly alleges defendants have engaged in systematic deception over a long period, the typical Rule

9   9(b) requirement of pleading individual fraudulent statements is "less stringently applied," and can

10  even be based on representative examples of false and deceptive statements. *Royal Primo Corp. v.*

11  *Whitewater W. Indus., Ltd*, 2016 WL 4080177, at *8 (N.D. Cal. July 29, 2016); *accord* Wright &

12  Miller, 5A FED. PRAC. & PROC. CIV. § 1298 & n.22 (4th ed. Apr. 2023 update) (collecting 19 cases).

13    That rule applies here not only because of alleged time duration and number and similarity of

14  Defendants' statements, but also because most of the statements are made Elon Musk—a unique

15  public figure with an enormous platform who generates extensive media coverage. ¶¶21(b), 22. That

16  makes it virtually impossible for an individual plaintiff to point to the exact article, video, or webpage

17  containing the exact Tesla or Musk statement that deceived him. *See Ehret v. Uber Techs., Inc.*, 68

18  F.Supp.3d 1121, 1129 (N.D. Cal. 2014) (imposing such a requirement "would be unrealistic and

19  needlessly impede access to an important remedial statute"); *accord Opperman v. Path, Inc.*, 84

20  F.Supp.3d 962, 977 (N.D. Cal. 2015) (plaintiff in a California false advertising case "need not plead

21  specific reliance on an individual representation" when the plaintiff "sufficiently alleges exposure to a

22  long-term advertising campaign").[15]

23    ***Second***, Tesla argues LoSavio's claims fail because two of the statements he alleges relying on

24  did not promise a "definitive timeline" or "exactly when" (i.e., a date certain) by which FSD would be

---

[14] The SAC details how Tesla's misrepresentations and projections were material to LoSavio's decision to pre-purchase FSD. This is all that is required for consumer claims. *Moore,* 966 F.3d at 1021.

[15] Similarly, cases involving "numerous mailings … containing identical false representations" are also analogous to the situation here. *Ekstrom v. Cong. Bank*, 2020 WL 6565251, at *21 (D. Md. Nov. 9, 2020). In those cases, "Rule 9(b) may be satisfied if the complaint sufficiently identifies the time period involved and the content of the misrepresentations," and need not specify the exact statements "upon which the plaintiff relied to his detriment." *Id.* (collecting cases).

1  completed. Mot. at 4:1-2, 9:13. But LoSavio does not allege being misled by the promise of a date

2  certain, but by a false and deceptive estimate that Tesla would finish software development in about

3  1-2 years.[16] Tesla's citation to statements about regulatory approval should not be a get out-of-jail-free

4  card, especially when LoSavio alleges that Tesla's use of the "regulatory approval" caveat is itself

5  misleading. ¶¶122-123; *see also Morgan v. AT&T Wireless Servs.*, 177 Cal.App.4th 1235, 1255 (2009)

6  (technically true statements can be misleading). If Tesla knew or should have known it was not realistic

7  to develop self-driving software without lidar (as LoSavio alleges), Tesla should not be permitted to

8  pre-sell "Full Self-Driving" software to consumers for thousands of dollars each on the misrepresentation

9  it will take only 1-2 years to develop, and use the lack of regulatory approval to escape all liability.

10      ***Third***, Tesla's argument that the SAC lacks specific allegations of Tesla concealing facts about

11  its Level 2 software's safety issues and limitations (Mot at 10:13-11:4) ignores allegations that Tesla

12  has concealed such information since at least October 2016 (¶¶3, 5-6) and on an ongoing basis thereafter

13  (¶¶8-10, 59, 89-92, 111, 223). Courts recognize plaintiffs with claims involving fraudulent *concealment*

14  will not be able to specify the time, place, and specific content of an omission as precisely as a

15  plaintiff claiming an affirmative misrepresentation. *Falk v. Gen. Motors Corp*., 496 F.Supp.2d 1088,

16  1098-99 (N.D. Cal. 2007). Because "such a plaintiff is alleging a failure to act," they "cannot point out

17  the specific moment when the defendant failed to act." *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d

18  1261, 1267 (C.D. Cal. 2007). Such a claim "can succeed without the same level of specificity required

19  by a normal fraud claim." *Id*.; *see also Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F.Supp.2d 1095,

20  1106 (C.D. Cal. 2006) (Rule 9(b) "relaxed" if facts "exclusively within the defendants' possession").[17]

21  **C.    LoSavio adequately pleads his warranty claims.**

22      **1.    Breach of Express Warranty**

23      LoSavio alleges Tesla made written statements and used samples or models warranting FSD

24  would make his vehicle fully self-driving "within a reasonable time after" purchase. ¶¶171-172. He

---

[16] *Young v. Tesla, Inc.*, 2022 WL 3355832, at *10 (D.N.M. Aug. 15, 2022) is inapposite; it concerned a single Musk statement that the *pro se* plaintiff incorrectly alleged promised delivery by a date certain.

