# Exhibit B

David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5312

*Attorney for Defendants Tesla, Inc.,*
*Tesla Lease Trust, Tesla Finance LLC*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL RICHARDSON,<br><br>                              *Plaintiff*,<br><br>v.<br><br><br>TESLA, INC., DBA TESLA MOTORS, INC., TESLA LEASE TRUST, TESLA FINANCE LLC, and DOES 1-100, inclusive,<br><br>                              *Defendants*. | **Case No.: 3:23-cv-2151-L-JLB**<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER**<br><br>Hon. M. James Lorenz<br>Date: January 2, 2024<br>Time: 10:30 AM<br>Courtroom 5B<br>Complaint Filed:  October 2, 2023<br><br>**[Pursuant to L.R. 7.1, No Oral Argument Unless Requested By The Court]** |

## TABLE OF CONTENTS

I. INTRODUCTION.................................................................................................1

II. SUMMARY OF RELEVANT FACTS & PROCEDURAL HISTORY ..................................2

    A.    Tesla's Driver Assistance Technology....................................................2

    B.    Tesla Is Sued, First In The Northern District of California And
           Then, Over A Year Later, Here.............................................................3

III. TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS WARRANTED ..........5

    A.    This Case Could Have Been Brought In The Northern District
           of California .......................................................................................5

    B.    The Public And Private Interest Factors Also Support Transfer ..........7

          1.    Because An Earlier-Filed, Nearly Identical Case Is
                Pending In The Northern District of California, Judicial
                Economy And The Interests Of Justice Compel Transfer ..........8

          2.    The Northern District Of California Is A Much More
                Convenient Forum For The Parties And For Witnesses..........10

          3.    The Remaining Factors Also Favor Transfer Or Are, At
                Worst, Neutral .......................................................................11

IV. CONCLUSION ...............................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A. J. Industries, Inc. v. United States District Court for Central District of California*,
503 F.2d 384 (9th Cir. 1974) ............................................................10

*Baird v. OsteoStrong Franchising, LLC*,
2022 WL 705883 (E.D. Cal. Mar. 9, 2022)......................................5

*Bristol-Myers Squibb Co. v. Superior Court of California*,
582 U.S. 255 (2017)............................................................................6

*Continental Grain Co. v. Barge FBL-585*,
364 U.S. 19 (1960)..............................................................................8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)............................................................................6

*Esquer v. StockX, LLC*,
2020 WL 3487821 (N.D. Cal. June 26, 2020)................................12

*Foster v. Nationwide Mutual Insurance Co.*,
2007 WL 4410408 (N.D. Cal. Dec. 14, 2007) ...............................13

*Hawkins v. Gerber Products Co.*,
924 F. Supp. 2d 1208 (S.D. Cal. 2013) ....................................7, 12

*Hicks v. Grimmway Enterprises, Inc.*,
2023 WL 3185784 (S.D. Cal. May 1, 2023) ...................................12

*Ickes v. AMC Networks Inc.*,
2023 WL 4297577 (N.D. Cal. June 30, 2023).............................7, 8

*In re Tesla Advanced Driver Assistance Systems Litigation*,
2023 WL 6391477 (N.D. Cal. Sept. 30, 2023)............................4, 9

*Johansson v. Central Garden & Pet Co.*,
2010 WL 4977725 (N.D. Cal. Dec. 2, 2010) .......................7, 8, 11

*Johns v. Panera Bread Co.*,
2008 WL 2811827 (N.D. Cal. July 21, 2008) ................................13

1

2

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) .......................................................5, 7

*Keene v. McKesson Corp.,*
    2015 WL 9257949 (N.D. Cal. Dec. 17, 2015) ..........................8, 11

*Lou v. Belzberg,*
    834 F.2d 730 (9th Cir. 1987) ...........................................................13

*Marchioli v. Pre-Employ.com, Inc.,*
    2017 WL 698278 (E.D. Cal. Feb. 21, 2017) .................................10

*Research Automation, Inc. v. Schrader-Bridgeport International, Inc.,*
    626 F.3d 973 (7th Cir. 2010) ...........................................................13

*Riva v. Pepsico, Inc.,*
    2014 WL 1729023 (S.D. Cal. Apr. 30, 2014) ...........................8, 11

*S.E.C. v. Roberts,*
    2007 WL 2007504 (D.D.C. July 10, 2007) ...................................10

