David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5312

Alan Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 937-7294

Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000

*Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE TESLA ADVANCED DRIVER ASSISTANCE SYSTEMS LITIGATION | CASE NO.: 3:22-cv-5240-RFL<br><br>**DEFENDANTS TESLA, INC., TESLA LEASE TRUST, AND TESLA FINANCE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED SECOND AMENDED COMPLAINT**<br><br>Hon. Rita F. Lin<br>Date: February 27, 2024<br>Time: 10:00 a.m.<br>Courtroom 15 – 18th floor<br>Second Amended Consolidated Complaint<br>Filed: October 30, 2023 |

**TABLE OF CONTENTS**

**Page**

I.     LOSAVIO'S CLAIMS REMAIN TIME-BARRED ............................................................ 1

II.    NONE OF LOSAVIO'S CLAIMS MEETS RULE 9(B), AS THEY MUST ...................... 4

III.   THE WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS I & II) ................. 7

IV.    LOSAVIO FAILS TO SUFFICIENTLY PLEAD AN UNJUST ENRICHMENT
       CLAIM (COUNT IX) ........................................................................................................ 9

V.     LOSAVIO CANNOT OBTAIN EQUITABLE RELIEF (COUNTS I-V) ........................ 10

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Arris Cable Modem Consumer Litig.*,
  2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................................................... 6

*Avakian v. Wells Fargo Bank, N.A.*,
  827 Fed. App'x 765 (9th Cir. 2020) ........................................................................................ 4

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................................................... 6

*Bettles v. Toyota Motor Corp.*,
  645 F. Supp. 3d 978 (C.D. Cal. 2022) ..................................................................................... 3

*Brown v. Madison Reed, Inc.*,
  2022 WL 3579883 (N.D. Cal. Aug. 19, 2022) ........................................................................ 6

*Diaz v. Wells Fargo Bank*,
  2015 WL 7180617 (N.D. Cal. Nov. 16, 2015) ........................................................................ 3

*Dix v. Nova Benefit Plans, LLC*,
  2015 WL 12859221 (C.D. Cal. Apr. 28, 2015) ....................................................................... 4

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................................................... 5

*El Pollo Loco, Inc. v. Hashim*,
  316 F. 3d 1032 (9th Cir. 2003) ................................................................................................ 3

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................................................. 6

*Haskins v. Symantec Corp.*,
  2014 WL 2450996 (N.D. Cal. June 2, 2014) ...................................................................... 5, 6

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................................................. 6

*Kumandan v. Google LLC*,
   2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ................................................................... 7

*Lukovsky v. City & Cnty. of S.F.*,
   535 F.3d 1044 (9th Cir. 2008) ........................................................................................ 3

*Luong v. Subaru of Am Inc.*,
   2018 WL 2047646 (N.D. Cal. May 2, 2018) ............................................................... 10

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ........................................................................................ 6

*Pereda v. Gen. Motors, LLC*,
   2022 WL 19975388 (N.D. Cal. Dec. 9, 2022) ............................................................... 9

*Raynaldo v. Am. Honda Motor Co., Inc.*,
   2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ........................................................... 6, 7

*Royal Primo Corp. v. Whitewater W. Indus., Ltd.*,
   2016 WL 4080177 (N.D. Cal. July 29, 2016) ............................................................... 5

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ........................................................................................ 4

*Sloan v. General Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ........................................................................... 9

*Stockinger v. Toyota Motor Sales USA Inc.*,
   2017 WL 10574372 (C.D. Cal. July 7, 2017) ............................................................... 8

*Tabler v. Panera LLC*,
   2020 WL 3544988 (N.D. Cal. June 30, 2020) .............................................................. 5

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021) ......................................................................... 8

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 4

*Wheeler v. City of Oakland*,
   2006 WL 1140992 (N.D. Cal. Apr. 28, 2006) ............................................................. 10

*Wilson v. Hewlett-Packard Co.*,
 668 F.3d 1136 (9th Cir. 2012) ........................................................................................... 7

**State Cases**

*Aryeh v. Canon Bus. Sols., Inc.*,
 55 Cal. 4th 1185 (2013) ................................................................................................... 2

*Jiagbogu v. Mercedes-Benz USA*,
 118 Cal. App. 4th 1235 (2004) ..................................................................................... 7, 8

