UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation** | Case No. 22-cv-05240-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 71 |

Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC's (together, "Tesla's") Motion to Dismiss is granted as to the express and implied warranty claims and claims for equitable relief. The remaining claims survive to the extent they rely on certain representations described below and are dismissed to the extent they rely on the other alleged misrepresentations. This ruling assumes the reader's familiarity with the facts of the case, the applicable legal standards, and the parties' arguments.

*Warranty Claims.* LoSavio has failed to state an express warranty claim. Tesla's alleged promise that the vehicle would be fully self-driving "within a reasonable time after" purchase (Dkt. No. 61 ¶¶ 171–72), is not a promise to "preserve or maintain the utility or performance" of the vehicle, Cal. Civ. Code § 1791.2(a)(1). Nor can the allegedly descriptive product names — "Autopilot," "Full Self-Driving," and "FSD" — support this claim since LoSavio understood at purchase that the vehicle was not yet fully self-driving. (Dkt. No. 61 ¶¶ 1, 18, 171.)

LoSavio has also failed to state an implied warranty claim. As LoSavio knew at purchase that the car was not fully self-driving, merchantability here must refer to the car's ability to drive safely without defect. Nothing in the Second Amended Complaint ("SAC") shows that the

1

vehicle was "unfit for its ordinary purpose" of basic, hands-on driving. *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 945 (N.D. Cal. 2018) ("The law is clear that to be fit for its ordinary purpose, a vehicle must be in safe condition and substantially free of defects.") (cleaned up).

As LoSavio has twice amended these claims already, and since he has not identified how he could sufficiently bolster these allegations upon further amendment, dismissal is with prejudice, without leave to amend.

***Equitable Relief.*** As pleaded, LoSavio does not have standing to seek injunctive relief because the FAC does not allege that LoSavio has any interest in buying another Tesla. *Cf. Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 969 (9th Cir. 2018). But LoSavio has attested that he would have such interest if he could regain his trust in the brand's statements and self-driving capabilities. (Dkt. No. 74-3 ¶ 12.) *See Almeida v. Apple, Inc.*, No. 21-CV-07109-VC, 2023 WL 3149252, at *2 (N.D. Cal. Mar. 1, 2023) (allegations that plaintiffs intend to purchase the product again in the future "suffice for purposes of Article III standing to pursue injunctive relief."). And he alleges that injunctive relief is necessary to protect against future harm. *See Graham v. Cent. Garden & Pet Co.*, No. 22-CV-06507-JSC, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023) ("Damages related to the products Plaintiff has already bought do not remedy the harm from Defendant continuing to use misleading marketing statements on those products."). Since LoSavio's declaration shows that he could allege standing and thus the lack of an adequate remedy at law upon amendment, his claims for equitable relief are dismissed without prejudice, with leave to amend.

***Fraud Claims.*** The remaining claims,[1] which arise out of Tesla's alleged fraud and

---

[1] The fraud- and related negligence-based claims are for violation of the California False Advertising Law, violation of the California Consumer Legal Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), fraud and deceit, negligent misrepresentation, and negligence. The unjust enrichment claim is derivative of the fraud-based claims. (Dkt. No. 61 ¶¶ 257–59.) Because the negligence-based claims are pleaded with sufficient particularity under the higher Rule 9(b) standard, the Court does not reach whether Rule 9(b) or Rule 8(a) governs.

related negligence, may go forward to the extent they are based on two alleged representations: (1) representations that Tesla vehicles have the hardware needed for full self-driving capability and, (2) representations that a Tesla car would be able to drive itself cross-country in the coming year.[2] While the Rule 9(b) pleading requirements are less stringent here, where Tesla allegedly engaged in a systematic pattern of fraud over a long period of time, LoSavio alleges, plausibly and with sufficient detail, that he relied on these representations before buying his car. *See Royal Primo Corp. v. Whitewater W. Indus., Ltd*, No. 15-CV-04391-JCS, 2016 WL 4080177, at *8 (N.D. Cal. July 29, 2016).

