Frank M. Pitre (SBN 100077)
fpitre@cpmlegal.com
COTCHETT PITRE & MCCARTHY LLP
840 Malcolm Road
Burlingame, CA 94010
Tel.: (650) 697-6000

*Attorneys for Plaintiffs Thomas LoSavio, Brenda Broussard, and the Proposed Class*

Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Tel.: (858) 914-2001

*Attorneys for Plaintiff Dominick Battiato and the Proposed Class*

David S. Casey, Jr. (SBN 060768)
dcasey@cglaw.com
CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811

*Attorneys for Plaintiffs Christopher Mallow, Jazmin Imaguchi, and the Proposed Class*

David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5312

Alan Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 937-7294

Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000

*Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation** | Case No. 3:22-cv-05240-RFL<br><br>CLASS ACTION<br><br>**STIPULATED DISCOVERY & SEARCH PROTOCOL AND [PROPOSED] ORDER** |

Pursuant to the agreement of the Parties and for good cause shown, the Court enters the following order governing the conduct of discovery in this proceeding. As used in this order, the term "Party" refers to any party to this case, including Plaintiff Thomas LoSavio ("Plaintiff") and

Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively, "Tesla"). Plaintiff and Tesla are collectively referred to herein as the "Parties."[1]

**A.    PURPOSE**

This Stipulated Order will govern the conduct of discovery of hard copy and electronically stored information ("ESI") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"), and any other applicable orders and rules.  Nothing herein shall be construed to impose on the party responding to discovery requests in the above-captioned matter ("Responding Party") any obligation that contradicts the standards set by the Federal Rules of Civil Procedure or impose burdens that are in excess of those imposed by the Federal Rules of Civil Procedure.

The proposed plan is subject to amendment or supplementation based upon the results of anticipated future meet and confers and by later agreement of the Parties, if necessary, in light of further developments, including, in particular, the Parties' engagement of document hosting vendors and associated technical requirements. References are made to the Federal Rules of Civil Procedure for ease of reference.

**B.    COOPERATION**

The Parties are aware of the importance this Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's ESI Guidelines. The Parties agree to cooperate in good faith regarding discovery in general, including, more specifically, the disclosure and formulation of appropriate search methodologies, custodians, and potentially relevant noncustodial sources of ESI in advance of any search and/or collection.  The Responding Party shall retain the presumptive right to manage and control review of its data files, including the right to use culling, searching, and advanced technology-assisted review ("TAR") tools, consistent with this ESI Protocol (and any of its supplements or amendments as agreed

---

[1] For the avoidance of doubt, except for Plaintiff LoSavio and the class he represents, all the named Plaintiffs in this case have been compelled to arbitration.  ECF No. 57.  Tesla expressly reserves the right to enforce arbitration agreements against absent class members.

upon by the Parties and approved by the Court). Should the Responding Party decide to use TAR, the Parties will meet and confer on the validation methods for TAR.

## C.   E-DISCOVERY LIASONS

Each Party will identify an E-discovery Liaison who will be primarily responsible for meeting and conferring concerning ESI. Each E-discovery Liaison will: (1) be knowledgeable about the respective Party's e-discovery efforts; (2) be, or have reasonable access to those who are, familiar with their Party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and (3) be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Plaintiff has identified as his E-Discovery Liaison Karin Swope (Cotchett Pitre & McCarthy, LLP). Tesla has identified as its e-discovery liaison to be Allison Que (Wilmer Cutler Pickering Hale and Dorr LLP). Each Party will notify the other Parties of any changes of its designated E-Discovery Liaison.

## D.   GENERAL PROVISIONS

1. The Parties recognize that even though a document contains one or more of the search terms identified in accordance with the procedures listed below, such document may not be responsive to any document request. In such cases, the Responding Party is not required to produce such documents.

2. The Parties recognize that they are obligated to produce relevant and responsive, non-privileged documents of which they are aware regardless of whether such documents contain any of the search terms identified in accordance with the procedures listed below.

## E.   ESI DISCLOSURES AND PRESERVATION

The Parties have discussed their preservation obligations and needs and agreed that preservation of potentially relevant ESI will be reasonable and proportionate. The Parties agree to meet and confer concerning their preservation efforts consistent with this District's ESI Guidelines and ESI Checklist for Use During the Rule 26(f) Meet and Confer Process.

