April 10, 2025

**VIA ECF FILING & E-MAIL**
Honorable Chief Magistrate Judge Donna M. Ryu (dmrpo@cand.uscourts.gov)

    **Re:**   *In re Tesla Advanced Driver Assistance Systems Litigation*
           Northern District of California, Case No. 3:22-cv-05240-RFL

Your Honor:

    Pursuant to the Court's Standing Order, the undersigned submit this joint letter regarding a discovery dispute between the parties Plaintiff Thomas LoSavio ("Plaintiff") and Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively "Tesla"). The parties met and conferred on the topics herein most recently by video on April 3, 3025.

    Relevant case management deadlines include: April 29, 2025 – Class Certification hearing (set in the Court's June 5, 2024 Scheduling Order; the parties are preparing a stipulation requesting the Court adjust this and fact discovery dates); May 6, 2025 – deadline for Class Certification Motion and related expert disclosures; May 28, 2025 – Case Management Conference and last day to notice depositions; June 3, 2025 – Opposition and related rebuttal expert materials; June 4, 2025 – Mediation; July 1, 2025 – Reply; June 30, 2025 – Close of Fact Discovery.

**Issue 1 – Document Search Custodians for Requests for Production ("RPD") Nos. 6, 9, 11, 16-19, 26-28.**
    **Plaintiff's Position:** Plaintiff propounded his first set of RFPs on August 30, 2024, and second set on October 10, 2024; Tesla substantively responded on October 31st and November 11th, respectively. See Decl. of Julie Fieber (filed herewith), Ex. A. To date, Tesla has produced 44,472 pages of documents; 39,729 of those pages are Owners Manuals, so the total production excluding owner manuals is only 4,744 pages. On January 21st, Tesla proposed using search terms for RPD Nos. 6, 9, 11, 16-19, 26-28, requests concerning the foundation for Tesla's representations that its vehicles have the hardware needed for autonomy or can (or will be able to) operate autonomously across the country. Tesla proposes 5 custodians for those searches -- junior Autopilot engineers RJ Sekator, Dhaval Shroff, Akshay Vijay Phatak, Pete Scheutzow, and Kalena Brown. Plaintiff proposes adding 5 custodians: Elon Musk, who directly made or approved the statements at issue and oversees Tesla's marketing; Ashok Elluswamy, Andrej Karpathy, and CJ Moore, all senior directors reporting directly to Musk; and Christopher Payne, a senior Autopilot engineer. Plaintiff also requests that searches cover not just emails but any other communication system used by these Tesla engineers in their work, including text messages if applicable.

    Tesla should include Messrs. Musk, Elluswamy, Karpathy, Moore, and Payne among search custodians. There is ample legal support for this request. *See, e.g.*, *In re Facebook*, 2021 WL 10282213 at *5-6 (N.D. Cal. 2021) (compelling Facebook to produce custodial files of CEO Mark Zuckerberg and COO Sheryl Sandberg); *Blankenship v. Fox News Network, LLC*, 2021 WL 2345972, at *3-5 (S.D. W. Va. 2021) (upholding magistrate judge's order compelling

discovery from six senior executives, in addition to 16 other executives or directors); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. 2018) (compelling Twitter to produce custodial files of CEO Jack Dorsey). As these cases confirm, it is not Tesla's unilateral right to choose custodians and, given the complexity and time span involved, 10 custodians is not unreasonable.

These requests seek more than technical information. For example, RPD No. 17 (*see* Ex. A) requests the documents Mr. Musk relied on when he announced at an October 2016 news conference that Tesla vehicles would be able to drive autonomously cross-country. Only Mr. Musk and his direct reports know the basis for this and the other statements at issue. Information they exchanged is relevant to show the foundation for these representations, known facts contrary to the advertising, and the actual autonomous capabilities of Tesla vehicles. In contrast, in their depositions, two of Tesla's proposed custodians, Shroff and Phatak, did not know what Mr. Musk meant by that statement. Tesla's unsupported claim that the searches would be duplicative does not defeat Plaintiff's position, because one custodian may have documents or handwritten notes that others discarded. *See, e.g., Shenwick*, 2018 WL 833085, *1. Further, Tesla's search should include any communications media used by Mr. Musk and his Autopilot engineers. Tesla knows how its personnel communicated and where relevant documents might be kept. Its unilateral decision to limit the search to emails and a chat application is improper.

