UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGGS A. MATSKO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TESLA, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-05240-RFL (DMR)<br><br>**ORDER RE: JOINT DISCOVERY LETTER BRIEF**<br><br>Re: Dkt. No. 131 |

This is a putative consumer class action against Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively, "Tesla") alleging that Tesla misrepresented the capabilities of its advanced driver assistance systems ("ADAS") technology. On May 15, 2024, the Honorable Rita F. Lin allowed Plaintiff Thomas LoSavio's negligence- and fraud-based claims to proceed to the extent they rely on two categories of alleged misrepresentations: (1) statements regarding the hardware needed for full self-driving capability, made on the Tesla website or in Tesla newsletters from October 19, 2016, through LoSavio's purchase of his Tesla in January 2017; and (2) Tesla CEO Elon Musk's statement at an October 19, 2016 Tesla news conference that Tesla cars would be able to demonstrate "full [self-driving] autonomy all the way from LA to New York . . . by the end of next year without the need for a single touch." [Docket No. 96 at 6-7; Docket No. 84-1 (Pre-Purchase Misrepresentation Chart) at 1-5, 7-12, 17-19.]

LoSavio served his first set of Requests for Production ("RFPs") on August 30, 2024 and his second set on October 10, 2024. [*See* Docket No. 131 ("JDL") at 1.] Tesla responded on October 31 and November 11, 2024, respectively. [*Id.*] As of April 10, 2025, LoSavio reports that Tesla has produced 44,472 pages of documents but that 39,729 of those pages are Owners Manuals. [*Id.*] On January 21, 2025, Tesla proposed using certain search terms to identify documents responsive to RFPs 6, 9, 11, 16-19, and 26-28, which concern Tesla's representations

that its vehicles have the hardware needed for autonomous driving, including to drive autonomously across the country. [*Id.*] Tesla also proposed five custodians and collected their emails and work chats over the requested nine-year period. [*Id.* at 1, 3.] The parties have exchanged search term proposals, and Tesla sent its most recent counterproposal on March 12, 2025. [*Id.* at 4.] On April 10, 2025, the parties filed a joint discovery letter brief in which LoSavio moves to compel five additional custodians, additional sources of custodial ESI, and adoption of LoSavio's proposed search terms. This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is granted in part and denied in part without prejudice.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The party seeking discovery has the initial burden of establishing that its request satisfies Rule 26(b)(1)'s relevancy requirement, *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012), and the party opposing discovery has the burden of showing that the discovery should not be allowed, *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020). "The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, advisory committee notes to 2015 amendment.

## II. DISCUSSION

Tesla proposed five custodians for its ESI searches, all Autopilot engineers: Kalena Brown, Akshay Vijay Phatak, Pete Scheutzow, RJ Sekator, and Dhaval Shroff. [JDL at 1.] Tesla explains that these custodians "include senior members of Tesla's engineering team," and that four

2

of them "have worked at Tesla over ten years (and the fifth has worked at Tesla for over five years), and all work with Tesla senior leadership, including directly with Mr. Musk." [*Id.* at 2.] LoSavio seeks five additional custodians: Elon Musk; three "senior directors reporting directly to Musk," (Ashok Elluswamy, Andrej Karpathy, and CJ Moore); and Christopher Payne, a senior Autopilot engineer. [*Id.* at 1.] LoSavio explains that these custodians are warranted because "[o]nly Mr. Musk and his direct reports know the basis" for the representations at issue in the case, and that "[i]nformation they exchanged is relevant to show the foundation for these representations, known facts contrary to the advertising, and the actual autonomous capabilities of Tesla vehicles." [*Id.* at 2.] Tesla argues that the five agreed-on custodians have the relevant information LoSavio seeks related to aspects of its ADAS technology, that LoSavio's proposal is overbroad and disproportionate because he seeks to double the number of custodians without having reviewed any custodial materials, and that he cannot establish that the custodians he seeks have unique information. [*Id.* at 2-3.]

"A party seeking to compel discovery has the initial burden of establishing that the request satisfies the relevancy requirements of Fed. R. Civ. P. Rule 26(b)(1)." *In re Glumetza*, 2020 WL 3498067, at *7 (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).

LoSavio has made a sufficient showing that Elluswamy will likely have relevant documents. The Consolidated Third Amended Complaint alleges that Elluswamy testified in another case about one of the representations at issue in this case: a video that Tesla published on its website around October 19, 2016, which purported to show a Tesla driving itself without any human intervention. [Docket No. 102 ("TAC") ¶ 59.] Elluswamy allegedly testified that he knew the car's route in the video was "3-D mapped beforehand, that the car drove into a fence, and that the video shows the car having abilities not then possessed by Tesla's ADAS technology." [*Id.* (internal quotation marks and footnote omitted).] That Elluswamy is a senior director who reports directly to Musk, and that he has knowledge about the ways in which the October 2016 video promoting Tesla's ADAS technology was allegedly directed and edited to overstate the vehicle's self-driving capabilities, are enough to demonstrate relevance to add him as a document custodian.

LoSavio has also established relevance to designate Musk as a document custodian. RFP

3

17 seeks the documents that Musk relied on at the October 19, 2016 news conference when he stated that Tesla cars would be capable of driving autonomously from Los Angeles to New York in 2017. [*See* Docket No. 131-2 at ECF 8.] This statement is one of the primary representations at issue in the case. Tesla argues that LoSavio "offers no basis to find that Mr. Musk's records will provide relevant information not available from the current custodial sources" [JDL at 3], but it is clear that Musk is best positioned to have documents relevant to statements he made himself. "The idea that responsive documents will necessarily be found in other custodians' records is not sufficient to defeat a search of his files." *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018) (permitting addition of Twitter CEO Jack Dorsey as a document custodian over defendants' argument that the existing custodians "have all the relevant documents" and adding Dorsey would be "premature"); *see also id.* ("It is always possible that one custodian will have a document or documents that other custodians have not retained, or even that one custodian may have created a document, such as handwritten notes, that no other custodian possesses."). Moreover, LoSavio has established that Musk is likely to have relevant information about Tesla's other October 2016 statements concerning ADAS technology. The TAC alleges that Musk's involvement in Tesla "far exceeds the typical level of CEO involvement in and direction of the activities of an engineering team within a company." [TAC ¶ 40.] And, in addition to his October 19, 2016 representation about Tesla vehicles' cross-country self-driving capabilities, Musk allegedly sent emails instructing Tesla employees about how to edit the October 2016 Tesla self-driving video discussed above. [*Id.* ¶ 59a.]

Tesla argues that the information Musk relied on when he made the October 19, 2016 statement "is not relevant to whether the challenged statements were misleading or false," and maintains that "[a] contrary determination would allow plaintiffs to obtain intrusive discovery from apex custodians simply by including statements from those custodians in their pleadings." [JDL at 3.] These arguments are unpersuasive. LoSavio's surviving claims are based in fraud and negligence, and LoSavio has alleged not only Musk's direct involvement in representations about Tesla's ADAS technology, but also that Musk himself made a statement that is one of the main alleged misrepresentations at issue. The documents that Musk relied on in making his statement

4

are plainly relevant to LoSavio's claims because they are relevant, among other things, to Musk's knowledge of his statement's falsity. The court accordingly grants LoSavio's motion to compel Musk and Elluswamy as custodians.

With respect to the remaining requested custodians, LoSavio has not established they have relevant evidence, at least at this juncture. LoSavio's only assertion of relevance as to Karpathy, who is not mentioned in the TAC, is that he reports directly to Musk and thus is likely to have relevant communications; Payne also is not mentioned in the TAC and is described only as a senior Autopilot engineer. [*Id.* at 1-2.] These conclusory statements do not establish that Karpathy or Payne are likely to have information relevant to LoSavio's claims, at least at this time. As to Moore, LoSavio asserts that he is a senior director who reports directly to Musk, and the TAC mentions him in one instance as allegedly having made statements to state regulators on a March 9, 2021 phone call about Musk's "messaging" regarding Tesla's self-driving capabilities by the end of the year. [*See* TAC ¶ 101.] That Moore reports directly to Musk and was allegedly involved in a 2021 call about Tesla's ADAS technology is not enough to show that Moore likely has relevant information about the October 2016 statements at issue. It is possible their relevance as custodians will be revealed during the course of discovery. Therefore, LoSavio's motion is denied without prejudice as to Karpathy, Payne, and Moore. *See, e.g.*, *Roblox Corp. v. WowWee Grp. Ltd.*, No. 22-cv-04476-SI, 2023 WL 5507176, at *3 (N.D. Cal. Aug. 25, 2023) (denying addition of custodian "because plaintiffs only speculate that [he] must have relevant information").

LoSavio next requests that custodial ESI searches "cover not just emails but any other communication system used by these Tesla engineers in their work, including text messages if applicable." [JDL at 1.] Tesla responds that LoSavio makes an "unqualified and imprecise request" as to sources of custodial ESI that "ignores Rule 26(b)(1)'s proportionality requirement." [*Id.* at 3.] The undersigned agrees that LoSavio's request is imprecise and denies this request without prejudice. By now the parties should have reviewed potential sources of custodial ESI as part of their Rule 26(f) meet and confer process, pursuant to this district's ESI Guidelines and ESI Checklist. The parties' Stipulated Discovery & Search Protocol and Order even states the parties' "commit[ment] to cooperate in good faith throughout the matter consistent with this Court's ESI

Guidelines." [Docket No. 113 at 2.] If they have not done so already, the parties must promptly meet and confer to review each potential source of custodial ESI. LoSavio shall not raise this issue again unless he can identify specific sources of custodial ESI and the parties have an opportunity to meet and confer about them. Any dispute about sources of custodial ESI must analyze the Rule 26(b)(1) factors and relevant case law.

LoSavio's motion to compel Tesla to adopt his search terms proposal is also denied without prejudice. Tesla's most recent March 12, 2025 counterproposal provides a hit report only for the files of the five agreed-on custodians. [JDL at 4-5.] Tesla explains that LoSavio did not reply to this counterproposal prior to the April 3, 2025 meet and confer. [*Id.* at 4.] At the meet and confer, LoSavio states that he requested Tesla move forward with custodial productions for the four agreed-upon searches, and Tesla refused. [*Id.*]

This district's ESI Guidelines emphasize the importance of cooperation in e-discovery precisely because the negotiation of custodians, ESI sources, and/or search terms is an iterative process. Going forward, the parties must demonstrate they participated in this process prior to bringing their disputes to the court. The undersigned directs as follows: Tesla shall collect the files of Musk and Elluswamy and re-run its search terms hit report for all seven document custodians. The parties shall meet and confer about the disputed search terms. Should the parties choose to bring a further dispute about search terms to the undersigned, the dispute must strictly comply with the undersigned's Standing Order[1] and fully analyze the Rule 26(b)(1) factors, with the parties showing their work. For example, Tesla must substantiate any claim of irrelevance by explaining how it validated its review process—i.e., by using a quality control measure such as sampling to determine whether search terms as-applied are missing relevant ESI or contain substantial amounts of irrelevant ESI. *See In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), 2024 WL 1786293, at *7 (N.D. Cal. Feb. 20, 2024) (discussing validation procedures). Tesla must also substantiate any burden it

---

[1] For example, any further joint discovery letter brief should not attach meet-and-confer correspondence, which is prohibited by this court's Standing Order.

claims for the review process, such as by explaining in detail the expense of the required review.

LoSavio first served discovery requests almost eight months ago, and it is in the interests of this case for ESI discovery to move forward expeditiously. Any further dispute as to custodial ESI and/or search terms must be filed no later than **May 19, 2025**.

**IT IS SO ORDERED.**

Dated: April 18, 2025

Donna M. Ryu
Chief Magistrate Judge