FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
THOMAS E. LOESER (SBN 202724)
tloeser@cpmlegal.com
MAKENA A. KERSHAW (SBN 356645)
mkershaw@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
NICHOLAUS H. WOLTERING (SBN 337193)
nwoltering@bottinilaw.com
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Fax: (858) 914-2002

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Fax: (619) 544-9232

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation**<br><br>*This Filing Relates To All Actions* | Case No. 3:22-cv-05240-RFL<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  Hon. Rita F. Lin<br>Date:   August 12, 2025<br>Time:  10:00 a.m.<br>Courtroom:  15 – 18th Floor |

# TABLE OF CONTENTS

**PAGE NO.**

I.     STATEMENT OF ISSUES TO BE DECIDED ...................................................1

II.    SUMMARY OF ARGUMENT ...............................................................................1

III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................3

    A.    Relevant Procedural Background ...................................................................3

    B.    Relevant Factual Background .........................................................................3

IV.    THE PROPOSED CLASS REPRESENTATIVE ....................................................7

V.     ARGUMENT ...........................................................................................................7

    A.    The Standards for Class Certification ............................................................7

    B.    This Case Meets the Requirements of Rule 23(a) ..........................................8

        1.    The Classes Are Sufficiently Numerous ..............................................8

        2.    Questions of Law and Fact Are Common to the Classes ....................8

        3.    Plaintiff's Claims are Typical of the Classes ....................................10

        4.    Plaintiff Will Fairly and Adequately Protect the Interests
            of the Classes ....................................................................................11

    C.    The Proposed Classes Meet the Requirements of Rule 23(b)(2) ..................12

    D.    The Proposed Classes Meet the Requirements of Rule 23(b)(3) ..................13

        1.    Common Questions of Law and Fact Predominate ...........................14

            a.    Common Evidence Will Establish the Elements of
                Plaintiff's Statutory Claims ..................................................14

            b.    Common Evidence Will Establish the Elements of
                Plaintiff's Common Law Claims ...........................................17

        2.    Superiority ........................................................................................18

VI.    CONCLUSION .......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)................................................................7, 12, 14, 16

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
568 U.S. 455 (2013).................................................................................14

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ...................................................................10

*In re Banc of Cal. Sec. Litig.,*
326 F.R.D. 640 (C.D. Cal. 2018) .............................................................16

*Belfiore v. Proctor & Gamble Co.,*
311 F.R.D. 29 (E.D.N.Y. 2015) ...............................................................15

*Brickman v. Fitbit,*
2017 WL 5569827 (N.D. Cal. 2017) ................................15, 16, 17, 18

*Chicago Laborers Pension Fund v. Alibaba Group Holding Ltd.,*
Case No. CIV535692 (Superior Court for the State of California, County of San
Mateo)........................................................................................................12

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.,*
2018 WL 4931543 (N.D. Cal. 2018) ........................................................11

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.,*
660 F.3d 1170 (9th Cir. 2011), aff'd, 568 U.S. 455 (2013)........................8

*In re Cooper Cos. Sec. Litig.,*
254 F.R.D. 628 (C.D. Cal. 2009) ...............................................................8

*Corcoran v. CVS Health,*
2019 WL 6250972 (N.D. Cal. 2019) .........................................................10

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) .....................................................................13

*In re Diamond Foods, Inc., Sec. Litig.,*
295 F.R.D. 240 (N.D. Cal. 2013)................................................................8

*Dickey v. Advanced Micro Devices, Inc.,*
2019 WL 251488 (N.D. Cal. Jan. 17, 2019) ...........................................9, 10

*Edwards v. Ford Motor Co.,*
603 F. App'x 538 (9th Cir. 2015) ...............................................................15

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997) ................................................................................................17

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) .....................................................................................2, 3

*Guido v. L'Oreal, U.S.A., Inc.*,
    2013 WL 3353857 (C.D. Cal. 2013) .............................................................................15

*Guido v. L'Oreal, USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012)..................................................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .....................................................................................10

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2nd Cir. 2015) ......................................................................................14

*Just Film v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .....................................................................................18

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................................12

*In re LendingClub Sec. Litig.*,
    2018 WL 4586669 (N.D. Cal. Sep. 24, 2018) ...............................................................12

*In re LendingClub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017).........................................................................8

*Lytle v. Nutramax Laboratories, Inc.*,
    114 F. 4th 1011 (9th Cir. 2024) ....................................................................................2

*McCrary v. Elations Co.*,
    2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ...............................................................14

*Milan v. Clif Bar & Co.*,
    2021 WL 4427427 (N.D. Cal. Sep. 27, 2021) ...............................................................17

*Pampena v. Musk*,
    2024 WL 4331811 (N.D. Cal. 2024) .............................................................................12

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) .........................................................................................8

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .......................................................................................12

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016), vacated in part on other grounds, 862 F.3d 250
    (2d Cir. 2017)..............................................................................................................13

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff's MPA in Support of Motion for Class Certification
Case No. 3:22-cv-05240-RFL

iii

*Schofield v. Delta Air Lines, Inc.*,
   2019 WL 955288 (N.D. Cal. 2019) ...................................................................................10

*SI 59 LLC v. Variel Warner Ventures, LLC*,
   29 Cal. App. 5th 146 (2018) ............................................................................................17

*Sihler v. Fulfillment Lab, Inc.*,
   2023 WL 4335735 (S.D. Cal. 2023) ..................................................................................8

*State of Cal. v. Levi Strauss & Co.*,
   41 Cal. 3d 460 (1986) ........................................................................................................2

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) .....................................................................................15

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ...........................................................................................2, 12, 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .........................................................................................................14

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ...............................................................................................9

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
   319 F.R.D. 307 (D. Or. 2017) ..........................................................................................14

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ..........................................................................................12

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ............................................................................................14

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................................14

*In re Yahoo! Inc. Shareholder Litig.*,
   Case No. 17-CV-307054 (Superior Court for the State of California, County of
   Santa Clara) .....................................................................................................................11

**Statutes**

Federal Rule of Civil Procedure

   23(a)(4) .......................................................................................................................11, 12

   23(a), (b)(2), and (b)(3) ....................................................................................................1, 8

   23(a), 23(b)(2), 23(b)(3) ....................................................................................................2

   23(g) ............................................................................................................................2, 12

**I.      STATEMENT OF ISSUES TO BE DECIDED**

      1.   Should the Court Certify the Classes as defined herein?

      2.   Should the Court appoint Plaintiff as Class Representative?

      3.   Should the Court appoint Cotchett Pitre & McCarthy LLP, Casey Gerry Francavilla Blatt LLP, and Bottini & Bottini, Inc. as Class Counsel?

**II.     SUMMARY OF ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), Plaintiff hereby moves the Court for certification of two classes of purchasers of Enhanced Autopilot and/or Full Self-Driving technology packages sold by defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively "Tesla"), to pursue statutory claims under California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) ("CLRA"), False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*) ("FAL"), and Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) ("UCL"), and common law claims for fraud and deceit, negligent misrepresentation, negligence, and the derivative claim of unjust enrichment. The Classes that Plaintiff seeks to be certified are defined as:

> **California Arbitration Opt-Out Class:** All persons who purchased or leased from Tesla, Inc. (or any entity it directly or indirectly owns or controls, including but not limited to Tesla Lease Trust and Tesla Finance LLC) a Tesla vehicle and paid a separate amount, either through purchase or subscription, for Enhanced Autopilot and/or Full Self-Driving technology packages at any time from May 19, 2017, to the present, and who either purchased or leased that vehicle in California or who currently reside in California, who opted out of Tesla's arbitration agreement.

> **California Pre-Arbitration Class:** All persons who purchased or leased from Tesla, Inc. (or any entity it directly or indirectly owns or controls, including but not limited to Tesla Lease Trust and Tesla Finance LLC) a Tesla vehicle and paid a separate amount, either through purchase or subscription, for Enhanced Autopilot and/or Full Self-Driving technology packages at any time from January 1, 2016, through May 19, 2017 ("Pre-Arbitration Period"), and who either purchased or leased that vehicle in California or who currently reside in California.[1]

Alternatively, because the elements of proof will be uniform across both classes, should the Court

---

[1] Excluded from both Classes are Defendants' officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

1    prefer the proposed classes could be combined into a single class of consumers who are, for whatever

2    reason, not subject to Tesla's arbitration agreement. Plaintiff also respectfully moves this Court for an

3    order appointing Plaintiff as Class Representative and, pursuant to Fed. R. Civ. P. 23(g), appointing

4    Cotchett Pitre & McCarthy LLP, Casey Gerry Francavilla Blatt LLP, and Bottini & Bottini, Inc. as

5    Class Counsel.

6         This case easily meets the criteria for class certification. <u>First</u>, the proposed classes are

7    numerous as there were approximately ▮▮▮ purchasers or subscribers to Tesla's Enhanced Autopilot

8    or Full Self Driving technology packages who opted-out of Tesla's arbitration agreement during the

9    Class Period, and approximately ▮▮▮ purchasers or subscribers prior to May 19, 2017, when Tesla

10   added arbitration provisions to its purchase agreements. Decl. of Julie Fieber in Supp. of Class

11   Certification ("Fieber Dec.") Ex. 4 (Stockton Rpt.) Tab 9. <u>Second</u>, the questions of law and fact are

12   common to the Class - did the Tesla vehicles have all hardware needed for full autonomy at the time

13   of purchase and would the Tesla vehicles be capable of fully autonomous driving, for example from

14   Los Angeles to New York, within a year or so of purchase? <u>Third</u>, the Class Representative's claims,

15   that Tesla's representations were false and/or misleading under the applicable statutes and common

16   law, and the defenses to those claims, are typical. <u>Fourth</u>, the Class Representative and Class Counsel

17   have, and will continue to, fairly and adequately protect the interests of the Class. <u>Fifth</u>, Tesla's

18   ongoing misrepresentations regarding its autonomous technology warrant injunctive relief. <u>Sixth</u>,

19   common questions of law and fact predominate over any individual questions. <u>Seventh</u>, a class action

20   will be superior to other available methods for fairly and efficiently adjudicating the controversy. *See*

21   Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3).

22        Both the statutory and common law claims plead are well-suited for class certification.

23   "CLRA claims 'are ideal for class certification because they will not require the court to investigate

24   class members' individual interaction with the product.'" *Lytle v. Nutramax Laboratories, Inc.*, 114 F.

25   4th 1011, 1037 (9th Cir. 2024)(citation omitted). Similarly, courts have recognized that class actions

26   are ideal vessels for resolving UCL and FAL claims. *See, e.g., In re Tobacco II Cases*, 46 Cal. 4th

27   298, 312 (2009) ("Class actions have often been the vehicle through which UCL actions have been

28   brought."). These suits "serve important roles in the enforcement of consumers' rights. *Id.* at 313

(quoting *Kraus v. Trinity Mgmt. Servs.*, Inc., 23 Cal. 4th 116, 126 (2000)). *See also State of Cal. v. Levi Strauss & Co.*, 41 Cal. 3d 460, 471 (1986) ("California courts have recognized that the consumer class action is an essential tool for the protection of consumers against exploitative business practices."); *In re First All. Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006) (affirming certification of fraud claim where defendant engaged in uniform conduct toward whole class).

A class action is superior to any other method of resolving these claims, which will be proved through common facts and evidence. The Court should certify the proposed Classes, appoint Plaintiff as Class Representative, and appoint Cotchett Pitre & McCarthy LLP, Casey Gerry Francavilla Blatt LLP, and Bottini & Bottini, Inc. as Class Counsel.

## III. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Relevant Procedural Background

The first of these consumer class actions was filed in September 2022, and the Consolidated Amended Complaint was filed in October 2022. Dkt. No. 23. After Tesla moved to dismiss, the motion was granted with leave to amend; one group of plaintiffs was ordered to take their claims to arbitration. Dkt. No. 42. Tesla again moved to dismiss after Plaintiff filed the Second Amended Complaint, which motion was granted in part and denied in part by order dated May 15, 2024. Dkt. No. 96. In that order, the Court granted leave to amend to address Tesla's argument that Plaintiff did not have standing to seek injunctive relief. The Court dismissed the warranty claims, but allowed the remaining fraud, negligence-based, and related statutory claims to go forward to the extent they are based on 2 alleged representations: 1) that Tesla vehicles have the hardware needed for full self-driving capability and, 2) that a Tesla car would be able to drive itself across country in the coming year. *Id.*

Plaintiff filed the Consolidated Third Amended Complaint ("TAC") on June 5, 2024, which is the basis for this Motion for Class Certification. Dkt. No. 102. Consistent with the Court's May 15, 2024, Order, Plaintiff amended standing allegations to clarify and support the injunctive relief claim.

### B. Relevant Factual Background

Tesla is unique among automakers in that the only way to purchase or lease its vehicles new is through Tesla itself. There are no independent Tesla dealerships. Tesla alone controls how its vehicles

are marketed. Fieber Dec. Ex. 2 (Goldhaber Rpt.), ¶¶ 9-14. Tesla has represented in discovery that it does not market or advertise its vehicles. *Id.* ¶ 10, Ex. 8 (RFP No. 59). However, Tesla promotional advertising does take place through its website, YouTube (where it maintains a page with videos at https://www.youtube.com/@tesla), Instagram (@Teslamotors), press conferences and other sales events, *e.g.*, "Autonomy Day," typically featuring its CEO Mr. Musk, similar press coverage of Mr. Musk's own newsfeed on twitter.com (aka x.com), and marketing newsletters sent to customers and potential customers, including one Plaintiff received in November 2016. *Id.* Ex. 2 (Goldhaber Rpt.) ¶ 10; TAC Ex. D.

Tesla has historically promoted and offered customers who purchase or lease its vehicles the option of separately purchasing or subscribing to technology packages for autonomous operation. Enhanced Autopilot is comprised of Autopark, Dumb Summon, Actually Smart Summon, Navigate on Autopilot (highway), while Full Self-Driving has the same features but adds Stop Signs/Traffic Signals and Autosteer on Streets. Enhanced Autopilot was only available as a stand-alone package until ████████, and then again briefly from ████████ to ████████; otherwise, customers purchased all these features in the FSD package. Fieber Dec. ¶ 31 and Ex. 29, ¶ 29 and Ex. 27 at TSLA_LOSAVIO_000044417, ¶ 17 and Ex. 15 (webpage). For clarity, and consistent with Tesla's marketing, both technologies will be referred to by the single abbreviation "FSD" unless there is need to further distinguish them.

Tesla customers set up accounts with Tesla and receive updates directly from Tesla. Tesla also sends over the air software updates direct to the vehicles along with descriptive release notes, many of which relate to FSD features. *See, e.g.,* TAC ¶ 167. Some of the software updates may be installed but not activated. However, consumers, including Plaintiff, reasonably have been viewing these communications as evidence of Tesla making concrete progress towards the promised full rollout and activation of software that would make Tesla vehicles self-driving. TAC ¶ 168.

At an October 19, 2016, press conference, Tesla CEO Mr. Musk touted Tesla's second-generation autonomous driving hardware:

> Basic news is that all cars exiting the factory have hardware necessary for Level 5 Autonomy so that's in terms of Cameras, Compute Power, it's in every car we make on the order 2,000 cars a week are shipping now with Level 5 literally meaning hardware capable of full self-driving for driver-less capability.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

Plaintiff's MPA in Support of Motion for Class Certification
Case No. 3:22-cv-05240-RFL                                                    4

1

…

2
3
4

I feel pretty good about this goal is that we will be able to demonstrate a demonstration drive of our full autonomy all the way from LA to New York. So basically from home in LA to let's say dropping you off in Times Square, NY and then having the car parking itself by the end of next year without the need for a single touch including the charger.

5   Fieber Dec. ¶ 13, Ex. 11 at 2, 6. At the same time, Tesla added the representation regarding full self-

6   driving hardware to its website, (*id.*, ¶ 7, Ex. 5), along with a video purporting to show a Tesla driving

7   autonomously, which begins, "The person in the driver's seat is only there for legal reasons. He is not

8   doing anything. The car is driving itself." *Id.* ¶ 4, Ex. 2 (Goldhaber) at ¶¶ 24-34; ¶ 28, Ex. 26 (video).

9   That video remains on the website at tesla.com/autopilot. *Id.* Musk repeated his LA to NY claim over

10  the years on Twitter. *Id.* Ex. 2 (Goldhaber) at ¶ 39; ¶¶ 24-26, Exs. 22, 23, 24 (LA to NY tweets)).

11  Tesla has continued to make similar representations over time, such as its September 10, 2024

12  YouTube video showing a driver not touching the wheel while the Tesla vehicle appears to drive

13  itself through challenging conditions. *Id.* Ex. 2, ¶ 35; ¶ 30, Ex. 28 (video). These representations,

14  communicated consistently, uniformly, and widely through all available communications channels,

15  creates Tesla's "information environment." *Id.* Ex. 2 (Goldhaber) ¶¶ 9-14. Consumers relied upon

16  these representations, as confirmed by the fact that they purchased the additional FSD features with

17  their Tesla vehicles. *Id.* Ex. 2 ¶¶ 42-44. Absent Tesla's representations about FSD's capabilities, there

18  was no basis for consumers to pay from $3,000 to $15,000 to separately buy it. *Id.*

19         What Tesla did not reveal was that it was nowhere close to providing full self-driving

20  vehicles. For example, a 2017 FSD-equipped Tesla ███████████████████████████

21  ███████████     For years, the Autopark features ███████████████████████████

22  ███████████████████████████████ – a Tesla driving through an empty parking lot

23  ███████████████████████████. So-called Tesla Vision was ███████████████████

24  ███████████████████████. Fieber Dec. Ex. 17 (Phatak Tr.) at 55:11-65:14, 118:14-139:7,

25  176:6-180:10 and Exs. 20, 21; Ex. 16 (Shroff Tr.) at 190:16-195:22, 219:16-223:23, and Exs. 18, 19.

26  And the video released to coincide with Tesla's October 2016 FSD announcement? A Tesla engineer

27  testified in a wrongful death case that it was the result of multiple trials requiring driver interventions

28  -- at one point the car even crashed into a fence. *Id.* Ex. 14. A Tesla engineer ███████████████

██████████████████████████████████████████████████████████████████

████████████████████████████. *Id.* Ex. 16 (Shroff Dep. Tr.) at 72:5-86:25. That video

was faked.

Tesla's representations about its vehicles' ability to drive autonomously from LA to New

York are also false. Deposition testimony from its engineers ███████████████████████████

██████████████████████████████████████████████████

███████████████████████████. *Id.* Ex. 16 (Shroff Dep. Tr.) at 247:12-253:15.

Tesla's representation that all vehicles produced from October 2016 onwards have the

hardware for full-self driving was incorrect. Tesla's fall 2016 hardware version, version 2.5, has been

updated multiple times since that announcement. *Id.* Ex. 3 (Socci Rpt.) ¶¶ 32-33. For example, in

2021, Tesla released hardware version 3.0, █████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████. *Id.* Tesla CEO Musk admits that vehicles equipped with FSD need this hardware upgrade:

> Elon Musk, CEO, Tesla: Great. Thanks, Joe. Yeah. I mean, I think the honest answer is
> that we're going to have to upgrade people's hardware 3 computer for those that have
> bought full self driving. And that is the honest answer. And that's going to be painful
> and difficult, but we'll get it done. Now I'm kind of glad that not that many people
> bought the FSD package.

*Id.* ¶ 12, Ex. 10 (Q4 2024 Earnings Call) at 22-23; Ex. 3 (Socci Rpt.) ¶¶ 32-34.

Additionally, in promotional materials, Tesla suggests FSD could not be obtained until it

completed validation and obtained regulatory approval. *Id.* Ex. 2 (Goldhaber Rpt.) ¶¶ 40-42; TAC Ex.

C ("please note that Self-Driving functionality is dependent upon extensive software validation and

regulatory approval"). Contrary to those representations, Tesla has never applied for regulatory

approval to deploy an SAE Level 3 or higher vehicle in California, a step essential for operation of a

full self-driving vehicle. *Id.* Ex. 6 (ROGs) No. 2, Ex. 7 (RFAs) Nos. 1, 2; Ex. 3 (Socci Rpt.) ¶¶ 21-28.

Tesla's "validation" program also appears a mirage, as it has yet to have produced any documents

explaining it. *Id.* ¶ 10, Ex. 8 (RPDs Set 7) Nos. 46-50.

## IV.    THE PROPOSED CLASS REPRESENTATIVE

In early 2017, Plaintiff paid Tesla $5,000 for Enhanced Autopilot and $3,000 for the Full Self-Driving packages for his new Tesla Model S car. *Id.* ¶ 27, Ex. 25 (LoSavio DEX 1). Plaintiff purchased these technology packages because he was misled by Tesla's representations that it was on the cusp of technology that would allow a Tesla to fully drive itself from origin to destination, without driver attention, and that all Tesla vehicles now had the hardware needed to take advantage of this full self-driving technology. *Id.* Ex. 1 (LoSavio PI Dec.) ¶¶ 1-7; TAC ¶¶16-17, 152, 154. Plaintiff purchased these technology packages after doing significant online research. *Id.* He read and relied on statements from Tesla (1) that all new Tesla cars had "all the hardware necessary to become fully self-driving through future software updates;" (2) that Tesla's ADAS software "was already as safe as, or safer than, a human driver, and that it would only continue to get safer over time;" (3) that a Tesla would soon drive itself coast-to-coast across the country; (4) that the self-driving software would be available in the next year or two, or some similar reasonable time after his purchase, as the software was refined and validated. *Id.* Plaintiff has vigorously pursued the claims in this litigation on behalf of the putative Class and will continue to do so. *Id.* ¶ 2 and Ex. 1 (LoSavio PI Dec.) ¶¶ 13-15.

## V.    ARGUMENT

### A.    The Standards for Class Certification

To certify a class action under Rule 23, the Court must find, by a preponderance of the evidence, that the prerequisites under Rule 23(a), as well as one requirement under Rule 23(b) - here, Rules 23(b)(2) and 23(b)(3) - are satisfied. *See* Fed. R. Civ. P. 23; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Under Rule 23(a), a court may certify a class if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The inquiry at the class certification stage is not concerned with whether the plaintiff will ultimately prevail on the merits, but rather the requirements of Rule 23. *See Conn. Ret. Plans & Tr. Funds v. Amgen Inc*., 660 F.3d 1170, 1175 (9th Cir. 2011), aff'd, 568 U.S. 455 (2013). Questions regarding the merits "'may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *In re Diamond Foods, Inc., Sec. Litig*., 295 F.R.D. 240, 245 (N.D. Cal. 2013) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Fund*s, 568 U.S. 455, 466 (2013)).

For the reasons set forth herein, the requirements of Rule 23(a), (b)(2), and (b)(3) are satisfied because the proposed classes of purchasers of Tesla's FSD technology packages are sufficiently numerous, Plaintiff is a more than adequate representative, his claims are common to the classes, proposed Class Counsel are well-qualified, Tesla's marketing of these technologies applies generally to the classes so that final injunctive relief is appropriate respecting the classes as a whole, common questions of law and fact predominate, and a class action is superior to alternative methods for fair and efficient adjudication.

### B.  This Case Meets the Requirements of Rule 23(a)

#### 1.  The Classes Are Sufficiently Numerous

In the Ninth Circuit, courts routinely hold that numerosity is satisfied when the class contains 40 members.  *See In re Cooper Cos. Sec. Litig*., 254 F.R.D. 628, 634 (C.D. Cal. 2009). This low threshold is cleared here where there were ▮▮▮ purchasers or subscribers for Enhanced Autopilot or FSD packages who are not subject to arbitration, in addition to ▮▮ who opted out of arbitration. Fieber Dec. Ex. 4 (Stockton Rpt.) Tab 9. Tesla's data shows the numerosity requirement is met. *See Sihler v. Fulfillment Lab, Inc.*, 2023 WL 4335735, at *3 (S.D. Cal. 2023) (finding numerosity based on defendant's shipping information).

#### 2.  Questions of Law and Fact Are Common to the Classes

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mandate that all class members make identical claims and

1  arguments. *See In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017). "'So long

2  as there is even a single common question, a would-be class can satisfy the commonality requirement

3  of Rule 23(a)(2).'" *Id.*; *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (quoting

4  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

5      Here, virtually all of the questions of law or fact at issue are common between Plaintiff and all

6  others in the proposed Classes, including, for example: (i) whether Tesla's representations starting in

7  October 2016 that all of its vehicles have the hardware needed for full self-driving capability were

8  false or misleading; (ii) whether Tesla's representations that a Tesla car would be able to drive itself

9  cross-county in the coming year (a statement first made in 2016, then repeated in 2017, 2018, and

10  2019) were false or misleading; (iii) whether the alleged misrepresentations and omissions were

11  material; (iv) whether they were made recklessly and/or with intent to mislead; (v) whether Class

12  members relied on those representations; and (vi) whether class members were damaged by paying

13  the purchase or subscription price for Enhanced Autopilot and/or Full Self-Driving packages because

14  of Tesla's misrepresentations. Each of these is a common question subject to common proof across

15  the class.

16      Plaintiff's <u>statutory</u> claims are evaluated under a "reasonable consumer" test and require

17  showing that members of the public are likely to be deceived. *Dickey v. Advanced Micro Devices,*

18  *Inc.*, 2019 WL 251488, at *3 (N.D. Cal. Jan. 17, 2019). Regardless of the merits, as the court in

19  *Dickey* recognized with respect to website representations like those at issue there, whether a

20  reasonable consumer would have been deceived by Tesla's representations is a question common to

21  all class members. *Id.*

22      Similarly, Plaintiff's <u>common law</u> claims, which focus on uniform representations by Tesla

23  during the class period, involve common questions and evidence. *See* Fieber Dec. Ex. 2 (Goldhaber

24  Rpt.) ¶¶ 9-41, 45-52. "[F]raud claims based on uniform misrepresentations to all members of a class

25  'are appropriate subjects for class certification' because, unlike fraud claims in which there are

26  material variations in the misrepresentations made to each class member, uniform misrepresentations

27  create "no need for a series of mini-trials." *In re U.S. Foodservice, Inc. Pricing Litig.*, 729 F.3d 108,

28  118 (2d Cir. 2013). For both the statutory and common law claims plead, class-wide proceedings will

"'generate common *answers* apt to drive resolution of the litigation.'" *Dickey*, 2019 WL 251488, at *3 (emphasis in original). Because absent class members would have to prove nearly identical facts and address nearly identical legal issues if they pursued their claims individually, the proposed Classes satisfy the commonality requirement of Rule 23(a)(2).

### 3.    Plaintiff's Claims are Typical of the Classes

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). That standard is "permissive" and class members' claims "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). "'The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Dickey*, 2019 WL 251488, at * 4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality is thus "'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)). Plaintiff's claims are both factually and legally similar to those of the putative classes because the representations at issue are the same for all class members, and Plaintiff has not alleged any individual claims. This is sufficient to satisfy the typicality requirement. *Id.*

Any assertion by Tesla that there are statute of limitations defenses unique to Plaintiff does not defeat typicality. *See, e.g.,* Motion to Dismiss SAC (Dkt. No. 71) at 4-7. Typicality can be found even where a class representative's claim may be subject to a statute of limitations challenge. *See, e.g., Corcoran v. CVS Health*, 2019 WL 6250972, at *5 (N.D. Cal. 2019) (typicality requirement satisfied where, in view of a lengthy class period, other class members were "very likely to be subjected to the same statute of limitations defense as both [class representatives]," and the class representatives therefore were not "uniquely subjected to the statute of limitations."); *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288, at *3-*4 (N.D. Cal. 2019) (concluding, in a suit over the FCRA stand-alone requirement, that the typicality requirement was met where "all class members, including the named class representative, will likely face the same challenge with respect to a statute

1  of limitations defense.").

2      Here, Plaintiff has plausibly plead exceptions to the statute of limitations based on both

3  delayed discovery and equitable estoppel. 5/15/2024 Order (Dkt. No. 96) at 5-6. Those exceptions rest

4  on Tesla's public statements common to both Plaintiff and the putative classes. *See, e.g.,* TAC ¶¶ 157-

5  168; Fieber Dec. Ex. 2 (Goldhaber Rpt.) ¶¶ 7-41. Further, to the extent this is a concern, the

6  complaint can be amended or a motion to intervene brought to name a class representative who is not

7  subject to the statute of limitations defenses Tesla has raised for Plaintiff LoSavio. Fieber Dec. ¶ 32.

8      **4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Classes**

9      Rule 23(a) requires plaintiffs to establish that "the representative parties will fairly and

10  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "'To determine whether a

11  plaintiff will adequately serve the class, courts consider two questions: (1) do the named plaintiffs and

12  their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs

13  and their counsel prosecute the action vigorously on behalf of the class?'" *City of Miami Gen.*

14  *Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc*., 2018 WL 4931543, at *4 (N.D. Cal. 2018)

15  (*quoting LendingClub*, 282 F. Supp. 3d at 1182).

16      Here Plaintiff is not antagonistic to, nor in conflict with, the interests of the proposed Class

17  members. Like the other Class members, Plaintiff purchased FSD during the Class Period and

18  sustained losses through paying extra for something he never received – a vehicle with all the

19  hardware needed to be fully self-driving that would in time be capable of autonomously driving

20  across the country. Plaintiff has proven his willingness and ability to take an active role in, and

21  control of, the litigation to protect the interests of the absent Class members. Plaintiff: (i) understands

22  the responsibilities of serving as class representatives in a consumer fraud action; (ii) has reviewed

23  key pleadings in this action; (iii) intends to continue supervising and monitoring the progress of this

24  litigation; and (iv) intends to continue working with Lead Counsel to maximize the recovery to the

25  Class. Plaintiff has already demonstrated, and will continue to demonstrate, his adequacy through his

26  involved participation. Fieber Dec. ¶ 3, Ex. 1 (LoSavio PI Dec.) ¶¶ 13-15.

27      Plaintiff has also retained attorneys with considerable experience in class actions and complex

28  litigation, demonstrating that he and his counsel will continue to zealously and competently represent

the interests of all Class members. Indeed, Cotchett Pitre & McCarthy LLP, Casey Gerry Francavilla Blatt LLP, and Bottini & Bottini, Inc. have served as class counsel in scores of class actions throughout the United States, including *In re Yahoo! Inc. Shareholder Litig.*, Case No. 17-CV-307054 (Superior Court for the State of California, County of Santa Clara); *Chicago Laborers Pension Fund v. Alibaba Group Holding Ltd.*, Case No. CIV535692 (Superior Court for the State of California, County of San Mateo); *In re LendingClub Sec. Litig.*, 2018 WL 4586669 (N.D. Cal. Sep. 24, 2018); *Pampena v. Musk*, 2024 WL 4331811, at *1 (N.D. Cal. 2024).

The prerequisite of Rule 23(a)(4) and the requirement of Rule 23(g) are satisfied, and Plaintiff's choice of counsel should be appointed as Class Counsel pursuant to Rule 23(g).

### C.    The Proposed Classes Meet the Requirements of Rule 23(b)(2)

In addition to meeting the prerequisites of Rule 23(a), a class action must also satisfy at least one of the three conditions imposed by Rule 23(b). Rule 23(b)(2) authorizes certification where the party opposing class certification has acted or refused to act in a manner that justifies final injunctive or declaratory relief. Fed. R. Civ. P. 23(b)(2); *Amchem*, 521 U.S. at 614. Rule 23(b)(2) "[o]rdinarily will be satisfied when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014). It is enough that class members complain of a generally applicable pattern or practice, even if some class members may not have been injured by it. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

The California Supreme Court has held that, "[i]njunctions are the 'primary form of relief available under the UCL to protect consumers from unfair business practices." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011); *see also Tobacco II*, 46 Cal. 4th at 319. Here, Plaintiff seeks injunctive relief in the form of an order precluding Tesla from offering for sale in California any technology packages represented to be "full self-driving," "autonomous," "autopilot," "enhanced autopilot," or the equivalent until it has obtained from the California Department of Motor Vehicles certification to deploy vehicles with SAE Level 3 or higher technologies without a safety driver. This

1    is no more than what Tesla's competitors such as Mercedes Benz have done before marketing

2    autonomous vehicles. Fieber Dec. Ex. 3 (Socci Rpt.) ¶¶ 4-28, Ex. 12. Tesla admits that <u>to this day</u> it

3    has not applied for that certification to any state regulatory body yet it confusingly continues to

4    advertise FSD for sale using variants on the "full self-driving" language, and describing properties its

5    FSD package does not have. *Id.* Ex. 6 (ROGs) No. 2, Ex. 7 (RFAs) Nos. 1, 2, Ex. 15 (webpage).

6        Further, certification is not defeated because Plaintiff purchased FSD in the past. "[A]

7    previously deceived consumer may have standing to seek an injunction against false advertising or

8    labeling, even though the consumer now knows or suspects that the advertising was false at the time

9    of the original purchase," because "[k]nowledge that the advertisement or label was false in the past

10   does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly-Clark*

11   *Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

12       Here, Plaintiff wishes he could rely on Tesla's statements about its FSD technology so that he

13   could make a fair comparison with competing products, such as the Mercedes Benz vehicle. Fieber

14   Dec. Ex. 1 (LoSavio PI Dec.) ¶¶ 11,12; TAC ¶¶ 176-178. The injunctive relief sought will provide

15   relief to all Class members and is specific in the relief sought, preventing Tesla from advertising

16   something with properties its product does not have. Plaintiff's legal remedies are inadequate to

17   prevent future harm from Tesla's unlawful and unfair conduct, and the requested injunctive relief is

18   tailored to specifically address that conduct and is functionally distinct from Plaintiff's damages

19   claim.

20       **D.      The Proposed Classes Meet the Requirements of Rule 23(b)(3)**

21       This action also satisfies the conditions imposed by Rule 23(b)(3), which authorizes

22   certification where: (i) "the questions of law or fact common to class members predominate over any

23   questions affecting only individual members;" and (ii) "a class action is superior to other available

24   methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, "the

25   interests of the class members are aligned, and the same alleged misconduct underlies their claims."

26   Here too, the class members "have a minimal interest in controlling the course of the litigation; there

27   are significant efficiency gains to be reaped from concentrating the litigation in a single forum; and

28   the likely difficulties in managing the class action are readily surmountable." *In re Petrobras Sec.*

1   *Litig.*, 312 F.R.D. 354, 363 (S.D.N.Y. 2016), vacated in part on other grounds, 862 F.3d 250 (2d Cir.

2   2017).

### 1.   Common Questions of Law and Fact Predominate

4   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Wang v. Chinese

6   *Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). This inquiry is satisfied where "*questions* of law

or fact common to the class will 'predominate over any questions affecting only individual members'

8   as the litigation progresses." *Amgen Inc. v. Conn. Ret. Plans & Trust Fund*s, 568 U.S. 455, 467 (2013)

(emphasis in original). Indeed, the Supreme Court has confirmed that when:

10   > "[O]ne or more of the central issues in the action are common to the class and can be
> said to predominate, the action may be considered proper under Rule 23(b)(3) even
11   > though other important matters will have to be tried separately, such as damages or
> some affirmative defenses peculiar to some individual class members."

13   *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). Thus, a plaintiff "need not establish

that there are no individual issues, only that the class issues predominate and that a class action is

15   superior." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 332 (D. Or. 2017).

16   Determining predominance involves assessing: (1) the elements of the claims and defenses to

be litigated; and (2) whether generalized evidence could be offered to prove those elements on a

18   class-wide basis or whether individualized proof will be needed to establish each class member's

entitlement to relief. *Johnson v. Nextel Commc'ns Inc.,* 780 F.3d 128, 138 (2nd Cir. 2015).

### a.   <u>Common Evidence Will Establish the Elements of Plaintiff's Statutory Claims</u>

21   Plaintiff's statutory claims under the FAL, CLRA, and UCL are governed by the reasonable

consumer test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the

23   reasonable consumer standard, [Plaintiff] must show that members of the public are likely to be

deceived." *Id.* (quotation marks omitted). Relief under the FAL, CLRA, and UCL is available without

25   individualized proof of "reliance and injury, so long as the named plaintiffs demonstrate injury and

causation." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012). "A presumption, or at

27   least an inference, of reliance arises under the UCL and FAL whenever there is a showing that a

misrepresentation was material." *McCrary v. Elations Co.*, 2014 WL 1779243, at *14 (C.D. Cal. Jan.

1    13, 2014) (alteration omitted). Similarly, causation is not a barrier to class certification under the

2    CLRA. *Guido*, 284 F.R.D. at 482 (quoting *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 119 Cal. Rptr. 2d

3    190, 197 (Cal. Ct. App. 2002)). The objective test for materiality and thus reliance "renders claims

4    under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to

5    investigate class members' individual interaction with the product." *Tait v. BSH Home Appliances*

6    *Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quotation marks omitted).

7          Broadly speaking, the FAL, CLRA, and UCL each  contain the same three elements which

8    must be assessed to determine whether common issues predominate: (1) the deceptive act, (2)

9    materiality, and (3) injury. Product specific labeling claims do not require proof as to individual

10   understanding and can be judged based on an objective standard. Generalized proof as to what

11   message the packaging conveys will satisfy the inquiry. *See, e.g., Belfiore v. Proctor & Gamble Co.*,

12   311 F.R.D. 29, 69 (E.D.N.Y. 2015)(what "flushable" meant and whether a product was "flushable"

13   presented common questions that predominated); *Guido v. L'Oreal, U.S.A., Inc.*, 2013 WL 3353857,

14   *12 (C.D. Cal. 2013)(common question predominate because "whether a reasonable consumer would

15   have been deceived by [a product's] packaging is an objective inquiry that focuses on that

16   packaging"). Likewise, materiality is governed by an objective reasonable person standard, which is

17   the same inquiry for every class member. "[A] finding that the defendant has failed to disclose

18   information that would have been material to a reasonable person who purchased the defendant's

19   product gives rise to a rebuttable inference of reliance as to the class." *Edwards v. Ford Motor Co.*,

20   603 F. App'x 538, 541 (9th Cir. 2015). Given this objective standard, CLRA and related California

21   common law claims are "particularly suited for class treatment." *See Brickman v. Fitbit*, 2017 WL

22   5569827, at *6 (N.D. Cal. 2017).

23         Here, Plaintiff will show, using common proof, that the representations at issue, that all Tesla

24   vehicles marketed since October 2016 contain all of the hardware needed to be full self-driving and

25   that they would become capable of autonomously driving cross-country, are both <u>deceptive</u> and

26   <u>material</u> to a reasonable consumer making the decision whether to pay thousands of dollars over and

27   above the price of the Tesla itself in order to receive Tesla's FSD technologies. Here, as Plaintiff's

28   expert Goldhaber explains, Tesla's marketing is unique in its direct communications creating an

"information environment" directed at its consumers. Fieber Dec. Ex. 2, ¶¶ 9-41. The representations here were "consistently, uniformly and widespread using all of the available channels of communication in Tesla's 'information environment.'" *Id.* ¶ 13. Consistent with research in the field of communications, consumers paid attention to these representations and interpreted them consistent with their plain language and Tesla's other representations, including its LA to NY claims and its videos purportedly showing Tesla vehicles driving themselves. *Id.* ¶¶ 23, 45-52. As evidence they understood the message, consumers paid thousands of dollars for features that Plaintiff alleges they would not have purchased had Tesla clearly and consistently disclosed that its vehicles might run into a fence or need repeated interventions if operated autonomously. *Id.* ¶ 43. These findings can be confirmed for the proposed classes using targeted surveys and focus groups. *Id.* ¶¶ 45-52.

Common proof can also establish deception. For example, while Tesla claims all vehicles it produced from October 2016 onwards had the hardware needed for full self-driving, Plaintiff's expert Socci will opine based on class wide proof that the FSD hardware has had to be updated for Class member vehicles. *Id.* Ex. 3, ¶¶ 32-34. That evidence includes Musk's announcement in January 2025 that Tesla vehicles now have to update to Hardware 4.0. *Id.* Common proof will similarly be used to show that, even to this day, Tesla vehicles cannot drive autonomously from LA to NY without human intervention, an experiment that ███████████████████████████. *Id.* Ex. 2 ¶¶ 36-39; Ex. 3 ¶ 34. Common proof will also establish Tesla's knowledge that these representations were false and misleading, for example through its use of a faked video of an autonomous vehicle in operation that remains on its website to this day, or its claim that release of FSD capability depended on regulatory approval – something for which it has yet to apply. *Id.* Ex. 2 ¶¶ 27-35, 40-41.

Damages are also subject to common proof. Class members paid an amount in excess of their vehicle purchase price for FSD or else paid a monthly subscription. While those amounts changed over time, Tesla produced documentation for those changes. Analysis by Plaintiff expert Stockton shows that class members suffered economic harm and opines that reasonable methods exist to quantify that harm on a class-wide basis. Fieber Dec. Ex. 4 (Stockton Rpt.) at 3, ¶¶ 22-34.

These common questions are sufficient to demonstrate that the predominance standard of Rule 23(b)(3) is satisfied, as they easily predominate over any perceived or potential individual issues.

1    *Amchem*, 521 U.S. at 625; *see In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 651-52 (C.D. Cal. 2018)

2    ("It's well settled that 'the presence of individualized damages cannot, by itself, defeat class

3    certification under Rule 23(b)(3).'") (citation omitted).

   **b.**  **Common Evidence Will Establish the Elements of Plaintiff's**
4         **Common Law Claims**

5       Plaintiff has plead claims for fraud and deceit, negligent misrepresentation, negligence, and

6    unjust enrichment for which common issues predominate, and which rely on common evidence to

7    prove the elements.

8       For the fraudulent misrepresentation claim, plaintiffs must show: "(a) misrepresentation (false

9    representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

10    defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v.*

11    *Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). The elements for negligent

12    misrepresentation are similar except that instead of proving scienter, a plaintiff must prove the

13    statement was made without reasonable grounds for believing it to be true. *SI 59 LLC v. Variel*

14    *Warner Ventures, LLC*, 29 Cal. App. 5th 146, 154 (2018). The negligence claim tracks the negligent

15    misrepresentation claim, that Tesla breached its duty to customers by negligently misrepresenting the

16    characteristics of FSD. TAC ¶¶ 236-240.

17       As discussed above for the statutory claims, here Tesla's knowledge and intent to deceive can

18    be resolved by common evidence. *See, e.g., Brickman*, 2017 WL 5569827, at *6 (citing *Small v. Fritz*

19    *Cos., Inc.*, 30 Cal. 4th 167, 173-74 (2003)). So too for proof of the materiality of its deceptions and

20    consumer reliance. In common law fraud cases, questions of materiality and reliance do not

21    necessarily undermine predominance and commonality. *Id.* at *6-*7; *Milan v. Clif Bar & Co.*, 2021

22    WL 4427427, at *5 (N.D. Cal. Sep. 27, 2021). "[A] presumption, or at least an inference, of reliance

23    arises wherever there is a showing that a misrepresentation was material." *Tobacco II*, 46 Cal. 4th at

24    327. A misrepresentation is material "if a reasonable man would attach importance to its existence or

25    nonexistence in determining his choice of action in the transaction in question." *Id.* (internal

26    quotations omitted).

27       In short, the same common evidence that will be used for the statutory claims to establish that

28    Tesla knowingly or recklessly made false and misleading representations to sell consumers its FSD

1   technologies, and that its advertising was deceptive to consumers and material to their purchasing

2   decisions, will also be used to establish each of these elements for the classes on the common law

3   claims. Tesla has known since 2016 that its FSD technologies did not make its vehicles fully self-

4   driving, yet to this day it continues to represent otherwise. Tesla still includes faked videos on its

5   website. It still claims regulatory approval holds up releasing FSD, even though it has yet to apply for

6   such approval. These common issues predominate over any questions affecting only individual

7   members.

8        Further, as with the statutory claims, class wide evidence can also be used to prove injury and

9   damages for the common law claims. The same evidence of damages will also establish that Tesla was

10  unjustly enriched by its practices. *See, e.g., Brickman*, 2017 WL 5569827, at *7 (certifying unjust

11  enrichment claim because the defendant's "conduct [was] the same as to all members of the putative

12  class" (internal quotation marks and citation omitted)).

13               **2.      Superiority**

14       The final certification question is whether the ends of justice and efficiency are served by

15  certification. Rule 23(b)(3) requires a finding that proceeding as a class is superior to other ways of

16  adjudicating the controversy. There is no doubt here that a class is the superior method of handling

17  these claims. Individual losses range from $3,000 to $15,000, (Fieber Dec. Ex. 4, Tab 6 (prices)),

18  which are small compared to the costs for litigation, including technical experts and extensive fact

19  discovery. No reasonable person is likely to pursue these claims on his or her own, especially given

20  the cost and other resources required to litigate against a company like Tesla, which has already

21  retained multiple lawyers and shown that it is committed to strongly defending this case. This all

22  "vividly points to the need for class treatment." *Just Film v. Buono*, 847 F.3d 1108, 1123 (9th Cir.

23  2017).

24  / / /

25

26

27

28

## VI.    CONCLUSION

As explained above, here Tesla's direct marketing to consumers using consistent representations over time regarding its FSD technologies is well-suited for class wide treatment. Common proof will be used to determine how reasonable consumers understood these representations and their materiality to consumer decisions to purchase Tesla FSD technology packages. Common proof will be used to establish that Tesla's representations were intentionally, or at least recklessly, false or misleading. Finally, common proof can be used to establish damages, based upon the purchase or subscription prices consumers paid for Tesla's FSD products. For the foregoing reasons, certification of the classes specified above is proper.

Dated:  May 6, 2025

COTCHETT PITRE & MCCARTHY LLP

By:    /s/      Julie L. Fieber
Julie L. Fieber (SBN 202857)
jfieber@cpmlegal.com
Frank M. Pitre (SBN 100077)
fpitre@cpmlegal.com
Thomas E. Loeser (SBN 202724)
tloeser@cpmlegal.com
Makena A. Kershaw (SBN 356645)
mkershaw@cpmlegal.com

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com

CASEY GERRY FRANCAVILLA
BLATT & PENFIELD, LLP
David S. Casey, Jr. (SBN 060768)
dcasey@cglaw.com
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
P. Camille Guerra (SBN 326546)
camille@cglaw.com

*Attorneys for Plaintiffs and the Proposed Class*