David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
Christopher T. Casamassima (SBN 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor (SBN 326221)
joshua.vittor@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5300

Alan Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 937-7294

Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000

*Attorneys for Defendants Tesla, Inc., Tesla Lease
Trust, and Tesla Finance LLC*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation** | Case No. 3:22-cv-05240-RFL<br>__CLASS ACTION__<br><br>**TESLA'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Judge:       Hon. Rita F. Lin<br>Date:        August 12, 2025<br>Time:        10:00 a.m..<br>Courtroom: 15 – 18th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................2

    A.    This False Advertising Case Centers On Two Alleged Misrepresentations That Were Neither Uniformly Nor Widely Made ...........................................2

    B.    LoSavio's Class Certification Motion ..................................................4

LEGAL STANDARD .....................................................................................................5

ARGUMENT ..................................................................................................................6

  I.    LoSavio Fails To Demonstrate Predominant Common Questions ...................6

    A.    Individualized Exposure Predominates Over Any Common Questions .................7

    B.    LoSavio Fails To Offer Common Proof Of Materiality .........................................11

    C.    Tesla Will Offer Individualized Evidence As To What Classmembers Understood The Statements To Mean, Which Will Predominate Over Any Common Proof ..13

    D.    LoSavio's Damages Model Fails To Establish Predominance Under Comcast ...15

    E.    Many Classmembers Must Make Individualized Showings To Overcome The Statute Of Limitations On Their Claims, Precluding Class Certification .............18

  II.    The Court Should Deny Certification Of A 23(b)(2) Class ...........................20

    A.    LoSavio Primarily Seeks Monetary Relief, Precluding A 23(b)(2) Class ............21

    B.    LoSavio Fails To Carry His Burden To Show That His Requested Injunction Would Provide Relief To Each Putative Classmember .......................................22

  III.    In Any Event, The Court Should Decline To Certify A Class Represented By LoSavio ......................................................................23

CONCLUSION ..............................................................................................................25

1

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Atkins, Kroll (Guam), Ltd. v. Cabrera,*
    295 F.2d 21 (9th Cir. 1961) ................................................................................. 19

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) ............................................................................... 22

*Badella v. Deniro Mktg. LLC,*
    2011 WL 5358400 (N.D. Cal. Nov. 4, 2011) ..................................................... 11

*Berger v. Home Depot USA, Inc.,*
    741 F.3d 1061 (9th Cir. 2014) ................................................................. 7, 14, 20

*B.K. By Next Friend Tinsley v. Snyder,*
    922 F.3d 957 (9th Cir. 2019) ............................................................................... *23*

*Cholakyan v. Mercedes-Benz, USA, LLC,*
    281 F.R.D. 534 (C.D. Cal. 2012) ................................................................. 21, 23

*Colman v. Theranos, Inc.,*
    325 F.R.D. 629 (N.D. Cal. 2018) ....................................................................... 11

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ................................................................................. 6, 15, 16

*Corcoran v. CVS Health,*
    2019 WL 6250972 (N.D. Cal. Nov. 22, 2019) ................................................... 23

*Darisse v. Nest Labs, Inc.,*
    2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ................................................... 10

*Diacakis v. Comcast Corp.,*
    2013 WL 1878921 (N.D. Cal. May 3, 2013) ..................................................... 21

*DZ Rsrv. v. Meta Platforms, Inc.,*
    96 F.4th 1223 (9th Cir. 2024) ................................................................... 6, 8, 14

*Ehret v. Uber Techs., Inc.*,

    148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................................................ 11

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970 (9th Cir. 2011) ............................................................................................. 5

*English v. Apple Inc.*,

    2016 WL 1188200 (N.D. Cal. Jan. 5, 2016) .................................................................... 20

*Hall v. Marriott Int'l, Inc.*,

    344 F.R.D. 247 (S.D. Cal. 2023) ............................................................................. 13, 16

*Hanon v. Dataproducts Corp.*,

    976 F.2d 497 (9th Cir. 1992) ............................................................................................ 24

*Henson v. Fid. Nat. Fin. Inc.*,

    300 F.R.D. 413 (C.D. Cal. 2014) ............................................................................. 18, 20

*In Re 5-Hour Energy Mktg. & Sales Pracs. Litig.*

    2017 WL 2559615 (C.D. Cal. June 7, 2017) ....................................................... 12, 13, 18

*In Re Ford Motor Co. Vehicle Paint Litig.*,

    182 F.R.D. 214 (E.D. La. 1998) ...................................................................................... 15

*Jones v. ConAgra Foods, Inc.*,

    2014 WL 2702726 (N.D. Cal. June 13, 2014) ................................................................ 13

*Konik v. Time Warner Cable*,

    2010 WL 8471923 (C.D. Cal. Nov. 24, 2010) ................................................................ 10

*Kosta v. Del Monte Foods, Inc.*,

    308 F.R.D. 217 (N.D. Cal. 2015) .................................................................................... 12

*Lamontagne v. Tesla, Inc.*,

    2024 WL 4353010 (N.D. Cal. Sept. 30, 2024) ............................................................... 14

*Leyva v. Medline Indus. Inc.*,

    716 F.3d 510 (9th Cir. 2013) ........................................................................................... 16

*Lucas v. Breg, Inc.*,

    212 F. Supp. 3d 950 (S.D. Cal. 2016) .................................................................. 18, 20, 21

*Lytle v. Nutramax Lab'ys, Inc.*,

   114 F.4th 1011 (9th Cir. 2024) ................................................................................ 7

*Marcus v. BMW of N. Am., LLC*,

   687 F.3d 583 (3d Cir. 2012) ................................................................... 13, 14, 15

*Mazza v. Am. Honda Motor Co.*,

   666 F.3d 581 (9th Cir. 2012) .......................................................... 1, 7, 8, 15

*Murray v. Sears, Roebuck & Co.*,

   2014 WL 563264 (N.D. Cal. Feb. 12, 2014) ........................................................ 23

*In Re Myford Touch Consumer Litig.*,

   2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ...................................................... 10

*Nguyen v. Nissan N. Am., Inc.*,

   487 F. Supp. 3d 845 (N.D. Cal. 2020) ................................................................. 25

*O'Connor v. Boeing N. Am., Inc.*,

   197 F.R.D. 404 (C.D. Cal. 2000) ......................................................................... 20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

   31 F.4th 651 (9th Cir. 2022) (en banc) .................................................................. 6

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*

   *Ltd.*, 674 F. Supp. 3d 799 (C.D. Cal. 2023) ........................................................ 18

*In re Paxil Litig.*,

   218 F.R.D. 242 (C.D. Cal. 2003) ......................................................................... 22

*Philips v. Ford Motor Co.*,

   2016 WL 7428810 (N.D. Cal. Dec. 22, 2016) ............................................... 15, 18

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,

   2016 WL 5920345 (C.D. Cal. June 23, 2016) ...................................................... 13

*Estate of Pilgrim v. General Motors LLC*,

   344 F.R.D. 381 (E.D. Mich. 2023) ....................................................................... 18

*Pitt v. Metro. Tower Life Ins. Co.*,

   2022 WL 17972167 (S.D. Cal. Dec. 1, 2022) ..................................................... 24

*Rafofsky v. Nissan of North America Inc.*

   2017 WL 11634036 (C.D. Cal. Feb. 17, 2017) ........................................................ 10

*Richards v. Delta Air Lines, Inc.*,

   453 F.3d 525 (D.C. Cir. 2006) ............................................................................... 21

*Roley v. Google LLC*,

   2020 WL 8675968 (N.D. Cal. July 20, 2020) ........................................................ 15

*Schell v. Volkswagen AG*,

   2022 WL 187841 (9th Cir. Jan. 20, 2022) ............................................................. 18

*Schofield v. Delta Air Lines, Inc.*,

   2019 WL 955288 (N.D. Cal. Feb. 27, 2019) .......................................................... 25

*Shin v. Sanyo Foods Corp. of Am.*,

   348 F.R.D. 477 (C.D. Cal. 2025) ................................................................. 11, 13, 17

*Simmons v. Ford Motor Co.*,

   592 F.Supp.3d 1262 (S.D. Fla. 2022) ..................................................................... 18

*Taafua v. Quantum Glob. Techs., LLC*,

   2020 WL 95639 (N.D. Cal. Jan. 8, 2020) .............................................................. 25

*Todd v. Tempur-Sealy Int'l, Inc.*,

   2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) .................................................... 7, 10

*Turcios v. Carma Labs., Inc.*,

   296 F.R.D. 638 (C.D. Cal. 2014) ..................................................................... 13, 15

*Van v. LLR, Inc.*,

   61 F.4th 1053 (9th Cir. 2023) ................................................................................... 6

*Victorino v. FCA US LLC*,

   326 F.R.D. 282 (S.D. Cal. 2018) ............................................................................ 23

*Vizcarra v. Unilever U.S., Inc.*,

   339 F.R.D. 530 (N.D. Cal. 2021) ........................................................................... 16

*Vizzi v. Mitsubishi Motors N. Am., Inc.*,

   2010 WL 11515266 (C.D. Cal. Feb. 22, 2010) ..................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011) ............................................................................................... 5, 22

*Williams v. Apple, Inc.*,
     338 F.R.D. 629 (N.D. Cal. 2021) .................................................................................. 22

*Williams v. Sinclair*,
     529 F.2d 1383 (9th Cir. 1975) ...................................................................................... 20

*Wong as Tr. of Anaplex Corp. Emp. Stock Ownership Plan v. Flynn-Kerper*,
     999 F.3d 1205 (9th Cir. 2021) ...................................................................................... 19

*Zeiger v. Wellpet LLC*,
     526 F. Supp. 3d 652 (N.D. Cal. 2021) ......................................................................... 17

*Zinser v. Accufix Rsch. Inst., Inc.*,
     253 F.3d 1180 (9th Cir. 2001) ...................................................................................... 21

**State Cases**

*Cohen v. DIRECTV, Inc.*,
     178 Cal. App. 4th 966 (2009).......................................................................................... 11

*Sevidal v. Target Corp.*,
     189 Cal. App. 4th 905 (2010)............................................................................................ 8

1

## INTRODUCTION[1]

This false advertising case is based on two particular statements. One statement, from Tesla's website in October 2016 and a Tesla newsletter in November 2016, said that Tesla vehicles had the "hardware needed for full self-driving capability." The second statement was made during an October 19, 2016 news conference by Tesla's CEO Elon Musk that he "[felt] pretty good about this goal [] that we will be able to demonstrate a demonstration drive of our full autonomy all the way from LA to New York." LoSavio alleges that he relied on these allegedly false statements before buying Enhanced Autopilot (EAP) or Full-Self Driving Capability (FSDC) packages for his Tesla vehicle in 2017. On these claims, he seeks to certify classes that together comprise everyone who bought or leased a Tesla vehicle and either purchased or subscribed to EAP or FSDC in California since January 1, 2016 (except those who agreed to arbitration or made the transaction during the "Pre-Arbitration Period"[2]) under Federal Rule of Civil Procedure 23(b)(3) and (b)(2).

LoSavio fails to carry his burden under Rule 23(b)(3) for several reasons. As LoSavio's expert concedes, Tesla "does no mass advertising." A false advertising class action cannot be certified where, as here, there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012). LoSavio provides none. Indeed, far from there being "little doubt that almost every class member had been exposed to defendants' misleading statements," as the Ninth Circuit requires, "the limited scope of" the two statements at issue "makes it unreasonable to assume that all class members viewed [them]." *Id.* at 596. LoSavio also provides no common proof that the two statements were material to buyers or subscribers. This is his burden, and he fails to meet it. Moreover, individualized proof of how consumers understood and weighed these statements, including what disclaimers and warnings they were shown, would swallow any common proof—

---

[1] Unless otherwise noted, "Mot." refers to LoSavio's Motion for Class Certification (Dkt. 138-1); "Fieber Ex." citations refer to exhibits to the Fieber Declaration in support of LoSavio's Motion (Dkt. 138-2); "Ex." citations refer to exhibits to the Que Declaration filed herewith; "TAC" refers to Plaintiff's Consolidated Third Amended Complaint (Dkt. 102). Emphasis in quotes is added; citations in caselaw and objections in depositions are omitted.

[2] LoSavio uses May 19, 2017 as the cut-off date for the "Pre-Arbitration Period." Mot. 1. Tesla reserves the right to challenge that date as well as the right to compel arbitration as to putative classmembers.

1  further making individualized issues predominant.

2      LoSavio's damages model also fails to satisfy Rule 23(b)(3).  That model must be tied to his

3  theory of liability.  It is not.  Among other deficiencies, in his model LoSavio makes no attempt to

4  account for the differences in applying the model to putative classmembers who purchased EAP or

5  FSDC (one or more times) versus those who subscribed; and he also fails to account for the value

6  that different classmembers got from the use of the myriad features contained within those packages.

7      One of Tesla's primary affirmative defenses—statute of limitations—is also highly

8  individualized.  One of the proposed classes is composed entirely of people whose claims would be

9  time-barred absent some sort of delayed accrual or tolling rule.  Even if LoSavio pled that he was

10 sufficiently diligent to warrant application of those doctrines, many classmembers would not be

11 subject to them.  *See* Apr. 30, 2024 MTD Hr'g Tr. 30:23-31:1 (LoSavio's counsel referring to him

12 as a "particularly diligent consumer," not "an ordinarily diligent consumer").  Only individualized

13 trials could prove who was or was not.  Rule 23(b)(3)'s predominance requirement is not met when

14 individualized affirmative defenses outweigh common issues.

15     As for Rule 23(b)(2), it is simply inapplicable here, where the relief that LoSavio seeks is

16 fundamentally for damages, not an injunction.  Courts uniformly reject this sort of attempt to

17 backdoor into a Rule 23(b)(2) class and its comparatively lower requirements.

18     Finally, even if Rule 23(b) could be satisfied on claims like these—and it cannot—the Court

19 should reject LoSavio as a class representative under Rule 23(a) because he is atypical of the class

20 that he proposes and cannot adequately represent it.

21                                **BACKGROUND**

22 **A.    This False Advertising Case Centers On Two Alleged Misrepresentations That**

23        **Were Neither Uniformly Nor Widely Made**

24     In this false advertising case, the sole named plaintiff alleges that he relied on Tesla's

25 representations and paid extra for the EAP and FSDC packages, which have yet to make Tesla fully

26 autonomous.  The Court's May 15, 2024 Order (ECF No. 96, the "MTD Order") trimmed his claims

27 to three California statutory claims (FAL, CLRA, and UCL) and common-law negligence- and

28 fraud-based claims.

The MTD Order also winnowed LoSavio's hundreds of paragraphs of allegations down to two alleged misrepresentations. The first representation—that all Tesla vehicles had the "hardware needed for full self-driving capability" (the "Hardware Statement")—was allegedly viewed by LoSavio on a sub-page of Tesla's website (tesla.com/autopilot) in October 2016 and then in a Tesla newsletter he received via email in November 2016. MTD Order 3; *see also* TAC Exs. C&D. LoSavio alleges that a similar statement was made by Tesla's CEO Elon Musk at an October 19, 2016 news conference, in a Tesla blog post published around the same time, and in a May 3, 2017 Tesla quarterly earnings call, but LoSavio does not allege he listened to or read through those channels. TAC ¶¶ 58, 60, 65. LoSavio makes no showing—nor could he—that all classmembers saw a version of the Hardware Statement or anything like it. Indeed, traffic to both the "tesla.com/autopilot" sub-page and the October 2016 blog post has only ever amounted to a sliver of the traffic to the website's homepage—and there is no evidence every putative classmember visited even the homepage. *See* Declaration of Brenda Lee (hereinafter "Lee Decl.") Ex. A.

The second representation, also made during the same October 19, 2016 news conference, was that Mr. Musk "[felt] pretty good about this goal [] that we will be able to demonstrate a demonstration drive of our full autonomy all the way from LA to New York" (the "Cross-Country Statement"). TAC ¶ 60 & nn. 38-39; MTD Order 4. LoSavio's class certification motion (at 5) points to two tweets by Mr. Musk made at different times that, according to LoSavio, were "similar" to the Cross-Country Statement, even though both the wording and the timeline of those two tweets deviate significantly from the October 2016 statement.[3] While LoSavio allegedly viewed the Cross-Country Statement in a news article reporting on the news conference (MTD Order 4), nothing in the record suggests that he (or any putative classmembers) saw the two later tweets Mr. Musk posted, whether on Twitter (now X) or through press coverage. LoSavio testified that he does not

---

[3] In response to a question asking for an "[u]pdate on the coast to coast autopilot demo," Mr. Musk posted on May 21, 2017: "Still on for end of year. Just software limited. Any Tesla car with HW2 (all cars built since Oct last year) will be able to do this." Fieber Ex. 23. And in response to the question whether there were "still plans to drive from NYC to LA on full autopilot," Mr. Musk posted on May 9, 2019 that "[w]e could have gamed an LA/NY Autopilot journey last year, but when we do it this year, everyone with Tesla Full Self-Driving will be able to do it too[.]" Fieber Ex. 24. Plaintiff's marketing expert cited another January 10, 2016 tweet (Dkt. 138-4, ¶ 39), but that tweet did not talk about a demonstration drive.

1    even follow Mr. Musk on X.  Ex. A (LoSavio Tr.) at 81:8-12.  He makes no showing—nor could

2    he—that all putative classmembers saw the Cross-Country Statement or anything like it.

3        As LoSavio's own testimony shows, consumers could learn about Tesla's ADAS offerings

4    from a wide array of sources, including non-Tesla sources.  By his own admission, "[a]t all relevant

5    times, … [LoSavio] has received and typically read three newspapers daily …, and paid particular

6    interest and attention to any articles regarding Tesla, Musk, and especially Tesla's purported self-

7    driving technologies."  TAC ¶ 162.  Those newspapers published articles that discussed in detail, at

8    different points in time, the purported timeline for Tesla to achieve full autonomy.  *See, e.g.*, Ex. E

9    (February 23, 2017 San Francisco Chronicle article stating that "Tesla attributed the slowdown to

10   the complexity of equipping all its news cars with the hardware that will be needed to drive

11   themselves, even though fully autonomous driving remains years away"); Ex. F (November 12,

12   2017 NYT article:  "Will any of us see a driverless future?  It's hard to say").  LoSavio "made

13   periodic visits to Tesla service centers" to inquire about Tesla's ADAS offerings and "made similar

14   inquiries on the few visits he made to the Tesla showroom."  Ex. J at 10:24-25.  And LoSavio's

15   expert Gerald Goldhaber considers "word-of-mouth and user forums [to be] a particularly important

16   part of the way that Tesla communicates with customers."  Ex. D (Goldhaber Tr.) at 52:8-16.

17       **B.    LoSavio's Class Certification Motion**

18       LoSavio seeks to certify two classes that, together, include everyone in California who

19   purchased or leased a Tesla vehicle and paid for EAP or FSDC (either through purchase or

20   subscription) since January 1, 2016, but did not agree to arbitrate or entered into the transaction

21   during a "Pre-Arbitration Period."[4]  The motion asserts that common evidence will establish various

22   elements of his claims such as falsity, reliance, and damages, and proposes full refund as the sole

23   damages model.  Mot. 8-10, 14-18.  As support, LoSavio submits declarations of three experts:

24       *First*, LoSavio uses Vincent Socci as his technology expert to attempt to show that the two

25   _____

26       [4] As LoSavio acknowledges, EAP was sold as a separate package for only a limited period
     of time.  Mot. 4; Fieber Ex. 27 at -4417.  During that period, EAP users had access to a subset of
27   features of those in FSDC, including Auto Lane Change, Autopark, Summon, Smart Summon, and
     Navigate on Autopilot.  *Id.*; Ex. I, at 2.  In addition to those features, FSDC users now can also
28   access more advanced features such as Autosteer on City Streets and Traffic and Stop Sign Control,
     as well as other features to be released through future over-the-air updates.  Fieber Ex. 15.

alleged misrepresentations can be proven false with common proof.  Dkt. 138-5 ¶ 1.  Yet Socci has done nothing to test that proposition for either statement, and indeed conceded at his deposition that the falsity of the Hardware Statement is *not* subject to common proof.  *See* Ex. B (Socci Tr.) at 68:10-15; Mot. 16 (identifying upgrade to Hardware 4.0 as the only purported "common proof").

*Second*, LoSavio offers Dr. Gerald Goldhaber to opine on classmembers' purportedly common understanding of the representations at issue.  Despite his claimed forty-year experience "working in the area of marketing and safety communications and warnings" (Dkt. 138-4 ("Goldhaber Decl.") ¶ 1), Goldhaber did not apply any methodologies he previously devised to "test the meaning and efficacy of advertisements" (*id.* ¶ 50), claiming "[he's] waiting to see what the Judge says what the class parameters are" (Ex. D (Goldhaber Tr.) at 99:21-100:11).  *See also id.* at 37:22-38:6 ("I can't tell you the shape of the sample until the Judge makes a ruling officially as to what will those classes look like or class look like").  As a class certification expert in this case, Goldhaber does not know whether any classmembers saw the representations at issue (*id.* at 36:21-37:3; 108:22-109:2), what they understood the representations to mean (*id.* at 89:11-14), whether the representations were important or material to classmembers' decisions to purchase or subscribe to EAP or FSDC (*id.* at 93:16-24), or whether all the classmembers relied on the same representation (*id.* at 107:23-108:5).  He acknowledged that the results of those inquiries could show significant differences among the class.  *Id.* at 95:7-18; 101:5-12; 110:8-16.

*Last*, LoSavio relies on Edward Stockton as his damages expert, who offers no opinion to quantify the effect of either representation.  This is no surprise because Stockton does not know what representations are at issue.  Ex. C (Stockton Tr.) at 76:4-8.  Stockton's damages "opinion" is nothing more than arithmetic, adding up the full price each classmember paid for the EAP or FSDC, whether through purchase or subscription.  *Id.* at 51:3-12; 56:10-21.

## **LEGAL STANDARD**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  Class certification must meet numerosity, commonality, typicality, and adequacy under Rule 23(a) and one of the subsections of Rule 23(b).  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

979-980 (9th Cir. 2011).  Rule 23(b)(3) requires that common questions *predominate* over individual ones and that a class action is a superior method of adjudicating the dispute.  Rule 23(b)(2), which enables a class only for injunctive relief not damages, requires that declaratory or injunctive relief benefitting the class as a whole would be appropriate.  "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc).  That is because Rule 23 "does not set forth a mere pleading standard," but instead requires the district court to conduct "a rigorous analysis" to ensure that the party seeking certification has satisfied its burden "through evidentiary proof."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

## ARGUMENT

### I.    LOSAVIO FAILS TO DEMONSTRATE PREDOMINANT COMMON QUESTIONS

To certify a class under Rule 23(b)(3), "[i]t is the plaintiff's burden to prove that class issues predominate."  *Van v. LLR, Inc.*, 61 F.4th 1053, 1066 (9th Cir. 2023).  The Court "proceed[s] with the predominance analysis in three steps.  First, we identify which questions are central to the plaintiffs' claim.  Second, we determine which of these questions are common to the class and which present individualized issues.  Third, we analyze whether the common questions predominate over the individual questions."  *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024).

LoSavio's claims present at least three predominant individualized issues.  The first is whether a putative classmember was exposed to the two alleged misrepresentations at issue.  Common classwide exposure is the question most central to a false advertising class, and LoSavio fails to prove it here.  The second is whether the alleged misrepresentations are material.  While materiality is an objective standard, to meet his burden at class certification, LoSavio still must show that there is evidence common to the class that would prove (or disprove) that a reasonable consumer would care about the representations, and he fails to do so.  The third is individualized evidence of consumers' understanding of the statements, which Tesla will offer and which will swamp any common proof.

On top of these failings, LoSavio does not present a damages model that would allow the

1    factfinder to determine damages through common, classwide proof.  And he fails entirely to show

2    that Tesla's statute-of-limitations defense can be determined by common proof, rather than through

3    classmember-by-classmember trials on the kind of highly idiosyncratic evidence that salvaged his

4    claims—as just one example—from a motion to dismiss on limitations grounds.

5         Altogether, LoSavio fails to carry his burden to show that common issues predominate.

6    **A.    Individualized Exposure Predominates Over Any Common Questions**

7         A false advertising class cannot be certified unless every classmember was exposed to the

8    misrepresentation alleged.  Even when all classmembers have been exposed to a statement, courts

9    require common evidence that the statement is material *and* deceiving to a reasonable consumer.  If

10   there is such common evidence, courts may find a rebuttable presumption of reliance and causation

11   of injury, essential elements of the California statutory and common-law claims that LoSavio brings.

12   As explained below, LoSavio proffers no common evidence of either materiality or deception.  But

13   more fundamentally, his certification bid fails at the starting gate because he has not even offered

14   proof of common *exposure* to the statements in the first place.

15        Ninth Circuit precedent makes clear that exposure to the statements at issue is mandatory to

16   certify a false advertising class action.  In *Mazza v. American Honda Motor Co.*, the court held that

17   a certified class can "include only members who were exposed to advertising that is alleged to be

18   materially misleading."  666 F.3d 581, 596 (9th Cir. 2012).  This showing can be made, for instance,

19   in labeling cases, where every purchaser is exposed to the product label.  *See, e.g.*, *Lytle v. Nutramax*

20   *Lab'ys, Inc.*, 114 F.4th 1011, 1020 (9th Cir. 2024).  It can also be made, with more difficulty, when

21   there is a sufficiently "massive advertising campaign" that leaves "little doubt that almost every

22   class member had been exposed to defendants' misleading statements."  *Mazza*, 666 F.3d at 596

23   (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 324-327 (2009)); *see also Todd v. Tempur-Sealy*

24   *Int'l, Inc.*, 2016 WL 5746364, at *9 (N.D. Cal. Sept. 30, 2016) ("*Tobacco II* … did not create a free

25   pass on the question of class-wide exposure.").  But Ninth Circuit precedent is unequivocal that it

26   is an abuse of discretion to certify a class when "it is likely that many class members were never

27   exposed to the allegedly misleading advertisements."  *Mazza*, 666 F.3d at 595; *see Berger v. Home*

28   *Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (certification "is available only to those class

1    members who were actually exposed to the business practices at issue"), *abrogated on other grounds*

2    *by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017); *cf. DZ Rsrv.*, 96 F.4th at 1237 ("Unlike *Mazza*,

3    here it is undisputed that all class members were exposed to Potential Reach.").

4         LoSavio offers zero evidence, common or otherwise, that all proposed classmembers saw

5    the same Hardware Statement and Cross-Country Statement. It's clear why. Given that Tesla "does

6    no mass advertising," as his marketing expert concedes (Goldhaber Decl. ¶ 12), assessing whether

7    classmembers were exposed to these discrete statements is an inherently individualized inquiry, and

8    the question of which classmembers saw which of the statements at issue here, if any, is not

9    answerable through common proof.

10        First consider the Hardware Statement. LoSavio saw a version of that statement on Tesla's

11   website in October 2016 and then saw a similar statement when it was sent in a Tesla newsletter in

12   November 2016. MTD Order 3; TAC Exs. C&D. The language has been posted on a sub-page of

13   Tesla's website (tesla.com/autopilot) over time. LoSavio does not show that all classmembers

14   visited Tesla's website *at all*—much less that they visited a specific sub-page that received only a

15   sliver of the total website's traffic. Lee Decl. Ex. A. *See Sevidal v. Target Corp.*, 189 Cal. App.

16   4th 905, 926 (2010) (affirming denial of certification because, although misrepresentations

17   regarding "Made in US" could have been seen on defendant's website if users clicked a link showing

18   additional information about a product, defendant had evidence that many users did not click on the

19   link and therefore "were 'never exposed' to the alleged misrepresentation"). And LoSavio makes

20   absolutely no effort—let alone offer proof—to show that somehow every EAP or FSDC purchaser

21   or subscriber since January 1, 2016, received and read the November 2016 newsletter. The "limited

22   scope of that advertising makes it unreasonable to assume that all class members viewed it." *Mazza*,

23   666 F.3d at 596. In short, LoSavio offers no evidence that the proposed classes include only

24   members who were exposed to the Hardware Statement that is alleged to be materially misleading.

25        Next, consider the Cross-Country Statement. Mr. Musk made that statement in an October

26   2016 press conference. In May 2017 and again in May 2019, Mr. Musk made somewhat similar

27   (but not identical) statements on Twitter about *different* timelines (one referring to the end of 2017

28   and one referring to 2019). Fieber Exs. 23 & 24. That's all LoSavio offers. *See* Mot. 5. He does

not even try to argue that all classmembers saw or paid attention to the 2016 press conference or the later-in-time tweets. The 2019 tweet, for example, had only 2,300 engagements. Fieber Ex. 24. LoSavio's own testimony illustrates the individualized nature of exposure here. Even he cannot recall whether, when, or how he saw the Cross-Country Statement. In his deposition, he could only recall in general terms that Mr. Musk made statements in which "[s]ometimes he would say by the end of next year." Ex. A (LoSavio Tr.) 70:14-71:25. He continued, "I *think* there are tweets to that effect, and I *think* there are news accounts of what you could call press conference or earnings discussions." *Id.* And when asked for a greater degree of specificity, he could not recall. *Id.* Even if LoSavio could show—and he does not—that some fraction of Tesla purchasers could have theoretically been exposed to Mr. Musk's statement in or shortly after October 2016, his case gets weaker over time: Even considering the tweets, consumers who purchased EAP or FSDC in 2020 or later, for example, would have had limited or no opportunity to encounter the Cross-Country Statement.

LoSavio's expert evidence on the exposure question is as deficient as his factual showing. Goldhaber did not consider the reach of the Hardware or Cross-Country Statement at all, and he can offer no testimony that all, most, or even some of the classmembers saw these statements before purchasing their Tesla vehicles. Ex. D (Goldhaber Tr.) at 36:21-37:3 ("Q. Returning to the representations in Paragraph 7A through 7C, did you do anything to determine whether customers saw or read those representations? … A. The answer is no."). He concedes that Tesla "does no mass advertising" (Goldhaber Decl. ¶ 12) but instead asserts, in general terms, that Tesla's "website, social media, press, tweets, etc." created an "information environment" that may have exposed consumers to the alleged misrepresentations. *Id.* Relying on his "information environment" theory, he opines that the two statements "were communicated consistently, uniformly and widespread using all of the available channels of communication in [such] 'information environment' from October 2016 continuing through the present." *Id.* ¶ 13; *see also* Mot. 5, 15-16. But that opinion is both completely unsupported and simply not true. As explained above, both statements were made through limited channels, with the Cross-Country Statement allegedly made only in one press conference and two discrete tweets (*supra* at 3). Indeed, through four iterations, LoSavio's own

complaint materially misquoted the Cross-Country Statement to be not aspirational but instead an affirmative promise that a cross-country trip would occur (Dkt. 1, ¶ 53; Dkt. 6, ¶ 55; Dkt. 61, ¶ 60; TAC, ¶ 60(b)), an error that he finally corrected in his class certification motion (Mot. 4-5; *see also* Ex. A (LoSavio Tr.) at 54:25-55:2). Goldhaber did nothing to investigate how many visitors visited the specific webpage containing the Hardware Statement. Ex. D (Goldhaber Tr.) at 40:15-24. Nor did he study any engagement data to determine how many people heard the news conference (or read recaps of it) or read, liked or retweeted the two Cross-Country tweets, let alone compare such engagement data with the number of people who purchased or subscribed to EAP or FSDC. *Id.* at 46:17-47:1; 58:8-23. Goldhaber essentially assumes that a statement within the so-called "information environment" would be "consistently, uniformly and widespread" communicated.

Denying class certification is the norm when, as here, named plaintiffs fail to show "that all class members were at least exposed to the misrepresentations." *Konik v. Time Warner Cable*, 2010 WL 8471923, at *8 (C.D. Cal. Nov. 24, 2010). In *Rafofsky v. Nissan of North America Inc.*, for example, the court denied certification on predominance grounds after observing that "[t]o establish any of their claims, class members must show that they were exposed to Nissan's alleged misrepresentations" and finding that individualized issues predominated on this question. 2017 WL 11634036, at *3 (C.D. Cal. Feb. 17, 2017). Other examples abound. *See, e.g.*, *Todd*, 2016 WL 5746364, at *12 (holding "it cannot be assumed that mattress customers buy a product based on any particular marketing representation that they viewed or heard prior to their purchase" and distinguishing "cases challenging advertising directly on the product's packaging, such that one could infer anyone who bought that product also viewed the package"); *In re Myford Touch Consumer Litig.*, 2016 WL 7734558, at *21 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) (finding insufficient evidence of classwide exposure where the promotion of the at-issue feature—which included website statements, brochures, and other marketing and advertising materials—was not the kind of "extensive and long-term fraudulent advertising campaign[] sufficient to warrant an inference of reliance"); *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *5-6 (N.D. Cal. Aug. 15, 2016) (plaintiffs unable to show classwide exposure where some classmembers "may not have been exposed," where the statements at issue "varied

tremendously," and where "not all of them were misrepresentations"); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 895-901 (N.D. Cal. 2015) (denying certification of class of visitors to website or blog because there was "no evidence that it was 'highly likely' all members of the proposed class saw the allegedly misleading statements"); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 979 (2009) ("[C]ommon issue[s] of fact do not predominate over the proposed class because the class would include subscribers who never saw [the allegedly misleading] advertisements … .").

LoSavio offers no caselaw to the contrary. Instead, he relies only on product packaging cases. *See* Mot. 15. But when an alleged misrepresentation appears on the product label, every consumer who purchases the product is likely to be exposed to it. Those cases are irrelevant here for that reason. MTD Order 1 ("Nor can the allegedly descriptive product names—'Autopilot,' 'Full Self-Driving,' and 'FSD'—support this claim since LoSavio understood at purchase that the vehicle was not yet fully self-driving."); *see, e.g.*, *Colman v. Theranos, Inc.*, 325 F.R.D. 629, 643 (N.D. Cal. 2018) ("Likewise, courts in product-packaging cases frequently distinguish from *Mazza*, inferring that any statement or omission appearing on a product's packaging is highly likely to reach consumers' eyes."); *Ehret*, 148 F. Supp. 3d at 895 ("given the inherently high likelihood that in the process of buying the product, the consumer would have seen the misleading statement on the product and thus been exposed to it, exposure on a classwide basis may be deemed sufficient"—but distinguishing these facts where there were no similar representations made to the entire class). Simply put, no decision from or within the Ninth Circuit supports certifying this class. Since the answer to the central question of exposure is individualized, class certification should be denied.

## B.    LoSavio Fails To Offer Common Proof Of Materiality

LoSavio has not proffered common evidence to prove that the Hardware and Cross-Country Statements were material to the class, as he must. "Materiality is an objective standard, but still, Plaintiffs will need to point to some type of common proof." *Badella v. Deniro Mktg. LLC*, 2011 WL 5358400, at *9 (N.D. Cal. Nov. 4, 2011); *see also, e.g.*, *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 487-488 (C.D. Cal. 2025) (failure to sufficiently demonstrate materiality where plaintiff provided "no direct evidence regarding materiality—i.e., whether 'a reasonable man would attach importance' to the 'existence or nonexistence' of plaintiff's representation … no surveys, no

depositions, no experts"); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017) (denying class certification for failure to proffer common proof of materiality).

For common evidence of materiality, LoSavio offers only the opinion of Goldhaber. LoSavio offers no—literally no—other evidence. But Goldhaber fails his task. He simply assumes materiality from the fact that consumers "spen[t] thousands of dollars to purchase Tesla's FSD packages." Goldhaber Decl. ¶ 43. As he testified: "I am definitely not drawing any firm conclusions about materiality until I do that research," which he admittedly has not done. Ex. D (Goldhaber Tr.) at 93:16-94:1. This is plainly insufficient. *See, e.g., Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. 2015) ("A fill-in-the-blanks declaration from an expert, without any real consideration of the specific product attributes at issue here, is not sufficient to establish that the materiality of the [alleged misrepresentations] is a common question.").

The materiality inquiry—if Goldhaber had actually performed one—would show significant differences among the classmembers. For instance, even if someone who purchased a Tesla with FSDC today saw the Hardware or Cross-Country Statement from October 2016, it is inconceivable that she paid for FSDC today because of either statement. Likewise, if someone purchased or subscribed to EAP or FSDC in 2018, the Cross-Country Statement would not have been material to his purchase, because the timeline mentioned in the 2016 and 2017 tweets had passed and the 2019 tweet had not yet been posted. Indeed, given that neither the Hardware Statement nor the Cross-Country Statement mentioned anything about EAP, whether these two statements were relevant (let alone material) to someone who bought only EAP would be another highly individualized inquiry. More fundamentally, Goldhaber's overbroadly defined "information environment"—encompassing non-Tesla sources such as press, user-generated content, "word-of-mouth among Tesla customers," and "user forums and owner clubs" (Ex. D (Goldhaber Tr.) at 51:9-14)—if accepted, defeats any commonality of the materiality element, given that customers were likely exposed to alternative information sources beyond just Tesla representations, including those that conveyed a more conservative view of Tesla's ADAS capabilities (*supra* at 4). LoSavio's burden at class certification is to demonstrate that the elements of his claim involve predominantly common proof, yet he fails

1   to offer any common proof of the materiality element.

2        "Courts have refused to certify a consumer protection class where plaintiffs make such a

3   limited showing of class-wide materiality." *In re 5-Hour Energy*, 2017 WL 2559615, at *8

4   (collecting cases).  In *In re 5-Hour Energy*, the court observed that "[a]bsent a consumer survey or

5   other market research to indicate how consumers reacted to the 'five hour energy,' or 'hours of

6   energy' statements, and how they valued these statements compared to other attributes of the product

7   and the energy supplement market generally, Plaintiffs have not offered sufficient evidence of

8   materiality across the class." *Id.*; *see also Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL

9   5920345, at *8 (C.D. Cal. June 23, 2016) (denying class certification for lack of common proof of

10  materiality).  Similarly in *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. June 13,

11  2014), the court denied class certification where plaintiffs' materiality evidence consisted solely of

12  their expert's testimony and where that expert, just like Goldhaber, "did not explain how the

13  challenged statements, together or alone, were a factor in any consumer's purchasing decisions."

14  *Id.* at *15.  The same is true here, and therefore class certification should be denied.

15       **C.    Tesla Will Offer Individualized Evidence As To What Classmembers**

16             **Understood The Statements To Mean, Which Will Predominate Over Any**

17             **Common Proof**

18       As a separate and independent basis to deny class certification for lack of predominance, the

19  Court must consider the evidence that Tesla will offer in its defense.  Tesla will offer extensive

20  evidence that many classmembers were not misled, deceived, or confused about what they were

21  purchasing with EAP and FSDC or by the two statements at issue.  "What a consumer knew about

22  [a product] prior to purchasing … is highly relevant to whether that consumer can succeed on" a

23  consumer protection claim.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 607 (3d Cir. 2012); *see

24  also Shin*, 348 F.R.D. at 487 ("[M]ateriality depends on the perspective of the consumer").  Someone

25  who "understood the actual" attributes of a product was not misled by its advertisement.  *Turcios v.

26  Carma Labs., Inc.*, 296 F.R.D. 638, 646 (C.D. Cal. 2014); *see also Hall v. Marriott Int'l, Inc.*, 344

27  F.R.D. 247, 277 (S.D. Cal. 2023) ("only those consumers who were exposed to the advertising and

28  did not read the disclosures prior to purchase were actually deceived and suffered damages").  As

the Third Circuit has explained, "the relevant issue is whether the class members got less than what they expected," "[b]ut what a class member expected … depends on what information, if any, about the alleged [issues] was available during the class period and what that class member knew about it." *Marcus*, 687 F.3d at 607. "If a consumer did know about the 'defects' but, despite that knowledge, still decided to purchase … at the same price anyway," "then the consumer would not have received something less than expected." *Id.* If "this could be true for a significant number of class members, then common questions of fact will not predominate." *Id.* at 607-608; *see also, e.g.*, *DZ Rsrv.*, 96 F.4th at 1234 ("On the other hand, a case may be unsuited for class treatment if there was material variation in the representations made *or in the kinds or degrees of reliance by the persons to whom they were addressed* …." (cleaned up)); *Berger*, 741 F.3d at 1070 (finding individualized questions predominated where "explicit signs or explicit verbal advice would negate the claimed misrepresentation" for some classmembers).

Tesla warned customers extensively about the hurdles in achieving fully autonomous driving. For those customers who visited Tesla's website—including the very page that included the Hardware Statement—they would likely have seen Tesla's disclosure that the FSDC functionality was subject to "validation and regulatory approval" (TAC Ex. C), as demonstrated by LoSavio's own experience (Ex. J at 6:12-15; 6:1-7:3). Moreover, as Goldhaber acknowledged, Tesla's "manuals, contracts and other documents made it crystal clear that the [ADAS] technology was for 'driver assistance' and not to replace the driver." Ex. G at 1. LoSavio himself admitted that when he purchased his vehicle with EAP and FSDC, he "had an open mind" about the timeline for fully autonomous driving, that he "knew it was a work in progress" because Tesla "said [it] would be rolling out over time," and that he was "flexible" about FSDC development. Ex. A (LoSavio Tr.) at 65:9-24; 72:1-15; 73:15-74:8. Other customers have stated publicly that they viewed the Cross-Country Statements as mere puffery. One "Tesla owner (twice, technically)" on Reddit, for example, said that Mr. Musk "over-promises," but that they nonetheless "love Tesla" and that Mr. Musk "still delivers awesome shit." Ex. H; *cf. Lamontagne v. Tesla, Inc.*, 2024 WL 4353010, at *9 (N.D. Cal. Sept. 30, 2024) ("statements about Tesla's aims and aspirations to develop Tesla's technology by the end of the year and Musk's confidence in the development timeline are too vague

for an investor to rely on them" and therefore are "nonactionable puffery").  In any event, any customer buying after 2018 at minimum would have known and understood that the aspirational statements about cross-country driving made years earlier had already not come to pass, which Goldhaber admittedly failed to consider (Ex. D (Goldhaber Tr.) at 61:9-15).  Indeed, many classmembers bought or subscribed to FSDC *after* this lawsuit was filed.  Dkt. 138-6 ("Stockton Decl.") at tab 5.

Individualized knowledge and understanding about the statements at issue preclude class certification.  *See, e.g.*, *Mazza*, 666 F.3d at 596 (class certification denied since the challenged "advertising materials do not deny that limitations exist" and classmembers "were exposed to quite disparate information from various representatives of the defendant"); *Roley v. Google LLC*, 2020 WL 8675968, at *8 (N.D. Cal. July 20, 2020) (finding Google's disclosures negating claimed misrepresentation defeated predominance); *Philips v. Ford Motor Co.*, 2016 WL 7428810, at *16 (N.D. Cal. Dec. 22, 2016) (denying class certification where "class members were exposed to 'quite disparate information,' some of which explicitly acknowledged the limitations of the EPAS systems"); *Turcios*, 296 F.R.D. at 646 (declining to certify CLRA claim where "some consumers were aware of the particular dimensions and designs of" the product).  Since "individual issues about what each class member expected when purchasing" EAP or FSDC "would swamp the inquiry," these claims are "inappropriate for class treatment."  *Marcus*, 687 F.3d at 608; *see In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221 (E.D. La. 1998) (denying certification where some purchasers "aware of potential problems and bought [the product] anyway").

### D.    LoSavio's Damages Model Fails To Establish Predominance Under *Comcast*

To satisfy Rule 23(b)(3)'s predominance requirement, plaintiffs must offer a "model purporting to serve as evidence of damages" that "measure[s] only those damages attributable to [their] theory" of liability.  *Comcast*, 569 U.S. at 35.  This is because "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*."  *Id.* at 38 (emphases in original).

LoSavio's attempt to fulfill this requirement is shockingly deficient.  In a single paragraph, he states:

1
2
3
4

> Damages are also subject to common proof. Class members paid an amount in excess of their vehicle purchase price for FSD or else paid a monthly subscription. While those amounts changed over time, Tesla produced documentation for those changes. Analysis by Plaintiff expert Stockton shows that class members suffered economic harm and opines that reasonable methods exist to quantify that harm on a class-wide basis.

5
6

Mot. 16. In short, his entire damages model is to point to the price of EAP and FSDC and to ask that be refunded. This is nowhere near what *Comcast* requires.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*First*, this damages theory has no relation to the Hardware Statement or Cross-Country Statement at issue. As *Comcast* prescribes, the first step is to translate the legal theory of the harmful event into an analysis of its economic impact. *Comcast*, 569 U.S. at 38; *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 554 (N.D. Cal. 2021). That is required to prove that the damages sought "stemmed" from the alleged misrepresentations that "created the legal liability," and not from some other cause. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Here, that means identifying and isolating the economic impact of the Hardware Statement and Cross-Country Statement on the classmembers. LoSavio offers no evidence doing so, nor did he even try. Stockton's declaration, the only source that LoSavio relies on to attempt to satisfy *Comcast*, did not analyze the particular statements at issue at all and simply assumed that "[t]he alleged misconduct" was the failure to deliver some supposed, undefined "features." Stockton Decl. ¶ 15. At his deposition, Stockton could not even identify the Hardware Statement or the Cross-Country Statement—not as the basis of his damages analysis or opinion, indeed not at all. When asked, "Can you be any more specific as to what the core alleged misrepresentations, what they were in this case?," Stockton could only answer, "For my purposes, I understand them to be undelivered features." Ex. C (Stockton Tr.) at 76:4-8. Stockton's admission confirms beyond dispute that LoSavio has not offered a damages model tied to the Hardware Statement or the Cross-Country Statement, as it must be. *See Hall*, 344 F.R.D. at 277-278 (holding plaintiffs' proposed damages model failed *Comcast* "because it does not distinguish between injured class members and uninjured class members").

27
28

*Second*, LoSavio's "full refund" model requires that consumers received *zero* value from FSDC or EAP. But "[t]he law is clear that a full refund model is only justified when the plaintiffs

prove the products have no value." *Zeiger v. Wellpet LLC*, 526 F. Supp. 3d 652, 675 (N.D. Cal. 2021) (citing cases); *see also Shin*, 348 F.R.D. at 485 ("For misrepresentation claims, 'damages are ordinarily measured by the difference between the value parted with and the actual value received.'"). That is nowhere near the case here. Both FSDC and EAP consist of various valuable ADAS features entirely distinct from the Hardware Statement or Cross-Country Statement. *See* Fieber Exs. 27 & 29; Que Ex. I. In other words, consumers purchasing EAP or FSDC were not paying *only* for hardware ultimately capable of full self-driving or the aspirational goal of a cross-country trip. Far from it. Both EAP and FSDC include, for example, "Auto Lane Change" that "[a]ssists in moving to an adjacent lane on the highway when Autosteer is engaged" and "Autopark" that "[h]elps automatically parallel or perpendicular park [one's] vehicle, with a single touch"; and FSDC further includes "Traffic Light and Stop Sign Control" that "[i]dentifies stop signs and traffic lights and automatically slows [one's] vehicle to a stop on approach." Fieber Ex. 15 at 2; Fieber Ex. 27 at -4417. LoSavio himself agreed that his Tesla "does auto lane change" (Ex. A (LoSavio Tr.) at 37:20-38:2), "regulate[s] the speed," "track[s] to a certain extent to a destination," and "can stop itself" (*id.* at 30:7-14), and that he has used Autopark more than once (*id.* 39:7-9). Yet to accept LoSavio's model, those features—including the features exclusively available under FSDC (but not EAP)—must be completely worthless. Stockton admitted as much. Ex. C (Stockton Tr.) at 59:5-9. This is not even plausible, let alone proved by a preponderance of the evidence. On the contrary, the evidence shows that FSDC had continued subscribers—who could cancel any time (Stockton Decl., tab 6, p.14), but didn't—which Stockton did not consider. Ex. C (Stockton Tr.) at 59:10-16; 60:9-14. Nor did he account for the possibility that repeat Tesla buyers might buy EAP or FSDC multiple times (*e.g.*, for a second vehicle) because they valued the package well above zero. *Id.* at 85:22-86:3. Stockton admitted that continued subscribers likely saw "sufficient value in the subscription," and that he "can't rule … out" that repeated purchasers valued it. *Id.* at 57:20-58:3; 86:5-24. These indisputable, indeed admitted, omissions from LoSavio's model doom it under *Comcast*.

In cases like this, courts have held that the "full refund model is deficient because it is based on the assumption that consumers receive no benefit whatsoever from purchasing the identified

1  products." *Philips*, 2016 WL 7428810, at *21, *aff'd*, 726 Fed. App'x. 608 (9th Cir. 2018); *see also*

2  *In re 5-Hour Energy*, 2017 WL 2559615, at *11 ("Plaintiffs also fail to distinguish the Ninth Circuit

3  cases that have struck down damages models in similar circumstances for failing to account for other

4  factors that may drive consumer preferences.").  Indeed, Stockton's own opinions have been found

5  insufficient to support class certification multiple times before because he failed to tie his damages

6  opinion to the plaintiff's theory of liability, as with LoSavio's unsupported "full refund" theory here.

7  *See, e.g.*, *Estate of Pilgrim v. General Motors LLC*, 344 F.R.D. 381, 410 (E.D. Mich. 2023) (denying

8  class certification in part because plaintiffs, relying on Stockton's opinion, presented a damages

9  model that did not match their theory of liability as required by *Comcast*); *Simmons v. Ford Motor*

10  *Co.*, 592 F.Supp.3d 1262, 1291-1292 (S.D. Fla. 2022) (similar); *see also Schell v. Volkswagen AG*,

11  2022 WL 187841, at *1-2 (9th Cir. Jan. 20, 2022) (citing *Comcast* and upholding district court's

12  ruling that Stockton's opinion was "irrelevant" to plaintiffs' damages theory).

13    **E.    Many Classmembers Must Make Individualized Showings To Overcome The**

14    **Statute Of Limitations On Their Claims, Precluding Class Certification**

15    The claims of thousands of putative classmembers (including the entire Pre-Arbitration

16  Class) would be time-barred without tolling.  But tolling presents inherently individualized

17  questions, and applying tolling person-by-person will outweigh any common questions.

18    Each of the "various exceptions to the statute of limitations" that classmembers may invoke

19  presents individualized issues.  *Henson v. Fid. Nat. Fin. Inc.*, 300 F.R.D. 413, 421 (C.D. Cal. 2014)

20  (describing "the discovery rule, equitable tolling, and equitable estoppel" as "doctrines [that] are by

21  their very nature fact-intensive and highly individualized").  Doctrines like the discovery rule and

22  fraudulent concealment require the Court to assess "whether the plaintiff was on notice—either

23  notice of some wrongdoing in the case of the discovery rule, or notice of the specific cause of action

24  in the case of fraudulent concealment," and "[t]hese determinations are not susceptible to

25  generalized proof." *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 971 (S.D. Cal. 2016); *accord Painters*

26  *& Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 674 F. Supp. 3d

27  799, 840 (C.D. Cal. 2023) ("[I]ndividualized evidence … would likely be needed to show that any

28  given California Consumer Class member 'was not negligent in failing to make the discovery

1    sooner' in view of those announcements or that they 'had no actual or presumptive knowledge of

2    facts sufficient to put [them] on inquiry.'").  Equitable estoppel similarly applies only if someone

3    "relied on the other party's conduct to her injury."  *Wong as Tr. of Anaplex Corp. Emp. Stock*

4    *Ownership Plan v. Flynn-Kerper*, 999 F.3d 1205, 1211 (9th Cir. 2021).  Because "reliance is an

5    essential element of equitable estoppel, … it must be shown that the person claiming the estoppel

6    was led to believe a particular thing true and that he acted on such belief."  *Atkins, Kroll (Guam),*

7    *Ltd. v. Cabrera*, 295 F.2d 21, 23 (9th Cir. 1961) (applying Guam law, which was adapted from

8    California law, and noting that "[r]eliance is a question of fact").

9         As demonstrated by the Court's analysis at the pleading stage, application of these tolling

10   doctrines is highly individualized.  *See* MTD Order 5.  LoSavio's counsel represented at the MTD

11   hearing that LoSavio "is not just … an ordinarily diligent consumer" but a "particularly diligent

12   consumer."  Apr. 30, 2024 MTD Hr'g Tr. 30:23-31:1.  Taking as true LoSavio's allegation that "his

13   discovery came in April 2022," the Court then considered LoSavio's allegations of diligence—

14   including his "repeated attempts to update his car's technology and talk with Tesla," referring to his

15   visits to Tesla showrooms.  MTD Order 5-6.  And the Court observed that the "*extent*" of LoSavio's

16   diligence "and its reasonableness are questions of fact not suitable for disposition" at that stage.  *Id.*

17   at 6.  For each putative classmember, the Court would need to consider individualized facts, such as

18   whether they (like LoSavio) visited Tesla showrooms to ask Tesla about the timeline toward "full

19   self-driving," whether those classmembers (like LoSavio) read news related to Tesla to assess that

20   timeline, and whether those classmembers (like LoSavio) saw subsequent statements from Tesla

21   that "lulled" them into choosing not to file suit in a timely fashion.  *Id.* at 5-6.  Even Goldhaber

22   conceded that the timing of when customers came to understand the Hardware Statement to be false

23   "could very easily be different" among classmembers.  Ex. D (Goldhaber Tr.) at 89:15-90:1.

24        As for equitable estoppel, assessing reliance requires delving into each classmember's

25   specific circumstances—from which statements they read (over more than nine years) to which

26   statements they considered when making any decisions material to their claims.  LoSavio, for

27   instance, claims to have relied on conversations with "Tesla employees and representatives" (Ex. J

28   at 10:17-28), yet offers no evidence that other Tesla customers heard the same message from other

Tesla employees, in other showrooms, at different times over a period of more than nine years. *See Berger*, 741 F.3d at 1069 ("any oral notice given by Home Depot employees about the optional nature of the damage waiver during a particular rental transaction would necessarily be a unique occurrence"); *English v. Apple Inc.*, 2016 WL 1188200, at *12 (N.D. Cal. Jan. 5, 2016) ("English has not shown that the way in which Apple employees talk about the service plans is sufficiently uniform …."). The highly individualized analysis of LoSavio's facts that led the Court to conclude that his claims are not time-barred would be required for every classmember.

"Lest this litigation be swept away" by the individualized showings required for many classmembers to overcome the statute of limitations, the Court should conclude that LoSavio "has not established that common questions will predominate over noncommon ones." *Henson*, 300 F.R.D. at 421. While the "existence of a statute of limitations issue does not *compel* a finding that individual issues predominate over common ones," *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975), courts regularly hold that Rule 23(b)(3)'s predominance requirement is not satisfied when each putative classmember must prove highly individualized facts in order to make their claims timely. *See Lucas*, 212 F. Supp. 3d at 971 ("Figuring out what set of warnings and instructions class members were exposed to; when such exposure occurred; whether in each case these warnings should have given class members reason to suspect wrongdoing or a claim; and whether a reasonable investigation at that time would have revealed a factual basis for the claim would require fact-intensive, individualized inquiries."); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 415 (C.D. Cal. 2000) ("The individualized analysis contained in the Court's order illustrated that the limitations defense cannot be applied across the board to the class."); *Henson*, 300 F.R.D. at 421 ("Putative class member No. 1's diligence in unearthing a potential … violation will bear little on putative class member No. 2's actions."). The Court should reach the same conclusion here and deny class certification.

## II.    THE COURT SHOULD DENY CERTIFICATION OF A 23(B)(2) CLASS

LoSavio also fails to carry his burden for certification of a Rule 23(b)(2) class seeking to enjoin "Tesla from advertising something with properties its product does not have." Mot. 13. *First*, LoSavio's claim for injunctive relief is incidental to his claim for damages, which by itself is enough

1    to reject 23(b)(2) certification. *Second*, LoSavio has failed to show that his requested injunction is

2    appropriate for the class as a whole, and he cannot do so.

3    ### A.    LoSavio Primarily Seeks Monetary Relief, Precluding A 23(b)(2) Class

4    "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought

5    is declaratory or injunctive." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001),

6    *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). A 23(b)(2) class should not be

7    certified when "it appears … that Plaintiff's claim for injunctive relief is incidental to his claim for

8    damages." *Diacakis v. Comcast Corp.*, 2013 WL 1878921, at *9 (N.D. Cal. May 3, 2013). Courts

9    therefore deny (b)(2) certification when "the primary relief sought by Plaintiff[] is monetary, not

10   injunctive." *Lucas*, 212 F. Supp. 3d at 972.[5]

11   That is the case here. LoSavio's theory is that "[c]lass members paid an amount in excess

12   of their vehicle purchase price for FSD or else paid a monthly subscription." Mot. 16; *see*

13   TAC ¶¶ 12-13, 118, 219, 224-226, 234, 238-240. LoSavio retained a damages expert to opine on

14   "methods to estimate the economic harm suffered by the Class" and whether those methods could

15   "feasibly" be executed "on a class-wide basis." Stockton Decl. ¶ 3. He is trying (unjustifiably) to

16   recover the entire amount that customers paid for EAP or FSDC purchases and subscriptions, as

17   damages. *Supra* I.D. As LoSavio has litigated it, this case is primarily about getting money, not

18   changing advertising. In short, "it is clear from the pleadings, as well as from the effort and expert

19   fees expended on damages models, that the central focus of this suit is monetary relief." *Lucas*, 212

20   F. Supp. 3d at 972.

21   Indeed, despite the overbroad injunction that LoSavio describes, the only possible injunctive

22   relief available to him after this Court's MTD Order would be enjoining Tesla from making further

23   Hardware Statements or Cross-Country Statements. LoSavio has failed to show that Tesla continues

24   to make those statements today. And yet he continues to litigate this case. Why? Money, of course.

25

26   _____

     [5] That restitution is inherently equitable is irrelevant for these purposes. *See, e.g.*, *Richards

27   v. Delta Air Lines, Inc.*, 453 F.3d 525, 530-531 (D.C. Cir. 2006) ("Almost invariably ... suits seeking
     (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money

28   to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since
     they seek no more than compensation for loss resulting from the defendant's breach of legal duty.");
     *accord Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 561 (C.D. Cal. 2012).

1    *See In re Paxil Litig.*, 218 F.R.D. 242, 247-248 (C.D. Cal. 2003) (concluding the "claim for

2    restitution predominates" including because "many of the allegedly offending statements sought to

3    be enjoined are no longer being made by GSK" and "the fact that some (perhaps most) of the

4    allegedly offending conduct has ceased nevertheless speaks to the 'essential goal' of this litigation").

5    Under these circumstances, the Court should decline to certify a 23(b)(2) class.

6         **B.    LoSavio Fails To Carry His Burden To Show That His Requested Injunction**

7              **Would Provide Relief To Each Putative Classmember**

8         Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide

9    relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see* Fed. R. Civ. P. 23(b)(2)

10   (requiring that the "final injunctive relief or corresponding declaratory relief is appropriate

11   respecting the class as a whole" to certify a (b)(2) class). LoSavio has not shown that his requested

12   injunction—to "prevent[] Tesla from advertising something with properties its product does not

13   have" (Mot. 13)—is "appropriate respecting the class *as a whole*." *Williams v. Apple, Inc.*, 338

14   F.R.D. 629, 657 (N.D. Cal. 2021) (emphasis in original).

15        At the outset, this request wrongly disregards the Court's MTD Order. Try though LoSavio

16   might to ignore and evade the Court's ruling, only the Hardware Statement and Cross-Country

17   Statement remain in this case. When fashioning injunctive relief, "[t]he scope of the remedy must

18   be no broader and no narrower than necessary to redress the injury shown by the plaintiff."

19   *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). Even for a certified 23(b)(2) class, LoSavio

20   could seek an injunction only to the statements at issue. His class certification motion ignores that

21   limitation entirely.

22        Even taking the overbroad injunction that he requests on its face, however, LoSavio fails to

23   show by a preponderance of the evidence that this injunction is appropriate relief as to the class as

24   a whole, for at least two reasons.

25        *First*, LoSavio has not shown, by a preponderance of the evidence, that the whole putative

26   class would benefit from an injunction ordering Tesla not to "advertis[e] something with properties

27   its product does not have." Mot. 13. LoSavio has not even attempted to show that all the other

28   classmembers intend to purchase FSDC (or even other Tesla vehicles) again or to continue to

1    subscribe to FSDC such that they care about how Tesla advertises those products; or that other

2    classmembers were or are being deceived by any Tesla representations, such that they would benefit

3    from changing them; or that other classmembers saw or continue to see any alleged

4    misrepresentations (let alone the Hardware and Cross-Country Statements specifically, which,

5    again, he must). Putative classmembers who do not intend to purchase or lease a Tesla vehicle, who

6    do not intend to purchase or subscribe to FSDC, or who would not rely on or consider how Tesla

7    markets its vehicles, "would not get the benefit of the injunction" that LoSavio claims to pursue.

8    *Victorino v. FCA US LLC*, 326 F.R.D. 282, 308 (S.D. Cal. 2018). LoSavio's failure to prove, by a

9    preponderance of the evidence, that this relief is appropriate for the whole putative class requires

10    denying certification of a (b)(2) class. *See id.* (denying certification); *see also Cholakyan*, 281

11    F.R.D. at 559 (denying (b)(2) certification where "the class includes former owners of class vehicles

12    who will not benefit from declaratory or injunctive relief."); *Murray v. Sears, Roebuck & Co.*, 2014

13    WL 563264, at *10 (N.D. Cal. Feb. 12, 2014) (denying (b)(2) certification).

14    *Second*, LoSavio's requested overbroad injunction to "prevent[] Tesla from advertising

15    something with properties its product does not have" (Mot. 13) is not appropriate relief as to the

16    whole class because it amounts to "a bare injunction to follow the law." *B.K. by next friend Tinsley*

17    *v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019). Courts deny Rule 23(b)(2) certification when the

18    requested classwide injunctive relief "essentially amounts to a request for an order directing" Tesla

19    "to comply generally with existing federal consumer protection regulations—an obligation that

20    would exist even in the absence of an injunction." *Murray*, 2014 WL 563264, at *10. In these

21    circumstances, "[i]t is not clear how this proposed injunction would redress [the plaintiff's] alleged

22    injuries or those of the class he seeks to represent" (*id.*), and Rule 23(b)(2) therefore is not satisfied.

23    **III.    IN ANY EVENT, THE COURT SHOULD DECLINE TO CERTIFY A CLASS REPRESENTED BY**

24    **LOSAVIO**

25    Everything above shows conclusively that neither Rule 23(b)(2) nor (b)(3) has been met.

26    Even if the Court thought that Rule 23(b) *could* be satisfied on claims like these ones, however—

27    and it cannot—the Court should reject LoSavio as a class representative under Rule 23(a) because

28    he is atypical of the class that he proposes and so cannot adequately represent it.

LoSavio—the *sole* class representative in this case—is subject to unique statute-of-limitations defenses that do not apply to the entire class. LoSavio does not dispute this. *See* Mot. 11 (offering to "name a class representative who is not subject to the statute of limitation defenses"). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

In response to this established principle, LoSavio argues that a named plaintiff's claims "can be found" to be typical even when his claims "may be subject to a statute of limitations challenge." Mot. 10. But the two cases he cites are both inapposite. In *Corcoran v. CVS Health* (Mot. 10), defendants "ma[d]e no actual showing" that the named plaintiffs were "*uniquely* subjected to the statute of limitations." 2019 WL 6250972, at *5 (N.D. Cal. Nov. 22, 2019) (emphasis in original). Here, on the other hand, the record shows that if LoSavio could overcome the statute of limitations through tolling doctrines, it would have to be on account of the unique facts that led the Court to deny the motion to dismiss as to him. As discussed above (*supra* I.E.), to surpass the time bar at the pleading stage, LoSavio had to rely on facts going to his idiosyncratic diligence over the years—from his visits to Tesla showrooms and conversations with Tesla employees to his unique interest in tech news and his practice of reading three newspapers every day, leading to his counsel's representation at the MTD hearing that LoSavio is a "particularly diligent consumer," not "an ordinarily diligent consumer." Apr. 30, 2024 MTD Hr'g Tr. 30:23-31:1. Throughout discovery, LoSavio continued to assert these highly individualized facts in his response to Tesla's interrogatory asking him to describe why he chose to give Tesla "the benefit [of] the doubt." Ex. J at 15:9-22:21. But he later recanted at his deposition, testifying that he had kept an "open mind" about Tesla's timeline of achieving full autonomy and only stopped having the "open mind" "[w]hen [he] saw Waymos driving around San Francisco"—though he could not specify when that occurred. Ex. A (LoSavio's Tr.) at 65:13-66:13; 66:24-67:8; *see also id.* at 73:15-74:8. These factual issues around LoSavio's purported diligence and reasonableness saved his case at the pleading stage but foreclose class certification. *See* MTD Order 6 ("the *extent* of his diligence and its reasonableness are questions of fact not suitable for disposition at this stage"); *Pitt v. Metro. Tower Life Ins. Co.*, 2022

WL 17972167, at *4 (S.D. Cal. Dec. 1, 2022) (finding lack of typicality in light of "Defendant's varying practices and conduct with respect to each unnamed class member" and "individualized inquiries regarding the terms of each class policy and the timing of the notices [defendant] provided").

Likewise, in *Schofield v. Delta Air Lines, Inc.*, the other case cited by LoSavio (Mot. 10), the court noted that "*all* class members, including the named class representative, will likely face the same challenge with respect to a statute of limitations defense." 2019 WL 955288, at *4 (N.D. Cal. Feb. 27, 2019). That is not the case here because at least those who bought or subscribed to FSDC or EAP within two years of LoSavio's filing this lawsuit (*i.e.*, those who made the transaction after September 2020) would not have to deal with this defense at all. In circumstances like this, courts have routinely denied class certification for lack of typicality. *See, e.g.*, *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 860 (N.D. Cal. 2020) (distinguishing *Schofield* "[b]ecause Plaintiff opted to define the class so broadly, the proposed class would by definition include some individuals, like Plaintiff, whose claims are time-barred, as well as individuals with later model cars whose claims cannot be time-barred"); *Taafua v. Quantum Glob. Techs., LLC*, 2020 WL 95639, at *7-8 (N.D. Cal. Jan. 8, 2020) (finding lack of typicality where named plaintiff's claims "are typical of only about half the class and are atypical of the other half"); *Vizzi v. Mitsubishi Motors N. Am., Inc.*, 2010 WL 11515266, at *2 (C.D. Cal. Feb. 22, 2010) ("Although Vizzi's claim is typical of others in that he owns a black Mitsubishi vehicle with a model year within the 2000-2008 period, … his case is atypical because it may be subject to a statute of limitations defense unique to his claim and the claims of a subclass, while other class members do not face the same difficulty."). This Court should do the same.

## **CONCLUSION**

The Court should deny LoSavio's motion for class certification.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

Dated: June 17, 2025

WILMER CUTLER PICKERING
    HALE AND DORR LLP

By:    */s/ Alan Schoenfeld*

Alan Schoenfeld

*Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, Tesla Finance LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### **ATTORNEY ATTESTATION**

I, Alan Schoenfeld, am the ECF User whose ID and password are being used to file the accompanying documents.  In compliance with Civil Local Rule 5-l(i)(3), I attest that concurrence in the filing of those documents have been obtained from each signatory.

Dated: June 17, 2025                            By:    */s/ Alan Schoenfeld*
                                                          Alan Schoenfeld

### **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2025, I electronically filed the above document and supporting documents with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: June 17, 2025                            By:    */s/ Alan Schoenfeld*
                                                          Alan Schoenfeld