QUE DECL. EX. J

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
THOMAS E. LOESER (SBN 202724)
tloeser@cpmlegal.com
ANDREW W. BRITTON (SBN 340052)
abritton@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
JEREMY ROBINSON (SBN 188325)
jrobinson@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811

FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Fax: (858) 914-2002

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHEN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation** | Case No. 3:22-cv-05240-RFL |
| | **CLASS ACTION** |
| | **PLAINTIFF THOMAS LOSAVIO'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-12)** |
| This Case Relates To All Actions | |

**Propounding Party:      Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC**

**Responding Party:      Plaintiff Thomas LoSavio**

**Set No.:      One (1)**

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL

7.     Plaintiff objects to the definition of "Tesla Autopilot" as vague, ambiguous, overbroad, and unduly burdensome because it is unclear what software versions and hardware components, which changed over time, are included in the term.

8.     Plaintiff objects to the definition of "Tesla Enhanced Autopilot" as vague, ambiguous, overbroad, and unduly burdensome because it is unclear what software versions and hardware components, which changed over time, are included in the term .

9.     Plaintiff objects to the definition of "Tesla Full Self-Driving Capability" or "Tesla FSDC" as vague, ambiguous, overbroad, and unduly burdensome because it is unclear what software versions and hardware components, which changed over time, are included in the term.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all the statements and/or representations made by Tesla that You saw, heard, read, reviewed, considered or relied on either before or when You purchased (1) Your Tesla Vehicle, (2) Tesla Enhanced Autopilot, and/or (3) Tesla FSDC.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff incorporates by reference the general objections and objections to instructions and definitions stated above as if fully set forth herein. Plaintiff further objects to this interrogatory to the extent it purports to require Plaintiff to search for, review, or produce information that is in the possession, custody or control of agents or other third parties not under the control of Plaintiff, or that is otherwise outside Plaintiff's possession, custody, or control, such as press coverage of Defendants or Mr. Musk. Plaintiff further objects to the interrogatory to the extent it seeks information already within Defendants' possession, custody, or control, including the contents of Defendants' website and social media postings by Defendants or Mr. Musk during the relevant time period. Plaintiff further objects to the extent that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. Plaintiff objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and oppressive, including because it asks Plaintiff to reproduce an oppressively large number of statements and/or representations, and because the interrogatory is not limited to statements and/or representations that are relevant or material to this action.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL    5

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff reviewed the Tesla website multiple times in the months before he purchased his Tesla vehicle and FSD in January 2017. Plaintiff read, considered, and relied upon statements on that website, including:

"The system [Full Self-Driving Capability] is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat."

"All Tesla vehicles produced in our factory … have the hardware needed for full self driving capability at a safety level substantially greater than that of a human driver."

"Build upon Enhanced Autopilot and order Full Self-Driving Capability on your Tesla. This doubles the number of active cameras from four to eight, enabling full self-driving in almost all circumstances, at what we believe will be a probability of safety at least twice as good as the average human driver."

"Tesla's Enhanced Autopilot software has begun rolling out and features will continue to be introduced as validation is completed, subject to regulatory approval, which may vary widely by jurisdiction. It is not possible to know exactly when each element of the functionality described above will be available, as this is highly dependent on local regulatory approval."

In an October 19, 2016 Tesla news conference covered by numerous news outlets, Musk and Tesla represented that a Tesla vehicle would "be able to do a demonstration drive of full autonomy all the way from LA to New York. So basically from home in LA to, let's say, dropping you off in Times Square in New York and having the car go and park itself by the end of next year without the need for a single touch." Plaintiff read about this statement and similar statements from Mr. Musk in the press, and he considered and relied upon them before purchasing his Tesla vehicle and FSD in January 2017.

On or about November 12, 2016, Plaintiff received and read a newsletter that Tesla emailed to him. Plaintiff read, considered, and relied upon the statements in that newsletter, including:

"All Tesla vehicles produced in our factory now have full self-driving hardware, enabling a rapidly expanding set of new Autopilot features to be introduced over time."

"Full Self-Driving Capability [] will ultimately take you from home to work and find a parking space for you on its own."

"Self-driving vehicles will play a crucial role in improving transportation safety and

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL    6

1  accelerating the world's transition to a sustainable future. Once the software is extensively validated

2  and there is regulatory approval, full autonomy will enable a Tesla to be substantially safer than a

3  human driver."

4  **INTERROGATORY NO. 2:**

5        Describe in detail all the research You conducted regarding Tesla vehicles or Tesla ADAS, both

6  before and after You purchased (1) Your Tesla Vehicle, (2) Tesla Enhanced Autopilot, and/or (3) Tesla

7  FSDC, including the approximate dates that You conducted all such research, and each and every source

8  you relied upon.

9  **RESPONSE TO INTERROGATORY NO. 2:**

10        Plaintiff incorporates by reference the general objections and objections to instructions and

11  definitions stated above as if fully set forth herein. Plaintiff further objects to this interrogatory to the

12  extent it purports to require Plaintiff to search for, review, or produce information that is in the

13  possession, custody or control of agents or other third parties not under the control of Plaintiff, or that

14  is otherwise outside Plaintiff's possession, custody, or control, such as press coverage of Defendants or

15  Mr. Musk. Plaintiff further objects to the interrogatory to the extent it seeks information already within

16  Defendants' possession, custody, or control, including the contents of Defendants' website and social

17  media postings by Defendants or Mr. Musk during the relevant time period. Plaintiff further objects to

18  the extent that this interrogatory seeks information protected by the attorney-client privilege and/or the

19  work product doctrine. Plaintiff further objects that the interrogatory is vague, ambiguous, overbroad,

20  unduly burdensome, and oppressive, including because the meaning of "research" is vague and

21  ambiguous and potentially encompasses an overbroad, unduly burdensome, and oppressive scope of

22  information and minutiae, and because the interrogatory is not limited to seeking information that is

23  relevant or material to this action.

24        Subject to and without waiving the foregoing objections and construing the term "research" to

25  mean systematic investigation consistent with its ordinary meaning, Plaintiff responds as follows:

26  Plaintiff reviewed the Tesla website multiple times in the months before he purchased his Tesla vehicle

27  and FSD in January 2017. Plaintiff read, considered, and relied upon statements on that website,

28  including:

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                                    7

"The system [Full Self-Driving Capability] is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat."

"All Tesla vehicles produced in our factory … have the hardware needed for full self driving capability at a safety level substantially greater than that of a human driver."

"Build upon Enhanced Autopilot and order Full Self-Driving Capability on your Tesla. This doubles the number of active cameras from four to eight, enabling full self-driving in almost all circumstances, at what we believe will be a probability of safety at least twice as good as the average human driver."

"Tesla's Enhanced Autopilot software has begun rolling out and features will continue to be introduced as validation is completed, subject to regulatory approval, which may vary widely by jurisdiction. It is not possible to know exactly when each element of the functionality described above will be available, as this is highly dependent on local regulatory approval."

In an October 19, 2016 Tesla news conference covered by numerous news outlets, Musk and Tesla represented that a Tesla vehicle would "be able to do a demonstration drive of full autonomy all the way from LA to New York. So basically from home in LA to, let's say, dropping you off in Times Square in New York and having the car go and park itself by the end of next year without the need for a single touch." Plaintiff read about this statement and similar statements from Elon Musk in the press, and he considered and relied upon them before purchasing his Tesla vehicle and FSD in January 2017.

On or about November 12, 2016, Plaintiff received and read a newsletter that Tesla emailed to him. Plaintiff read, considered, and relied upon the statements in that newsletter, including:

"All Tesla vehicles produced in our factory now have full self-driving hardware, enabling a rapidly expanding set of new Autopilot features to be introduced over time."

"Full Self-Driving Capability [] will ultimately take you from home to work and find a parking space for you on its own."

"Self-driving vehicles will play a crucial role in improving transportation safety and accelerating the world's transition to a sustainable future. Once the software is extensively validated and there is regulatory approval, full autonomy will enable a Tesla to be substantially safer than a human driver."

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL

8

1    At all relevant times (from the months leading up to his purchase to the present), Plaintiff has

2    received and typically read three newspapers daily: the Wall Street Journal, the New York Times, and

3    the San Francisco Chronicle. After his purchase, he continued his usual habit of reading these papers,

4    and paid particular interest and attention to any articles regarding Tesla, Musk, and especially Tesla's

5    purported self-driving technologies. While Plaintiff does not consider his review of the daily news to

6    be "research" within the ordinary meaning of that term, and thus to be beyond the scope of this

7    interrogatory, in the spirit of cooperation he notes that he recalls seeing, at regular intervals following

8    his January 2017 purchase, news reports that Tesla and particularly Musk were continuing to make

9    statements indicating that the completion of development and/or release of self-driving features was

10   coming reasonably soon, often in a year or so. In particular, Plaintiff recalls seeing press coverage in

11   each of the first three years after his purchase (*i.e.*, in 2017, 2018, and 2019) discussing and quoting

12   Musk's tweets and public comments stating that Tesla cars would be self-driving in about a year.

13   Sometimes when Plaintiff saw such articles or other press related to Tesla's purported self-driving

14   technology (at least 1-2 times per year), he would go to Tesla's website seeking updating information

15   on the timing for Tesla providing software updates for making cars self-driving.

16   In each of the years following his purchase, Plaintiff periodically went to the Tesla website

17   seeking updates on the rollout of these features and when they would be operational in his vehicle. He

18   recalls consistently seeing on Tesla's website, and believing, representations that Tesla vehicles,

19   including the Model S, would be able to be updated with full self-driving capabilities in the future. The

20   statements he recalls seeing in each of the years following his purchase are substantially similar to

21   and/or consistent with the following statements on Tesla's website in 2019 and 2020, as captured and

22   preserved by the Internet Archive Wayback Machine: "Full Self-Driving Hardware [¶] Every new

23   Model S comes standard with advanced hardware capable of providing Autopilot features today, and

24   full self-driving capabilities in the future—through software updates designed to improve functionality

25   over time." (https://web.archive.org/web/20190414140516/tesla.com/models, captured April 14,

26   2019); and "All Tesla vehicles have the hardware needed in the future for full self-driving in almost all

27   circumstances, at a safety level we believe will be at least twice as good as the average human driver."

28   (https://web.archive.org/web/20200418045832/tesla.com/models, captured April 18, 2020).

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL                    9

1    In every year from 2017 to the present, Plaintiff recalls his Tesla vehicle receiving periodic
2    over-the-air software updates which had titles and were accompanied by Tesla release notes indicating
3    they were software updates related to eventually making his car self-driving. All these software updates
4    were initiated by a message on the vehicle touchscreen indicating the update was available. Plaintiff
5    would typically push a button on the touchscreen to request that the update be installed as soon as it
6    became available. Once installed, it was at all relevant times Plaintiff's habit, because he was curious
7    about the software and particularly whether it related to self-driving, to click through multiple pages on
8    the touchscreen to access and review the "release notes" for the software update, which described the
9    update. In every year from 2017 to the present, Plaintiff recalls regular software updates to his vehicle
10   that were accompanied by release notes describing updates related to self-driving features, which he
11   took to be evidence of Tesla continually working and making progress toward the goal of making their
12   cars self-driving. While Plaintiff does not consider his review of these release notes and other
13   information about these updates to be "research" within the ordinary meaning of that term, and thus to
14   be beyond the scope of this interrogatory, in the spirit of cooperation he notes the above. The precise
15   dates, contents, titles, and release notes of each of those updates, including when they were installed on
16   Plaintiff's vehicle, are or should be within Defendants' possession.

17   Periodically in the years following the January 2017 purchase, Plaintiff also stayed in contact
18   with and sought out information from Tesla employees and representatives about the state of
19   development and timeline for Tesla bringing its promised self-driving software to market. For example,
20   6 to 9 months after his January 2017 purchase, Plaintiff began inquiring through local Tesla service
21   centers about when his vehicle would have the features that he had paid for to make his car self-driving.
22   When Plaintiff made periodic visits to Tesla service centers, his practice was to ask when FSD would
23   be activated on his car and what the process was to obtain that activation. These conversations with
24   Tesla's personnel occurred periodically in the years after his purchase. Plaintiff made similar inquiries
25   on the few visits he made to the Tesla showroom in Burlingame, California after his purchase. The
26   responses he received from Tesla employees on those occasions were consistent with and confirmed
27   his original understanding that the software would be activated within a year or two, or some other
28   reasonably short time, after his purchase. On one visit to the Tesla showroom in Burlingame, California

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                    10

1  within a year or two after purchase, Plaintiff asked about when self-driving features on his car might
2  be activated, and the Tesla representative told him that those features could not be updated through the
3  showroom, and that he would need to make a Tesla service appointment.

4  Following these instructions, Plaintiff made service appointments with Tesla service centers in
5  2018, 2019, and 2020, so that Tesla could perform whatever service was necessary for self-driving
6  features to be activated on his vehicle. However, most every time he made a service appointment, Tesla
7  would cancel the appointment as the date approached. On August 7, 2020, Plaintiff brought his car into
8  the Tesla Service Center for a service that Tesla documentation describes as an "FSD Computer
9  Retrofit." However, following the appointment, the FSD software on his car was still not activated.

10  **INTERROGATORY NO. 3:**

11  Describe in detail when and how You discovered the "expert consensus that truly autonomous,
12  self-driving cars cannot be achieved without some reliance on expensive lidar" as alleged in paragraph
13  36 of the Complaint, including by identifying all the research You did and all the sources of such "expert
14  consensus."

15  **RESPONSE TO INTERROGATORY NO. 3:**

16  Plaintiff incorporates by reference the general objections and objections to instructions and
17  definitions stated above as if fully set forth herein. Plaintiff further objects to this interrogatory as
18  compound and counting as multiple distinct interrogatories. Plaintiff further objects to the extent that
19  this interrogatory seeks information protected by the attorney-client privilege and/or the work product
20  doctrine. Plaintiff further objects that the interrogatory is vague and ambiguous with respect to the
21  undefined term "research." Plaintiff further objects to this request to the extent that this interrogatory
22  impermissibly seeks the premature and non-reciprocal disclosure of experts and expert information, or
23  requires Plaintiff to set forth factual analyses, comparative analyses, and opinions, or theories that may
24  be subject to expert testimony.

25  **INTERROGATORY NO. 4:**

26  Identify all the statements and/or representations Tesla made to You that "[Your] Model S had
27  all the hardware needed for full self-driving, and that all [Your] car needed to become fully self-driving
28  was software updates that could be delivered to [Your] car in over-the-air updates," as alleged in

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                    11

1  and in the presence of journalists that a Tesla would soon drive itself across the United States, and these

2  statements have received significant and widespread press coverage. Plaintiff recalls reading reporting

3  about such representations both before and after his January 2017 purchase, including in his customary

4  daily reading of the San Francisco Chronicle, New York Times, and Wall Street Journal. Tesla and

5  Musk have also periodically made similar statements (such as statements that Tesla will soon develop

6  technology that is SAE Level 4 or 5, that will allow Tesla vehicles to act as robo-taxis, or that will

7  otherwise allow Tesla vehicles to drive themselves) which convey much the same message but without

8  the express geographic reference to a Tesla driving itself across the country.

9  **INTERROGATORY NO. 6:**

10      Describe in detail the reason(s) You "gave Tesla the benefit the doubt, and believed Tesla and

11  Musk's representations that it would just take them a little longer to deliver the promised self-driving

12  software" as alleged in paragraph 156 of the Complaint.

13  **RESPONSE TO INTERROGATORY NO. 6:**

14      Plaintiff incorporates by reference the general objections and objections to instructions and

15  definitions stated above as if fully set forth herein. Plaintiff further objects to this interrogatory to the

16  extent it purports to require Plaintiff to search for, review, or produce information that is in the

17  possession, custody or control of agents or other third parties not under the control of Plaintiff, or that

18  is otherwise outside Plaintiff's possession, custody, or control, such as press coverage of Defendants or

19  Mr. Musk. Plaintiff further objects to the interrogatory to the extent it seeks information already within

20  Defendants' possession, custody, or control, including the contents of Defendants' website and social

21  media postings by Defendants or Mr. Musk during the relevant time period. Plaintiff further objects to

22  the extent that this interrogatory seeks information protected by the attorney-client privilege and/or the

23  work product doctrine. Plaintiff further objects to the extent the interrogatory references paragraphs

24  from the superseded Consolidated Second Amended Complaint, and for purposes of this response treats

25  them as referencing the corresponding paragraphs from the Consolidated Third Amended Complaint.

26  Plaintiff objects to this request to the extent that this interrogatory impermissibly seeks the premature

27  and non-reciprocal disclosure of experts and expert information, or requires Plaintiff to set forth factual

28  analyses, comparative analyses, and opinions, or theories that may be subject to expert testimony.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1   Plaintiff objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and

2   oppressive, including because it lacks reference to particular time period; because the referenced

3   language from the complaint refers to post-purchase representations, Plaintiff interprets this

4   interrogatory as seeking information related only to the specified category of representations that Tesla

5   made after his January 2017 purchase and why Plaintiff believed those representations.

6          Subject to and without waiving the foregoing objections, Plaintiff responds as follows: At all

7   times relevant to this interrogatory (from the months leading up to his January 2017 purchase to April

8   2022), Plaintiff received and typically read three newspapers daily: the Wall Street Journal, the New

9   York Times, and the San Francisco Chronicle. After his purchase, he continued his usual habit of

10  reading these papers, and paid particular interest and attention to any articles regarding Tesla, Musk,

11  and especially Tesla's purported self-driving technologies. At regular intervals following his January

12  2017 purchase, Plaintiff recalls seeing news reports that Tesla and particularly Musk were continuing

13  to make statements indicating that the completion of development and/or release of self-driving features

14  was coming reasonably soon, often in a year or so. Sometimes when Plaintiff saw such articles or other

15  press related to Tesla's purported self-driving technology (at least 1-2 times per year), he would go to

16  Tesla's website seeking updated information on the timing for Tesla providing software updates for

17  making cars self-driving. Additionally, when Plaintiff encountered such representations by Tesla and

18  Musk, he believed that Tesla and Musk were making them in objective and subjective good faith, and

19  he certainly did not believe they were false or misleading. When he noticed that Tesla and Musk made

20  statements that seemed to slightly push back their projections for when self-driving software would be

21  available, he thought that complex projects do not always go perfectly to plan, gave Tesla the benefit

22  the doubt, and believed Tesla's and Musk's representations that it would just take them a little longer

23  to deliver the promised self-driving software.

24         For example, during each of the first three years after his purchase (*i.e.*, in 2017, 2018, and

25  2019), Plaintiff recalls press coverage discussing and quoting Musk's tweets and public comments

26  stating that Tesla cars would be self-driving in about a year. Plaintiff assumed that Musk was making

27  these statements in good faith, and that if Musk was saying these things and making these projections

28  in such a public way, he must have both a subjectively and objectively reasonable basis for doing so

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                          16

1   based on his relevant technological expertise and experience, and his understanding of the nonpublic

2   information uniquely available to him about the status of Tesla's development of its FSD technology.

3   In each of the years following his purchase, Plaintiff periodically went to the Tesla website seeking

4   updates on the rollout of these features and when they would be operational in his vehicle. He recalls

5   consistently seeing on Tesla's website, and believing, representations that the Model S would be able

6   to be updated with full self-driving capabilities in the future. The statements he recalls seeing on Tesla's

7   website in each of the years following his purchase are substantially similar to and/or consistent with

8   the following statements on Tesla's website in 2019 and 2020, as captured and preserved by the Internet

9   Archive Wayback Machine: "Full Self-Driving Hardware [¶] Every new Model S comes standard with

10  advanced hardware capable of providing Autopilot features today, and full self-driving capabilities in

11  the    future—through    software    updates    designed    to    improve    functionality    over    time."

12  (https://web.archive.org/web/20190414140516/tesla.com/models, captured April 14, 2019); and "All

13  Tesla vehicles have the hardware needed in the future for full self-driving in almost all circumstances,

14  at a safety level we believe will be at least twice as good as the average human driver."

15  (https://web.archive.org/web/20200418045832/tesla.com/models, captured April 18, 2020). Again,

16  Plaintiff assumed that Tesla was making these statements in good faith, and that if Tesla was making

17  such statements in such a public way, that it must have both a subjectively and objectively reasonable

18  basis for doing so.

19          Consistent with these representations, Plaintiff continued to believe, as he did at the time of

20  purchase, that his vehicle had had all the hardware needed for his car to become self-driving through

21  software updates soon to be provided by Tesla. Further, Plaintiff believed that his car was receiving

22  relevant software updates that were evidence of Tesla making concrete progress toward developing the

23  promised self-driving technology. Specifically, throughout his ownership, Plaintiff's car has received

24  periodic over-the-air software updates from Tesla, some of which had titles and were accompanied by

25  release notes indicating they were software updates related to eventually making his car self-driving.

26  All these software updates were preceded by a message on his vehicle touchscreen indicating that an

27  update was available. Plaintiff would typically push a button on the touchscreen to request that the

28  update be installed as soon as it became available. Once installed, it was at all relevant times Plaintiff's

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                         17

1  habit, because he was curious about the software and particularly whether it related to self-driving, to

2  click through multiple pages on the touchscreen to access and review the "release notes" for the

3  software update, which described the update. In every year from 2017 to the present, Plaintiff recalls

4  regular software updates to his vehicle which were accompanied by release notes describing updates

5  related to self-driving features, and which he took to be evidence of Tesla continually working and

6  making progress toward the goal of making their cars self-driving.

7  While Plaintiff has been unable to locate documentation concerning the updates on his Model

8  S during 2017 and 2018, he has located and reviewed such documentation for the years 2019 to present.

9  The documented updates from 2019 to present are broadly consistent with the number and kinds of

10  updates that Plaintiff recalls his vehicle receiving in 2017 and 2018. For example, for the years 2019,

11  2020, and 2021, Plaintiff found documentation indicating that his vehicle received the following

12  updates from Tesla, which are broadly consistent with his recollection of the updates his vehicles

13  received during those years, based on the information including release notes that he read about the

14  updates on his vehicle touchscreen:

15  • 2019: (a) Adjacent Lane Speeds, Autosteer Stop Sign Warning, Driving Visualization

16    Improvements (Release 2019.40.2); (b) Automatic Lane Change Improvements and

17    Autosteer (Beta) (Release 2019.40.1.1); (c) Smart Summon (Beta), Navigate on Autopilot

18    (Beta) (Release 2019.40.50.1); and (d) Adjacent Lane Speeds and Autosteer Stop Sign

19    Warning (Release 2019.40.2).

20  • 2020: (a) Navigating on Autopilot (Beta), Adjacent Lane Speeds (Release 2020.4);

21    (b) Navigating on Autopilot (Beta), Traffic Light and Stop Sign Control (Beta), Driving

22    Visualization Improvements (Release 2020.16); (c) Traffic Light and Stop Sign Control

23    (Beta) (Release 2020.20.13); (d) Traffic Light and Stop Sign Control (Beta), Driving

24    Visualization Improvements (Release 2020.24.6); (e) Traffic Light and Stop Sign Control

25    (Beta) (Release 2020.28.1); (f) Traffic Light and Stop Sign Control (Beta), Navigating on

26    Autopilot (Beta) – Exit Passing Lane (Release 2020.36.10); (g) Driving Visualization

27    Improvements, Autosteer Stop Sign and Stop Light Warning, Speed Assist Improvements,

28    Pedestrian Warning (Release 2020.36); (h) Full Self-Driving (Beta) (Release 2020.40.8.10);

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                        18

(i) Driving Visualization Improvements, Full Self-Driving (Beta), Speed Assist Improvements, Traffic Light and Stop Sign Control (Beta) (Release 2020.44.15.3); (j) Autopilot Set Speed (Release 2020.44); (k) Driving Visualization Improvements and Scheduled Departure Improvements (Release 2020.48.25); and (l) Navigation Improvements, Autosteer Stop Sign and Stop Light Warning (Release 2020.48.5).

- 2021: (a) Full Self-Driving (Beta) and Driving Visualization Improvements (Release 2021.4.18.12); (b) Emergency Lane Departure Avoidance and Smart Summon (Release 2021.4.18.10); (c) Improved Navigation and Navigation Improvements (Release 2021.4.16); (d) Full Self-Driving (Beta) and Driving Visualization Improvements (Release 2021.12.25.15); (e) Detect Emergency Vehicles (Release 2021.24.12); (f) Full Self-Driving (Beta) and Driving Visualization Improvements (Release 2021.24.15); (g) Auto Park, Navigation Voice Guidance, Navigation Route, Navigation Lane Guidance (Release 2021.24); (h) Full Self-Driving (Beta) and Driving Visualization Improvements (Release 2021.32.25); (i) Request Full Self-Driving (Beta) (Release 2021.32.22); (j) Autopark (Release 2021.32.5); (k) FSD v10.6 Release Notes (Release 2021.36.8.9); (l) Full Self-Driving (Beta) Terms, Full Self-Driving (Beta) Suspension, FSD v10.5 Release Notes (Release 2021.36.8.7); (m) FSD v10.4 Release Notes (Release 2021.36.8.5); (n) FSD v10.3.1 Release Notes (Release 2021.36.5.3); (o) Autopark (Release 2021.40.6); (p) FSD Beta v10.3.2 Release Notes (Release 2021.44.30.21); (q) FSD Beta v10.3.1 Release Notes (Release 2021.44.30.20); (r) FSD Beta v10.3.2 Release Notes (Release 2021.44.30.21); (s) FSD Beta v10.10 Release Notes (Release 2021.44.30.15); (t) FSD v10.8.1 Release Notes (Release 2021.44.30.5); (u) FSD v10.8 Release Notes (Release 2021.44.25.5); (v) FSD v10.7 Release Notes, Full Self-Driving (Beta) and Driving Visualization Improvements (Release 2021.44.6); and (w) Autopark (Release 2021.44).

At the time, Plaintiff reasonably believed that many of these updates were being installed but were not yet active on his vehicle. For example, many of the updates concerned FSD Beta at a time when Tesla had made FSD Beta available to only a limited number of Tesla owners, and Plaintiff was not one of those owners. Plaintiff believed that the updates were part of the roll out prefatory to Tesla

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL    19

1    continuing to validate and eventually activate those features for his and other Tesla owners' use.

2    Plaintiff was encouraged by the fact of the updates because he believed they were evidence of Tesla

3    making concrete progress toward the promised full roll-out and activation of software that would make

4    his car self-driving. Based on these continual updates, Plaintiff believed that Tesla was somewhat

5    behind schedule relative to some of its early predictions but was otherwise making concrete progress

6    and on track to providing a self-driving software, and that it was just a matter of waiting a little longer

7    for Tesla to refine that software and activate it on his vehicle.

8        In addition to reading the news and keeping up with software updates to his vehicle, Plaintiff

9    also regularly stayed in contact with and sought out information from Tesla employees and

10   representatives about the state of development and timeline for Tesla bringing its promised self-driving

11   software to market. For example, 6 to 9 months after his January 2017 purchase, Plaintiff began

12   inquiring through the local Tesla service center about when his vehicle would have the features that he

13   had paid for to make his car self-driving. He visited the Burlingame Tesla service center periodically

14   to have his car serviced, and when he did, he commonly asked service center workers if they knew

15   anything about when Tesla's full self-driving software could be activated on his car. The same was true

16   of the few visits he made to the Tesla showroom in Burlingame, California after his purchase. The

17   responses he received from Tesla employees on those occasions were consistent with and confirmed

18   his original understanding that the software would be activated within a year or two, or some other

19   reasonably short time, after his purchase. On one visit to the Tesla showroom in Burlingame, California

20   within a year or two after purchase, Plaintiff asked about when self-driving features on his car might

21   be activated, and the Tesla representative told him that those features could not be updated through the

22   showroom, and that Plaintiff would need to make a Tesla service appointment.

23        Following these instructions, Plaintiff made service appointments with the Burlingame Tesla

24   service center in 2018, 2019, and 2020, so that Tesla could perform whatever service was necessary for

25   self-driving features to be activated on his vehicle. However, most every time he made a service

26   appointment, Tesla would cancel the appointment as the date approached. For example, on August 7,

27   2020, Plaintiff brought his car into the Tesla Service Center for a service that Tesla documentation

28   describes as an "FSD Computer Retrofit." Tesla has represented that an FSD Computer Retrofit was

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL                                                              20

1  performed on his vehicle during that appointment. However, following the appointment, the FSD

2  software on his car was still not activated.

3        Before Plaintiff's purchase and in the years following his purchase, the Tesla website and Tesla

4  employees consistently represented to Plaintiff that his Model S had all the hardware needed for full

5  self-driving, and that all his car needed to become fully self-driving was software updates that could be

6  delivered to his car in over-the-air updates. However, in November 2021, Tesla told Plaintiff that his

7  vehicle would now need hardware upgrades to activate FSD on his vehicle. That month, Plaintiff had

8  once again scheduled an appointment to get FSD working on his vehicle, but Tesla Service canceled

9  the appointment by text on November 13, 2021. The text informed Plaintiff that "there was just

10 announced about a camera upgrade that needs to be performed on your vehicle. The cameras are not

11 available at this time. You will receive a notice from Tesla when the parts become available for your

12 vehicle. That is when you can make an appointment – We will go ahead and close out this appointment."

13       Plaintiff then scheduled a camera upgrade appointment with Tesla Service. On December 24,

14 2021, Tesla responded: "The camera upgrade for Full Self-Driving is not yet available. Qualifying

15 customers will be notified and asked to schedule service one [sic] the upgrade is available. We will be

16 closing this appointment now, but please let us know if you have any questions." On December 25,

17 2021, Plaintiff texted back asking for the expected date of the upgrade, but the only response was to be

18 again told that the service appointment has been closed, and that for additional service needs he must

19 schedule an appointment via the Tesla app.

20       In December 2021, NHTSA issued a recall related to the secondary trunk latch on Tesla Model

21 S vehicles, which impacted Plaintiff's vehicle. On or around March 20, 2022, Plaintiff contacted Tesla

22 Service through its app to obtain the repair for the trunk defect and also to obtain any necessary FSD

23 upgrades. On March 20, 2022, Tesla Service responded that it had performed an FSD-related hardware

24 upgrade to his vehicle on August 8, 2020, but "[t]here is one more equipment upgrade that will need to

25 be performed on your vehicle. Tesla has determined that the cameras that are installed on your vehicle

26 will need to be upgraded to work with the latest hardware. You will receive a notice with the cameras

27 will become available. Then you can make an appointment to have the updated." On March 25, 2022,

28 in response to Plaintiff's request for clarification, Tesla Service responded, "I am sorry for the

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos.
1-12) Case No. 3:22-cv-05240-RFL     21

1  miscommunication – for your vehicle the FSD has been updated – however there is still a camera

2  upgrade that needs to be performed – at this time, the parts are not available. Once they are, you will

3  be notified by Tesla."

4           On April 22, 2022, Tesla Service left him a voicemail and also sent him a message through the

5  Tesla app: "Looks like we did the FSD retrofit 2 years ago. Your service appointment is confirmed."

6  Plaintiff responded to explain that he had been told that installation of one or more driver facing cameras

7  in his vehicle was now necessary for FSD, and that it was that service he was trying to schedule. Tesla

8  Service responded, "I checked with my technicians and that is not a service that we perform or have

9  heard of." Plaintiff responded by sending copies of the earlier Tesla messages he had received regarding

10 the so-called camera upgrade, and Tesla Service responded by asking if he had received notice that the

11 camera was available. On April 23, 2022, Tesla Service responded to Plaintiff, "No you are correct I

12 was just confused because you only mentioned the forward facing cameras. Unfortunately we do have

13 to wait until you get the notice. Our parts team physically can not order parts that are not configured to

14 your vehicles vin. Without the notice they will not be able to order the cameras."

15          Following this, Plaintiff considered Tesla's numerous delays and changing explanations for the

16 delayed activation of FSD on his vehicle, and the fact that it had now been over five years since he

17 purchased his car. He realized for the first time that the most likely explanation for why FSD was not

18 activated on his vehicle was that Tesla and Musk had misled him about the current state of its self-

19 driving technology, had misled him about the likely timeline for Tesla being able to make his car self-

20 driving, and had been stringing him along, and that he was likely never going to get the self-driving car

21 for which he had paid.

22 **INTERROGATORY NO. 7:**

23          Identify all the statements and/or representations made by <u>Tesla</u> after Your purchase of Your Tesla

24 Vehicle that led You to believe Your Tesla Vehicle "would be able to be updated with full self-driving

25 capabilities in the future,"[2] including but not limited to those statements and/or representations alleged in

26 paragraphs 157 and 158 of the Complaint. Include the dates for all such statements and/or representations

27 and, if the exact date is unknown, the approximate date.

28

---

[2] Compl. ¶ 157.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

## VERIFICATION

I, Thomas LoSavio, certify and declare that I have read and know the contents of the following:

**PLAINTIFF THOMAS LOSAVIO'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-12)**

I am one of the plaintiffs in the above-entitled action. I have read the following and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and believe, and, as to those matters, I believe it to be true.

I certify and declare under penalty of perjury that the foregoing is true and correct.

Executed on _October 23_, 2024, at _Hillsborough, CA_

(City, State)

**THOMAS LOSAVIO**

LAW OFFICES COTCHETT, PITRE & McCARTHY, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am employed in San Mateo County, California. I am a citizen of the United States, over the age of 18 years, and not a party to this case. My business address is the Law Offices of Cotchett, Pitre & McCarthy, LLP, San Francisco Airport Office Center, 840 Malcolm Road, Suite 200, Burlingame, California, 94010.

On October 24, 2024, I served the following document(s) in the manner described below:

**PLAINTIFF THOMAS LOSAVIO'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-12)**

✓    **BY E-MAIL:**  My e-mail address is aprado@cpmlegal.com and service of this document(s) occurred on the date shown below. This document is being served electronically and the transmission was reported as complete and without error.

David C. Marcus (SBN 158704)
david.marcus@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
Tel: (213) 443-5312

*Attorneys for Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC*

Alan Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center 250 Greenwich Street
New York, New York 10007
Tel: (212) 937-7294

Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed at Burlingame, California, on October 24, 2024.

_____
ALEJANDRA PRADO

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Plaintiff LoSavio's Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1-12) Case No. 3:22-cv-05240-RFL

40