UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGGS A. MATSKO, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>TESLA, INC., et al.,<br><br>          Defendants. | Case No.  22-cv-05240-RFL<br><br>**NOTICE OF QUESTIONS FOR HEARING**<br><br>Re: Dkt. No. 137-5 |

    The Court requests that the parties be prepared to address the following questions at the hearing on Plaintiff's Motion for Class Certification, set for August 12, 2025, at 10:00 a.m., in Courtroom 15 at the San Francisco Courthouse.

1. Plaintiffs contend that due to Tesla's lack of traditional advertising, it is reasonable to infer that consumers who are considering buying Enhanced Autopilot ("EAP") or Full Self-Driving ("FSD") packages would visit Tesla's autopilot webpage (tesla.com/autopilot) and thereby be exposed to the Hardware Statement.  What evidence shows how consumers interested in buying EAP or FSD would find that page when visiting the Tesla website or otherwise searching for information about those products?

2. Plaintiffs point to Elon Musk's 2016 news conference statement, two subsequent tweets in 2017 and 2019, and accompanying press coverage as the "information environment" that allegedly exposed class members to the Cross Country Statement.  Is that sufficient to support an inference that class members were exposed to that representation, without evidence of the number of actual views or impressions of these tweets and their resulting news coverage?

3. Plaintiffs contend that the question of whether Tesla vehicles were equipped with hardware sufficient for Full Self-Driving capability is subject to common proof. For example, Socci testified that "[t]he ability for the sensors to perform in bad weather" is a limitation that would be common across the class. (Dkt. No. 148-8 at 11.) But will the proof of the inadequacy of sensor types and configurations vary depending on the hardware package (*e.g.*, Hardware 3 versus Hardware 4 versus Hardware 5)? Is that an issue that could or should be addressed by creating subclasses?

4. Plaintiffs propose, based on Stockton's report, that reasonable methods exist to apportion the value of specific features—such as Autopark—that Tesla may prove were delivered, and to subtract that value from the amount of a full refund. Stockton's report describes a method for apportioning value for viable self-driving features that may become available over the course of the litigation, which is a different issue. (*See* Dkt. No. 137-11 at 16.) Is there any reason, though, that Stockton's methodology could not be equally applied to other valuable features included in the EAP or FSD package provided at the time of purchase, such as Autopark? If so, does Stockton's report provide sufficient evidence of a common method to calculate damages across the class?

5. As defined, the proposed classes encompass those who have no intention of ever purchasing EAP or FSD in the future, either through purchasing another Tesla or via an ongoing subscription. How would those class members have standing to seek injunctive relief requiring accurate representations from Tesla about EAP and FSD? Could this problem be cured through a modification to the class definition to limit the Rule 23(b)(2) class to those who would be interested in purchasing EAP or FSD in the future?

At the hearing, each side will address each question in the sequence stated above, and then at the end, the parties will have additional time to present any additional argument that they

wish the Court to hear.  The parties **shall not** file written responses to this Notice of Questions.

    **IT IS SO ORDERED.**

Dated: August 4, 2025

_____
RITA F. LIN
United States District Judge
