FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
THOMAS E. LOESER (SBN 202724)
tloeser@cpmlegal.com
MAKENA A. KERSHAW (SBN 356645)
mkershaw@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
NICHOLAUS H. WOLTERING (SBN 337193)
nwoltering@bottinilaw.com
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Fax: (858) 914-2002

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Fax: (619) 544-9232

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation**<br><br>*This Filing Relates To All Actions* | Case No. 3:22-cv-05240-RFL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  Hon. Rita F. Lin<br>Date:   August 12, 2025<br>Time:  10:00 a.m.<br>Courtroom:  15 – 18th Floor |

## TABLE OF CONTENTS

PAGE NO.

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT..........................................................................................................2

    A.    Tesla Mischaracterizes the Reach of Its Advertising and the Opinions
        of Plaintiff's Experts ....................................................................................2

    B.    Plaintiff Has Shown Predominant Common Questions Warranting
        Certification Under FRCP 23(b)(3). ............................................................3

        1.    The Exposure Test Is Met...............................................................3

        2.    The Test for Materiality Is Met .......................................................7

        3.    Tesla's Speculation about Individualized Evidence Does Not Defeat
           Certification ....................................................................................9

        4.    Plaintiff's Damages Model Is Consistent with His Liability Theory. ...............9

        5.    Tesla's Limitations Defense Does Not Justify Denying Certification ............11

        6.    An FRCP 23(b)(2) Class Can Be Certified Because the Injunctive
           Relief Sought Is Distinct from the Damages Claim and More Than
           a Generalized Request to Follow the Law. ......................................12

        7.    Plaintiff LoSavio Is an Adequate Class Representative ...................14

III.  CONCLUSION.....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE NO.</u>

**Cases**

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014)......................................................................10

*Bailey v. Rite Aid Corp.*,
    338 F.R.D. 390 (N.D. Cal.)..............................................................................8

*Beck-Ellman v. Kaz USA, Inc.*,
    283 F.R.D. 558 (S.D. Cal. 2012) ......................................................................11

*Broomfield v. Craft Brew All., Inc.*,
    2018 WL 4952519 (N.D. Cal. 2018) ................................................................14

*Brown v. Google LLC*,
    2022 WL 17961497 (N.D. Cal. 2022) ..............................................................13

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010).......................................................................9

*Cholakyan v. Mercedes-Benz, USA,*
    LLC, 281 F.R.D. 534 (C.D. Cal. 2012) ...........................................................14

*Cohen v. DIRECTV, Inc.*,
    178 Cal. App. 4th 966 (2009) ............................................................................7

*Combe v. Intermark Communications, Inc.*,
    2010 WL 115977517 (C.D. Cal. 2010) ..............................................................8

*Committee on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3rd 197, 219 (1983) ..............................................................................6

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) .....................................................................13

*Corcoran v. CVS Health*,
    2019 WL 6250972 (N.D. Cal. 2019) ....................................................11, 12, 15

*Darisse v. Nest Labs, Inc.*,
    2016 WL 4385849 (N.D. Cal. 2016) ..................................................................7

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ............................................................................12

*Diacakis v. Comcast Corp.*,
    2013 WL 1878921 (N.D. Cal. 2013) ................................................................13

*Ehret v. Uber Technologies, Inc.*,
  148 F. Supp. 3d 884 (N.D. Cal. 2015).........................................................................7

*Fine v. Kansas City Life Ins. Co.*,
  2023 WL 7393027 (C.D. Cal. 2023), *reconsideration denied*, 2024 WL 356463
  (C.D. Cal. 2024)..........................................................................................................15

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir.1993) .......................................................................................10

*Graham v. Central Garden & Pet Co.*,
  2023 WL 2744391 (N.D. Cal. 2023) ...........................................................................13

*Gutierrez v. Wells Fargo Bank, NA*,
  704 F.3d 712 (9th Cir. 2012) ........................................................................................5

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...............................................................6, 7, 8

*Henson v. Fidelity Nat. Financial Inc.*,
  300 F.R.D. 413 (C.D. Cal. 2014) ................................................................................12

*Jones v. Conagra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. 2014) ..............................................................................8

*Konik v. Time Warner Cable*,
  2010 WL 8471923 (C.D. Cal. 2010) ..............................................................................7

*Kosta v. Del Monte Foods*,
  308 F.R.D. 217 (N.D. Cal. 2015)...................................................................................8

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)..........................................................................5, 7, 8

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) .........................................................................................9

*Lucas v. Breg*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016)..........................................................................13

*Luong v. Subaru of America, Inc.*,
  2018 WL 2047646 (N.D. Cal. 2018) ............................................................................12

*Makaeff v. Trump Univ., LLC*,
  309 F.R.D. 631 (S.D. Cal. 2015) .................................................................................10

*Makaeff v. Trump University*,
  2014 WL 688164 (S.D. Cal. 2014)............................................................................5, 6

*Martin v. Monsanto Co.*,
  2017 WL 1115167 (C.D. Cal. 2017) ..........................................................................3, 9

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

*Mazza v. American Honda Motor Company, Inc.*,
  666 F.3d 581 (9th Cir. 2012) ..............................................................................3, 5

*Morgan v. AT&T Wireless Serv., Inc.*,
  177 Cal. App. 4th 1235 ............................................................................................5

*Murray v. Sears, Roebuck and Co.*,
  2014 WL 563264 (N.D. Cal. 2014) ........................................................................14

*In re MyFord Touch Consumer Litigation*,
  2016 WL 7734558 (N.D. Cal. 2016) ........................................................................6

*O'Connor v. Boeing North American, Inc.*,
  197 F.R.D. 404 (C.D. Cal. 2000) ...........................................................................12

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) ....................................................................5, 6

*Pierce-Nunes v. Toshiba America Information Systems, Inc.*,
  2016 WL 5920345 (C.D. Cal. 2016) .........................................................................8

*Rafofsky v. Nissan North America, Inc.*,
  2017 WL 11634036 (C.D. Cal. 2017) ........................................................................6

*Schofield v. Delta Air Lines, Inc.*,
  2019 WL 955288 (N.D. Cal. 2019) .........................................................................15

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ..................................................................................7

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .........................................................................................5, 6

*United States v. Kennedy*,
  726 F.3d 968 (7th Cir. 2013) ..................................................................................10

*Victorino v. FCA US LLC*,
  326 F.R.D. 282 (S.D. Cal. 2018) ............................................................................14

*Vizcarra v. Unilever United States*,
  339 F.R.D. 530 (N.D. Cal. 2021) ............................................................................10

*W. States Wholesale, Inc. v. Synthetic Indus., Inc.*,
  206 F.R.D. 271 (C.D. Cal. 2002) ............................................................................15

*Zeiger v. WellPet LLC*,
  526 F. Supp. 3d 652 (N.D. Cal. 2021) ....................................................................13

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ................................................................................13

**Statutes**

FRCP 23(b)(2) ...................................................................................................................12

FRCP 23(b)(3) ...................................................................................................................3

## I.    INTRODUCTION

Tesla's opposition misconstrues the law and engages in premature merits analysis, while ignoring Plaintiff's evidence including unrefuted expert opinions establishing that common issues predominate. Symptomatic of the deficiencies of Tesla's arguments, the only evidence it offers to oppose certification is website data so riddled with errors that it is embarrassing. Tesla's opposition arguments lack merit and certification is proper for at least the following six reasons:

First, the representations at issue are not limited to a single month in 2016. As analyzed by Plaintiff's expert Dr. Goldhaber, they were part of a unique direct to consumer marketing strategy that was communicated consistently, uniformly and widely using all available communication channels from October 2016 through the present.

Second, Plaintiff has presented expert evidence through Dr. Goldhaber establishing that it was more likely than not that the representations at issue were material to the class of consumers making the decision to purchase FSD, and that a reasonable consumer would have been deceived and misled by Tesla's representations. Tesla offers no contrary evidence.

Third, Plaintiff's proposed damages model is consistent with his liability theory, which is that Tesla promised a technology that could deliver SAE Level 5 driving capability, yet its cars remain at SAE Level 2, which is not even close to autonomous. Other cases have recognized that a full value refund is appropriate where a defendant completely fails to deliver what was represented.

Fourth, Tesla's statute of limitations defense—and the question of whether it applies—is common to the class, including the named Plaintiff. It is a merits-based defense which will be resolved based upon class wide evidence establishing what a reasonable consumer considers a reasonable time for Tesla to deliver on its FSD promises.

Fifth, injunctive relief is proper here to address the prospective harm from Tesla's continuing misrepresentations regarding its vehicle's autonomous capabilities. That harm is distinct and different from the retrospective damages remedy that Plaintiff also seeks.

Sixth, the named plaintiff here is typical because he is subject to the same defenses as members of the putative class. Tesla made no effort to, nor can it, show that those defenses applied to the named plaintiff would distract from his representation of the class.

1    For all these reasons and as detailed below and in Plaintiff's opening brief, class certification

2    is proper.

3    **II.    ARGUMENT**
     **A.    Tesla Mischaracterizes the Reach of Its Advertising and the Opinions of**

4         **Plaintiff's Experts**

5    Tesla's description of its advertising is misleading. While the initial representations regarding

6    vehicle hardware and a promised autonomous cross-country trip were made in October 2016, Tesla

7    repeated those representations, generating continued press coverage, for years afterwards.

8    Specifically, Tesla's 2016 claim that all its vehicles now had all hardware needed for FSD operation

9    remained on its website through August 2024, and the autonomous cross-country drive promised in

10   October 2016 was a claim repeated by Tesla's CEO, Mr. Musk, with increased specificity, over and

11   over again in the years following. Tesla's claim that it does no "mass advertising" is also

12   disingenuous, given its extensive promotional campaign through its website, social media, press

13   events such as Tesla Autonomy Days and earnings calls, and Mr. Musk's ubiquitous promotional

14   efforts in the press and on his social media platform X (formerly Twitter). The information

15   environment created by Tesla's promotions is analyzed and described in detail in Dr. Goldhaber's

16   report, submitted in support of this motion. Decl. of Julie Fieber in Supp. of Class Certification

17   ("Fieber Dec.") Ex. 2 (Goldhaber Rpt.), ¶¶ 9-44 [ECF 138-4].[1]

18   Notably, Tesla submitted an employee declaration purporting to provide a foundation for

19   website data that, it claims, shows the website representations received a "sliver" of its website traffic.

20   Opp'n at 3:10-13. However, that employee's deposition showed Tesla's "data" to be error-ridden and

21   utterly lacking in any sort of validation. *See* Obj. to Decl. of Brenda Lee and Req. to Strike, filed

22   herewith. Tesla's "data" is worthless, misleading, and should be disregarded for purposes of this

23   motion.

24   Tesla neither challenges the qualifications of Plaintiff's experts nor offers experts of its own.

25   Rather, it seeks to discredit them by mischaracterizing their testimony and opinions. For example, it

26   cites an isolated statement from Mr. Socci that Tesla's admitted need to update FSD hardware may

27   not apply to vehicles at the tail end of the class period which are already at Hardware 4, claiming this

28   _____

[1] Unless otherwise noted, all exhibit references are to the Fieber Declaration filed with Plaintiff's
Opening Brief.

shows that falsity cannot be shown with common proof. However, Mr. Socci elsewhere identified other technical limits, such as sensor performance, that are common to the class, and Tesla itself announced a transition to Hardware 5 in June 2024, which is common to all class vehicles. Decl. of Makena Kershaw in Supp. of Reply ("Kershaw Dec.") Ex. 30 (Socci Tr.) at 67:13-69:5, 76:8-78:12; Exs. 31, 32.[2] Tesla also claims Dr. Goldhaber's opinions were not based on his undisputed relevant experience in, *inter alia*, marketing, communications, and warnings, an assertion directly contrary to testimony explaining how his experience informed his conclusions in this case. *Id.* Ex. 33 (Goldhaber Tr.) at 13:1-20:9. Tesla also suggests that Plaintiff's damages expert, Mr. Stockton, testified that he did not know what representations are at issue, which was not his testimony. *Id.* Ex. 34 (Stockton Tr.) at 75:14-78:19. Tesla also criticizes him for using arithmetic, and argues, without authority, that he must quantify damages by individual misrepresentation, when in fact that common test for damages in consumer fraud claims is the difference between the price paid and the value of the good as purchased. *Martin v. Monsanto Co.*, 2017 WL 1115167, at *8-*9 (C.D. Cal. 2017). Here, Tesla sold technology packages which it represented would make its vehicles fully self-driving yet, to this day, all Tesla vehicles remain at SAE Level 2, *i.e.*, incapable of full self-driving. As discussed further below, Mr. Stockton used the right metric, the price of those technology packages, to measure damages.

**B.    Plaintiff Has Shown Predominant Common Questions Warranting Certification Under FRCP 23(b)(3).**

Tesla attempts to counter Plaintiff's evidence that common issues predominate by focusing on exposure, materiality, and consumer understanding of the representations at issue. None of these attacks have merit.

**1.    The Exposure Test Is Met**

On exposure, Tesla argues the facts here are like those in *Mazza v. American Honda Motor Company, Inc.*, 666 F.3d 581 (9th Cir. 2012), where the advertising consisted of a brochure, a few months of television ads, a magazine ad released for a few months, and some smaller scale promotions. *Id.* at 586. There, the court found that such limited advertising did not support an

---

[2] https://www.notateslaapp.com/news/2805/teslas-next-gen-fsd-computer-hw5-ai5-rumored-to-deliver-5x-more-power; https://www.teslarati.com/tesla-confirms-massive-hardware-change-autonomy-improvement/#google_vignette

1    inference of class wide exposure or reliance.

2          The facts are different here. As described in Dr. Goldhaber's report, Tesla's representations

3    regarding vehicle hardware and the imminent release of a capability allowing Tesla vehicles to

4    autonomously drive, including cross country, were consistently made and repeated from 2016

5    onward. Ex. 2 ¶ 13. Tesla's practice of not using independent dealerships or what it calls "mass

6    advertising" means its representations regarding its products are "tightly controlled and uniform and,

7    like its sales, go directly to the consumer." Ex. 2 ¶¶ 9-11. Thus it is irrelevant that Tesla does not

8    engage in traditional "mass advertising," because Tesla's "information environment" includes

9    multiple communication channels to its customers, including its website, social media,

10   pronouncements by its CEO Musk, press coverage generated by Musk's activities, and Tesla's own

11   sales materials, all of which Tesla uses to promote its products, including FSD, directly to its

12   customers. *Id.* ¶ 12. It is through this information environment that the repeated and consistent

13   misrepresentations made by Tesla, that its vehicles had the hardware for FSD capability and that its

14   vehicles would be capable of an autonomous cross-country drive, reached its FSD customers. As Dr.

15   Goldhaber opined, Tesla's strategy of direct-to-customer marketing "has been shown to be a very

16   effective tool to reach the ordinary consumer." *Id.* ¶ 14. Tesla selectively cites out of context excerpts

17   from Dr. Goldhaber's deposition testimony to undercut the evidentiary weight of his opinions, but as

18   stated in his report, his opinions regarding exposure, materiality, and how Tesla's messaging was

19   understood by the reasonable consumer are based upon the analysis documented in his report and his

20   experience and training, and those opinions are held "to a reasonable degree of professional certainty"

21   and "derived from ensuring analytical adherence to the scientific method." *Id.* ¶ 6. Dr. Goldhaber

22   confirmed at his deposition that it was more likely than not that the class had been exposed through

23   the two-step flow of information he described, and he explains how he intends to further confirm

24   those opinions through survey and focus group data. Ex. 33 (Goldhaber Tr.) at 32:2-36:20, 107:23-

25   108:21. What Tesla calls "zero evidence" is in fact the typical expert opinion evidence that, as

26   discussed below, has been accepted by other courts to address these same issues. In fact, it is <u>Tesla</u>

27   that offers <u>zero evidence</u> to rebut Dr. Goldhaber's opinions.

28         Tesla attempts to counter Dr. Goldhaber's analysis with its error-ridden website data, offered

1  through the Declaration of Brenda Lee. As detailed in the Objections to the Lee Declaration and

2  Request to Strike (filed herewith), the website data Tesla offers the Court admittedly undercounts

3  visits, is demonstrably wrong, and Ms. Lee confirmed that Tesla did nothing to verify this third-party

4  data. *See* Obj. to Brenda Lee Dec. and Req. to Strike. Tesla's "data" should be disregarded.

5        Tesla's unique marketing strategy places this case in the situation found in *In re Tobacco II*

6  *Cases*, 46 Cal. 4th 298, 326-28 (2009), which recognized that a presumption of class wide reliance

7  may arise where there is evidence that the alleged misrepresentation was broadly disseminated,

8  including in the context of an extensive and long-term fraudulent advertising campaign that leaves

9  little doubt that almost every class member had been exposed to defendants' misleading statements.

10 *See also Mazza*, 666 F.3d at 595-96; *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962 (N.D. Cal. 2015) (on

11 motion to dismiss, Apple's 5-year advertising campaign found sufficient for purposes of *Tobacco II*);

12 *Gutierrez v. Wells Fargo Bank*, *NA*, 704 F.3d 712, 728-29 (9th Cir. 2012) (4-year advertising

13 campaign where marketing theme appeared on website and company brochures supported inference

14 that class members were exposed to and relied upon the representations); *Morgan v. AT&T Wireless*

15 *Serv., Inc.*, 177 Cal. App. 4th 1235, 1258 (on demurrer, advertising campaign that took place over

16 many months, in several different media, in which defendant made consistent representations met the

17 test set in *Tobacco II*).

18       Tesla also ignores that the relevant analysis under California law is not whether each class

19 member saw and relied on each of the challenged statements, but instead whether the challenged

20 statements were used consistently through the class period, supporting an inference of class exposure

21 and materiality to a reasonable consumer. *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 563-64

22 (N.D. Cal. 2020). For example, in *Krommenhock*, there was no dispute that the majority of challenged

23 statements were made consistently and throughout the relevant time frames on product packages,

24 which supported an inference of exposure; the real question was whether those representations were

25 objectively material to a reasonable consumer. *Id.* at 564-65. Similarly, in *Makaeff v. Trump*

26 *University*, 2014 WL 688164, at *13 (S.D. Cal. 2014), exposure was inferred based upon a multi-

27 media promotional campaign that was "uniform, highly orchestrated, concentrated and focused on its

28 intended audience," "more targeted, concentrated, and efficient than *Tobacco II*," which had the

1    effect of making it "highly likely that each member of the putative class was exposed to the same

2    misrepresentations." Further, there was substantial evidence that class members paid for seminars "for

3    reasons that track the advertising and promotional information provided in the highly orchestrated

4    campaign." *Id.* Further, given this evidence that common representations were made to all class

5    members, the court held the jury would be required to decide the fact question of materiality. *Id.*

6    Similarly, in *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1095 (N.D. Cal. 2018), the court

7    held that the question is how an objectively reasonable consumer would react to a statement, not

8    whether individual class members saw or were deceived by statements. There, the challenged

9    statements appeared on only a subset of packaging for portions of the class period. The class was

10   defined as individuals purchasing versions of products that included those challenged statements on

11   the packaging, thereby ensuring that all class members had been exposed. *Id.* at 1096-97. Here also,

12   the proposed class is limited to just consumers who bought FSD capabilities, the product at issue in

13   the challenged statements, who by virtue of their decision to buy FSD can be assumed to have been

14   exposed to Tesla's representations regarding FSD's capabilities. *See also Committee on Children's*

15   *Television, Inc. v. General Foods Corp.*, 35 Cal. 3rd 197, 219 (1983) (where fraud claim based on

16   long-term advertising campaign which "may seek to persuade by cumulative impact, not by a

17   particular representation on a particular date….[p]laintiffs should be able to base their cause of action

18   upon an allegation that they acted in response to an advertising campaign even if they cannot recall

19   the specific advertisements").

20        Tesla also criticizes Dr. Goldhaber's analysis of Tesla's "information environment," but

21   similar advertising campaigns based on "buzz" generated through third party messages has been

22   recognized as circumstantial evidence establishing the reach of an ad campaign for purposes of

23   *Tobacco II*. *See Opperman*, 84 F. Supp. 3d at 981 ("buzz marketing" or "earned media" was

24   circumstantial evidence of the reach of Apple's advertising campaign).

25        Further, cases cited in Tesla's opposition as establishing the "norm" are factually dissimilar.

26   For example, *Rafofsky v. Nissan North America, Inc.*, 2017 WL 11634036, at *5 (C.D. Cal. 2017)

27   involved magazine ads that ran for 4 months, 8 months posting on a microsite, and 200,000 emails to

28   potential customers. In *In re MyFord Touch Consumer Litigation*, 2016 WL 7734558, at *21 (N.D.

Cal. 2016), the representations were in print ads and on the website for two-and-a-half years, and there was zero evidence (including expert testimony) about the reach of the campaign. In *Konik v. Time Warner Cable*, 2010 WL 8471923, at *9 (C.D. Cal. 2010), the central issue precluding class certification was that the challenged statements were not false as applied to most of the class members. The representations in *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *6 (N.D. Cal. 2016), varied tremendously and were not all misrepresentations. In *Ehret v. Uber Technologies, Inc.*, 148 F. Supp. 3d 884 (N.D. Cal. 2015), the representation was not on the Uber app itself, and the plaintiff had no other evidence, such as expert opinion, of class wide exposure. In *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 979 (2009), again, there was no evidence such as expert opinion on exposure for the proposed nationwide class. None of these cases are remotely like the facts here, where Tesla uses a unique direct-to-customer marketing strategy, with its unique CEO front-and-center, to reach its customers and market its FSD package.

### 2. The Test for Materiality Is Met

Tesla's materiality argument argues the merits through similar incorrect representations regarding Plaintiff's evidence as its arguments on exposure. Citing *In re 5-Hour Energy*, 2017 WL 2559615 (C.D. Cal. 2017), Tesla suggests consumer surveys or similar market research are needed to show materiality. That is not the rule.

California law holds that materiality is generally a fact question judged by a reasonable man standard. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). Here, *Krommenhock* is instructive because the court rejected defense arguments similar to Tesla's, that plaintiff was required to present a stand-alone survey. It cited *Hadley*, which had held that, "California courts have explicitly 'reject[ed] [the] view that a plaintiff must produce' extrinsic evidence 'such as expert testimony or consumer surveys' in order 'to prevail on a claim that the public is likely to be misled by representation' under the FAL, CLRA, or UCL." *Hadley*, 324 F. Supp. 3d at 1115 (internal citations omitted) (relying on expert testimony of marketing expert to establish materiality). In *Krommenhock*, testimony from the plaintiff's marketing expert, which relied on his extensive experience in the industry, including marketing of similar products, as well as the defendant's own documents, supported a finding that the statements at issue could have been material to the reasonable consumer.

1    *Id.* at 565. Moreover, unlike Tesla, which offers only argument instead of evidence on materiality, in

2    *Krommenhock* the defendant put on its own experts contradicting the opinions of the plaintiff's

3    expert. *Id.* at 565-66. Despite this, the court held that those disputes were issues to be resolved by the

4    jury. *Id.* Similarly, in *Hadley*, the plaintiff again relied upon a marketing expert for evidence of

5    materiality at the class certification stage. 324 F. Supp. 3d at 1115. *See also Bailey v. Rite Aid Corp.*,

6    338 F.R.D. 390, 401 (N.D. Cal.) ("expert who offers testimony on the question of whether a

7    reasonable consumer is likely to be deceived by an allegedly misleading statement, or whether a

8    reasonable consumer would find such a statement to be material, is not required to conduct a

9    consumer survey if his or her testimony is otherwise reliable"); *Combe v. Intermark Communications,*

10    *Inc.*, 2010 WL 115977517, at *10 (C.D. Cal. 2010)(ultimate question of materiality is a common

11    question of fact suitable for treatment in a class action and therefore predominates on CLRA

12    claim)(citing *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010)).

13        Cases Tesla cites are inapposite. In *Pierce-Nunes v. Toshiba America Information Systems,*

14    *Inc.*, 2016 WL 5920345, at *6 (C.D. Cal. 2016), even the plaintiff admitted he did not rely on the

15    allegedly misleading packaging. In *Jones v. Conagra Foods, Inc.*, 2014 WL 2702726, at *15 (N.D.

16    Cal. 2014), the court found that the term "100% natural" was not necessarily material to reasonable

17    customers, given there was no controlling definition for the word "natural," and even the plaintiff's

18    expert had conceded to not paying attention to "natural" claims.

19        Tesla also cites *Kosta v. Del Monte Foods*, 308 F.R.D. 217, 230 (N.D. Cal. 2015), attempting

20    to discredit Dr. Goldhaber because the expert in *Kosta* provided a declaration that recited from the

21    complaint and then provided an opinion, without analysis, that the challenged statements were

22    material. Dr. Goldhaber's declaration is easily distinguished from that in *Kosta*, because he provides

23    extensive independent analysis of Tesla's marketing and misrepresentations, (¶¶ 7-41), applies his

24    extensive marketing background to the question of materiality, (¶¶ 42-44), and then outlines how he

25    will confirm these opinions for the class using focus groups and surveys (¶¶ 45-52). As explained

26    further in his deposition, Dr. Goldhaber's opinions on materiality, as stated in his report, are based on

27    his "background, research, education, training and the dozens of years that I've been involved in

28    doing these things, these kinds of studies, and looking at what conclusions those studies have resulted

1   in." Ex. 33 (Goldhaber Tr.) at 94:8-13. Those opinions will be confirmed through surveys and focus

2   groups. *Id.* at 94:14-100:11. Tesla offers no evidence to counter Dr. Goldhaber's opinions, which are

3   based on his experience as well as Tesla's own documents, that the challenged statements here were

4   material to a reasonable consumer deciding whether or not to purchase Tesla's FSD technology

5   packages. Ex. 2 ¶¶ 20-52.

6   ### 3.    Tesla's Speculation about Individualized Evidence Does Not Defeat Certification

7   Tesla also claims that it "will" offer evidence that class members were "not mislead, deceived,

8   or confused about what they were purchasing with EAP and FSDC or by the two statements at issue."

9   Opp'n at 13:20-21. First, what Tesla believes it "will" offer at an unspecified future time is irrelevant

10  to this motion. Further, that some consumers might have understood Tesla's representations

11  differently does not defeat predominance, because what matters is whether "a reasonable consumer

12  would find [the representations] material." *Martin v. Monsanto Co.*, 2017 WL 1115167, at *8 (N.D.

13  Cal. 2017). Further, as Dr. Goldhaber explained, surveys and focus groups will be used in the next

14  phase of this litigation to definitively, within a reasonable degree of certainty, determine what a

15  reasonable consumer understands when exposed to Tesla's representations, including its claimed

16  disclaimers. Ex. 2 at ¶¶ 40-41, 45-51.

17  ### 4.    Plaintiff's Damages Model Is Consistent with His Liability Theory.

18  Tesla argues certification must be denied because Plaintiff seeks restitution of the amounts

19  consumers paid for FSD systems that failed to deliver vehicles capable of autonomous operation, an

20  undeniable fact given that all Tesla vehicles on the road today remain at SAE Level 2, meaning they

21  are not autonomous. Tesla's argument misstates the law and facts and should be rejected.

22  Plaintiff's statutory claims provide for, *inter alia*, restitution as the remedy, meaning "the

23  return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff

24  received." *Martin*, 2017 WL 1115167, at *8. A plaintiff must present "a likely method for

25  determining class damages, though it is not necessary to show that his method will work with

26  certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

27  2010). The amount of damages, even if an individual question, does not defeat class certification.

28  *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

1    Citing *Vizcarra v. Unilever United States*, 339 F.R.D. 530, 554 (N.D. Cal. 2021), Tesla argues

2    that the damages model must specifically identify and isolate the economic impact from each

3    statement. But *Vizcarra* was premised on the claim that consumers paid a price premium for an ice

4    cream product because they believed defendant's representations that it contained actual vanilla

5    beans. *Id.* at 537. In contrast, Plaintiff is not claiming that the putative class paid a premium for

6    Tesla's FSD technology. Instead, the claim here is that Tesla sold something that did not exist and

7    that, to this day, does not exist -- a technology package capable of making its vehicles drive

8    autonomously. Tesla sold the idea of vehicles that could operate at SAE Level 3 or higher, but to this

9    day it is only selling SAE Level 2 vehicles and even those, if operated with the FSD technologies

10    engaged, cannot reliably and safely navigate ordinary driving conditions.[3]

11    The situation here is similar to that in *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 640

12    (S.D. Cal. 2015), where plaintiffs argued the education obtained from Trump University was

13    worthless because they were not provided with the advertised benefits of Donald Trump's experience

14    and any incidental benefits amount to a "placebo effect." There the court agreed, finding that the

15    proposed method of calculating restitutionary damages was not arbitrary and that it was consistent

16    with the liability theory. Significantly, it reached this holding despite testimony from a number of

17    class members to being satisfied with their investment and to having obtained some value from their

18    education. Similarly, in *Allen v. Hyland's Inc.,* 300 F.R.D. 643, 671 n. 25 (C.D. Cal. 2014),

19    homeopathic drugs marketed as remedies for various ailments were completely ineffective. Plaintiffs

20    sought full restitution claiming that the products they paid for were worthless because they did not

21    provide any of the advertised benefits, and that any incidental benefits were the product of a "placebo

22    effect." 300 F.R.D. at 671. *See also FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir.1993) (under the

23    FTC Act, upholding full recovery award because the amount consumers spent on the heat detectors

24    would not have been spent absent defendant's dishonest practices); *United States v. Kennedy*, 726

25    F.3d 968, 974 (7th Cir. 2013) (full recovery of what was paid for victim who received counterfeit art

26

27    ────────────────
[3] Indeed, while of no precedential value, it is of interest that a Tesla owner in Washington recently

28    achieved the same result through arbitration after pursuing a claim that Tesla had failed to deliver
FSD. The arbitrator ordered Tesla to reimburse the full $10,000 value of the FSD package plus taxes,
in addition to paying the arbitration fees. *See* Kershaw Dec. Ex. 36.

1  that possessed intrinsic beauty and value); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 160

2  (2010) (valuation not at issue for product that was illegal to sell or possess).[4]

3        Tesla also asserts, without evidence, that there are potential offsets to the proposed full refund

4  model. However, Mr. Stockton opined that reasonable methods exist to apportion the value of any

5  such viable ADAS features that Tesla becomes capable of delivering and described that methodology.

6  Ex. 4, ¶¶ 31-32. Any offsets that Tesla is able to prove during the merits phase of this litigation can

7  similarly be addressed.

8        Finally, Tesla cites three cases where damages models prepared by Mr. Stockton were

9  excluded for reasons unrelated to his qualifications and expertise, the present litigation, and his

10  opinions here. Whatever point Tesla is attempting to make is irrelevant and should be disregarded.

### 5.        Tesla's Limitations Defense Does Not Justify Denying Certification

12        Tesla argues certification is improper because many class members would be subject to statute

13  of limitations defenses absent tolling. However, the existence of defenses largely common to the class

14  does not defeat certification, and Tesla makes no attempt to show that Plaintiff LoSavio is uniquely

15  subject to any statute of limitations defense.

16        In *Corcoran v. CVS Health*, 2019 WL 6250972 (N.D. Cal. 2019), the defendant also claimed

17  the named plaintiffs were subject to statute of limitations defenses. As the court observed there, given

18  the lengthy class period, many other putative class members were subject to the same defense. *Id.* at

19  *5. Because the statute of limitations defense used the reasonable person standard, the issue would be

20  whether the class and the named plaintiff would have been on notice of the events at issue. *Id.* The

21  court further reasoned that, "[t]he statute of limitations is a merits determination often not suitable for

22  resolution at the class certification stage." *Id.* (citing *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558,

23  566 (S.D. Cal. 2012)). Similarly, in *Beck-Ellman*, the court certified a class, holding that the statute of

24  limitations defense "does not compel a finding that individual issues predominate over common ones.

25  Given a sufficient nucleus of common questions, the presence of the individual issue of compliance

26  with the statute of limitations need not bar class certification." 283 F.R.D. at 569 (quotations

27  _____

28  [4] Similarly, even if Tesla vehicles operated at SAE Level 3 or higher, which they do not, it would be illegal to operate them as such in California because Tesla has never even applied for that certification from the DMV, which is investigating Tesla's FSD representations. *See* Kershaw Dec. Ex. 37.

1   omitted)(quoting *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975)).

2       Tesla's authorities are distinguishable. For example, in *O'Connor v. Boeing North American,*

3   *Inc.*, 197 F.R.D. 404, 414 (C.D. Cal. 2000), the statute of limitations defense had already been the

4   subject of a "weighty" summary judgment motion and proved substantially successful. In *Henson v.*

5   *Fidelity Nat. Financial Inc.*, 300 F.R.D. 413, 421 (C.D. Cal. 2014), the relevant limitations period was

6   one year but the proposed class covered 15 years of escrow transactions, and the court also found a

7   "compelling" record-keeping problem because the defendant maintained only 5 years of records, such

8   that proving prerequisites for statutory coverage would be "highly impracticable if not impossible."

9   Those problems do not exist here.

10      Tesla argues that its defense requires individualized inquiry, ignoring that the limitations

11  defense, like Plaintiff's other claims, will be judged by the reasonable consumer standard. The same

12  surveys and focus groups described in Dr. Goldhaber's opinions to test class understanding of Tesla's

13  representations will also be used to test the reasonable consumer's understanding of the timeline for

14  delivery of these features. Ex. 2 ¶¶ 13, 14, 52. Courts recognize this is a merits determination not

15  suitable for resolution at the class certification stage. *Corcoran*, 2019 WL 6250972, at *6. Here,

16  where Tesla on the one hand argues that Plaintiff should have realized sooner that it would not deliver

17  the promised FSD capability while, on the other hand, claiming to have delivered that capability,

18  there are factual questions and Tesla's defense should not bar certification.

19          **6.    An FRCP 23(b)(2) Class Can Be Certified Because the Injunctive Relief
                    Sought Is Distinct from the Damages Claim and More Than a Generalized
20                  Request to Follow the Law.**

21      Tesla opposes certification of an injunction class, arguing that Plaintiff seeks primarily

22  damages and an injunction would not provide relief to each class member. Both arguments lack merit.

23      To seek injunctive relief, a consumer needs to allege that she (1) cannot "rely on the product's

24  advertising or labeling in the future, and so will not purchase the product although she would like to"

25  or (2) might purchase the product again, "as she may reasonably, but incorrectly, assume the product

26  was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018). "The

27  availability of monetary damages does not preclude a claim for equitable relief under the UCL and

28  CLRA based upon the same conduct." *Luong v. Subaru of America, Inc.*, 2018 WL 2047646, at *7

1    (N.D. Cal. 2018) (denying motion to dismiss and recognizing the remedies were cumulative).

2    Similarly, in *Graham v. Central Garden & Pet Co.*, 2023 WL 2744391, at *4 (N.D. Cal. 2023), on a

3    motion to dismiss, the court refused to dismiss the injunctive relief claim, finding it to be prospective

4    whereas the legal remedy, damages, was retrospective, and therefore not barred. "Damages related to

5    the products Plaintiff has already bought do not remedy the harm from Defendant continuing to use

6    misleading marketing statements on those products." *Id.* (citing *Warren v. Whole Foods Mkt. Cal.,*

7    *Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. 2022)).

8         Here, Plaintiff has met the standard for injunctive relief, because he still wants an autonomous

9    vehicle and is concerned that he cannot rely on Tesla's advertising or make a fair comparison with

10   competing products because Tesla may still be misrepresenting the FSD capabilities of its vehicles.

11   Ex. 1 ¶¶ 11-12; TAC ¶¶ 176-178. The injunction sought is specific, seeking an order enjoining Tesla

12   from advertising that its vehicles are capable of full self-driving until it actually obtains certification

13   from the California DMV to sell an SAE Level 3 or higher vehicle. This is a quintessential

14   prospective remedy supporting certification of an injunctive class.

15        Tesla's argument that an injunctive relief class cannot be certified because the injunctive relief

16   would be incidental to damages has been repeatedly rejected. *See, e.g.*, *Brown v. Google LLC*, 2022

17   WL 17961497, at *20 (N.D. Cal. 2022); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal.

18   2014); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 698 (N.D. Cal. 2021) (certifying injunctive class

19   because injunctive relief against future harm is no less important than monetary relief for past harm).

20        Cases Tesla relies upon are factually dissimilar. For example, in the product liability case

21   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1196 (9th Cir. 2001), the plaintiff sought a

22   medical monitoring <u>fund</u> for past and future damages, and the additional request for medical research

23   was "merely incidental to the primary claim for money damages." In *Diacakis v. Comcast Corp.*,

24   2013 WL 1878921, at *9 (N.D. Cal. 2013), the entire request for injunctive relief was set forth in a

25   footnote without meaningful analysis or providing a basis for injunctive relief.  In *Lucas v. Breg*, 212

26   F. Supp. 3d 950, 962 (S.D. Cal. 2016), the court refused to certify a class for injunctive relief, finding

27   plaintiffs lacked standing because they could not show a threat of future harm given there was no

28   dispute that plaintiffs would not purchase the device again. In that context, the court further found the

primary relief sought to be monetary. *Id.* at 972.

Tesla also argues that certification of an injunctive class is improper because not all class members intend to purchase or lease a Tesla vehicle in the future and therefore would not get the benefit from the injunction. It cites *Victorino v. FCA US LLC*, 326 F.R.D. 282, 308 (S.D. Cal. 2018), a case where the requested injunction was to have the defendant repair defective car components. There, the proposed class included people who had already sold or repaired their vehicles, so the requested relief (repair) would be of no benefit. *Id.* Here, in contrast, there is no reason to believe Tesla's FSD customers would not want or benefit from accurate information going forward. Tesla also cites *Cholakyan v. Mercedes-Benz, USA,* LLC, 281 F.R.D. 534 (C.D. Cal. 2012), which involved defects related to water leaking into vehicles and a proposed class that included former vehicle owners who would not benefit from repairs. Tesla also cites *Murray v. Sears, Roebuck and Co.*, 2014 WL 563264, at *10 (N.D. Cal. 2014), which involved allegedly deceptive representations about the ability of stainless steel dryer drums to prevent rust stains on clothing. There, the only deceptive representation identified was an isolated statement from a single salesperson met more than 10 years prior, which did not establish the need for class wide injunctive relief. *Id.*

In contrast, despite having made no attempt to obtain SAE Level 3 or higher certification, Tesla still advertises its vehicles as if they have autonomous capabilities and features videos of hands-off vehicle operation.[5] Tesla's ongoing misrepresentations are of a piece with its prior representations that its vehicles would be able to drive autonomously cross-county or have all the hardware needed for autonomous operation. All class members would benefit if they could rely upon Tesla's representations in the future and make fair comparisons of Tesla vehicles to those of competitors like Mercedes, unlike the classes in *Victorino* or *Cholakyan* who could not get their cars repaired twice. *See, e.g.*, *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *8 (N.D. Cal. 2018) (certifying injunctive class where alleged harm was inability to rely on the validity of the information advertised in deciding whether to make future purchase).

### 7.    Plaintiff LoSavio Is an Adequate Class Representative

---

[5] *See* https://www.tesla.com/fsd, https://www.youtube.com/watch?v=eCrU0EdIiO4, or https://www.instagram.com/p/DLqEdkLSrNQ/, all Tesla sites featuring videos of hands-off Tesla operation in a variety of driving environments.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1  Tesla's final argument is that Plaintiff cannot adequately represent the class because he is

2  subject to statute of limitations defenses. That argument is inconsistent with the law and the facts.

3  First, most of the class is subject to the same statute of limitations defenses as LoSavio, which

4  Tesla itself admits. Opp'n at 2:8-9. As discussed in the opening brief, a class representative's claims

5  may be typical even if subject to a statute of limitations challenge, particularly where other class

6  members are "very likely to be subjected to the same statute of limitations defense." *Corcoran*, 2019

7  WL 6250972, at *5; *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288, at *3-*4 (N.D. Cal. 2019)

8  (typicality met where all class members likely face the same limitations defense); *W. States*

9  *Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 276-787 (C.D. Cal. 2002). Tesla's argument

10  also fails because it neither explains nor offers any evidence to show that LoSavio would be so

11  preoccupied litigating the statute of limitations issue that doing so would threaten to become the focus

12  of the litigation. *Fine v. Kansas City Life Ins. Co.*, 2023 WL 7393027, at *5 (C.D. Cal. 2023),

13  *reconsideration denied*, 2024 WL 356463 (C.D. Cal. 2024).

14  Tesla also argues LoSavio is atypical because his "idiosyncratic diligence" prevented his

15  claims from being time-barred. Opp'n at 24:15. That argument ignores that the applicable standard is

16  how a reasonable consumer would have interpreted and responded to Tesla's promises and delays in

17  delivering FSD capabilities. *See Corcoran,* 2019 WL 6250972, at *6 (court cannot conclude

18  representative atypical where defense revolves around a reasonable person test).[6]

19  ## III.    CONCLUSION

20  Tesla's opposition is long on *ipse dixit* argument but short on facts. While it could have come

21  forward with evidence to oppose the opinions of Plaintiff's experts, it declined (or was unable) to do

22  so. Instead, the only evidence it offers is a set of error-ridden website data so deficient that it lacks any

23  semblance of reliability necessary for presentment to this Court. Further, Tesla's one-sided review of

24  the relevant case law omits authorities supporting certification. The record establishes the

25  predominance of common issues for Plaintiff's statutory and common law claims and certification is

26  proper.

27

28  [6] Should the Court have any concern about Plaintiff's adequacy, that can be addressed by allowing the addition of another named plaintiff.

1    Dated:  July 22, 2025                    **COTCHETT PITRE & MCCARTHY LLP**

2                                             By:     */s/     Julie L. Fieber*
                                                     Julie L. Fieber (SBN 202857)
3                                                    jfieber@cpmlegal.com
                                                     Frank M. Pitre (SBN 100077)
4                                                    fpitre@cpmlegal.com
                                                     Thomas E. Loeser (SBN 202724)
5                                                    tloeser@cpmlegal.com
                                                     Makena A. Kershaw (SBN 356645)
6                                                    mkershaw@cpmlegal.com

7
                                             **BOTTINI & BOTTINI, INC.**
8                                                    Francis A. Bottini, Jr. (SBN 175783)
                                                     fbottini@bottinilaw.com
9
                                             **CASEY GERRY FRANCAVILLA**
10                                           **BLATT & PENFIELD, LLP**
                                                     David S. Casey, Jr. (SBN 060768)
11                                                   dcasey@cglaw.com
                                                     Gayle M. Blatt (SBN 122048)
12                                                   gmb@cglaw.com
                                                     P. Camille Guerra (SBN 326546)
13                                                   camille@cglaw.com

14
                                             *Attorneys for Plaintiff and the Proposed Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP