FRANK M. PITRE (SBN 100077)
fpitre@cpmlegal.com
JULIE L. FIEBER (SBN 202857)
jfieber@cpmlegal.com
THOMAS E. LOESER (SBN 202724)
tloeser@cpmlegal.com
MAKENA A. KERSHAW (SBN 356645)
mkershaw@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Fax: (650) 697-0577

DAVID S. CASEY, JR. (SBN 060768)
dcasey@cglaw.com
GAYLE M. BLATT (SBN 122048)
gmb@cglaw.com
P. CAMILLE GUERRA (SBN 326546)
camille@cglaw.com
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Fax: (619) 544-9232

FRANCIS A. BOTTINI, JR. (SBN 175783)
fbottini@bottinilaw.com
NICHOLAUS H. WOLTERING (SBN 337193)
nwoltering@bottinilaw.com
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
Telephone: (858) 914-2001
Fax: (858) 914-2002

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **In re Tesla Advanced Driver Assistance Systems Litigation**<br><br>*This Filing Relates To All Actions* | Case No. 3:22-cv-05240-RFL<br><br>**PLAINTIFF'S OBJECTIONS TO THE DECLARATION OF BRENDA LEE IN SUPPORT OF PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATIONAND REQUEST TO STRIKE**<br><br>Judge: Hon. Rita F. Lin<br>Date:   August 12, 2025<br>Time:  10:00 a.m.<br>Courtroom: 15 – 18th Floor |

## I. INTRODUCTION

To support its arguments in opposition to class certification, Tesla submitted a declaration from its employee, Brenda Lee, purporting to substantiate a chart on website activity which, Tesla claims, shows that only a sliver of its website traffic was directed to the website pages regarding its FSD technologies. Plaintiff subsequently deposed Ms. Lee to explore the source of that data and various anomalies apparent on its face, particularly a series of unexplained zero entries showing no activity at all on website pages of interest for significant portions of time. That examination has revealed serious problems with the data Tesla is offering in support of its opposition. The Court should strike the Declaration of Brenda Lee and attached website data, because: (1) by Tesla's own admission the data undercounts Tesla website traffic by systematically excluding users with ad blockers, incognito browsing, blocked cookies, and/or common Apple phone security features; (2) neither Tesla nor Ms. Lee took any steps to verify or authenticate the data's accuracy; and (3) the exhibit contains obvious errors, including empty cells for months when the webpages demonstrably existed and received traffic. These fundamental deficiencies render the evidence inadmissible, unreliable, and misleading, and it fails to meet basic evidentiary standards under the Federal Rules of Evidence. Accordingly, this Court should strike the Declaration of Ms. Lee in its entirety.

## II. ARGUMENT

### A. Exhibit A Contains Admittedly Unreliable Data That Systematically Undercounts Website Traffic

Exhibit A purports to show monthly website traffic data from January 2017 through March 2025 for Tesla's main website (Column C) and three specific Tesla web pages: the Autopilot page at tesla.com/autopilot (Column D or "Autopilot page"); the Autopilot Support page at tesla.com/support/autopilot (Column E or "Autopilot Support page"); and Tesla's Blog Post at tesla.com/blog/all-tesla-cars-being-produced-now-have-full-self-driving-hardware (Column F or "Tesla's Blog Post").

Critically, *the exhibit contains no data from fall 2016*—the period when Tesla first made many of the misrepresentations at issue in this litigation. Further, Ms. Lee's deposition testimony exposes several fundamental problems with this data which require its exclusion.

### 1. The Data in Exhibit A is an Admitted Gross Underestimation

Ms. Lee testified that Tesla's website traffic data systematically excludes significant categories of users, rendering it an admitted undercount of actual traffic. If users use an ad blocker, are "incognito or they have their cookies blocked, [Tesla] cannot capture their data." Declaration of Makena Kershaw in Support of Reply ("Kershaw Decl.") (filed herewith), Ex. 35 (Lee Tr.) at 24:1-4. This exclusion is particularly problematic for Apple users, as Ms. Lee explained that "usually on Apple, like, there's a lot of security stuff -- security settings -- then -- then we won't be able to capture traffic so it's not 100 percent accurate." *Id.* at 23:11-13.

In short, the data in Exhibit A is a gross underestimation of Tesla's actual site traffic. When directly confronted with this reality, Ms. Lee conceded that this systematic undercounting was a potential issue. *Id.* at 26:13-16. This admission alone should disqualify Exhibit A from consideration—Tesla is asking the Court to rely on evidence that its own witness acknowledges provides only a fraction of the actual data, excluding entire categories of users based on their privacy settings or device security configurations. Courts cannot base findings on evidence that the proponent's own witness admits is systematically incomplete and inaccurate.

### 2. Ms. Lee Took No Steps to Verify the Accuracy of The Data

Ms. Lee's testimony also reveals a complete absence of verification procedures. Tesla does not audit its website traffic data (*Id.* at 44:16-18), and Ms. Lee took no steps to verify the accuracy of any data in Exhibit A. Her testimony demonstrates a troubling pattern of failing to verify even the most basic aspects of the data she presented.

Specifically, Ms. Lee testified that she took no steps to verify missing data in the chart (*Id.* at 72:7-10, 12-17, 20-21):

> MS. KERSHAW: Why did you not check whether or not the web page existed during the months you ran queries for?
> MS. QUE: Objection to form.
> THE WITNESS: It wasn't -- I just didn't.
> MS. KERSHAW: Column F, Rows 2 through 12, did you do anything to verify the lack of data in response to your query?
> MS. QUE: Objection to form.
> THE WITNESS: No. I just pulled the data directly from what I could pull from the database.

1  BY MS. KERSHAW: Q Did you ask anyone if the web page existed in
   the months reflected in Rows 2 through 12 of Column F?
2  A No.

3   Ms. Lee took no steps to verify the data with anyone else at Tesla, even for portions of time
4  when she was not working at the company (*Id.* at 73:16-17; 74:4-6; 74:14-21):

5  Q After you created this chart, did you show it to anyone else at Tesla
   for confirmation?
6  A No, I didn't.
   Q Did you do anything to verify that the data response to your query
7  was an empty entry or –
   A No, I didn't do any verification.
8  Q For Column F, Rows 2 through 12, did you do anything to verify that
   the empty response you got -- or, did you do anything to verify the
9  empty response that you got?
   MS. QUE: Object to form.
10 THE WITNESS: No, I didn't.
   BY MS. KERSHAW: Q Column F, Rows 94 through 100, did you do
11 anything to verify that the query response you got from Google
   Analytics was correct?
12 MS. QUE: Objection to form.
   THE WITNESS: 94 to 100?
13 BY MS. KERSHAW: Q Yes.
   A No, I didn't go through any verification process.
14

15   Ms. Lee's lack of knowledge extends to the very platform she relied upon for all data. She
16 took no steps to verify whether Google Analytics was functioning properly during critical periods. *Id.*
17 at 78:14-19. Ms. Lee also cannot verify the integrity of the data between its initial collection and her
18 reporting (*Id.* at 79:10-16):

19 Q Have you done anything to verify the Google Analytics platform was
   working during the months of Rows 2 through 12 in Columns D and F?
20 MS. QUE: Objection to form.
   THE WITNESS: No, I didn't verify if it was working back then.
21 …
   Have you done anything to check if any changes
22 were made to the website traffic data between the time
   the Google Analytics platform recorded that data and the
23 time you ran a query to create this report?
   MS. QUE: Objection to form.
24 THE WITNESS: No, I didn't do any verification
   of some sort.
25

26   Ms. Lee admitted she has no knowledge of whether the Google Analytics platform
27 experienced "outages," and when asked if she knew "one way or another if the Google Analytics
28

platform can experience an outage," she responded, "I have never heard of that, but maybe. I don't -- I've never -- yeah, I don't know." *Id.* at 80:7-13.

This lack of verification is particularly concerning for the eight months of data from before Ms. Lee's employment at Tesla (January-July 2017). Despite presenting data from this period, Ms. Lee never spoke to anyone who worked at Tesla during those months to verify the data's accuracy. *Id.* at 43:13-21. The result is an exhibit based entirely on unverified, third-party data that Ms. Lee cannot authenticate and has never attempted to validate.

        **3.**        **There Are Clear Errors and Gaps in the Data as Apparent from the Empty Cells in 2017, 2018, a Portion of 2024, and 2025.**

The most critical evidence that the data in Exhibit A is unreliable is the fact that it reports no site visits whatsoever from January through November 2017 for the websites www.tesla.com/autopilot and www.tesla.com/blog/all-tesla-cars-being-produced-now-have-full-self-driving-hardware (columns D and F), and from January 2017 through March 2019 for the website www.tesla.com/support/autopilot (column E).[1] . Ms. Lee testified that when she queried these periods, she "received no data" and took no steps to investigate why. *Id.* at 61:6-9; 74:7-12. When asked to explain these empty cells, Ms. Lee had no answer: "Data was not there. So that could indicate that the page was not there or we didn't have tracking for that page at that point. I'm not sure exactly the reason for it." *Id.* at 61:6-9, 72:7-10. In short, Tesla's chart contains 11 months of missing data which is presented as if it were valid, rather than evidence of a serious problem with the underlying data source.

Plaintiff cross referenced the gaps in Tesla's data using the Wayback Machine—a nonprofit digital archive which captures periodic snapshots of publicly available webpages. Review of archival material captured by the Wayback Machine proves both that these webpages existed and were receiving traffic during the periods showing empty data in Tesla's chart.[2] The Wayback Machine

---

[1] Tesla's data also shows no website visits from September 2024 through March 2025 for the website www.tesla.com/blog/all-tesla-cars-being-produced-now-have-full-self-driving-hardware (column F), but it is possible that data gap coincides with Tesla's removal of the blogpost.

[2] The Wayback Machine, operated by the nonprofit Internet Archive, captures and preserves web pages over time. Archived snapshots show Tesla's Autopilot page existed throughout 2017, contradicting Exhibit A's missing data. Internet Archive, "Wayback Machine Snapshots of tesla.com/autopilot," https://web.archive.org/web/20170901000000*/https://www.tesla.com/autopilot (accessed Jul. 14, 2025); Internet Archive, "Wayback Machine Snapshots of tesla.com/blog/all-tesla-

works by taking periodic "snapshots" of publicly available webpages, either through automated web crawlers or manual user submissions.[3] These snapshots preserve the content of a page as it appeared at a specific time. The existence of an archived webpage is evidence of a site visit, and multiple snapshots taken during the time period are evidence of multiple site visits. Therefore, the existence of archived images of the subject webpages is evidence that there were visits during those time periods, and that the empty entries in Tesla's charts are not because there were no visits, as Tesla appears to be suggesting to the Court, but rather because there is some sort of unexplained error in the underlying data.

The contradiction between Ms. Lee's empty data and documented reality is stark. For example, on June 17, 2017—the day Tesla released Autopilot 2.0 v8.1—67 snapshots of the Tesla Autopilot page were captured, yet Ms. Lee's exhibit shows no traffic data for that entire month. Similarly, throughout 2017, the Wayback Machine captured multiple snapshots of Tesla's blog post, demonstrating active page content and user engagement during periods when Exhibit A shows *zero data*.

When confronted with this contradictory evidence, Ms. Lee admitted she was "really not sure" why there was no data and had done nothing to verify whether the pages existed during these periods. *Id.* at 64:22-23; 71:25-72:4. Even when presented with documented proof that the pages existed during the periods showing empty data, Ms. Lee admitted she had done nothing to verify whether the pages existed during these periods. *Id.* at 71:25-72:4.

This pattern of empty data cells, combined with Ms. Lee's complete failure to investigate or verify the dataset's accuracy, demonstrates a fundamental disregard for data integrity. Ms. Lee's testimony reveals she made no attempt to verify whether pages existed during missing data periods, took no steps to investigate why eleven consecutive months returned no data, asked no Tesla

---

cars-being-produced-now-have-full-self-driving-hardware," https://web.archive.org/web/20170901000000*/tesla.com/blog/all-tesla-cars-being-produced-now-have-full-self-driving-hardware (accessed Jul. 14, 2025).

[3] Save Pages in the Wayback Machine, INTERNET ARCHIVE, https://help.archive.org/help/save-pages-in-the-wayback-machine/ (last visited July 17, 2025); Wayback Machine General Information, INTERNET ARCHIVE, https://help.archive.org/help/wayback-machine-general-information/ (last visited July 17, 2025).

1 personnel about potential explanations for the missing data, and instead simply accepted and presented obviously questionable results without inquiry.

This contradiction between documented page existence and visits versus Tesla's claimed absence of traffic data exposes fundamental flaws in Exhibit A that render it unreliable and inadmissible. At worst, something is fundamentally faulty with Tesla's underlying data collection system, making the entire exhibit suspect. At best, the exhibit represents such a gross underestimation of actual traffic—systematically excluding users with privacy settings, ad blockers, or incognito browsing—that it clearly does not accurately portray Tesla's website traffic. *Id.* at 24:1-4; 26:13-16.

Tesla's website "data" contains systematic data collection errors that it cannot explain and that it failed to make clear to the Court. It also presents such an incomplete picture of actual traffic that it misleads rather than informs. When Ms. Lee was asked whether her numbers "undercount the actual visits to the website," she testified, "Potentially." *Id.* at 26:13-16. Despite this, Tesla offered this deficient data as evidence without qualification or explanation of its limitations. A court cannot rely on evidence that the presenting party's own witness acknowledges may be fundamentally incomplete or inaccurate.

**B.      Exhibit A Fails to Meet Evidentiary Standards Under Federal Rules of Evidence**

Federal Rule of Evidence 602 requires witnesses to have personal knowledge of matters they testify about. Ms. Lee lacks this knowledge for critical portions of Exhibit A. She started at Tesla in August 2017 yet presents data from January through July 2017 without any verification. *Id.* at 43:2-8.

Authentication requires showing that evidence is what it purports to be. Ms. Lee's testimony reveals "there wasn't a verification process" at all. *Id.* at 73:13-14. She cannot establish that the Google Analytics platform was functioning properly during relevant periods (*Id.* at 78:18-19), has no knowledge of potential technical issues (*id.* at 44:9-10), and took no steps to verify data integrity. This complete absence of authentication renders Exhibit A inadmissible under Rule 901.

**III.    CONCLUSION**

Tesla's website data is inadmissible and unreliable. The data is admittedly incomplete, contains obvious errors, and lacks any verification or authentication. These are not mere technicalities—they go to the heart of whether this evidence can be trusted in federal litigation. The

Court should strike both the exhibit and declaration as inadmissible under Federal Rules of Evidence 602 and 901, and because it fails to meet basic foundational requirements.

Dated: July 22, 2025

**COTCHETT PITRE & MCCARTHY LLP**

By: /s/   *Julie L. Fieber*
Julie L. Fieber (SBN 202857)
jfieber@cpmlegal.com
Frank M. Pitre (SBN 100077)
fpitre@cpmlegal.com
Thomas E. Loeser (SBN 202724)
tloeser@cpmlegal.com
Makena A. Kershaw (SBN 356645)
mkershaw@cpmlegal.com

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
David S. Casey, Jr. (SBN 060768)
dcasey@cglaw.com
Gayle M. Blatt (SBN 122048)
gmb@cglaw.com
P. Camille Guerra (SBN 326546)
camille@cglaw.com

*Attorneys for Plaintiffs and the Proposed Class*