[17] Tesla's argument that the SAC does not allege any "safety issue" giving rise to a duty to disclose (Mot. at 10:6-11:4) errs because the SAC is replete with allegations of safety issues (*supra* note 2); because Tesla made affirmative safety claims while omitting material contrary facts (*id.*; ¶¶40, 44 61, 76; *see also* ¶¶68, 106, 108 [history of selective disclosure of information]); and because Tesla had exclusive knowledge of material facts not known to LoSavio (¶¶9, 136). *See Scherer v. FCA US, LLC*, 565 F.Supp.3d 1184, 1995 (S.D. Cal. 2021) (possessing unique safety data gives rise to duty to disclose).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

alleges all three elements: (1) a seller statement constituting an affirmation of fact, a promise, or a description of the goods, (2) that was part of the basis for the bargain, and (3) seller's breach. On the first element, he pleads the required "specific and unequivocal written statement." *Smith v. Keurig Green Mountain, Inc.*, 393 F.Supp.3d 837, 846 (N.D. Cal. 2019). This can include a public statement made to induce sales, *Keith v. Buchanan,* 173 Cal.App.3d 13, 21 (1985); *Gherna v. Ford Motor Co.,* 246 Cal.App.2d 639, 652-53 (1966), "descriptive names" and statements about a product's "special quality," "especially where inspection by the buyer is not possible and the seller knows the quality of the goods and the buyer does not," *Lane v. C.A. Swanson & Sons*, 130 Cal.App.2d 210, 213-14 (1995), and affirmations and descriptions made after a purchase, *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal.App.4th 1213, 1227 (2010). Courts "construe liberally" in favor of consumers "to construe every affirmation by [sellers] to be a warranty when such construction is at all reasonable." *Id.* at 214-15. On a motion to dismiss, a defendant's interpretation must be the *only* reasonable one. *Smith*, 393 F.Supp.3d at 846.

Here, LoSavio alleges the descriptive names "Autopilot," "Full Self-Driving," and "FSD," together with Tesla's public statements, are express warranties that the product has or will soon have self-driving capability. ¶171. Tesla's descriptive names warranted to reasonable consumers that it would make their cars self-driving, especially when Tesla continued using the names after being warned they are misleading, including by studies (¶¶72, 124, 134). Tesla's software is beyond the reasonable consumer's understanding, such that inspection is not possible, and the seller has vastly superior knowledge. *Lane*, 130 Cal.App.2d 210 at 213-14. Any ambiguity in the names is resolved in LoSavio's favor by Tesla's other public statements, such as Musk's tweets (*e.g.*, ¶¶6-8, 58, 62, 78, 81) and the statement at the outset of the October 2016 video, which is a model and sample (¶¶3, 59-60, 172).

Tesla's objection that the video does not mention the model of the *car* (Mot. at 12:12-17) is irrelevant because the product featured in the video is not the car but Tesla's purported self-driving *software*. Tesla likewise errs in insisting LoSavio has no warranty claim because he failed to do the impossible and the futile: presenting his FSD software to Tesla for repair (it wasn't in his possession) and giving Tesla pre-suit notice to Tesla (the primary purpose of which is to facilitate repair). Tesla ignores the allegation that Tesla has never been close to having Level 4-5 software. ¶¶34-36, 89-92, 97-99; *see also Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal.App.4th 294, 302-03 (1995) (obligation is

1  to allow a "reasonable opportunity" for repairs); *Jiagbogu v. Mercedes-Benz USA*, 118 Cal.App.4th

2  1235, 1245 (2004) (car maker is presumed to have had opportunity to repair serious defects).

3         **2.**    **Breach of Implied Warranty**

4        LoSavio alleges Tesla is in breach of the implied warranty of merchantability because its

5  software fails to meet the affirmations and promises in their descriptive names, and because they are

6  substantially unsafe. ¶¶184, 187. Fitness for ordinary use requires a vehicle (or, in this case, software)

7  not just be able to go from point A to point B. *McGee v. Mercedes-Benz USA, LLC*, 2020 WL

8  1530921, at *5 (S.D. Cal. Mar. 30, 2020), but it be safe and substantially free of defects. *Brand v.*

9  *Hyundai Motor Am.*, 226 Cal.App.4th 1538, 1546 (2014). Tesla's software is neither. *See supra* note 3.

10  LoSavio also adequately pleads breach of implied warranty of fitness for a particular purpose. ¶¶186-189.

11        Tesla is incorrect that LoSavio's claim fails for failure to allege unmerchantability within a

12  year of purchase. Mot. at 13. Merchantability has a prospective existence beyond the time of delivery,

13  and there is no requirement that a purchaser discover and report latent defects to the seller within one

14  year. *Mexica*, 174 Cal.App.4th at 1309 (one year is not a deadline for notice of breach). Further,

15  Tesla's ADAS and purported self-driving software was never merchantable at any time during the

16  class period starting in 2016 (¶144), so Tesla was in breach during the one-year period regardless of

17  when it started to run. *See* ¶¶40, 57-62 (use of misleading names in 2015-2016). Tesla also challenges

18  LoSavio's claim that its software was not merchantable "at any time," arguing such a claim requires a

19  personal incident involving the defect (Mot. at 14), but this argument has been rejected before and

20  should be rejected here. *See Sloan v. Gen. Motors LLC*, 287 F.Supp.3d 840, 879-80 (N.D. Cal. 2018).

21  **D.**    **LoSavio's unjust enrichment claim is adequately pleaded.**

22        LoSavio pleads unjust enrichment based on LoSavio having paid $8,000 for, but never received,

23  full self-driving software due to Tesla's wrongful "marketing, labelling, and other representations,

24  concealment, and nondisclosure," such that it would be unjust for Tesla to retain the $8,000 payment.

25  ¶¶257-260. This states an unjust enrichment claim, in part because LoSavio pleads he was "misled" in

26  pre-purchasing FSD. *Doe v. Epic Games, Inc.*, 435 F.Supp.3d 1024, 1052 (N.D. Cal. 2020) (cited by

27  Tesla). Tesla's contrary view that LoSavio has failed to allege any misleading or deceptive statement

28  (Mot. at 14:19-25) is simply a rehashing of its other failed arguments discussed above.

1    **E.**    **LoSavio adequately pleads his entitlement to equitable relief.**

2    Tesla has two main arguments for dismissing Losavio's prayer for equitable relief.[18]

3    *First*, it argues LoSavio fails to plead inadequate legal remedies under *Sonner* (Mot. at 14:28-

4    15:5), ignoring that LoSavio pleads inadequate legal remedies: "*Unless Defendants are enjoined* from

5    engaging in conduct alleged herein that violates [express and implied warranties, and the FAL, CLRA,

6    and UCL], *members of the consuming public will be further harmed* by that conduct." ¶¶177, 192, 202,

7    218, 233; *see also* ¶¶178(a), 193(a), 203(a), 219(a), 234(a) (seeking prospective "injunctive relief to

8    protect the consuming public"). These allegations satisfy *Sonner* because it is well established that

9    "retrospective damages are not an adequate remedy for the prospective harm that injunctions are designed

10    to prevent." *Graham v. Cent. Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023);

11    *accord Warren v. Whole Foods Market Cal., Inc*., 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022).

12    *Second*, Tesla argues LoSavio lacks Article III standing to seek injunctive relief because he

13    "will clearly not purchase the product again" (Mot. at 15:6-16), which is contrary to LoSavio's prior

14    sworn testimony in this case. *See* ECF 42-11, LoSavio Decl. ISO MPI ¶¶11-12 (attached as Kirtley

15    Decl., Ex. B). There, LoSavio testified that although he felt he had been misled by Tesla and that he

16    "can no longer trust Tesla's representations." *Id.* ¶11. He went on: "If I could regain trust in Tesla's

17    and Musk's statements and became convinced that Tesla had actually brought to market a car that was

18    truly capable of being self-driving, of course I would be interested in purchasing that vehicle, for the

19    same reasons that originally led me to buy a Tesla with FSD back in 2017." *Id.* ¶12. This testimony

20    makes clear LoSavio has standing to seek injunctive relief. *See Davidson v. Kimberly-Clark Corp.*,

21    889 F.3d 956, 969 (9th Cir. 2018) (holding "a previously deceived consumer may have standing to

22    seek an injunction against false advertising or labeling" due to her inability to rely on defendant's

23    future advertising or labeling). *Davidson's* holding applies neatly to LoSavio's testimony, both as a

24    potential future customer and as a current customer who continues to own and use Tesla products.[19]

---

25    [18] Tesla's third and fourth arguments (Mot. at 15:17-24) are recycled arguments that LoSavio fails

26  to allege any misleading statements, which fail for the same reasons discussed above.

    [19] *See Shank v. Presidio Brands, Inc.*, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (consumer

27  plaintiffs had standing to seek injunctive relief based on allegation they could not trust defendant's

    claims about its products); *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov.

28  9, 2018) (same); *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018)

    (rejecting argument that standing required plaintiffs' intent to buy another vehicle with defective

1

## V.    CONCLUSION

2          For the foregoing reasons, Tesla's Motion should be denied. If any part of the Motion is

3    granted, LoSavio respectfully requests leave to amend, particularly since the prior MTD Order reached

4    only the statute of limitations issue.

5

6                                            Respectfully submitted,

7    Dated:  January 8, 2024                 **COTCHETT, PITRE & McCARTHY, LLP**

8                                            By:    */s/ Frank M. Pitre*_____
9                                                   FRANK M. PITRE
                                                    JULIE L. FIEBER
10                                                  NABILAH A. HOSSAIN
                                                    ANDREW F. KIRTLEY
11
12                                                  *Attorneys for Plaintiffs Thomas LoSavio,*
                                                    *Brenda Broussard, and the Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   windshield, holding instead that imminent future harm was plead by contending they continued to own
     their vehicles and had an interest in being provided non-defective replacement windshields).