*Skelton v. Care.com, Inc.,*
    2021 WL 5862447 (S.D. Cal. Aug. 17, 2021) ...............................13

*Stewart Organization v. Ricoh Corp.,*
    487 U.S. 22 (1988) ..............................................................................7

*Sywula v. Teleport Mobility, Inc.,*
    2023 WL 4630620 (S.D. Cal. July 18, 2023) ...................................1

*Thomas v. Cricket Wireless LLC,*
    2020 WL 1531368 (N.D. Cal. Mar. 31, 2020) .................................6

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ...........................................................................5

## STATUTES, RULES, AND REGULATIONS

28 U.S.C.
    § 1332(a) ...............................................................................................5
    § 1332(d)(2)(A) ...................................................................................5
    § 1391(b)(2) .........................................................................................6
    § 1391(c)(2) .........................................................................................6
    § 1404(a) ....................................................................................1, 5, 8

# OTHER AUTHORITIES

*Battiato v. Tesla, Inc.*,
  No. 4:22-cv-5264 (N.D. Cal.)......................................................................3

*In re Tesla Advanced Driver Assistance Systems Litigation*,
  No. 4:22-cv-5240 (N.D. Cal.)......................................................................4

*Mallow v. Tesla, Inc.*,
  No. 4:22-cv-5443 (N.D. Cal.)......................................................................3

*Matsko v. Tesla, Inc.*,
  No. 4:22-cv-5240 (N.D. Cal.)......................................................................3

*Nachman v. Tesla*,
  No. 2:22-cv-5976-RPK-ST (E.D.N.Y.)......................................................3

# I. Introduction

Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively, "Tesla") respectfully request that this case be transferred to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).  There is a pending, virtually identical consolidated class action in that district that covers the same putative class and raises the same factual and legal issues, including an identical question of whether Plaintiff's claims must be arbitrated under a binding and enforceable arbitration clause.[1]  The resemblance between Richardson's complaint and the first-filed Northern District complaint (which later formed the basis of the operative consolidated complaint) is striking: multiple paragraphs are copied verbatim.  The Northern District action is much further along, and mere days before Plaintiff filed this lawsuit, the court issued a decision staying the matter pending arbitration as to four of the plaintiffs (ordering that the parties submit status updates every 120 days) and dismissing the fifth plaintiff's claims as time-barred, with leave to amend.  The interests of justice require that this Court reject Plaintiff's forum-shopping.  But in all events, because the Northern District case remains pending, transfer and consolidation will promote judicial efficiency and avoid unnecessary duplicate proceedings in different districts in these overlapping putative class actions.

---

[1] If the Court grants Tesla's motion to transfer, Defendants intend to move to compel arbitration in the Northern District of California.  By moving to transfer, Defendants do not waive their right to compel arbitration.  *See Sywula v. Teleport Mobility, Inc.*, 2023 WL 4630620, at *8 (S.D. Cal. July 18, 2023) (collecting cases finding that "a motion to transfer venue, filed in the early stage of proceedings, is not inconsistent with a right to arbitrate" and noting that "[a] motion to transfer venue generally does not bear upon the merits of a cause.  And it is particularly weak evidence of the party seeking arbitration's intent to avail itself of a judicial forum where, as here, the venue to which transfer is sought is litigating or has decided arbitrability.").

## II. Summary of Relevant Facts & Procedural History

### A. Tesla's Driver Assistance Technology

Tesla is a pioneer in the electric vehicle revolution and a leader in the global auto industry due to its innovative technology, manufacturing approaches, and consistent top safety ratings. Advanced driver assistance (ADAS) technology encompasses different levels of automation, with each level characterized by different driver involvement and responsibility, along with varying software and hardware features. *See, e.g.*, Compl. ¶¶ 25-29. For SAE[2] Levels 0 to 2, drivers are responsible for driving the vehicle while the driver assistance system provides different types of assistance, such as lane centering and adaptive cruise control. The highest level, SAE Level 5, requires a car that drives itself "under all conditions, with zero human attention or interaction required." Compl. ¶ 26.

Since at least 2015, Tesla has offered various packages of advanced driver assistance features (ADAS) to its customers, providing them with the opportunity to purchase the early iterations of ADAS packages on the march toward autonomous vehicles, on the understanding that those who purchase the package would experience continuous improvements through software updates over time. *See, e.g.*, Compl. ¶¶ 39, 50. Today, a basic package of ADAS features comes standard with all Tesla vehicles, with additional, more advanced packages available for purchase. Tesla's ADAS comprises hardware and software that are capable of over-the-air updates that allow Tesla to constantly improve on its driver assistance offerings. At all relevant times, Tesla has been honest with its customers that achieving higher levels of automation would take time. And it has constantly improved and upgraded its software as it pursues the goal of full automation. *See* Compl. ¶ 17 (Tesla

---

[2] SAE stands for Society of Automotive Engineers, "a U.S.-based professional association and standard development organization" that has taken "a leading role in the development of autonomous vehicle technology standards" and that publishes the SAE Levels of Driving Automation, which provide a "taxonomy of vehicle driving automation systems with detailed definitions for six levels for driving automation," from "no driving automation" to "full driving automation." Compl. ¶¶ 25-26.

1    "periodically send[s] over-the-air updates for the ADAS software in Tesla
2    vehicles").

3    **B.      Tesla Is Sued, First In The Northern District of California And**
4    **          Then, Over A Year Later, Here**

5            Starting last year, Tesla has faced a series of lawsuits alleging that it misled
6    customers in its representations on the timeline toward full automation.  First, on
7    September 14, 2022, Briggs A. Matsko, on behalf of both a proposed nationwide
8    class and a proposed California subclass, sued the three Tesla defendants in the
9    Northern District of California.  *Matsko v. Tesla, Inc.*, No. 4:22-cv-5240 (N.D. Cal.).
10   *See* Marcus Decl. Ex. A.   Matsko alleged that "Tesla has deceptively and
11   misleadingly marketed its ADAS technology as autonomous driving technology"
12   and asserted claims including violation of the federal Magnuson-Moss Warranty
13   Act, breach of express warranty, breach of implied warranty, violation of various
14   California consumer protection laws (including California Unfair Competition Law
15   and California False Advertising Law), fraud and deceit, negligent
16   misrepresentation, and unjust enrichment.  Marcus Decl. Ex. B.  Two more putative
17   class actions were filed in the Northern District of California on September 15 and
18   September 23, 2022.  *Battiato v. Tesla, Inc.*, No. 4:22-cv-5264 (N.D. Cal.); *Mallow
19   v. Tesla, Inc.*, No. 4:22-cv-5443 (N.D. Cal.).  Also on September 23, two additional
20   named plaintiffs joined Matsko in the first-filed action, and the three named
21   plaintiffs filed an amended complaint in *Matsko*.[3]   On October 19, 2022, the
22   Northern District of California consolidated the three California cases based on the
23   parties' agreement that those three cases were brought on behalf of the same
24   purported nationwide class against the same defendants, arise from the same set of
25   factual allegations, and assert similar causes of action.  On October 28, the plaintiffs
26
27   _____
28   [3] A similar lawsuit was filed in the Eastern District of New York on October
     5, 2022.  *See Nachman v. Tesla*, No. 2:22-cv-5976-RPK-ST (E.D.N.Y. Oct. 5, 2022),
     ECF No. 1.  On September 30, 2023, the Court dismissed that lawsuit with leave to
     amend.

in the consolidated cases filed a consolidated complaint (Marcus Decl. Ex. C) in what is now captioned *In re Tesla Advanced Driver Assistance Systems Litigation*, No. 4:22-cv-5240 (N.D. Cal.) (the "Northern District Action").

On November 28, 2022, Tesla moved to compel arbitration as to four of the five named plaintiffs and to dismiss as to the other named plaintiff. Northern District Action, ECF No. 30. On September 30, 2023, that court granted Tesla's motion in its entirety: It granted Tesla's motion to compel arbitration, ordered that the case be stayed against those four plaintiffs, and directed that the parties provide status reports every 120 days regarding the status of the arbitration as to their claims, and it granted the motion to dismiss against the remaining plaintiff with leave to amend. *See In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *7 (N.D. Cal. Sept. 30, 2023). On October 30, 2023, the remaining plaintiff filed the Second Amended Complaint. Northern District Action, ECF No. 61.

On October 2, 2023—a mere two days after the Northern District of California granted Tesla's motion to compel and motion to dismss—Joel Richardson filed this lawsuit in California state court. *See* ECF No. 1 (Notice of Removal), Ex. 2. Tesla timely removed the complaint to this Court on November 22, 2023. ECF No. 1. Richardson's complaint is identical in all material respects to the complaints filed in the Northern District Action. His causes of action are the same, and the factual allegations are nearly identical, as Richardson relies on many of the same statements as those plaintiffs. Also like those plaintiffs, Richardson is subject to Tesla's arbitration agreement, which the Northern District of California already found to be binding and enforceable on nearly identical facts. *See In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *7. Given the similarities between the cases, and to avoid the waste that results from duplicative litigation, Tesla contacted Plaintiff's counsel on November 21, 2023 and informed him that this case was duplicative of an already-pending lawsuit. Tesla received no response.

## III. <span style="font-variant: small-caps">Transfer To The Northern District Of California Is Warranted</span>

The Court should transfer this case to the Northern District of California, where there is an earlier-filed and pending action raising the exact same issues on behalf of the same putative class. Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. "[T]he purpose of [Section 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted).

The § 1404(a) analysis proceeds in two steps. First, the Court should determine "whether the case could have been brought in the transferee forum," and, second, it "considers the convenience of the parties and witnesses and the interest of justice." *Baird v. OsteoStrong Franchising, LLC*, 2022 WL 705883, at *4–5 (E.D. Cal. Mar. 9, 2022). Whether to grant a motion to transfer is within the broad discretion of the court, and the analysis calls for an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted).

### A. This Case Could Have Been Brought In The Northern District of California

This case could have been brought in the Northern District of California, and venue would be proper there. The U.S. District Court for the Northern District of California would have subject matter jurisdiction over this action under 28 U.S.C. §1332(d)(2)(A), since the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Richardson's citizenship is diverse from at least one Defendant. *See* Compl. ¶ 13 (acknowledging that CAFA jurisdiction applies). Moreover, that court would have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) (because there is complete diversity between the parties and the amount-in-controversy exceeds $75,000).

The Northern District of California also would have personal jurisdiction over all Defendants with respect to the claims asserted in Richardson's complaint—specifically because the suit "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). Richardson himself alleged that "Tesla designs, develops, manufacture[s], and tests its electric vehicles and the ADAS software on those vehicles," "includ[ing] all versions of Tesla's ADAS technology (*e.g.*, Autopilot, Enhanced Autopilot, FSD)," "in the State of California at its Palo Alto offices, Fremont factory, and other California offices and facilities." Compl. ¶ 18. Thus, Tesla's alleged conduct "is readily susceptible to a 'purposeful availment' analysis." *See Thomas v. Cricket Wireless LLC*, 2020 WL 1531368, at *4 (N.D. Cal. Mar. 31, 2020) (finding specific jurisdiction where the defendant "authorized" the relevant acts "from its now-former headquarters in California" where the relevant "business and marketing decisions" were made). All told, there is clearly "an affiliation between the forum and the underlying controversy" supporting the Northern District of California's exercise of specific jurisdiction on this set of facts. *Bristol-Myers Squibb Co. v. Super. Court of Cal.*, 582 U.S. 255, 262 (2017) (citation omitted).

Finally, venue would be proper there. For purposes of venue, "an entity with the capacity to sue and be sued in its common name under applicable law, … shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question," 28 U.S.C. § 1391(c)(2), and as established, all three Defendants are subject to personal jurisdiction in the Northern District of California with respect to this case. Venue would also be proper in the Northern District of California under 28 U.S.C. § 1391(b)(2), because most of Plaintiff's allegations center on conduct originating in the Northern District of California. That is where most of the statements that Richardson takes issue with were made, and also where Tesla, Inc. was headquartered when Richardson purchased his car.

**B.    The Public And Private Interest Factors Also Support Transfer**

The second step of the analysis requires that the Court engage in an "'individualized, case-by-case consideration of convenience and fairness.'" *Jones*, 211 F.3d at 498 (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). When undertaking this analysis, courts in this circuit typically consider the following non-exhaustive factors when evaluating a transfer motion: "(1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Ickes v. AMC Networks Inc.*, 2023 WL 4297577, at *4–5 (N.D. Cal. June 30, 2023) (citation omitted).

While those factors are helpful guides toward determining whether transfer is warranted, courts routinely consider other factors; under certain circumstances, some factors prove dispositive.  Foremost among these is the interest of judicial economy that counsels against allowing duplicative litigation to proceed.  Because "[c]oncerns over judicial efficiency are paramount in situations such as this," *Johansson v. Central Garden & Pet Co.*, 2010 WL 4977725, at *3 (N.D. Cal. Dec. 2, 2010), courts consider the "significant burden on limited judicial resources if transfer is denied" as a "potentially dispositive factor" when transfer would allow for consolidation and streamlined proceedings, *Hawkins v. Gerber Products Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013).

The interests of justice and judicial economy are dispositive here.  Aside from allowing for consolidation with other claims and avoiding the waste of judicial resources, transfer would be much more convenient for the parties and witnesses by sparing everyone from duplicating efforts by having to litigate the same claims and issues.  Likewise, transfer would thwart Richardson's attempt at forum-shopping; given that the Complaint is nearly identical to the complaints in the Northern District Action (often verbatim), and given that this suit was filed mere days after Judge

Gilliam issued his opinion in that case, clearly Plaintiff filed this as a separate lawsuit in hopes of avoiding what he believes may be an unfavorable result. Just like four of the named plaintiffs in the Northern District Action, Plaintiff is subject to a mandatory arbitration clause that Judge Gilliam found enforceable. But forum-shopping is not a viable justification for duplicating judicial proceedings, especially when doing so will simply result in rank waste of judicial resources. By contrast, *none* of the applicable factors weigh against transfer in this case: They either favor transfer or are, at worst, neutral.

### 1. Because An Earlier-Filed, Nearly Identical Case Is Pending In The Northern District of California, Judicial Economy And The Interests Of Justice Compel Transfer

Transfer would strongly serve the interests of judicial economy because there is a related and pending consolidated class action in the Northern District of California that raises identical issues. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960). Courts thus routinely grant motions to transfer where there are related and pending lawsuits in the transferee district. *See, e.g.*, *Johansson*, 2010 WL 4977725, at *4; *Ickes*, 2023 WL 4297577, at *5; *Riva v. Pepsico, Inc.*, 2014 WL 1729023, at *4 (S.D. Cal. Apr. 30, 2014); *Keene v. McKesson Corp.*, 2015 WL 9257949, at *5 (N.D. Cal. Dec. 17, 2015).

This suit is in all meaningful respects identical to the Northern District Action. The causes of action overlap entirely: The consolidated complaint in the Northern District Action includes ten causes of action, which Richardson's complaint repeats without alteration.[4] The factual allegations are also nearly identical—and often

---

[4] The Second Amended Complaint in the Northern District Action has just nine causes of action, as the non-arbitration plaintiff dropped the Magnuson-Moss Warranty Act claim.

verbatim. For example, the consolidated complaint in the Northern District Action points to statements that Elon Musk made during a conference call that took place on October 19, 2016. *See* Marcus Decl. Ex. C ¶ 50 & n.21, ¶ 58 & n.31. Richardson quoted the same statements. *See* Compl. ¶ 53. Both Complaints also single out the same blog post on Tesla's website, pulling the same language. *See* Marcus Decl. Ex. C ¶¶ 56-57 & n.27 ("All Tesla Cars Being Produced Now Have Full Self-Driving Hardware"); Compl. ¶ 51 (same). From those quotes, the plaintiffs in the Northern District Action contend that "[t]he blog post included a video made by Tesla's Autopilot team in the weeks before the release, which purported to show a Tesla driving itself without any human intervention from the person in the driver's seat, whose hands remain off the steering wheel throughout the video." Marcus Decl. Ex. C ¶ 57. Richardson copied that language—indeed, the entire paragraph—verbatim. Compl. ¶ 52. Both Complaints also cite—irrelevantly, but identically—the same purported government investigations into unrelated issues. *Compare* Marcus Decl. Ex. C ¶¶ 76-78, 82-83, 112 *and* Compl. ¶¶ 75-77, 81-83, 93.[5]

The cases also raise the same arbitration issues. In the Northern District Action, Tesla moved to compel arbitration as to four of the plaintiffs. Like Richardson, those plaintiffs entered into an arbitration agreement when they completed their vehicle purchases, and they did not opt out. *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *1 (N.D. Cal. Sept. 30, 2023). Given that the arbitration issues have already been litigated and decided in the Northern District Action, and that the court may have to resolve any follow-up proceedings that may surface after arbitration regardless of whether this Court transfers the case, transfer would also avoid two courts having to commit resources

---

[5] The parallels extend beyond just these representative examples. For example, though this Complaint was filed in October 2023, the Complaint says that "[s]ix years later in 2022, Tesla has yet to produce anything even remotely approaching a fully self-driving car," Compl. ¶ 4—just like the Northern District Complaint, *see* Marcus Decl. Ex. C, ¶ 4 ("Six years later in 2022, Tesla has yet to produce anything even remotely approaching a fully self-driving car.").

to possibly identical issues. *See Marchioli v. Pre-Employ.com, Inc.*, 2017 WL 698278, at *2 (E.D. Cal. Feb. 21, 2017) ("Judicial economy and efficiency would certainly be served by transferring Plaintiff's individual case to the Central District, which has already or will soon commit resources to the adjudication of Plaintiff's related class action.").

Transfer would also eliminate the risk of inconsistent rulings. While this Court has the benefit of Judge Gilliam's September 2023 decision, that case remains pending, and allowing the two suits to proceed apace raises the risk that the courts will reach different conclusions on the same issues (including, *e.g.*, the enforceability of any arbitral decision, or in the event that either Court concludes Richardson is not bound by the arbitration clause, on the substantive legal issues that the cases raise).

### 2. The Northern District Of California Is A Much More Convenient Forum For The Parties And For Witnesses

The Northern District of California would be much more convenient for the parties and witnesses. As the Ninth Circuit has observed, "the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 503 F.2d 384, 389 (9th Cir. 1974). The same is true here.

As to the parties, transfer would be much more convenient for Tesla because it is already litigating related actions there. *See S.E.C. v. Roberts*, 2007 WL 2007504, at *4 (D.D.C. July 10, 2007) ("Northern California is more convenient for defendant because he is defending himself in related actions in that district."). Transfer and consolidation would streamline any discovery costs that will take place if this case proceeds past the pleading stage. Moreover, while Tesla is headquartered in Texas, it still has numerous offices in Northern California and has much closer ties to that forum. *See* Bulovas Decl. ¶¶ 4-5. By contrast, Plaintiff would not be affected if this case were to be transferred because this is an "attorney-driven

statutory consumer class action[],"  and it will "require only limited participation of the individual class representative." *Riva*, 2014 WL 1729023, at *3.

The Northern District of California would also be "substantially more convenient" for witnesses, "because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings." *Johansson*, 2010 WL 4977725, at *4 (citation omitted); *see also Keene*, 2015 WL 9257949, at *5 ("Regardless of location, it will be more convenient for these witnesses to travel to a single forum for all of these cases rather than traveling to different ones across the country.").  Moreover, the allegations in the Complaint make clear that most of the conceivable witnesses are located in the Northern District of California.  Plaintiff's claims seek to challenge Tesla's decision-making relating to its research, development, design, and product content of the ADAS technology.  As is clear from the face of the Complaint, most of that happened in northern California.  *See* Compl. ¶ 14 ("[F]rom the beginning of the Class Period (as defined herein) until December 2021, Defendant Tesla, Inc. was headquartered in Palo Alto, California, and thus designed, developed, manufactured, tested, and marketed its vehicles and ADAS technology at issue in this action in California throughout that period"); *id.* ¶ 18 (referencing Tesla's "Palo Alto offices" and "Fremont factory"); *id.* ¶ 61 ("In April 2019, at an event in Palo Alto, California, that Tesla dubbed 'Autonomy Day,' Musk took to the stage and announced that Tesla vehicles would be capable of full self-driving and autonomously navigating dense urban areas like San Francisco and New York by the end of 2019."); *id.* ¶ 93 (referencing "Tesla's Fremont factory"); *see also* Bulovas Decl. ¶ 5.

### 3.  The Remaining Factors Also Favor Transfer Or Are, At Worst, Neutral

The factors above are dispositive.  By contrast, none of the remaining factors is especially relevant here.  Several of the factors lean in favor of transfer, and the remaining factors are neutral.

*First*, although the ease of access to evidence is no longer a predominant factor in deciding venue, since "advances in technology have made it easy for documents to be transferred to different locations," *Hawkins*, 924 F. Supp. 2d at 1216 (quotation marks omitted), to the extent the factor is relevant, it favors transfer. While Tesla is headquartered in Texas, it still has significant operations in northern California, which is where most of the relevant documents and evidence are located. *See* Compl. ¶ 14 (recognizing that "throughout the Class Period, Tesla, Inc. tested and manufactured a substantial percentage of the Class Vehicles (as defined herein) at its factory in Fremont, California"); *id.* ¶ 18 ("This includes all versions of Tesla's ADAS technology (e.g., Autopilot, Enhanced Autopilot, FSD), which were and are designed, developed, manufactured, and tested by Tesla in the State of California at its Palo Alto offices, Fremont factory, and other California offices and facilities"); *see also* Bulovas Decl ¶ 5. By contrast, none of the relevant evidence is located in this district.

*Second*, while both this district and the Northern District of California are busy, the "[a]dministrative considerations" that animate the final factor—the relative court congestion and time to trial in each forum—"also weigh in favor of transfer." *Hawkins*, 924 F. Supp. 2d at 1217. In *Hawkins*, the court found that this factor "favors transferring the action" because there would "only be a marginal cost associated with" transfer and consolidation, but "if the Court were to deny transfer, the overall cost of litigation will be effectively doubled because both suits will proceed independently—and possibly with different Plaintiff's counsel." *Id.* at 1217. The same is true here. While transferring the case will not add any meaningful burden to the Northern District of California—since these issues are already before that court, which has already issued an opinion on the subject—denying transfer will needlessly add to this district's burden.

*Third*, the local-interest factor tilts slightly in favor of transfer. Courts often begin "from a presumption that this factor is neutral." *Esquer v. StockX, LLC*, 2020 WL 3487821, at *6 (N.D. Cal. June 26, 2020); *Hicks v. Grimmway Enters., Inc.*,

2023 WL 3185784, at *6 (S.D. Cal. May 1, 2023).  While both jurisdictions have an interest in the controversy, Northern California's is slightly greater because so much of Tesla's operations take place there.  So, to the extent this factor is relevant, it also weighs in favor of transfer.

*Finally*, Plaintiff's choice of forum is entitled to no weight for two separate reasons, and that factor is thus neutral.[6]  First, it is well established that "[w]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Richardson seeks to represent a nationwide class of Tesla customers.  Courts routinely assign little to no weight to a putative class plaintiff's choice of forum under those circumstances.  *See, e.g.*, *Skelton v. Care.com, Inc.*, 2021 WL 5862447, at *8 (S.D. Cal. Aug. 17, 2021) ("[T]his case is a putative nationwide class action, and so, Plaintiff's choice of forum is accorded less weight."); *Johns v. Panera Bread Co.*, 2008 WL 2811827, at *2 (N.D. Cal. July 21, 2008) (stating that one of the "multiple factors weigh[ing] against consideration of plaintiffs' choice of forum" was the fact that "plaintiffs ha[d] brought th[e] case as a class action"); *Foster v. Nationwide Mut. Ins. Co.*, 2007 WL 4410408, at *3 (N.D. Cal. Dec. 14, 2007) (same).  Second, because Plaintiff engaged in blatant forum shopping in filing this lawsuit when there was a nearly identical class action pending for over a year (in which the Court had already issued a decision that would bar his claims), his choice of forum should be disregarded entirely.  *See id.* at *2 ("Where forum-shopping is evident ... courts should disregard plaintiff's choice of forum."); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010) (if a case involves "identical suits in distinct venues, [the plaintiff's choice of forum] loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed.").

---

[6] Because both this Court and the Northern District of California are equally familiar with California law, the fifth factor is also neutral.

## IV.  CONCLUSION

For the foregoing reasons, this Court should transfer this action to the Northern District of California or, in the alternative, compel enforcement of the parties' arbitration agreement and stay this case pending arbitration.

Respectfully submitted,

Dated: December 1, 2023

/s/ *David C. Marcus*
David C. Marcus
(SBN: 158704)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5312
Fax: (213) 443-5400
david.marcus@wilmerhale.com

*Attorney for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2023, the foregoing document was filed with the Clerk of Court using the CM/ECF system. The CM/ECF system will send notification of this filing to Plaintiff's counsel of record.

By: */s/ David C. Marcus*
       David C. Marcus