*Krotin v. Porsche Cars N. Am., Inc.*,
 38 Cal. App. 4th 294 (1995) ......................................................................................... 7, 8

*Lane v. C.A. Swanson & Sons*,
 130 Cal. App. 2d 210 (2015) ............................................................................................ 8

*Morgan v. AT&T Wireless Servs., Inc.*,
 177 Cal. App. 4th 1235 (2009) ......................................................................................... 4

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
 10 Cal. App. 5th 56 (2017) ............................................................................................... 3

**Federal Statutes**

Fed. R. Civ. P. 8 .................................................................................................................... 4, 6

Fed. R. Civ. P. 9(b) ........................................................................................................... 1, 4, 6

**State Statutes**

Cal. Civ. Code § 1791.2(a)(1) .................................................................................................. 8

Cal. Civ. Code § 1793.22(b)(1) ................................................................................................ 8

Cal. Comm. Code § 2725(2) ................................................................................................. 2, 7

LoSavio's case is on its last legs, and it should go no further. His first amended complaint alleged that, in January 2017, he bought a Tesla car equipped with the "Full Self-Driving Capability" package, that the technology allegedly does not work as originally promised, and that it has not made his car fully autonomous. Judge Gilliam held that all his claims accrued on the purchase date, that no tolling exception applies, and that therefore all his claims are time-barred.

LoSavio amended, and changed his theory. His second amended complaint ("SAC") alleges that, while he knew his car was not fully autonomous, he expected his car to become such "within a year or two, or some other reasonably short time, after his purchase" or "driv[e] itself in at least some circumstances" "within a year or two after his purchase," and that "Tesla's self-driving technology would only continue to expand and improve over the life of his car." SAC ¶¶ 17-18. Tesla identified in its motion to dismiss ("Mot.") the flaws in this vague (and individualized) theory, as to both the timeliness and the merits of his case.

So LoSavio attempts to rewrite his complaint again through his opposition brief ("Opp."). Now he says that he only "pre-purchased" the FSDC package in January 2017 and that "the FSD software" was not delivered as of April 2022. But his shift in tactics leads to the same result. At bottom, LoSavio still contends that he did not get what he purchased in January 2017, so his new theory runs right into the teeth of Judge Gilliam's order, which is law of the case, and his claims are still untimely. Nor does this new "pre-purchase" theory save his claims on the merits. Among other deficiencies, this new "pre-purchase" theory makes no sense because LoSavio would have no warranty claims if he did not possess the product he is complaining about. In addition, the SAC remains devoid of allegations showing Tesla committed any fraudulent conduct, an allegation underpinning all his claims, and therefore should be dismissed for failure to meet Rule 9(b).

I.  **LOSAVIO'S CLAIMS REMAIN TIME-BARRED**

LoSavio first tries to evade the applicable statutes of limitations (which range from two to four years, Mot. 4) by claiming that the discovery rule applies to all his claims (Opp. 6:25-7:1 & n.10). But he ignores the cases Tesla cited (Mot. 4-5) showing that his negligence, FAL, and CLRA claims all accrued from his purchase in January 2017. He addresses only the UCL (with a single case) and the Song-Beverly Act claims. Opp. 7 n.6. His UCL case proves Tesla's point

that the delayed discovery rule is among the "nonstatutory exceptions to the basic limitations period," *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013), which he fails to sufficiently plead (*infra* 2-3). And the Song-Beverly Act's accrual statute is silent on the discovery rule and so does not help him, either. Cal. Comm. Code § 2725(2). Absent a tolling exception (*infra* 2-5), his negligence, warranty, and California statutory claims accrued upon his purchase, not when he allegedly discovered the underlying cause of action.

Presumably to circumvent Judge Gilliam's holding that his alleged injury accrued in January 2017 when he paid for the FSDC package, LoSavio now argues that he "only *pre-purchased* the FSD software in January 2017, which Tesla still had not delivered to him" at least as of April 2022, a few months before he initiated this lawsuit. Opp. 2:8-9 (emphasis in original); *id.* at 7:1-2. As explained below (*infra* 7), this theory nullifies the warranty claims, which LoSavio acknowledges accrue upon delivery—delivery he now suggests did not happen. This "pre-purchase" theory is also belied by the SAC's allegations that the FSDC package would "continually improve over time with over-the-air software updates," that "FSD Beta" is only part of the FSDC package, and that he was able to download updates for various other FSDC features (SAC ¶¶ 17, 159, 161, 162). It is further belied by his core allegation that even the latest Tesla technology (presumably including the FSD Beta) has not reached full autonomy. So LoSavio's effort to rewrite his pleadings in his opposition brief fails, and the conclusion Judge Gilliam reached remains: that LoSavio purchased a product in January 2017 that he claims did not perform as he hoped, and those claims are facially time-barred because his alleged harm occurred at the time of his purchase. Indeed, LoSavio's own declaration, which should be stricken as explained below (*infra* 10), nonetheless proves this point. Opp. Ex. B at ¶ 7 (at the time of purchase believing that "the FSD technology would be working and available for general release within a year [upon his purchase]").

Finally, LoSavio invokes two tolling exceptions, but neither applies here.[1] As to the

---

[1] LoSavio has abandoned his other tolling theories, *i.e.*, equitable tolling, the repair rule, class action tolling, and fraudulent inducement, by not addressing them in the Opposition. *Compare* Mot. 6 *and* Opp. 6-9. He has also abandoned any tolling theory for his safety-based claims. *See* Opp. 6-9 (focusing only on the purported timeline towards full autonomy).

*delayed discovery rule*, LoSavio fails to meaningfully address Tesla's arguments that (1) by January 2019, at the latest, LoSavio knew or should have known about the alleged misrepresentation that formed the basis of his claims, and (2) he failed to sufficiently allege his "diligence" or how he was unable to discover the alleged misrepresentation despite his diligence (Mot. 5-6).[2]  His only response to these arguments is that he was justified in "believ[ing] Musk's post-2017 statements that Tesla was getting ever closer to achieving full self-driving[.]" Opp. 7.  But the SAC demonstrates that "numerous sources of information concerning the [alleged] defect [] would have been revealed by such a [quick internet] search." Mot. 5 (quoting *Bettles v. Toyota Motor Corp.*, 645 F. Supp. 3d 978, 985 (C.D. Cal. 2022)).  The *only* alleged defect that LoSavio cites is the lack of lidars, *see* Opp. 10:15-22, but the SAC (¶ 36) does not allege *when* LoSavio discovered the alleged "expert consensus" that "truly autonomous, self-driving cars cannot be achieved without some reliance on expensive lidar" or *how* he could not have discovered this supposed requirement despite reasonable diligence.  This case is therefore distinguishable from the two cases LoSavio cites where plaintiffs were unable to ascertain the alleged truth and had to rely on defendant's superior knowledge.[3]  Nor can he evade dismissal by arguing the discovery rule involves a factual question, when no sufficient allegations trigger the rule in the first place.[4]

As to the equitable estoppel doctrine, LoSavio does not deny that he must—but fails to—allege separate conduct by Tesla "above and beyond" the wrongdoing upon which his claims are filed. *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1051-52 (9th Cir. 2008); *cf. Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 81 (2017) (cited at Opp. 8).  Separately,

---

[2] LoSavio concedes that his implied warranty claim is not subject to the delayed discovery rule in any way.  *Compare* Mot. 6 n.2 *and* Opp. 6-8.

[3] *See Diaz v. Wells Fargo Bank*, 2015 WL 7180617, at *4 (N.D. Cal. Nov. 16, 2015) (lower mortgage rates for refinancing); *El Pollo Loco, Inc. v. Hashim*, 316 F. 3d 1032, 1040 (9th Cir. 2003) (defendant's misrepresentations in his own franchise applications not submitted to plaintiff).  The Court need not consider the other cases cited in footnote 8 of the Opposition because, as LoSavio recognizes, those cases do not involve tolling and therefore are inapposite.

[4] The two cases he cites are distinguishable.  The court in *Fox v. Ethicon Endo-Surgery, Inc.* found plaintiff's proposed amendment would support her allegation that "she did not suspect, nor did she have reason to discover, facts supporting [her] action," 35 Cal. 4th 797, 811 (2005), no similar allegations are offered here.  And in *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, the appellate court deferred to the trial court's evidentiary findings regarding when plaintiff discovered harm, 1 Cal. 3d 586, 596 (1970).

the fact that he already had or should have had notice of his claims undermines any inference that he acted reasonably by waiting five years to bring his suit—a fact that LoSavio never addresses and that forecloses his equitable estoppel argument. *Compare* Mot. 7-8 *and* Opp. 8-9.

## II. NONE OF LOSAVIO'S CLAIMS MEETS RULE 9(B), AS THEY MUST

LoSavio does not dispute that most of his claims sound in fraud and therefore are subject to Rule 9(b)'s heightened pleading standard. *Compare* Mot. 8 & n.3 *and* Opp. 9. He argues only that his negligent misrepresentation, UCL, FAL, and CLRA claims are subject to Rule 8 alone because they "do not rely entirely on alleged fraudulent conduct." Opp. 9. Not so. The SAC makes clear that all his claims rely on the same set of allegations (SAC ¶¶ 170, 179, 194, 204, 220, 235, 242, 250, 256) and "a unified course of [allegedly] fraudulent conduct," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (cited at Opp. 9-10); *see also id.* at 1106.[5] All his claims therefore are governed by Rule 9 and fail to meet that standard.

***No reliance on fraudulent statement.*** LoSavio's opposition confirms that he is unable to identify any fraudulent statement on which he relied. As Tesla explained, the only two statements that LoSavio allegedly saw in January 2017 did not promise any timeline toward a fully autonomous car and instead stated the exact opposite. Mot. 9. Acknowledging that Tesla's statements are "technically true," LoSavio nonetheless argues that the statements are actionable because "technically true statements can be misleading." Opp. 12. But the case he cites involved defendant's alleged failure to disclose information that rendered some partial representation misleading. *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255-56 (2009). That is not the case here where the alleged statements were explicitly accompanied by cautionary language. *Dix v. Nova Benefit Plans, LLC*, 2015 WL 12859221, at *7 (C.D. Cal. Apr. 28, 2015) ("unambiguous disclaimers … decisively refute any allegations of reasonable reliance") (citing cases). He alleges no other way these admittedly true statements were nonetheless fraudulently misleading.

---

[5] LoSavio's other case is in accord. *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) ("[W]here as here [] a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud"). There is also no "growing trend" of applying Rule 8 rather than Rule 9(b) to negligent misrepresentation claims, as evinced by a Ninth Circuit opinion postdating the three district court cases cited by LoSavio. *Avakian v. Wells Fargo Bank, N.A.*, 827 Fed. App'x 765, 766 (9th Cir. 2020).

Setting aside the statements he alleged, LoSavio now claims in his opposition that he "read and relied on" (Opp. 4) "at least six [other] false or misleading Tesla and Musk statements" (*id.* at 10), although he identifies only four (*id.* at 4, 10). This argument fails to sustain these claims.

*First*, as to all the four purported misrepresentations, LoSavio's scattershot allegations either misquote the original source (*compare* Opp. 4:1-22 *and* SAC ¶¶ 46, 49, 51, 60, 62, 153; n.119) or fail to identify the source at all (*compare* Opp. 4:1-22 *and* SAC ¶¶ 17, 18, 152, 155). In any event, none support his claims. LoSavio offers nothing to demonstrate the falsity of any alleged misrepresentation related to safety, that is, that Tesla's ADAS technology is less safe than human driving, or Tesla's knowledge of the alleged falsity. The three alleged misrepresentations regarding the capability of Tesla's ADAS technology are premised on his notion that lidars are necessary for a fully autonomous car, and therefore Tesla's statements must be false because his car is not equipped with lidars. But that alone is insufficient to plead any fraud claim when the SAC contains nothing to demonstrate whether and when Tesla knew about such alleged falsity.

*Second*, to avoid the fact that the SAC does not identify any of the four purported misrepresentations as something he relied on for his purchase, LoSavio argues that he is not required to plead any individual fraudulent statement (Opp. 11). But that is beside the point. The issue in both *Royal Primo Corp. v. Whitewater W. Indus., Ltd.*, 2016 WL 4080177, at *9 (N.D. Cal. July 29, 2016) and *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129 (N.D. Cal. 2014) was whether plaintiffs must specify *when* and *where* they saw certain specified alleged misrepresentations. Here, LoSavio did not allege he saw these statements at all.

*Third*, LoSavio cannot rely on the "long-term advertising campaign" cases for a more lax pleading requirement for reliance. As a threshold matter, this exception is unavailable to LoSavio's FAL, UCL, and CLRA claims, which all concededly require allegations of actual reliance (*compare* Mot. 15 *and* Opp. 15 n.18) that are missing here (*supra* 4). In any event, this "narrow" exception does not apply because LoSavio's "failure to identify the specific advertisements upon which [he] relied renders impossible an assessment of whether the advertising campaign was extensive or pervasive," *Tabler v. Panera LLC*, 2020 WL 3544988, at *8, *10 (N.D. Cal. June 30, 2020), because he bought his vehicle shortly after the alleged campaign started in late 2016, *Haskins v. Symantec*

*Corp.*, 2014 WL 2450996, at *2 (N.D. Cal. June 2, 2014) (purchase within two years of the alleged misleading marketing practice "falls well short of the 'decades-long' campaign in *Tobacco II*"), and because the advertisements are not sufficiently similar to each other, *id.* LoSavio cites *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020), arguing "reliance [can be] inferred from the misrepresentation of a material fact" (Opp. 11). But the cited holding from *Moore* concerns whether plaintiffs had standing to bring the UCL and FAL claims. 966 F.3d at 1021. Whatever standard California law requires for UCL or FAL claims, federal law requires fraud claims to meet Rule 9(b). *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *7 (N.D. Cal. Jan. 4, 2018).

     ***No concealment.*** LoSavio's concealment-based claims focus solely on so-called "safety issues" but not Tesla's timeline for developing ADAS technology. LoSavio is wrong to argue that his concealment-based claims are subject to a lower pleading standard than his misrepresentation-based claims. Opp. 12. "The Ninth Circuit held in *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1225 (9th Cir. 2009), that Rule 9(b) applies to *any* claim that is grounded [on] fraud[,]" including concealment-based claims. *Raynaldo v. Am. Honda Motor Co., Inc.*, 2022 WL 4358096, at *7 (N.D. Cal. Sept. 20, 2022) (emphasis in original); *Brown v. Madison Reed, Inc.*, 2022 WL 3579883, at *3 (N.D. Cal. Aug. 19, 2022) (same). LoSavio's pre-*Kearns* cases are therefore inapposite.[6] Because he misunderstands the applicable pleading standard, he makes no attempt to demonstrate how his concealment-based claims could satisfy this heightened pleading standard. It is unclear from the SAC or his opposition what specific safety defect was omitted from which disclosure. Mot. 10-11. Moreover, LoSavio does not allege "where the omitted information should or could have been revealed," nor has he "provide[d] representative samples of advertisements, offers, or other representations that [he] relied on to make [his] purchase but that failed to include the allegedly omitted information," let alone with specificity. *Raynaldo*, 2022 WL 4358096, at *7.

     But even under Rule 8's standard, his concealment-based claims remain deficient due to the lack of allegations showing that Tesla "knew of [any] specific defect at the time of sale." *Raynaldo*, 2022 WL 4358096, at *8; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir.

---

[6] *See Raynaldo*, 2022 WL 4358096, at *7 (declining to follow *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007), which in turn relied on *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)).

2012). Because LoSavio has failed to plead Tesla's knowledge of any specific defect, his speculative argument that Tesla had "exclusive knowledge" of some vague "safety issue" triggering a duty to disclose (Opp. 12 n.17) necessarily fails. And no duty to disclose could have plausibly arisen later, given the public news and consumer reports on the purported limitations of Tesla's ADAS technology—the exact sources LoSavio cites throughout the SAC. *Kumandan v. Google LLC*, 2022 WL 103551, at *9 (N.D. Cal. Jan. 11, 2022). Likewise, LoSavio "ha[s] not plausibly pled any affirmative acts by [Tesla] 'to suppress information in the public domain or obscure the consumers' ability to discover it." *Raynaldo*, 2022 WL 4358096, at *9.

### III.   THE WARRANTY CLAIMS SHOULD BE DISMISSED (COUNTS I & II)

LoSavio's warranty claims fail at the threshold. *First*, as he acknowledges, Song-Beverly Act claims normally accrue at tender of delivery, with a limited exception for future performance that could extend beyond delivery. Opp. 7 n.6 (citing Cal. Comm. Code § 2725(2)). As a matter of both common sense and law, there can be no warranty claims when LoSavio claims that he does not even possess the "FSD software" (*id.* at 2:8-9, 13:25). *Second*, he does not deny that he failed to provide Tesla the statutorily required pre-suit notice (*id.* at 13). His only argument is that any notice would have been "futile," citing two cases. *Id.* But neither case addressed the statutory notice requirement,[7] and LoSavio ignores cases Tesla cited where courts dismissed the warranty claims for lack of pre-suit notice (*see* Mot. 11). In any event, LoSavio fails to meaningfully address the pleading flaws Tesla identified in his warranty claims, as explained below.

*No express warranty claim.* LoSavio has yet to articulate an "unequivocal promise to preserve or maintain any feature." Mot. 11. He does not allege that Tesla made any promise that his car was fully autonomous when purchased. Both the SAC (¶ 17) and his newly devised "pre-purchase" theory (*supra* 2) contend the opposite. This leaves only the purported promise that his car would become fully autonomous in the future (SAC ¶ 171). But such a promise is the opposite of an "undertaking to *preserve or maintain*" certain features, the statutory definition of "express warranty." Mot. 11 (quoting Cal. Civ. Code § 1791.2(a)(1)).

---

[7] *See Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294 (1995); *Jiagbogu v. Mercedes-Benz USA,* 118 Cal. App. 4th 1235, 1245 (2004).

Setting that aside, the purported express warranties that "the product has *or* will soon have self-driving capability" and that "FSD would make his vehicle fully self-driving '*within a reasonable time* after' purchase" (Opp. 12, emphasis added) do not meet the "specific and unequivocal" standard (Mot. 12). The fact that LoSavio is unable to identify a specific timeline for the alleged express warranty speaks for itself. LoSavio attempts to cite certain "public statements," some of which have nothing to do with the FSDC package (SAC ¶¶ 62, 78, 81) or software at all (*id.* ¶¶ 6, 58). Regardless, he fails to identify which statement he "heard, read, or [was] otherwise aware of." *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1090 (N.D. Cal. 2021). In a last-ditch effort, LoSavio argues that the so-called descriptive names "Autopilot," "Full Self-Driving," and "FSD" constitute express warranty. But two of them—"Autopilot" and "FSD"—indicate nothing about any "general characteristics[.]" *Lane v. C.A. Swanson & Sons*, 130 Cal. App. 2d 210, 213 (2015) (Opp. 13). And his reliance on the "Full Self-Driving" name is a red herring: This case is premised on his purported misunderstanding of *when* the software would enable full autonomy, and the name "Full-Self Driving" is not descriptive of any timeline.

Nor has LoSavio identified a "model" or "sample" to support his claim. The October 2016 video did not identify the version of the software. SAC ¶¶ 3, 6. Moreover, as Tesla explained and LoSavio has ignored, that video does not fit into the definition of "sample" or "model," and in any event did not speak to the capability of LoSavio's vehicle in an unspecified future. Mot. 12.

Separately, LoSavio concedes that he did not present his vehicle for repair, another prerequisite for his express warranty claim. Mot. 12. He argues instead that he was exempted from doing so because any repairs would be "futile." Opp. 13. But neither case he cites addressed this "futility" argument, and both confirmed that "a reasonable number of repair attempts" are required.[8] Indeed, this "futility" argument has repeatedly been rejected. *See, e.g.*, *Stockinger v. Toyota Motor Sales USA Inc.*, 2017 WL 10574372, at *7 (C.D. Cal. July 7, 2017) (collecting cases from courts in the Ninth Circuit); *Pereda v. Gen. Motors, LLC*, 2022 WL 19975388, at *13 (N.D. Cal. Dec. 9,

---

[8] *See Krotin*, 38 Cal. App. 4th at 297-299, 303 (confirming that a manufacturer's duty under the warranty is triggered "if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts," which were supported by undisputed evidence); *Jiagbogu*, 118 Cal. App. 4th at 1245 (quoting Cal. Civ. Code § 1793.22(b)(1), under which a reasonable number of repair attempts can be presumed under certain conditions that are not pled here).

2022) (declining to recognize this exception).

*No unmerchantability-based implied warranty claim.* [9] Attempting to discount the fact that he drove his car for years without problems—and the unavoidable inference that there was no manifested unmerchantability—LoSavio now purports to separate his car from the software, contending that only the software is unmerchantable. But that distinction does not matter, because as Tesla explained (Mot. 13), there is no express warranty regarding the ADAS technology development timeline and thus no accompanying warranty period for the implied warranty claim.

In any event, any viable implied warranty claim must be based on a product LoSavio has received (*supra* 7), yet LoSavio has alleged no unmerchantability of any FSDC feature or update he downloaded or activated. To the extent his theory is that Tesla vehicles were unsafe, that claim fails because LoSavio does not allege that his own vehicle exhibited the alleged defect. Ignoring Tesla's cases (Mot. 13-14), LoSavio cites *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840 (N.D. Cal. 2018), arguing he is excused from making those specific allegations. Opp. 14. But LoSavio misconstrues *Sloan*. There, the court held that plaintiffs "created a fact question for the jury regarding the reliability and safety of the vehicles" by "adequately [pleading] an unreasonable safety hazard," in particular, the nature of the defect, the factors contributing to it, and how the alleged defect could lead to the examples of injury. *Id.* at 869-70, 879. Here, the allegations identified by LoSavio (Opp. 14) are not even close—together, they fail to identify the safety-related defect of the ADAS technology, the purported causes, or how the alleged defect led to each reported accident.

## IV. LOSAVIO FAILS TO SUFFICIENTLY PLEAD AN UNJUST ENRICHMENT CLAIM (COUNT IX)

LoSavio concedes that he must establish Tesla's unjust retention of a benefit and that the only "benefit" allegedly retained by Tesla is the price he paid for the FSDC package. Opp. 14. His unjust enrichment claim therefore fails alongside his other claims for lacking sufficient allegations demonstrating that Tesla committed any fraud to retain such alleged "benefit." Mot. 14. In addition, the claim also fails due to LoSavio's failure to adequately identify the unjustly retained "benefit,"

---

[9] LoSavio has waived any implied warranty claim based on the alleged unfitness of his car or the FSDC package by failing to respond to Tesla's argument. *Compare* Mot. 14 *and* Opp. 14:6-10 (citing two cases regarding merchantability rather than fitness for a particular purpose).

given his concession that he received at least part of the FSDC package and his belief that Tesla would keep improving its technology through software updates over time (*supra* 2).

## V. LOSAVIO CANNOT OBTAIN EQUITABLE RELIEF (COUNTS I-V)[10]

LoSavio does not deny that he would be barred from seeking equitable relief under *Sonner* if he fails to allege inadequate remedy at law. His conclusory allegations that the public "will be further harmed by that conduct" (Opp. 15) cannot save his insufficiently pleaded claims (Mot. 15).

As Tesla explained, LoSavio also lacks Article III standing to seek injunctive relief because he "will clearly not purchase the product again." Mot. 15. In response, LoSavio cites his declaration submitted for the preliminary injunction motion, a motion that predated the SAC and was later denied by Judge Gilliam. This extra-pleading declaration should be stricken. *Wheeler v. City of Oakland*, 2006 WL 1140992, at *6 (N.D. Cal. Apr. 28, 2006) (striking extra-pleading materials filed with opposition to motion to dismiss). Without the declaration, LoSavio offers no response to Tesla's argument that his claims for injunctive relief should be dismissed because they are based on the same facts as his claims for monetary relief. *Compare* Mot. 15 *and* Opp. 15. In any event, his allegation in the currently operative complaint that "Defendants are still nowhere near being able to deliver fully self-driving vehicles" (*e.g.*, SAC ¶ 244) defeats any inference that some prospective injunctive relief would prevent him from suffering "imminent or actual threat of future harm." *Luong v. Subaru of Am Inc.*, 2018 WL 2047646, at *6 (N.D. Cal. May 2, 2018) (cited at Opp. 15 n.19).

## CONCLUSION

LoSavio has failed again to show the timeliness of his claims, and he identifies no good-faith basis for asserting that new allegations might cure the SAC's deficiencies. The Court therefore should grant Tesla's motion to dismiss (ECF No. 71) and dismiss LoSavio's claims with prejudice.

---

[10] LoSavio concedes that, as a matter of law, his requests for retrospective injunctive relief will all fail if there is no actionable misleading representations and that his FAL, CLRA, and UCL claim will all fail if there is no misleading statement on which he purportedly relied or for which reliance can be inferred. *Compare* Mot. 15 *and* Opp. 15 n.18.

|   |   |
|---|---|
| | Respectfully submitted, |
| Dated: January 22, 2024 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | By:  */s/ Alan Schoenfeld*  <br>         Alan Schoenfeld |
| | *Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: January 22, 2024                       By:     */s/ Alan Schoenfeld*
                                                                  Alan Schoenfeld