As to the first representation, LoSavio alleges that in October 2016, Tesla claimed that all its cars going forward would have the "hardware needed for full self-driving capability." (Dkt. No. 61 ¶¶ 57–59.) LoSavio alleges that he viewed this statement on Tesla's website and that he relied upon it before making his purchase. (*Id.* ¶¶ 152, 155.) LoSavio alleges he also viewed and relied upon a statement that "[a]ll Tesla vehicles produced in our factory now have full self-driving hardware" in a Tesla newsletter that he received via email in November 2016. (*Id.* ¶ 154, Ex. D.) Those statements were allegedly false because the cars lacked the combination of sensors, including lidar, needed to achieve SAE Level 4 ("High Automation") and Level 5 ("Full Automation"), i.e., full autonomy. (*Id.* ¶¶ 30–36.) According to the SAC, Tesla's cars have thus stalled at SAE Level 2 ("Partial Driving Automation"), which requires "the human driver's constant supervision, responsibility, and control." (*Id.* ¶¶ 30–34, 91.) If Tesla meant to convey that its hardware was sufficient to reach high or full automation, the SAC plainly alleges sufficient falsity. Even if Tesla meant to convey that its hardware could reach Level 2 only (*see* Dkt. No. 71 at 9 n.4), the SAC still sufficiently alleges that those representations reasonably misled LoSavio.

Second, the SAC sufficiently alleges that Musk falsely represented the vehicle's future

---

[2] In LoSavio's Pre-Purchase Misrepresentations Chart, the representations regarding hardware are labeled as Statements 1, 4, 6, and 9; while the cross-country drive representation is labeled as Statement 11. (Dkt. No. 84-1.)

ability to self-drive cross-country and that LoSavio relied upon these representations pre-purchase.  According to the SAC, Musk claimed at an October 19, 2016, news conference that a Tesla car would be able to drive from Los Angeles to New York City by itself "by the end of next year without the need for a single touch."  (Dkt. No. 61 ¶ 60.)  Although not required, *see Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129 (N.D. Cal. 2014), LoSavio cites a specific page he viewed that reported on the conference.[3]  (Dkt. No. 61 ¶¶ 60, 152).  But LoSavio alleges that, as of 2023, Tesla was nowhere close to delivering on this representation.  (*Id.* ¶¶ 122, 132.)  These allegations are "enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns*, 567 F.3d at 1124 (cleaned up).

Claims based on the other alleged representations, which primarily claim that future developments are forthcoming at an unspecified time, are dismissed for failure to plausibly allege that those statements were false or misleading when made or Tesla's knowledge of the falsity.  LoSavio does not plausibly allege that those representations promised fully autonomous self-driving by any particular timeline, let alone that Tesla knew that timeline to be unrealistic.[4]

---

[3] During oral argument, Tesla argued that a specific citation to the page viewed was needed to understand the statement's context.  Tesla thus implicitly sought judicial notice of the page's contents.  That request is granted.  Having reviewed the cited article, its disclaimers are insufficient to render implausible LoSavio's allegation that he was reasonably misled by Musk's statement.  *See* Paul A. Eisenstein, "A Driverless Tesla Will Travel from L.A. to NYC by 2017, Says Musk," NBC News (Oct. 20, 2016), https://www.nbcnews.com/business/autos/driverless-tesla-will-travel-l-nyc-2017-says-musk-n670206 ("Effective immediately, Tesla will equip all models with a network of cameras and other sensors capable of watching everything happening around the vehicle and making instant decisions on how to respond to potential problems. . . . But Tesla cautioned that not all the new features will be activated immediately upon the launch of the Model 3, which is expected to occur sometime in late 2017.  It first needs to clock 'millions of miles of real-world driving' to ensure everything works properly.").

[4] Specifically, claims based on Statements 2, 3, 5, 7, 8, and 10 in LoSavio's Pre-Purchase Misrepresentations Chart are dismissed.  (Dkt. No. 84-1.)  For example, the website from which Statements 2 and 3 are excerpted states:  "Build upon Enhanced Autopilot and order Full Self-Driving Capability on your Tesla.  This doubles the number of active cameras from four to eight, enabling full self-driving in almost all circumstances, ***at what we believe will be a probability of safety at least twice as good as the average human driver***.  The system is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat. . . . Please note that Self-Driving functionality is dependent upon extensive software validation and regulatory approval, which may vary widely by jurisdiction."  (Dkt. No. 61 ¶ 53, Ex. C

*Statute of Limitations*.  Taking the SAC at its word, the statute of limitations on LoSavio's surviving claims are tolled.  All of LoSavio's claims have limitations periods ranging from two to four years.  (*See* Dkt. No. 57 at 14 n.5.)  LoSavio bought his car in January 2017 and brought this action over five years later, in September 2022. (Dkt. No. 61 ¶ 16.)  Without tolling, LoSavio's claims would therefore be barred as untimely.  But, at the pleading stage, dismissal for untimeliness is appropriate "only when the running of the statute of limitations is apparent on the face of the complaint."  *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (cleaned up).  Here, the SAC plausibly invokes both the delayed discovery rule and the doctrine of equitable tolling.

Under the delayed discovery rule, accrual is delayed "until the plaintiff has, or should have, inquiry notice of the cause of action" if the plaintiff pleads facts showing "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence."  *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920–21 (Cal. 2005) (emphasis in original).  LoSavio alleges that his discovery came in April 2022, after Tesla Service declined to update his car's cameras.  (Dkt. No. 61 ¶¶ 167–69.)  It was not the first time Tesla allegedly failed to update LoSavio's car.  (*See id.* ¶¶ 159, 161, 165, 167 (describing LoSavio's attempts to update and repair his car over the years).)  But after years of relying on Tesla's repeated claims that the car's software was the source of delay, and that software fixes were perpetually forthcoming, LoSavio allegedly discovered that he had been misled by Tesla's claim that his car had all the hardware needed for full automation.  (*Id.* ¶¶ 163–69.)  LoSavio's repeated attempts to update his car's technology and talk with Tesla establish a plausible basis for diligence.  Although Tesla contends that it should have been obvious to LoSavio that his car needed lidar to self-drive and that his car did not have it, LoSavio plausibly alleges that he reasonably believed Tesla's claims that it could achieve self-driving with the car's existing hardware and that, if he diligently brought his car in for the required updates, the car would soon achieve the promised

---

(emphasis added).)  This speculative statement does not promise full automation on any specific timeline.

results.  Having adequately alleged diligence, the *extent* of his diligence and its reasonableness are questions of fact not suitable for disposition at this stage.  *See Ovando v. Cnty. of Los Angeles*, 71 Cal. Rptr. 3d 415, 429 (Ct. App. 2008) ("The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion.").

   Equitable estoppel also applies to LoSavio's claims because of Tesla's alleged lulling.  Every year after LoSavio's purchase, Musk allegedly repeated that Tesla's cars were getting closer and closer to full automation, and that the next year — every "next" year — the cars would drive themselves.  (*See, e.g.*, Dkt. No. 61 ¶¶ 66, 78, 84, 92.)  As LoSavio noted during the hearing, these were not mere recitations.  With each iteration, Musk's statements became more specific.  For example, in April 2017, Musk allegedly said that Tesla owners could sleep while their cars drove in about two years.  (Dkt. No. 61 ¶ 64.)  The next year, Musk allegedly claimed that Tesla would have over a million robo-taxies on the road in 2020.  (*Id.* ¶ 78.)  And in January 2021, Musk allegedly said he was "very confident" that Tesla would achieve SAE Level 5 autonomy that year based on the technical roadmap and beta iterations.  (*Id.* ¶ 95.)  This is not, as Tesla advocated at the hearing, equivalent to a company continuing to lie about its bedsheets' thread count without admitting its prior error.  Tesla did not recite the same lie time and time again; instead, it allegedly lied about its progress incrementally and with increasing specificity over time.  For this stage, the SAC therefore sufficiently alleges "active conduct by the defendant above and beyond the wrongdoing upon which" LoSavio's claim is based.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (cleaned up).

   To summarize, the negligence- and fraud-based claims against Tesla, i.e., the claims for false advertising, CRLA and UCL violations, fraud and deceit, negligent misrepresentation, and negligence; and the derivative unjust enrichment claim, may go forward to the extent they rely on representations regarding the car's hardware and imminent cross-country driving abilities, described as Statements 1, 4, 6, 9, and 11 in LoSavio's Pre-Purchase Misrepresentation Chart.  (Dkt. No. 84-1 Statements 1, 4, 6, 9, and 11.)  To the extent these claims rely on the other alleged

6

misrepresentations (Dkt. No. 84-1 Statements 2, 3, 5, 7, 8, and 10), they are dismissed with prejudice without leave to amend.  LoSavio has had the opportunity to correct the deficiencies in those allegations but has not done so in prior rounds of amendment, indicating that allowing further amendment would be futile.  The claims for equitable relief are dismissed without prejudice, with leave to amend, and the express and implied warranty claims are dismissed with prejudice without leave to amend.  Any amended complaint is due by June 5, 2024.  Tesla's response (either to the amended complaint or to the current version if no amended complaint is filed) is due by June 19, 2024.

The Case Management Conference is reset for June 5, 2024, at 10:00 AM in San Francisco – Videoconference Only.  A joint Case Management Statement is due by May 29, 2024.

**IT IS SO ORDERED.**

Dated: May 15, 2024

RITA F. LIN
United States District Judge