Consistent with this District's ESI Guidelines, the Parties further agree to engage in informal, good faith discussions on ESI discovery on an ongoing basis.

## F. PRODUCTION FORMATS

1. The Parties agree that attending to issues relating to form of production at the outset of the case facilitates the efficient and cost-effective conduct of discovery.

2. Appendix A sets forth technical specifications that the Parties propose to govern the form of production of documents in this litigation, absent agreement by the Parties or order by the Court.

3. Among other things, the proposed technical specifications incorporate the directive of Federal Rule of Civil Procedure 34(b)(2)(E)(iii) and provide that a Party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated by the terms set forth in Appendix A).

4. The Parties agree to produce documents in file formats as particularized in Appendix A. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process.

5. Deduplication of ESI is expected and the Parties have and will continue to meet and confer in good faith regarding the terms and conditions of deduplication; however, in any event, deduplication will only apply to exact duplicates (as determined by matching a document or document family's MD5 or SHA-1 hash values) in a given production, and is subject to the Parties' good faith agreement to provide the party seeking discovery in the above-captioned matter ("Requesting Party") with information about other custodians who possessed any specific ESI that would be available from that production but for the deduplication. This information must be provided in the "Other Custodian" metadata field as particularized in Appendix A. The deduplication of email must not break apart families, and the full email header including the blind copy field (bcc) must be included when generating hash values.

6. The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties agree to meet and confer in good faith to address any issues that

may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful. The Parties also recognize that certain information to be produced in discovery may warrant production in an alternative form for purposes of depositions and/or trial. To the extent that becomes necessary, the Parties will meet and confer to reach agreement about such form and will seek Court intervention only if necessary.

**G.    DOCUMENT SEARCH PROTOCOL**

**1.    Document Collection:** Each Responding Party will collect documents from custodians and from the locations agreed to between the Parties or pursuant to Court order.

**2.    ESI Search Methodology:** The Parties will discuss and attempt to reach an agreement on search terms. Agreement on a search terms does not relieve a Party of its obligations under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which it is aware.

**3.**    Within 45 days after the service of Plaintiff's first set of requests for production on Tesla, the Parties will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. If a Responding Party intends to use search terms to expand or limit the number of documents collected, the Responding Party shall first confer in good faith with the Requesting Party to determine the mutually agreeable search terms and source files before using any search terms. Specifically, the Responding Party shall disclose the custodians or other non-custodial sources, date range, and search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information. Prior to implementing search terms, the Responding Party shall provide a list of proposed search terms to the Requesting Party, and the Parties will meet and confer regarding any different or additional terms proposed by the Requesting Party. Nothing in this paragraph shall be interpreted to require the production of information protected by the attorney-client privilege or the work product doctrine.

**4.**    If the Responding Party contends that terms proposed by the Requesting Party would return an excessive number of documents, the Responding Party will provide a search term hit list or hit report after global de-duplication. The list or report should include the number of

documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families).

5. The Parties will meet and confer regarding any adjustments to search terms, custodians, or non-custodial sources to be searched if necessary and after Plaintiff serves additional sets of requests for documents.

## H. PRIVILEGE LOGS

1. Where a document is withheld from production entirely or in part by redaction because of attorney client privilege or work product, the Responding Party will produce a privilege log in an Excel file allowing text searching and organization of data. The privilege log must identify the date, author, recipient(s), subject, and production number of each document, and explain the basis for withholding the document with information sufficient to permit other Parties to assess the applicability of the privilege or work product claim. Communications may be identified on a privilege log by category, rather than individually, if appropriate. A Responding Party will produce a separate privilege log for each production within 60 days after the production for which documents a privilege is asserted. Privilege logs shall be produced within 60 days following production of the first production volume and shall be supplemented within 60 days following each subsequent production where production occurs on a rolling basis, or by another date upon agreement of the Parties. The Parties, as appropriate, shall meet and confer to reach agreement regarding any changes to this schedule.

2. Should the Requesting Party be unable to ascertain whether or not a document contained on the log or a redacted document is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the Responding Party agrees to meet and confer with the Requesting Party to resolve the dispute and provide additional information supporting the claim of privilege to determine if the document has been properly withheld or redacted. A Party may not redact any document based upon any objection related to the relevance or responsiveness of a document.

**3.** The following categories of documents do not need to be contained on a Responding Party's privilege log, unless good cause exists to require that a Party do so.

    a. Any communications since April 2019 exclusively between a Responding Party and its outside counsel retained for matters regarding Tesla's advanced driver assistance systems ("ADAS") technology, any non-testifying experts in connection with such matters, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with such matters

    b. Any privileged materials or work product created since April 2019 by a Party's outside counsel retained for matters regarding Tesla's ADAS technology, any non-testifying experts in connection with such matters, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with such matters.

    c. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: September 19, 2024

**COTCHETT PITRE & McCARTHY LLP**

By: */s/ Julie L. Fieber*
Frank M. Pitre (SBN 100077)
fpitre@cpmlegal.com
Thomas E. Loeser (SBN 202724)
tloeser@cpmlegal.com
Julie L. Fieber (SBN 202857)
jfieber@cpmlegal.com

**BOTTINI & BOTTINI, INC.**

Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**

David S. Casey, Jr. (SBN 060768)
dcasey@cglaw.com
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
Jeremy Robinson (SBN 188325)
jrobinson@cglaw.com

|   |   |   |
|---|---|---|
| | | P. Camille Guerra (SBN 326546) |
| | | camille@cglaw.com |
| | | *Attorneys for Plaintiffs and the Proposed Class* |
| Dated: September 19, 2024 | | **WILMER CUTLER PICKERING HALE AND DORR LLP** |
| | By: | */s/ Allison Que* |
| | | Allison Que (SBN 324044) |
| | | Allison.Que@wilmerhale.com |
| | | Alan Schoenfeld *(pro hac vice)* |
| | | Alan.Schoenfeld@wilmerhale.com |
| | | David Marcus (SBN 158704) |
| | | David.Marcus@wilmerhale.com |
| | | *Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC* |

## ATTORNEY ATTESTATION

I, Julie L. Fieber, am the ECF User whose ID and password are being used to file the Stipulated Discovery & Search Protocol and [Proposed] Order. In compliance with Civil Local Rule 5-l(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.

Dated: September 19, 2024

By: */s/ Julie L. Fieber*
Julie L. Fieber

**PURSUANT TO THE STIPULATION OF THE PARTIES, IT IS SO ORDERED.**

Date: 9/23/2024

_____
Hon. Rita F. Lin
United States District Judge

# APPENDIX A

## I. ELECTRONICALLY STORED INFORMATION PRODUCTION FORMAT

All ESI is to be produced in an "imaged" file with the corresponding "image load/unitization files," "OCR or Extracted text files," and the "associated delimited metadata database." Additionally, the Requesting Party specifies that select files should be produced in their native file format where an image file does not adequately represent the files as maintained in the ordinary course (often this relates to databases, spreadsheets, media, and presentations). Where ESI exists as structured data, production in an alternative format is preferred and the Parties shall meet and confer to finalize an appropriate alternative format. The key concepts are explained below.

1. **Native:** Microsoft Access files, Excel files, .CSV files, other similar databases and spreadsheet files, media files, and presentation files like Microsoft PowerPoint shall be produced in the format which the electronically stored information was originally created. If media files are maintained in a non-standard format, they shall be produced as MP3 files for audio or AVI files for video. If a spreadsheet requires redactions across entire rows or columns the Parties shall meet and confer to agree on a native file redaction format to avoid imaging spreadsheets for the purpose of full column or row redactions. Native Files will be produced together with a placeholder TIFF image. Each TIFF placeholder will contain language indicating that the document is being produced in native format with the starting Bates number of the native branded onto the bottom, right-hand corner of the TIFF placeholder. The TIFF placeholder should also contain the document's confidentiality information stamped onto the bottom, left-hand corner of the image. A relative file path to the native file shall be provided in the metadata database as described in item *5*. To the extent the Requesting Party obtains through discovery a file or document that it believes is not adequately represented in an image file format, it may request that file or document be produced in native format, the production of which may not unreasonably be withheld.

2. **Imaged File:** a TIFF image converted from each page of the native file as it was originally created;

  a. All images shall be 1 Bit group IV black and white TIFF files (except when color images are required to read or understand the file/document's content; all color images shall be produced as a JPEG file);

  b. Hidden content, tracked changes or edits, comments, notes, and other similar information viewable within the native file shall also be imaged so that such content is viewable on the image;

  c. Bates numbers shall be branded to the images so that the numbers print;

  d. Images shall be single page image files (one file for each page of a document).

 **3.** **Image Load/Unitization Files:** An image load/unitization file in a standard .opt or .log litigation support image load format shall be included which provides:

  a. the document number for each image;

  b. the full path name(s) of each image file;

  c. the document boundaries for each document;

  d. the load file shall be in the order that appropriately corresponds with each image file;

  e. the following is the format of a standard .opt or .log image load/unitization file:

```
Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.
M_0100000,06150101,\06150101\0000\000l.TIF,Y,,,1
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,l
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150l01\0000\0004.TIF,Y,,,2
M_0100004,0615010l,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06l50l01\0000\0006.TIF,Y,,,1
M_0100006,06150101,\06150101\0000\0007.TIF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,06150l01,\06150l0l\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,
```

 **4.** **OCR or Extracted Text File:** An OCR or Extracted text file which corresponds to each produced document shall be provided as follows:

  a. The text file name shall be the same name of the first image page for the

document set, followed by .txt.

      b.      An OCR or Extracted text file containing the produced document's content will be provided for all documents whether it is produced as an image file or natively.

      c.      OCR should only be provided for ESI when extracted text is not able to be captured from the document or when privilege redactions are required.

**5.** **Associated delimited metadata database:** A database load file shall be provided in a ".dat" file format that extracts metadata into fields in a delimited text load file. For the .dat file the Parties should use delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values). The fielded data should include all the below metadata fields for a file/document in addition to the unitization (including the production number of the first and last page of each document) and attachments (including information sufficient to identify the parent and child relationships of all documents that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| BEGBATES | Beginning production number for a given file/document | Email, E-Doc and Other[2] |
| ENDBATES | Ending production number for a given file/document | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of parent | Email, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment | Email, E-Doc and Other |

---

[2] Other is defined as documents for which internal metadata is not exchanged, including but not limited to, scanned documents and documents obtained from the internet.

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| CUSTODIAN | Person, shared file or other source from whom files were collected | Email, E-Doc and Other |
| DUPLICATE CUSTODIAN | To identify other custodians whose files contained a particular document that was eliminated through exact match HASH value de-duplication | Email, E-Doc and Other |
| DUPLICATE FILEPATH | Folder locations of documents held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Duplicate folder locations shall be delimited by semicolons. | Email, E-Doc and Other |
| FILEEXT | File extension | Email and E-Doc |
| HASH | MD5 Hash Value | Email and E-Doc |
| ATTACHNAME | The file name(s) of attachments to a parent documents (separated by a semicolon) | Email and E-Doc |
| EMAILSUBJECT | Email Subject line | Email |
| FROM | Email Sender | Email |
| TO | Email Recipient | Email |
| CC | Email Copyee | Email |
| BCC | Email Blind Copyee | Email |
| DATESENT | Date Sent & Time (MM/DD/YYYY HH:MM) | Email |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
| --- | --- | --- |
| DATERECEIVED | Date Received & Time (MM/DD/YYYY HH:MM) | Email |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| DATECREATED | Date created & Time (MM/DD/YYYY HH:MM) | E-Doc |
| TITLE | Any value populated in the Title field of the document properties | E-Doc |
| SUBJECT | Any value populated in the Subject field of the document properties | E-Doc |
| AUTHOR | Any value populated in the Author field of the document properties | E-Doc |
| LASTMODIFIEDBY | Any value populated in the last modified by field of the document properties | E-Doc |
| ITEMTYPE | Identifies whether the file is an email, attachment to email, or loose e-doc | Email and E-Doc |
| REDACTION | Identifies whether the file was redacted (indicated by values Y or N) | Email and E-Doc |
| CONFIDENTIAL | Identifies whether the file is designated confidential and designation type | Email and E-Doc |
| FILENAME | Original file name | E-Doc |
| FILEPATH | Original file path to the file or emailbox folder structure | Email and E-Doc |

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| NATIVEFILE | Path to native file as produced | Native |
| TEXTPATH | Path to OCR or extracted text file | Email, E-Doc and Other |

**6.** **Structured ESI:** Structured data tends to be data in or exported from a database and has the following characteristics:

    a.    Logical entities decomposed into data elements (known as fields or records) at a highly granular level;

    b.    Individual data elements are stored in specific assigned logical and physical areas within a series of files (or a single fielded table or a text delimited file);

    c.    These data elements are linked to each other by internal mechanisms, interpretable by the database software;

    d.    These links or relationships may involve metadata elements stored within the database, in addition to the data elements of the logical entity; and

    e.    Once properly assembled and formatted (e.g., in the form of a report), structured data is often readily understandable.

Responsive ESI existing in a structured format shall be produced in an alternative format agreed to by the Parties. Common structured ESI production formats include CSV or TAB delimited text file, and Microsoft Access database files.

**7.** **Embedded Objects:** The Parties shall meet and confer over the inclusion or exclusion of embedded files from the production.

**B.** **HARD-COPY (I.E., NON-ESI) PRODUCTION FORMAT**

The following applies to documents that exist only in hard-copy format and are therefore unavailable in native electronically stored information ("ESI") format. All such documents that

are amenable to being imaged should be produced in an "imaged" file with the corresponding "image load/unitization files," "OCR text files," and the "associated delimited database," as defined below. Documents that exist only in hard copy should not be produced in hard copy format.

1. **Imaged File:** a TIFF image scanned from the hard copy document;

    a. All images shall be 1 bit group IV black and white TIFF files (except when color images are required to read or understand the file/document's content; all color images shall be produced as a JPEG file);

    b. Bates numbers shall be branded to the images so that the numbers print;

    c. Images shall be single page image files (one image file for each document's page).

2. **Image Load/Unitization Files**: An image load/unitization file in a standard .opt or .log litigation support image load format shall be included which provides:

    a. the document number for each image;

    b. the full path name(s) of each image file that represents a document page;

    c. the document boundaries for each document;

    d. the load file shall be in the order that appropriately corresponds with each image file;

    e. the following is the format of a standard .opt or .log image load/unitization file:

```
Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.
M_0100000,06150101,\06150101\0000\0001.TIF,Y,,,1
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,1
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150101\0000\0004.TIF,Y,,,2
M_0100004,06150101,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06150101\0000\0006.TIF,Y,,,1
M_0100006,06150101,\06150101\0000\0007.TTF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,
M_0100008,06150101,\0615010l\0000\0009.TIF,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,
```

3. **OCR/Extracted Text File**: A text file which corresponds to each imaged document shall be provided as follows:

        a.      The corresponding text file name shall be the same name of the first image page for the document set, followed by .txt.

    **4.**    **Associated delimited database:** A database shall be provided in a ".dat" file format that extracts metadata into fields in a delimited text load file. The.dat file should use delimiters (ASCII 020 corresponding to a comma, ASCII 254 corresponding to a double quote, ASCII 174 corresponding to a new line, and a semicolon used to separate values). The fielded data should include all the below metadata fields for a file/document in addition to the unitization (including the production number of the first and last page of each document) and attachments (including information sufficient to identify the parent and child relationships of all documents that are or have attachments as captured by any hard copy binding). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each document. Load files shall include the below metadata fields, or substantially identical metadata fields, to the extent already in existence and reasonably accessible.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGBATES | Beginning production number for a given document |
| ENDBATES | Ending production number for a given document |
| CUSTODIAN | Person, shared file or other source from whom files were collected |
| REDACTION | Identifies whether the file was redacted |
| CONFIDENTIAL | Identifies whether the file is designated confidential |
| TEXTPATH | Path to OCR text file |

**C.**    **PRODUCTION MEDIA**

    **1.**    All productions must be produced on CD-ROM, DVD, external hard drive (with standard PC-compatible interface), or such other readily accessible computer or electronic media

Case 3:22-cv-05240-RFL   Document 113   Filed 09/23/24   Page 18 of 18

1  or via fire-sharing service, including any network-based secure file transfer mechanism or Secure
2  File Transfer Protocol as the Parties may hereafter agree upon (the "Production Media"). The
3  Parties must accompany all document productions with a letter identifying the production date
4  and the Bates number range of the materials contained on such Production Media item.

5      **2.**    Each media volume must have its own unique name and a consistent naming
6  convention (for example ZZZ001 or SMITH001).

7      **3.**    The party making the production shall encrypt the production data using WinRAR
8  or 7-Zip encryption, and shall forward the password to decrypt the production data separately
9  from the Production Media to which the production data is saved.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stipulated Discovery & Search Protocol and [Proposed] Order    18
Case No. 3:22-cv-05240-RFL