**Tesla's Position:** Judge Lin's Motion to Dismiss Order substantially narrowed Plaintiff's claims to just two categories of statements (*see* Dkt. 96 at 6). Here, RFP Nos. 6, 9, 11, 16-19, 26-28 relate to the technical aspects involved in the development of Tesla's advanced driver assistance ("ADAS") technology, and Tesla's chosen custodians have the relevant information that Plaintiff seeks. Plaintiff's proposal—to require Tesla to review the custodial files of twice as many custodians—is overbroad, disproportionate, and unjustified because he has not examined Tesla's proposed custodial materials, let alone establish that there is unique information unavailable through the custodians Tesla has proposed.

Tesla "is entitled to select the custodians it deems most likely to possess responsive information" as "the party who will be responding to discovery requests" and put forth five Tesla engineers who have worked on ADAS technology for years. *B&G Foods N. Am., Inc. v. Embry*, 2024 WL 626962, at *3 (E.D. Cal. Feb. 14, 2024). The five custodians that Tesla offered were directly involved in the matters that are the subject of Plaintiff's requests. Searching these custodians' files already yields over 100,000 documents to review (or nearly 250,000 if Plaintiff's preferred search terms are applied); that is more than reasonable and proportionate to the needs of Plaintiff's narrowed case.

While Plaintiff characterizes these custodians as "junior," that is incorrect and irrelevant. These custodians include senior members of Tesla's engineering team, all of whom play important roles in developing the technologies at issue here. Four of the five have worked at Tesla over ten years (and the fifth has worked at Tesla for over five years), and all work with Tesla senior leadership, including directly with Mr. Musk. And the fact that some of Plaintiff's proposed additional custodians have more senior roles is immaterial. *See In re Morgan Stanley Mortgate Pass-Through Certificates Litig.*, 2013 WL 4838796, at *2 (S.D.N.Y. Sept. 11, 2013) ("[T]he fact that a rejected custodian's role was immaterially different than a designated custodian's role is not a legitimate basis to justify expanding the list of custodians."). Four of Plaintiff's proposed

custodians worked on Tesla's Autopilot teams, just like all five of the current custodians. Thus, responsive documents and communications relating to the technical development of Tesla's ADAS technologies, including those involving the two categories of Tesla statements at issue, are likely to be the same. Plaintiff's only response is to say (without elaboration or support) that his additional proposed custodians "possess unique relevant information." Plaintiff's speculation, however, falls well short of justifying his request. *See Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016) (court should "require more than mere speculation" before requiring additional custodians).

Plaintiff's request to include Mr. Musk as a custodian should also be rejected as unduly burdensome and disproportionate to the needs of the case. Courts routinely reject efforts to include high-level executives where the plaintiff fails to show that the defendants' "proposed discovery plan … would not produce responsive documents." *Lauris*, 2016 WL 7178602, at *4; *see also Handloser*, 2020 WL 7405686, at *2 (denying request to add two "executives" as custodians because discovery would likely be duplicative); *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 5507176, at *3 (N.D. Cal. Aug. 25, 2023) (similar). Plaintiff offers no basis to find that Mr. Musk's records will provide relevant information not available from the current custodial sources. Put simply, Plaintiff has not supported why he "expect[s] to discover information from these custodians that differs from discovery" he will already obtain. *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020). What Mr. Musk was thinking about or relying on when he made the challenged statements is not relevant to whether the challenged statements were misleading or false. A contrary determination would allow plaintiffs to obtain intrusive discovery from apex custodians simply by including statements from those custodians in their pleadings.

At a minimum, Plaintiff's request is premature. He should first review Tesla's production before claiming additional custodians are necessary. *See Lauris*, 2016 WL 7178602, at *4-5. Indeed, the most recent case on which Plaintiff relies supports the same proposition. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *1-2 (N.D. Cal. Nov. 14, 2021) (noting that adding additional custodians "requires a showing that the disputed custodians possess uniquely relevant information *that is not available from the sources already designated*" and finding that "it is likely that Zuckerberg and Sandberg possess information relevant to the Plaintiffs' allegations and differs *from discovery already obtained from other custodians*") (emphasis added).

For the five agreed-upon custodians, Tesla has collected and searched emails and work chats over Plaintiff's requested *nine*-year period. Plaintiff's unqualified and imprecise request for "any communications media" exemplifies his kitchen-sink approach to discovery, ignores Rule 26's proportionality requirement, and should be denied.

**The Parties' Final Proposed Compromises:** Plaintiff has narrowed his proposed custodians to just Mr. Musk and 4 of his direct reports, in addition to Tesla's proposed 5. This list is reasonable given the complexity of this suit and personnel changes over time.

Tesla disputes Plaintiff's characterization. Plaintiff has not "narrowed" his request at all, and instead is insisting on *doubling* the number of custodians as well as including Tesla's CEO.

**Issue 2 – Document Search Terms for RPD Nos. 9, 11, 17, 18, 26-28.**

**Plaintiff's Position:** Tesla's claim that Plaintiff has not made reasonable efforts to meet and confer on this issue is belied by the fact that after 3 months of meeting and conferring, (*see* Tesla's Ex. B), the parties now agree on 4 of the 7 searches. For the other 3, hits for RFPs 11 and 18 using Plaintiff's proposed terms dropped from 276,175 to 150,173; for RFPs 11, 17, 18, 26, 27, hits dropped from 67,371 to 24,292; and for RFPs 9 and 28, pertaining to LIDAR, hits stand at 30,731. Looking at the LIDAR search, which is not a standard Tesla technology and therefore one would not expect a lot of responsive documents, the hit number in itself is just not that high, and Tesla has not identified any type of irrelevant material turning up in the search as proposed that should be excluded through making the search narrower. Again, as noted above, excluding owner's manuals, Tesla's production to date is just 4,744 pages. This is not a case with excessive or unreasonable numbers of documents. Further, Tesla's limited production to date leaves Plaintiff to guess at how best to locate relevant documents. At their April 3 call (which Plaintiff requested March 31st to address, *inter alia*, search terms and custodians after the parties' March 20th joint discovery submission), Plaintiff requested that Tesla move forward with producing documents for the 4 agreed searches, but Tesla refused. Of necessity, Plaintiff seeks broader discovery where Tesla alone knows what documents are available. However, Plaintiff has worked in good faith to keep discovery narrow and, given the complexity of this case, these hit numbers are reasonable and demonstrate that good faith.

**Tesla's Position:** In the order denying Plaintiff's previous discovery dispute, the Court was clear that the parties must "make every reasonable effort to work together to resolve discovery disputes prior to bringing disputes to the court." Dkt. 130 at 1. Regrettably, Plaintiff yet again violates this clear directive. On March 12, 2025, Tesla provided a reasonable counterproposal of proposed search terms, along with hit counts for both Plaintiff's and Tesla's proposals. *See* Ex. B. Plaintiff never responded. Plaintiff's counsel then refused to provide a substantive response to Tesla's proposal during the parties' April 3, 2025 conference, and instead simply announced that Plaintiff would raise the issue with the Court. Plaintiff attempts to justify his failure to engage with Tesla's counterproposal by arguing that the parties had been negotiating search terms for several months. This is irrelevant; if Plaintiff was concerned about the passage of time, he would not have ignored Tesla's March 12 proposal for nearly a month. Plaintiff's refusal meaningfully to meet and confer on this issue is reason enough to deny this request. *See, e.g.*, *Schobinger v. Twitter, Inc.*, 2025 WL 52746, at *2 (N.D. Cal. Jan. 9, 2025) (denying discovery dispute where plaintiff "could have addressed proportionality by refining his request during the required meet and confer process"); *Humanmade v. SFMade*, 2024 WL 3378326, at *3 (N.D. Cal. July 10, 2024) (expressing disappointment that the plaintiff "failed to propose any alterations to, limitations on, or modifications to any of the seven disputed search terms when informed that they yield an excessive and unreasonably high number of hits").

In any event, as Tesla made clear in its March 12 proposal, Plaintiff's proposed search terms are overbroad, duplicative, and likely to pull in mountains of irrelevant hits. Tesla's counterproposal focused these searches to target relevant documents. For example, Plaintiff's proposed search terms relating to LIDAR are simply overbroad keywords with no proximity limitations, guaranteeing high number of irrelevant hits. Thus, while RFP No. 9 seeks documents relating to "any evaluation or testing" of LIDAR technology; Plaintiff's proposal would pull *any*

documents that *ever* mentioned LIDAR, no matter the context. Tesla's proposed proximity parameters (including variations of "evaluation," "testing," and similar words) addresses this problem. Regarding the other two disputed search terms, Tesla's proposal to narrow the proximity term from 10 words to 3 is reasonable in light of the disproportionate hits produced by Plaintiff's proposal. Overall, Tesla's counterproposal reduces the number of documents it will have to review from approximately 250,000 to approximately 100,000, which volume is reasonable and proportionate to the limited scope of Plaintiff's claims following Judge Lin's motion to dismiss order (*see* Dkt. 96). Plaintiff's search terms are overbroad and poorly designed to identify relevant information.

**The Parties' Final Proposed Compromises:** Plaintiff has already significantly narrowed his searches, as shown by the parties' agreement on 4 of the 7 searches.

Tesla disputes Plaintiff's characterization. The parties' last written communication on this issue is reflected in Exhibit B.

| Plaintiff's Proposal | Hit Counts (Documents with families/unique) | Tesla's Proposal | Hit Counts (Documents with families/unique) |
|---|---|---|---|
| ("LIDAR" OR "Light Detection and Ranging")<br><br>(relevant to RFP Nos. 9, 28) | 30,731 (40,384/27,790) | ("LIDAR" OR "Light Detection and Ranging") w/50 ("evaluat*" OR "test*" OR "analysis" OR "analyses" OR "analyz*") | 4,721 (8,120/4,037) |
| ("test*" OR "data" OR "demo*" OR "perform*" OR "operat*" OR "report*" OR "validat*" OR "benchmark" OR "assess") w/10 ("self-driv*" OR "self driv*" OR "FSD" OR "autonomous*")<br><br>(relevant to RFP Nos. 11, 18) | 150,173 (174,682/137,090) | ("test*" OR "demo*" OR "validat*" OR "benchmark" OR "assess") w/3 ("full self-driv*" OR "full self driv*" OR "FSD" OR "fully autonomous*") | 69,137 (73,089/67,821) |
| ("computer" OR "memory" OR "sensor*" OR "radar*" OR "ultrasonic") w/10 ("self-driv*" OR "self driv*" OR "FSD" OR "autonomous*")<br><br>(relevant to RFP Nos. 11, 17, 18, 26, 27) | 24,292 (40,887/13,340) | ("computer" OR "memory" OR "radar*" OR "ultrasonic sensors") w/3 ("full self-driv*" OR "full self driv*" OR "FSD" OR "fully autonomous*") | 9,146 (10,633/7,499) |

Respectfully submitted,

Dated: April 10, 2025        **COTCHETT PITRE & McCARTHY LLP**

By: */s/ Julie L. Fieber*
Frank M. Pitre (SBN 100077)
fpitre@cpmlegal.com
Thomas E. Loeser (SBN 202724)
tloeser@cpmlegal.com
Julie L. Fieber (SBN 202857)
jfieber@cpmlegal.com
Andrew W. Britton (SBN 340052)
abritton@cpmlegal.com

*Attorneys for Plaintiffs Thomas LoSavio, Brenda Broussard, and the Proposed Class*

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com

*Attorneys for Plaintiff Dominick Battiato and the Proposed Class*

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
David S. Casey, Jr. (SBN 060768)
dcasey@cglaw.com
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
P. Camille Guerra (SBN 326546)
camille@cglaw.com

*Attorneys for Plaintiffs Christopher Mallow, Jazmin Imaguchi, and the Proposed Class*

Dated: April 10, 2025        **WILMER CUTLER PICKERING HALE AND DORR LLP**

By: */s/ Alan Schoenfeld*
Alan Schoenfeld (*pro hac vice*)
Alan.Schoenfeld@wilmerhale.com
David Marcus (SBN 158704)
David.Marcus@wilmerhale.com
Allison Que (SBN 324044)
Allison.Que@wilmerhale.com

*Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC*